## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,[1] | Case No. 16-11626 (BLS) |
| | (Jointly Administered) |
| Debtors. | |
| BRADLEY E. SCHER, solely in his capacity as Litigation Trustee for SC Mesabi Litigation Trust, | |
| Plaintiff | |
| v. | |
| ESSAR GLOBAL FUND LIMITED; ESSAR PROJECTS LIMITED; ESSAR PROJECTS USA, LLC; ESSAR PROJECTS (INDIA) LIMITED; ESSAR PROJECT MANAGEMENT COMPANY LIMITED; ESSAR CONSTRUCTIONS LIMITED; ESSAR PROJECTS MIDDLE EAST FZE; ESSAR ENGINEERING SERVICES LIMITED; GLOBAL SUPPLIES FZE; ESSAR LOGISTICS LIMITED; DOES 1-500 | Adv. Proc. No. 17-50001 (BLS) |
| Defendants. | |

## OPPOSITION TO ESSAR PROJECTS LIMITED, ESSAR PROJECTS USA, LLC AND ESSAR PROJECTS MIDDLE EAST FZE'S MOTION TO COMPEL ARBITRATION AND FOR RELATED RELIEF

---

[1] Essar Steel Minnesota LLC is doing business as Mesabi Metallics Company LLC.  The last four digits of its federal taxpayer identification number are 8770.  The last four digits of ESML Holdings Inc.'s federal taxpayer identification number are 8071.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND FACTS

    A.  The Lump Sum Turn Key Agreement ............................................................. 3

    B.  The Movants Participation in the Bankruptcy Case ....................................... 5

    C.  Motion Practice in the Adversary Proceeding ............................................... 11

ARGUMENT

  I.  The Plan Vests the Court With "Exclusive Jurisdiction" to Hear "Any and All Adversary Proceedings" Brought By the Litigation Trustees and Is *Res Judicata* .......... 14

  II.  The Movants Have Waived Their Right to Arbitrate ...................................... 19

    A. The Movants Submitted to the Jurisdiction of the Bankruptcy Court and Failed to Raise Their Intent to Arbitrate for Nearly Two Years ................................................ 20

    B.  Plaintiff Will Be Prejudiced If Compelled to Arbitrate .................................. 21

  III.  Even if the Breach of Contract Claims Are Deemed Arbitrable, the Court Should Not Stay the Remaining Twenty-Nine Claims ................................................ 24

    A.  The Applicable Factors Strongly Favor A Stay of Arbitration ...................................... 25

    B.  The Movants Have Not Even Attempted to Satisfy Their Burden of Demonstrating the Need for a Stay.................................................................................. 27

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## FEDERAL CASES

*Allstate Ins. Co. v. Elzanaty*, 929 F.Supp. 2d 199 (E.D.N.Y. 2013)...............................................22

*Am. Shipping Line v. Massan Shipping Indus.*, 885 F. Supp. 499 (S.D.N.Y. 1995).....................24

*Cabintree, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995) ...............................17

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513 (3d
      Cir. 2009) ...............................................................................................................................11

*Chassen v. Fid Nat'l Fin. Inc.*, 836 F.3d 291 (3d Cir. 2016).........................................................17

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)............................................................24

*Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638 (7th Cir. 1981)......................................................23

*Donaldson v. Bernstein*, 104 F.3d 547 (3d Cir. 1997)...................................................................13

*E.W. Bank v. Bingham*, 992 F. Supp. 2d 1130 (W.D. Wash. 2014) ...............................................24

*Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207 (3d Cir. 2007) .................................................11

*Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612 (2018)..........................................................................11

*Ernst & Young*, 304 F.3d 753 (7th Cir. 2002) ....................................................................... passim

*F.D. Imp. & Exp. Corp. v. M/V Reefer Sun*, 248 F. Supp. 2d 240 (S.D.N.Y. 2002) ....................22

*Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912 (3d Cir. 1992)............................................19

*In re Catholic Diocese of Wilmington, Inc.*, 484 B.R. 629 (D. Del. 2012)....................................22

*In re Charter Behavioral Health Sys.*, 277 B.R. 54 (Bankr. D. Del. 2002)
      (Walrath, J.) .............................................................................................................................19

*SFC Holdings, Inc. v. Earthgrains Co. (In re GWI)*, 269 B.R. 114 (Bankr. D. Del.
      2001) .......................................................................................................................................16

*In re Paragon Offshore PLC*, No. 17-51882, 2018 Bankr. LEXIS 2322 (Bankr. D.
      Del. Aug. 6, 2018) (Sontchi, J.), *appeal docketed*, No. 18-1345 (D. Del. Sept.
      7, 2018) ..............................................................................................................................15, 16

*In re Planet Hollywood Int'l*, 274 B.R. 391 (Bankr. D. Del. 2001)...............................................13

*In re Residential Capital LLC*, 563 B.R. 756 (Bankr. S.D.N.Y. 2016) ...................................22, 23

*In re S.W. Bach & Co.*, 425 B.R. 78 (Bankr. S.D.N.Y. 2010) ......................................................23

*In re Shenango Grp., Inc.*, 501 F.3d 338 (3d Cir. 2007 ...............................................................11

*In re Statewide Realty Co.*, 159 B.R. 719 (Bankr. D.N.J. 1993) .................................................18

*In re Szostek*, 886 F.2d 1405 (3d Cir. 1989) ...............................................................................13

*Indep. Energy Corp. v. Trigen Energy Corp.,* 944 F. Supp. 1184 (S.D.N.Y. 1996) ....................14

*Klay v. Pacific Health Sys., Inc.*, 389 F.3d 1191 (11th Cir. 2004) ...............................................22

*Langenkamp v. Culp*, 498 U.S. 42 (1990)......................................................................................18

*Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085 (8th Cir. 2007) ..................................17

*Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp.*, 376 Fed. App'x 70
     (2d Cir. 2010)...........................................................................................................................19

*McCarthy v. Azure*, 22 F.3d 351, 363 (1st Cir. 1994) .................................................................23

*PaineWebber Inc. v. Faragalli*, 61 F.3d 1063 (3d Cir. 1995)......................................................17

*Paragon Litigation Trust v. Noble Corp. PLC (In re Paragon Offshore PLC)*,
     2018 Bankr. LEXIS 2322 (Bankr. D. Del. Aug. 6, 2018) .......................................................16

*Samson Res. Co. v. J. Aron & Co. (In re Semcrude. L.P.)*, 2010 Bankr. LEXIS
     4567 (Bankr. D. Del. Dec. 13. 2010).......................................................................................18

*Sirius Computer Solutions, Inc. v. AASI Creditor Liquidating Trust,* 2011 U.S.
     Dist. LEXIS 96460, at *3 (S.D. Fla. Aug. 29, 2011) .......................................................14, 15

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).........................................13, 15

## FEDERAL STATUTES AND REGULATIONS

11 U.S.C. § 105.............................................................................................................................22

11 U.S.C. § 105(a) .....................................................................................................................8, 22

11 U.S.C. § 1123(a) .......................................................................................................................8

11 U.S.C. § 1141(a) .......................................................................................................................8

11 U.S.C. § 1142.........................................................................................................................6, 8

Bradley E. Scher, in his capacity as the Litigation Trustee[1] for the SC Mesabi Litigation Trust (the "**SC Litigation Trustee**" or "**Plaintiff**") established pursuant to the *Third Amended Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* [D.I. 990] (the "**Plan**") confirmed in the above-captioned jointly administered chapter 11 case, hereby submits this opposition (the "**Opposition**") in response to *Essar Projects Limited, Essar Projects USA, LLC and Essar Projects Middle East FZE's Motion to Compel Arbitration and for Related Relief* [Adv. D.I. 77] (the "**Motion to Compel**").  For the reasons set forth below, the Court should deny the relief requested in the Motion to Compel.

## PRELIMINARY STATEMENT

The Second Amended Complaint asserts 31 causes of action on account of Essar Global Fund Limited's ("**Essar Global**") and its affiliates' coordinated misconduct that doomed the Project and drove the Debtors into bankruptcy.  Movants concede that 28 of those causes of action cannot be arbitrated.  They also concede that the three claims against Essar Global for breach of the LSTK Contract cannot be arbitrated.  However, by the Motion to Compel, they request that the Court stay litigation with respect to all of those claims so that they may arbitrate the three claims against them in isolation from Defendant's other egregious and interrelated misdeeds and a fully developed factual record.  That request is unfounded and should be rejected.

Nearly two years ago, each Movant filed proofs of claim on account of the LSTK Contract and submitted to this Court's jurisdiction.  Shortly thereafter, the Debtors commenced this adversary proceeding seeking, among other things, hundreds of millions in damages on

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Second Amended Complaint.

account of the Movants' (and Essar Global's) breach of that agreement.  For two years, the Movants took no action to arbitrate that dispute.

Rather, Movants sat idly by while the Debtors diligently worked to reorganize.  The creation of a litigation trust to pursue the causes of action brought against the Movants and their affiliates was central to that reorganization.  The Debtors' Plan provided that this Court would be vested with exclusive jurisdiction to determine this adversary proceeding.  The Movants were provided with notice of the disclosure statement, Plan, deadline to object to the Plan, and confirmation hearing.  Despite that notice, they did not object to the Plan or make any other attempt to ensure their right to arbitrate was protected.

On June 13, 2017, the Court entered an order confirming the Plan and granting it exclusive jurisdiction to determine this adversary proceeding.  That order is *res judicata* and supersedes the arbitration provision in the LSTK Contract.   The Motion to Compel should be denied on that ground alone.

Additionally, the Movants have waived their right to arbitrate.  Law requires that a party to do all it could reasonably have been expected to make the earliest feasible determination to proceed by arbitration.  It is clear the Movants have not.  The Movants did not indicate their desire to arbitrate when they submitted proofs of claim to this Court.  They did not indicate their desire to arbitrate when the Initial Complaint was filed.  They did not protect their right to arbitrate when the Plan vested this Court with exclusive jurisdiction to determine this adversary proceeding.  And, less than a month ago, in complete contradiction of their intention to segregate these proceedings, Movants argued that an order separating these proceedings would unnecessarily burden the parties and should be conditioned on consolidated pre-trial discovery.  As acknowledged by the Movants, Plaintiffs will be greatly prejudiced by the "burden of

duplicative discovery" and needless expense of estate resources funding a dual tracked litigation process.  The nearly two years of inaction coupled with that prejudice constitutes waiver of the Movant's right to arbitrate.

Finally, even if the counts for breach of the LSTK Contract as to the Movants were deemed arbitrable, Movants put the cart before the horse in asking the Court to stay the entire action while those claims are arbitrated.  Relative predominance of the arbitrable claims and overall judicial economy are critical concerns when deciding which action should proceed. Where non-arbitral claims predominate (as they do here), a stay is simply not appropriate.  This is particularly true where the overlapping factual issues demonstrate that adjudication of the claims against Movants will benefit from the development of a complete record through court-supervised discovery under the applicable federal rules.  To the extent the Court compels the parties to arbitration, it should follow the adjudication of the 31 non-arbitrable claims before this Court.

## **BACKGROUND**

### A.  **The Lump Sum Turn Key Agreement**

1.      On July 2, 2012, Essar Steel Minnesota LLC ("**ESML**") and Essar Projects Limited ("**Essar Projects**") entered into that certain Lump Sum Turn Key Contract ("**LSTK Contract**").[2]  The LSTK Contract is a turnkey construction contract requiring that ESML pay a sum-certain in return for Essar Projects constructing and delivering a fully functional iron ore pellet plant (the "**Plant**").

---

[2] The LSTK Contract is attached as Exhibit B to the *Opening Brief in Support of Essar Projects Limited, Essar Projects USA, LLC and Essar Projects Middle East FZE's Motion to Compel Arbitration and for Related Relief* [Adv. D.I. 78] ("**Movant's Brief**").

2.      Section 20.1 of the LSTK Contract provides a process that the Contractor – here the Movants (as such term is defined below) – "shall" follow when raising claims with ESML.  It states, in relevant part, that "[a]ll claims which the Contractor considers himself to be entitled of [sic] ***shall*** be submitted to the Company in the form of a formal submission stating all the related events and the issues involved, at a date ***not later than 28 days after the first occurrence of the event***.  Failure to do so i.e. within the time limit specified shall, however, not disqualify the Contractor from submission.  However, the Company shall not be bound to accept fully the contentions of the Contractor and an award made against such claim may be discretionary and to the merit justified in the eyes of the Company."  LSTK Contract § 20.1 (emphasis added).  The LSTK Contract also provides an alternate dispute resolution process whereby the parties may refer a dispute to a dispute adjudication board ("**DAB**").  *Id.* at § 20.2.

3.      Section 20.3 of the LSTK Contract provides, in pertinent part, that, "[a]ny dispute arising out of or in relation to the Contract, which can not be settled amicably by the Parties or by DAB, shall be finally settled by arbitration in accordance with the provisions of UNCITRAL Arbitration Rules."  *Id.* at § 20.3.

4.      Contemporaneously with the execution of the LSTK Contract, pursuant to two separate partial assignment agreements, Essar Projects assigned a portion of its interest and obligations under the LSTK Contract to Essar Projects (USA), LLC ("**Essar Projects-US**") and Essar Projects Middle East FZE ("**Essar Projects-Middle East**" and together with Essar Projects and Essar Projects-US, the "**Movants**").  *See* LSTK Contract, Sch. 15 & Sch. 16.

5.      Despite ESML paying the Movants and their various affiliates over $1.1 billion – the entire amount it was obligated to pay under the LSTK Contract and other related contracts – in 2016, the Movants and other Defendants refused to continue work on the Project and left

ESML with a half-complete plant, over a billion dollars of secured debt, and hundreds of

millions of dollars of claims and associated liens from subcontractors and various other

claimants.  *See* SAC ¶ 2.[3]

### B.  The Movants' Participation in the Chapter 11 Cases

6.    On July 8, 2016 (the "**Petition Date**"), each of ESML and ESML Holdings Inc.

(together, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, thereby commencing the Chapter 11 Cases before this Court.

### (i)    The Movants File Proofs of Claim in the Chapter 11 Cases

7.    On August 9, 2016, the Bankruptcy Court entered an order establishing

September 30, 2016 (the "**General Bar Date**") as the final date and time for filing proofs of

claim, subject to certain exceptions, against the Debtors' estates on account of claims that

occurred prior to the Petition Date.  [Bankr. D.I. 202].

8.    On August 15, 2016, ESML filed schedules listing Essar Projects-US and Essar

Projects-Middle East as having contingent, unliquidated, and disputed claims in unknown

amounts on account of certain accounts payable.  [Bankr. D.I. 224 at 66].

9.    On September 20, 2016, Essar Global Fund Limited ("**Essar Global**")[4] filed, and

the Court approved, a stipulation between the Debtors and Essar Global extending the deadline

for Essar Global and certain of its affiliates, including the Movants, to file proofs of claim

against the Debtors to October 31, 2016.  [Bankr. D.I. 346; 349].

10.    On October 27, 2016, the Movants filed the following proofs of claim:

- Essar Projects-US filed Proof of Claim No. 180 ("**Claim No. 180**") in the total amount of

---

[3] The "Second Amended Complaint" or "SAC" is the *Second Amended Complaint and Substantive and Non-Substantive Objections to Claim Nos. 179-186* [Adv. D.I. 60].

[4] Essar Global is the ultimate corporate parent of both the Debtors and the Movants.

$423,126,817, of which $421,808,660 is asserted as a general unsecured claim and $1,318,157 is asserted as a priority claim against ESML.  The alleged basis of Claim No. 180 is "[c]onstruction services, [e]quipment & [m]aterials supplied, and PMC[5] services performed under a Contract between Debtor and Creditor."

- Essar Projects filed Proof of Claim No. 183 ("**Claim No. 183**") in the total amount of $670,798,196, of which $669,424,011 is asserted as a general unsecured claim and $1,374,185 is asserted as a priority claim against ESML.  The alleged basis of Claim No. 183 is "[c]onstruction & PMC service performed and [e]quipment and material supplied under a contract between Debtor and Creditor ("LSTK Contract"). . . ."  In Claim No. 183, Essar Projects explained that "[p]art of the LSTK Contract was assigned by [Essar Projects] to [Essar Projects-US and Essar Projects-Middle East].  In case the Debtor considers that the separate claims filed by ECL, EPMCL, [Essar Projects-US and Essar Projects-Middle East] are filed correctly then this claim filed by [Essar Projects] may be discarded."

- Essar Projects-Middle East filed Proof of Claim No. 185 ("**Claim No. 185**") in total amount of $78,346,381, of which $78,290,353 is asserted as a general unsecured claim and $56,028 is asserted as a priority claim against ESML.  The alleged basis of Claim No. 185 is "[e]quipment & [m]aterials supplied under a Contract between Debtor and Creditor."

*See* SAC ¶¶ 150, 153, 155.  Based on the explanation provided in Claim No. 183, Plaintiff understands that the "contract" referred to in each Proof of Claim is the LSTK Contract.

### (ii)    The Debtors Conduct an Independent Investigation into Potential Claims

11.    After the Petition Date, the Debtors' independent directors and David Pauker (the Debtors' court-appointed Chief Restructuring Officer) directed the Debtors' counsel to

---

[5] "PMC" is presumably an acronym for Project Management Consultant.

investigate potential claims and causes of action against the Debtors' affiliates in connection

with the stalled construction and development of the Debtors' partially completed iron ore pellet

production facility (the "**Project**").

12.     In August 2016, Essar Projects and Essar Global offered to cooperate in the

investigation and voluntarily provide financial and other relevant information to ESML relating

to Essar Global, Essar Projects and their subsidiaries' performance under the LSTK Contract and

associated contracts.  At Essar Projects' request, on September 15, 2016, the Debtors sent Essar

Projects a detailed request for information and documents.  On November 18, 2016, Essar

Projects provided a cursory response to certain of those requests that contained no material

financial information.  Thereafter, in a letter from Essar Projects to Mr. Pauker, dated November

28, 2016, Essar Projects stated that a "reputable audit firm" was reviewing Essar Projects'

expenditures under the LSTK Contract and that Essar Projects would share the audited details

and full supporting breakdown of expenses once that review was complete.  Despite repeated

requests, Essar Projects never followed through on that promise, never provided any financial

information to the Debtors, and never provided the promised audit report.

13.     Despite this lack of cooperation and access to information, the Debtors'

investigation uncovered a complicated and widespread misuse of funds raised for the Project by

Defendants.  On January 11, 2017, the Debtors commenced this adversary proceeding by filing

the *Complaint and Substantive and Non-Substantive Objections to Claim Nos. 179-186* [Adv.

D.I. 1; Bankr. D.I. 657] (the "**Initial Complaint**") against the Defendants,[6] alleging 32 claims

---

[6] The "**Defendants**" are Essar Global, Essar Projects, Essar Projects-US, Essar Projects (India) Limited; Essar Project Management Company Limited; Essar Constructions Limited; Essar Projects-Middle East; Essar Engineering Services Limited; Global Supplies FZE; Essar Logistics Limited; Madhu Vuppuluri; and Does 1-1000.

for relief based on the findings of the investigation.   Counsel for the Movants, Seitz, Van Ogtrop & Green, P.A., received a copy of the Initial Complaint that day via the Court's ECF system.

### (iii)    The Confirmation of the Plan and Creation of the Litigation Trusts

14.    On February 2, 2017, the Debtors filed the *Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* [Bankr. D.I. 690] (as subsequently amended and modified from time to time, the "**Plan**") and accompanying disclosure statement [Bankr. D.I. 691] (as subsequently amended and modified from time to time, the "**Disclosure Statement**").   Article XIII of the Plan, titled "Retention of Jurisdiction" provides that:

> Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or the Plan, or (c) that relates to the following:
>
> \*        \*        \*
>
> (ii) to determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtors, the Disbursing Agent, or the Litigation Trustees after the Effective Date;
>
> \*        \*        \*
>
> (iii) to hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation to hear and determine any objections to the classification of any Claim and to allow, disallow, or estimate any Contested Claim in whole or in part;
>
> \*        \*        \*
>
> (xiii) to hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with Causes of Action (including, but not limited to Avoidance Actions) commenced by the Debtors, the Disbursing Agent, the Litigation Trustees, or any third parties, as applicable, before or after the Effective Date, including entering orders pursuant to Bankruptcy Rule 2004 . . . .

Plan, Art XIII.

15.     By its own terms, the Plan is "binding upon the Debtors, all Holders of Claims against, and Equity Interests in the Debtors, and all other parties in interest and Persons and each of their respective successors and assigns."  Plan § 14.24.

16.     On February 2, 2017, the Movants were served with copies of the Court-approved notice of the hearing to consider approval of the Disclosure Statement (the "**Disclosure Statement Notice**").  [Bankr. D.I. 739, Ex. C at 9].  The Disclosure Statement Notice explicitly informed the Movants that the Debtors had filed the Plan and Disclosure Statement and that each document could be accessed on the website for the court-appointed claims and noticing agent free of charge.

17.     On March 20, 2017, the Movants were served with copies of the court-approved *Notice of (a) Solicitation of Votes to Accept or Reject the First Amended Chapter 11 Plan of Reorganization for Mesabi Metallics Company (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc., (b) Hearing to Consider Plan Confirmation, and (c) Deadline for Filing Objections to the Plan* (the "**Confirmation Hearing Notice**") [Bankr. D.I. 833 at 4; Ex. 28].[7] The Confirmation Hearing Notice provided where the Movants could access the Plan and Disclosure Statement free of charge and informed those entities (in bold and underlined type) that any objections to the confirmation of the Plan were required to be filed with the Court by April 17, 2017—more than two months after Movants were provided with notice of the Disclosure Statement and Plan.  *Id.* at Ex. 3.  That notice also explicitly provided in bold that "**the Plan contains injunctions which, with certain exceptions, permanently enjoin any holder of any Claim or Equity Interest from, among other things, taking any of the**

---

[7] Moreover, Movants' counsel, Seitz, Van Ogtrop & Green, P.A., received notice of all pleadings, including the Disclosure Statement, Plan, and Confirmation Hearing Notice, through the Court's ECF system.

**following actions . . . against or affecting the Debtors, the Estates, the Litigation Trustee, or**

**any of their successors and assigns, or their respective assets and property with respect to**

**such Claims or Equity Interests. . . commencing, conducting, or continuing in any manner,**

**directly or indirectly, any suit, action, or other proceeding of any kind**." *Id* (emphasis in

original).

18.     None of the Movants objected to confirmation of the Plan.  And, on June 13,

2017, after notice and a hearing, the Court entered an order confirming the Plan [Bankr. D.I.

1025] (the "**Confirmation Order**").  The Confirmation Order provides, *inter alia*, that

"[p]ursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code and the provisions of

this Confirmation Order, the Plan and all Plan-related documents (including, but not limited to,

the Plan Documents, as may be amended or modified) shall be, and hereby are, valid, binding

and enforceable notwithstanding any otherwise applicable nonbankruptcy law."  Confirmation

Order ¶ 10.[8]

19.     The Confirmation Order also provided that "[p]ursuant to sections 105(a) and

1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive

jurisdiction over any matter: (a) arising under the Bankruptcy Code; (b) arising in or related to

the Chapter 11 Cases or the Plan; or (c) that relates to any of the matters set forth in Article XIII

of the Plan." *Id.* at ¶ 51.

20.     The Effective Date of the Plan occurred on December 22, 2017. *See Notice of*

*(i) Entry of Order Confirming Third Amended Chapter 11 Plan of Reorganization for Mesabi*

*Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.;*

---

[8] The Confirmation Order also provides that "[t]he provisions of the Plan and Confirmation Order, including the findings of fact and conclusions of law set forth herein, are each nonseverable and mutually dependent." Confirmation Order ¶ 67.

*(ii) Occurrence of Effective Date; and (iii) Bar Date for Administrative Claims, Fee Claims, and*

*Rejection Damages Claims* [Bankr. D.I. 1398].  On the Effective Date, pursuant to Section 8.1 of

the Plan, two litigation trusts were formed: the SC Litigation Trust and the UC Litigation Trust.

21.      On the Effective Date, the SC Litigation Trust received the SC Claims, which

include those claims brought in the Second Amended Complaint.  The SC Litigation Trustee is

tasked with investigating, prosecuting, and selling the SC Claims based on the information

gathered and the subjects investigated in the independent investigation.  *See* Plan § 8.5(a).

## C. <u>Motion Practice in the Adversary Proceeding</u>

22.      The Initial Complaint was filed on January 11, 2017—four months before to the

objection deadline with respect to confirmation of the Plan.  It alleged 32 claims for relief

against: (1) Essar Global; (2) Essar Projects; (3) Essar Projects-US; (4) Essar Projects (India)

Limited; (5) Essar Projects Management Company Limited; (6) Essar Constructions Limited; (7)

Essar Projects-Middle East; (8) Essar Engineering Services Limited; (9) Global Supplies FZE;

(10) Essar Logistics Limited; (11) Madhu Vuppuluri and (12) Does 1-1000.[9]

23.      On April 7, 2017, a Summons and Notice of Pretrial Conference in an Adversary

Proceeding [Adv. D.I. 3] was issued.[10]  Plaintiff filed the issued summons with certificates of

service on April 10, 2017.  [Adv. D.I. 4; 9; 10].

24.      On June 12, 2017, the Parties agreed to extend the deadline for the Defendants to

respond to the Initial Complaint by 60 days after Plaintiff's counsel notified counsel for the

Defendants in writing that a response is required.  [Adv. D.I. 26].  On April 30, 2018, counsel for

---

[9] An additional defendant, Sanjay Bhartia, was added through an amendment to the Initial Complaint (the "**Amended Complaint**").  *See* [Adv. D.I. 32].  All of the claims for relief in the Initial Complaint remained in the Amended Complaint.

[10] That same day, Movants' counsel, Seitz, Van Ogtrop & Green, P.A., confirmed via email that it had accepted service of the Initial Complaint, an Arabic translation of the Initial Complaint, and related summons for and on behalf of the Movants.

the Litigation Trustees jointly provided written notice to counsel for the Defendants requiring

responses to the Amended Complaint by June 30, 2018.

25.     On June 27, 2018, Sanjay Bhartia filed a motion seeking a 60-day extension to

respond to the Amended Complaint.  [Adv. D.I. 43].  On June 29, Madhu Vuppuluri filed a

motion to dismiss the claim against him alleging that he breached his fiduciary duty to ESML.

[Adv. D.I. 45, 46].

26.     On July 16, 2018, the SC Litigation Trustee and the UC Litigation Trustee filed a

joint motion to split the causes of action brought by the Amended Complaint pursuant to the

Plan.  [Adv. D.I. 48] (the "**Motion to Segregate**").

27.     Noting the "substantial overlap" between the two complaints and that the two

actions "will involve significant discovery of the same documents and depositions of the same

witnesses," the Essar Affiliates,[11] including the Movants, insisted that the relief be conditioned

on the consolidation of pre-trial discovery.  [Adv. D.I. 55 at 1-2].  Specifically, the Essar

Affiliates requested that the Court direct that: (1) witnesses only be required to appear for a

single deposition, and (2) the Litigation Trustees be compelled to jointly propound discovery

requests, "so the Essar Affiliates (and the other defendants) are not required to respond to two

separate sets of requests."  *Id.* at 3.  Finally, the Essar Affiliates requested an additional 50-day

extension to respond to the Second Amended Complaint.  *Id.*  Mr. Vuppuluri similarly

recognized the potential for unnecessary duplication and objected to the Motion to Segregate on

nearly identical grounds.  [Adv. D.I. 56].  The parties subsequently agreed to consolidate the two

actions for the purposes of pretrial discovery and to respond to the Second Amended Complaint

---

[11] The "**Essar Affiliates**" are (1) Essar Global; (2) Essar Projects; (3) Essar Projects-US; (4) Essar Projects (India) Limited; (5) Essar Projects Management Company Limited; (6) Essar Constructions Limited; (7) Essar Projects-Middle East; (8) Essar Engineering Services Limited; (9) Global Supplies FZE; and (10) Essar Logistics Limited.

30 days after it was served. [Adv. D.I. 58]. On August 10, 2018, the Court entered the order approving the parties' agreement [Adv. D.I. 59].

28.     On August 13, 2018, Plaintiff filed the "Second Amended Complaint," which alleges 31 claims for relief [Adv. D.I. 60].[12]

29.     Then, a little over a month after the parties reached agreement to avoid the duplication of resources, the Movants filed the Motion to Compel seeking to sever 3 claims for breach of the LSTK Contract as to the Movants from the 31 other counts in the Second Amended Complaint. Importantly, the Movants do not seek to arbitrate the claims brought against Essar Global for breach of the LSTK Contract. For the reasons set forth below, the Court should deny the Motion to Compel.

## ARGUMENT

30.     Although there is a liberal federal policy favoring arbitration,[13] that policy does not automatically lead to the submission of a dispute to arbitration upon the demand of a party to the dispute. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009).

31.     Here, the binding jurisdictional provisions on the Plan and Confirmation Order supersede ESML's prepetition contractual agreement to arbitrate. Additionally, by sitting on their hands and submitting proofs of claim (which is akin to commencing litigation) in this Court, the Movants have waived their right to arbitrate. The *res judicata* effect of the Plan and Confirmation Order and waiver of the right to arbitrate are gating issues with respect to the Movants' right to compel arbitration and are properly determined by this Court. *See In re*

---

[12] The Twentieth Claim for Relief in the Amended Complaint was removed and transferred to the UC Litigation Trust for prosecution through its own complaint [Adv. D.I. 61].
[13] *See e.g, Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018)

*Shenango Grp., Inc.*, 501 F.3d 338, 343 (3d Cir. 2007) (holding that a bankruptcy court has post-confirmation jurisdiction over "[m]atters that affect the interpretation, implementation, consummation, execution or administration of the confirmed plan") (internal quotations and citations omitted); *see also Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 221 (3d Cir. 2007) ("waiver of the right to arbitrate based on litigation conduct remains presumptively an issue for the court to decide.").

**I.    The Plan Vests the Court with "Exclusive Jurisdiction" to Hear "Any and All Adversary Proceedings" Brought By the Litigation Trustees and Is *Res Judicata***

32.    The Plan and Confirmation Order vest this Court with exclusive jurisdiction to adjudicate this adversary proceeding.  Specifically, Article 13 of the Plan provides that the Court "shall retain and shall have exclusive jurisdiction" to "determine any and all adversary proceedings . . . that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the . . . Litigation Trustees after the Effective Date."  Plan § 13(ii).  Upon entry of the Confirmation Order and the occurrence of the Effective Date, that grant of exclusive jurisdiction became *res judicata* and binding on the Movants.  *See* Confirmation Order ¶¶ 10; 51.

33.    The Court's retention of exclusive jurisdiction to determine this adversary proceeding was not an accident.  The creation and funding of the Litigation Trusts, and vesting of the SC Claims with the SC Litigation Trust, were fundamental components of the Plan. Disclosure Statement § 5(A) (including a description of the Litigation Trust in the "Summary of the Key Plan Terms"); Disclosure Statement § 8(A) (describing in detail the Debtors' investigation into their affiliates prepetition conduct and the Initial Complaint); Disclosure Statement § 9(D) (describing the Litigation Trusts in detail); Plan § 8 (providing for the creation, assets, purpose, and powers of the Litigation Trusts); Confirmation Order ¶¶ 18; 30-34.

34.     The Movants were provided with actual notice of the Disclosure Statement, Plan, objection deadline with respect to the Plan, and hearing with respect to confirmation of the Plan. [Bankr. D.I. 739, Ex. C at 9; Bankr. D.I. 833, Ex. 28.].  Despite ample opportunity to object to the Plan, including the retention of jurisdiction by the Bankruptcy Court, the Movants made the strategic decision to sit on their hands and did not file an objection to confirmation of the Plan.

35.     Movants are now bound by the Plan and Confirmation Order, which is "res judicata as to all issues decided or which could have been decided at the hearing on confirmation." *Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997); *see also In re Szostek*, 886 F.2d 1405, 1409 (3d Cir. 1989) (citing *Stoll v. Gottlieb*, 305 U.S. 165 (1938)); *In re Planet Hollywood Int'l*, 274 B.R. 391, 399 (Bankr. D. Del. 2001) ("[t]he Plan binds all creditors and other parties in interest").  Indeed, Movants would be bound by the jurisdictional provision even if it was entered in legal error—it was not.  *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010) (finding a provision of a plan entered in legal error was binding on a creditor where the creditor had filed a proof of claim, had notice of the plan, and had failed to object to the plan or timely appeal the confirmation order).

36.     The Court should enforce the Plan and Confirmation Order and exercise its "exclusive jurisdiction" to determine the claims set forth in this adversary proceeding.  Indeed, other courts have found that similar jurisdictional provisions in confirmed chapter 11 plans supersede prepetition agreements to arbitrate.  Similar to the situation at issue here, in *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, plaintiffs filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code and then initiated an adversary proceeding against defendant Ernst & Young ("**E&Y**") seeking to avoid and recover fraudulent transfers of property and damages.  304 F.3d 753, 754-55 (7th Cir. 2002).  Plaintiffs then filed a proposed plan of

reorganization that provided that the bankruptcy court retained jurisdiction to "adjudicat[e] any pending adversary proceeding, or other controversy or dispute." *Id.* at 755.  E&Y objected to the plan; however, it did not contest the jurisdiction provision. *Id.*  After the plan was confirmed, E&Y filed a motion to compel arbitration with respect to certain breach of contract claims brought in the adversary proceeding. *Id.*  The bankruptcy court denied E&Y's motion, and the district court affirmed, finding that arbitration was precluded by the terms of the confirmed plan and that E&Y had waived its right to arbitrate. *Id.*

37.     On appeal, the Seventh Circuit affirmed the bankruptcy court's holding that arbitration was "superseded by the terms of the confirmed plan." *Id.* at 756.  The Seventh Circuit explicitly rejected defendant's argument that the bankruptcy court could satisfy its obligation to retain jurisdiction over the pending adversary proceeding by simply hearing arguments on the motion to compel arbitration and stated that had the defendant wished to retain the right to arbitrate it could have expressly negotiated that right as part of the plan. *Id.*

38.     Similarly, in *Sirius Computer Solutions, Inc. v. AASI Creditor Liquidating Trust*, the plan at issue provided the bankruptcy court with exclusive jurisdiction to determine "all Litigation Claims brought by the Liquidating Trustee."  2011 U.S. Dist. LEXIS 96460, at *3 (S.D. Fla. Aug. 29, 2011).   Although litigation was not commenced prior to the confirmation hearing, a schedule was filed with the disclosure statement that specifically named the party seeking to compel arbitration ("**Sirius**") as a potential defendant. *Id.* at *4-5.  Sirius did not object to the plan and it was subsequently confirmed by the bankruptcy court. *Id.*  After confirmation, the liquidating trust filed an adversary complaint against Sirius, who then moved to dismiss the complaint in favor of arbitration. *Id.*

39.     Noting that the chapter 11 plan was a contract that binds both the debtor and creditor and thereby supersedes the terms of any prior contract between them, and that "the federal policy embodied in the Arbitration Act is a policy favoring enforcement of contracts, not a preference for arbitration over litigation," the court found that the parties pre-confirmation contractual rights were superseded be the confirmed plan.  *Id.* at *12 (quoting *St. Mary's Med. Ctr. Of Evansville, Inc. v. Disco Aluminum Prod. Co.*, 969 F.2d 585, 590 (7th Cir. 1992).  The application of New York contract law, which, pursuant to section 14.11 of the Plan, expressly governs disputes concerning the construction of the Plan, requires a similar result.  *See Indep. Energy Corp. v. Trigen Energy Corp.,* 944 F. Supp. 1184, 1195-96 (S.D.N.Y. 1996) ("under New York law, a subsequent contract regarding the same subject matter supersedes the prior contract.").

40.     Here, the facts compel a similar conclusion.  The Initial Complaint was filed well before the Plan and the Movants were served with the Disclosure Statement Notice, the deadline to object to confirmation, and the Confirmation Hearing Notice.  The Disclosure Statement and Plan fully disclosed that the claims brought in the Initial Complaint would be transferred to the Litigation Trusts for the benefit of creditors.  And, the Plan specifically provides that this Court will retain "exclusive jurisdiction" to determine those claims.  Plan § 13(c)(ii).  The Movants had submitted to the Court's jurisdiction, filed proofs of claim on account of the LSTK Contract, were fully aware of the claims asserted in the Initial Complaint, and received actual notice of the Plan and relevant objection deadline.  Despite that notice and knowledge, the Movants chose not to object to the Plan.  As a result, they are bound by its jurisdictional provision that provides the Court is the exclusive forum to resolve all claims brought in this adversary proceeding.  *See Espinosa*, 559 U.S. at 275.

41.     Tellingly, the Movants ignore the binding provisions of the Plan and Confirmation Order and do not address this issue at all in the Motion to Compel.  The few precedents they may belatedly cite in response are easily distinguishable.

42.     Recently, in *Paragon Litigation Trust v. Noble Corp. PLC,* Judge Sontchi found that a jurisdictional provision in a confirmed plan did not supersede a defendant's right to compel arbitration where the defendant had explicitly reserved "any and all rights and defenses with respect to the Litigation Trust with respect to the [specific claims]" in four separate places in the Plan and Confirmation Order.  *In re Paragon Offshore PLC*, No. 17-51882, 2018 Bankr. LEXIS 2322, at *19 (Bankr. D. Del. Aug. 6, 2018), *appeal docketed*, No. 18-1345 (D. Del. Sept. 7, 2018).  Judge Sontchi found that the general exclusive jurisdiction provision must be read narrowly so as not to conflict with the explicit reservation, which he interpreted to include the defendant's right to arbitrate.  *Id.*   Here, there is no similar reservation.

43.     Similarly, in *SFC Holdings, Inc. v. Earthgrains Co.*, the court stayed a post-confirmation adversary proceeding in favor of arbitration even though the debtor's plan conferred jurisdiction over "to determine any and all adversary proceedings, motions, applications, and contested or litigated matters."  *In re GWI*, 269 B.R. 114, 118 (Bankr. D. Del. 2001) (Walrath, J.).  Importantly, there, the plan included a provision that "specifically adopt[ed] all of the terms of the Purchase and Escrow Agreements" containing the relevant arbitration clauses.  *Id.*   Like in *Paragon*, the court held that this "more specific" provision "controls" over the jurisdictional provision.  *Id.*   ("By adopting the provisions of the Purchase Agreement in the Plan, [the debtor] specifically agreed to the arbitration provision.  It is bound by that choice.").

44.     Here, the Plan and Confirmation Order contain no similar reservation of rights with respect to this litigation or adoption of the LSTK Contract that limits the exclusive

jurisdiction granted to the Court with respect to this adversary proceeding.[14]  As such, the plan and its specific provisions vesting this Court with exclusive jurisdiction must supersede any prior agreement to arbitrate.  *See Ernst & Young*, 304 F.3d at 754-55; *Sirius*, 2011 U.S. Dist. LEXIS 96460 at \*3.  If the Movants disagreed, they could have objected to the Plan.  They did not and are bound by that decision and the final and binding terms of the confirmed Plan.

## II.     The Movants Have Waived Their Right to Arbitrate

45.     A contractual right to arbitrate may be waived expressly or implicitly, and a party that choses a judicial forum for the resolution of a dispute is presumed to have waived its right to arbitrate.  *Ernst & Young LLP*, 304 F.3d at 756 (citing *Cabintree of Wisc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995)).

46.     Typically a party will be found to have waived the right to arbitrate a dispute "if the party '[s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right.'. . . A party substantially invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, *or* fails to move to compel arbitration and stay litigation in a timely manner."  *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007) (citation and quotation omitted) (emphasis added); *see also Painewebber Inc. v. Faragalli*, 61 F.3d 1063, 1068-69 (3d Cir. 1995).   In other words, to safeguard its right to arbitration, a party must "do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Cabintree of Wisc.*, 50 F.3d at 391; *see also Chassen v. Fid Nat'l Fin. Inc.*, 836 F.3d 291, 296

---

[14] In *Ernst & Young*, the Seventh Circuit explicitly distinguished *In re GWI* on these grounds noting that had the defendant wished to protect its right to arbitrate, it certainly could have done so by objecting to the plan and requesting that it expressly adopt the relevant arbitration provisions.  304 F.3d at 756.

(3d Cir. 2016) ("[O]ne of the primary justifications for waiver is that the party attempting to raise it as a belated defense acted inconsistently with his earlier known right to do so.").

### A. The Movants Submitted to the Jurisdiction of the Bankruptcy Court and Failed to Raise Their Intent to Arbitrate for Nearly Two Years

47.     Here, there is no doubt that the Movants invoked the litigation machinery, acted inconsistently with their right to arbitrate, and failed to move to compel arbitration in a timely manner.  Nearly two years ago, each of the Movants filed a proof of claim on account of damages allegedly owed to them under the LSTK Contract.  *See* Claim No. 180 (Essar Projects-US); Claim No. 183 (Essar Projects); Claim No. 185 (Essar Projects-Middle East).  When a creditor files a proof of claim in a bankruptcy case it amounts to a civil action to collect debt and is treated similar to filing a complaint against the debtors.  *See Samson Res. Co. v. J. Aron & Co.* (*In re Semcrude. L.P.*), 2010 Bankr. LEXIS 4567, at * 39 (Bankr. D. Del. Dec. 13. 2010); *see also Commonwealth Mortg. Co. of Am. L.P.* (*In re Coxson*), 43 F.3d 189, 193-94 (5th Cir. 1995).  Although the act of filing a proof of claim alone does not constitute waiver of an otherwise valid arbitration clause,[15] it demonstrates a clear choice by the Movants to submit themselves to the Bankruptcy Court's jurisdiction,[16] invoke the litigation machinery, and clearly demonstrates that they did not do all they could have to make the "earliest possible determination" to proceed by arbitration.  Importantly, at no point during the two years between when the Movants submitted to this Court's jurisdiction and the day before they filed the Motion to Compel, did they make any indication that they intended to arbitrate their claims with respect to the LSTK Contract.

48.     Moreover, the Movants subsequent conduct before this Court reinforces their commitment to proceed through the judicial process.  The Initial Complaint was filed on January

---

[15] *See In re Statewide Realty Co.*, 159 B.R. 719, 724 (Bankr. D.N.J. 1993).

[16] *See Langenkamp v. Culp*, 498 U.S. 42, 44 (1990).

AMERICAS 95572292 v7

11, 2017 and served on April 7, 2017.  [Adv. D.I. 1; 4; 9; 10].  The parties stipulated to extend

the deadline for the Defendants to file a responsive pleading with respect to the Initial Complaint

on multiple occasions to accommodate the Defendants.  During that time, the Movants never

indicated that they intended to arbitrate the dispute.  Quite the opposite, the Movants sat on their

hands as the Court was vested with exclusive jurisdiction to adjudicate this adversary

proceeding.  *See* Plan § 13(c)(iii); Confirmation Order ¶ 51.  Additionally, less than two months

ago, the Movants argued against splitting up these proceedings on the grounds that such a split

would create unnecessary duplication of discovery and burden the Essar Affiliates.  [Adv. D.I. 55

at 1-2]  Courts have found that similar conduct constitutes a waiver of the right to compel

arbitration.  *See, e.g., Ernst & Young*, 304 F.3d at 757-58.

**B.  <u>Plaintiff Will Be Prejudiced If Compelled to Arbitrate</u>**

49.    The Third Circuit has stated that "[p]rejudice is the touchstone for determining

whether the right to arbitrate has been waived."  *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d

912, 925 (3d Cir. 1992).  Although waiver is not to be lightly inferred, court will "not hesitate[]

to hold that the right to arbitrate has been waived" where a sufficient showing of prejudice has

been made by the party seeking to avoid arbitration.  *Id.* at 926.

50.    Courts in the Third Circuit have considered the following non-exclusive list of

factors when determining whether prejudice exists to support a finding of waiver: (1) the

timeliness of the motion to arbitrate; (2) the degree to which the moving party has contested the

merits of its opponents claims; (3) whether the moving party have informed its adversary of the

intention to seek arbitration; (4) the extent of the moving party's prior non-merits motion

practice; (5) the moving party's assent to pretrial orders; and (6) the extent to which both parties

have engaged in pre-trial discovery.  *In re Charter Behavioral Health Sys.*, 277 B.R. 54, 58

(Bankr. D. Del. 2002) (Walrath, J.) (citing *Howarth*, 980 F.2d at 926-27). However, "[p]rejudice is not presumed based on the time of [the Defendants] arbitration demand and [their] participation in litigation . . . standing alone." *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp.*, 376 Fed. App'x 70, 72 (2d Cir. 2010). Rather, there are two types of prejudice: substantive prejudice and prejudice due to excessive cost and delay. *Id.*

51.    Here, though the Movants have not formally contested the merits of Plaintiff's claims, Plaintiff will be prejudiced if the Court grants the Movants' request to compel arbitration and stays this matter, for the following reasons:

52.    <u>First</u>, as described in detail above, there is no doubt that Movants delayed seeking to arbitrate the dispute—waiting nearly two years after filing proofs of claim with this Court to express any indication of an intent to arbitrate.

53.    <u>Second</u>, although the LSTK Contract contains three-step alternative dispute resolution process, whereby the Movants were supposed to raise a claim within 28 days of when they considered themselves to be entitled to a claim (*See* LSTK Contract § 20.1), Movants did not inform Plaintiff of their intent to refer the dispute to arbitration until ***the day before*** moving to compel arbitration. *See* Movants' Br. at 6.

54.    <u>Third</u>, although a lack of formal discovery normally indicates a plaintiff will not suffer prejudice, here the opposite is true. Indeed, Movants have admitted as much by arguing that the "burden of duplicative discovery" due to the substantial factual overlap between the claims brought by the two Litigation Trusts demanded that the relief requested in the Motion to Segregate be conditioned on consolidated pretrial discovery. *See* [Adv. D.I. 55 at 1-2].

55.    Like the two complaints, there is significant factual overlap between the breach of contract claims and the 31 other causes of action brought by the Plaintiff. Indeed, if the Motion

to Compel is granted, the three claims from breach of the LSTK Agreement will still have to be prosecuted in the Bankruptcy Court with respect to Essar Global, who Plaintiff asserts is liable as the Movants' alter ego.  *See McCarthy v. Azure*, 22 F.3d 351, 363 (1st Cir. 1994) (holding that an alter ego cannot be permitted "to invoke the alter ego doctrine in order to . . . avail himself of the corporation's right to repair to an arbitral forum and thereby avoid a jury trial.").  Additionally, Defendants have indicated that they intend to argue that it was impossible for them to complete the Project for the lump sum agreed to in the LSTK Contract.  Testing that claim will inevitably require any fact finder to determine whether Defendants imposed charges on ESML for which ESML was not responsible, charged ESML prices in excess of the actual value of the goods and services received, and misappropriated hundreds of millions of dollars paid under the LSTK Contract for the benefit of the Essar Affiliates.  The facts necessary to adjudicate those defenses are almost entirely duplicative of the breach of fiduciary duty and other equitable claims that will be tried in this Court.

56.    As acknowledged by the Movants, the burden imposed by the duplicative discovery and depositions necessary to prosecute these common factual questions in two separate forums will be massive.  The Litigation Trustees acknowledged that position and agreed to submit a single discovery plan, coordinate deadlines for initial disclosures and discovery, and coordinate depositions such that witnesses only be required to appear for a single deposition. [Adv. D.I. 59].  The Court should not allow the Movants to impose the prejudice they sought to avoid less than two months ago.  *See La. Stadium & Exposition Dist. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F 3d. 156, 160 (2d Cir. 2010) (finding prejudice where, *inter alia*, the arbitration of a dispute would disrupt a prior decision to centralize the action to eliminate

duplicative discovery, prevent inconsistent pretrial ruling, and conserve the resources of the parties, their counsel, and the judiciary).

57.     <u>Fourth</u>, the arbitration of the breach of contract claims will prejudice Plaintiff by unnecessarily delaying the adjudication of these actions and, correspondingly, delaying distributions to creditors.  The litigation trusts and the pursuit of this action are a fundamental part of the Plan and the recoveries it provides to creditors.  Creditors are entitled to rely on the enforcement of the Plan, including its jurisdictional provision that provides for an efficient centralized resolution of these disputes.  Indeed, the inevitable duplication of discovery in multiple forums and other attendant costs of the arbitration may affect the SC Litigation Trust's financial ability to prosecute its claims for the benefit of creditors.  In sum, arbitration will deny the parties the benefits the Movants allegedly seek through the Motion to Compel: efficient and low-cost resolution of their disputes.

58.     In opposing the Motion to Segregate, the Movants admitted the prejudice imposed by splitting up these proceedings.  That prejudice combined with their decision to file claims in this Court, failure to object to the jurisdictional provisions of the Plan, and only seek to arbitrate at the last possible moment amounts to a waiver of their right to arbitrate.

## III.     Even if the Breach of Contract Claims Are Deemed Arbitrable, the Court Should Not Stay the Remaining Thirty-One Claims

59.     If, notwithstanding the foregoing, the Court concludes that Plaintiff's claims for breach of the LSTK Contract are subject to arbitration, it should not stay this litigation.  Rather, any arbitration of the breach of contract claims should be stayed pending adjudication of the 31 claims before this Court.

60.     When a claim is referred to arbitration, a court has complete discretion to stay arbitration and allow litigation to proceed in the adversary proceeding.  *See Klay v. Pacific*

*Health Sys., Inc.*, 389 F.3d 1191, 1204 (11th Cir. 2004) ("It is well established that a district court may order arbitration and refuse to stay nonarbitrable proceedings."); *In re Residential Capital LLC*, 563 B.R. 756, 774 (Bankr. S.D.N.Y. 2016) ("[T]he Court has authority to stay arbitration where appropriate.").[17]  Here, the Court should exercize that discretion to encourage a fair resolution of the dispute, judicial economy, and the efficient use of the parties' resources and stay the arbitration.

### A. The Applicable Factors Strongly Favor a Stay of Arbitration

61.     In considering a request for a stay of an action with arbitrable and non-arbitrable claims, courts assess a number of factors, including "the predominance of the arbitrable claims, the merit of the non-arbitrable claims, the court's concern with controlling its own docket, and overall judicial economy."  *F.D. Imp. & Exp. Corp. v. M/V Reefer Sun*, 248 F. Supp. 2d 240, 251 (S.D.N.Y. 2002) (citation omitted).  Courts will stay any arbitration that might undermine their docket or "severely threaten [or delay] any judgment" on non-arbitrable claims.  *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 220 (E.D.N.Y. 2013).  Where non-arbitrable issues "permeate the entire case," it is appropriate to stay arbitration so that the "district court can preserve its full authority to decide the non-arbitrable federal issues."  *Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638, 644 (7th Cir. 1981); *see In re S.W. Bach & Co.*, 425 B.R. 78, 99 (Bankr. S.D.N.Y. 2010) (staying arbitration pending adjudication by bankruptcy court of non-arbitrable fraudulent transfer claims because, absent a stay, the debtor would be exposed "to risks of collateral estoppel or res judicata" and the "Court's exclusive jurisdiction with respect to the Debtor's

---

[17] Additionally, under section 105 of the Bankruptcy Code, the Court has authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Such powers extend to enjoining proceedings in other fora against non-debtors, at least as it is "necessary to carry out the provisions of the Bankruptcy Code."  *In re Catholic Diocese of Wilmington, Inc.*, 484 B.R. 629, 638 (D. Del. 2012) (internal citations and quotations omitted).

bankruptcy" might be impaired); *Residential Capital*, 563 B.R. at 774 ("[T]he most relevant factors to consider here are the possibility of inconsistent judgments and the risk of collateral estoppel and *res judicata*").

62.     Here, it is clear that non-arbitrable issues permeate the entire case.  The Second Amended Complaint alleges 31 causes of action against Essar Global and its affiliates who, through ignoring corporate formalities and often acting in concert, breached multiple interrelated agreements, including the LSTK Contract and related Equity Contribution Agreement, siphoned hundreds of millions of dollars from the Debtors, and inappropriately used those funds for their own benefit.  Additionally, the Second Amended Complaint alleges that those breaches also give rise to actions to avoid certain fraudulent transfers and constituted breaches of certain entity's and individual's fiduciary duties to the company and its creditors.

63.     The Movants admit that 28 of those 31 claims are completely non-arbitrable and only seek to sever the three claims for breach of the LSTK Contract as to the Movants (***and not*** those same causes of action that are brought against Essar Global, as the Movants' alter ego). The transparent goal of Movants' request is to gain a strategic advantage by isolating those causes of action from the rest of the Defendants' inextricably intertwined conduct and the development of a complete factual record.

64.     Moreover, Defendants have already demonstrated that they do not intend to honor any commitment to provide Plaintiff with access to information necessary to fully and fairly adjudicate the claims.  For instance, Defendants claims to possess an audit report which they claim justifies their failure to perform under the LSTK Contract.  However, despite multiple promises to cooperate and repeated requests for the report, they have failed to produce it. Additionally, because Plaintiff does not control the majority of witnesses and evidence in the

case which are primarily located oversees—it would be disproportionately disadvantaged by a lack of cooperation.  In sum, Plaintiff submits that the adjudication of the three claims for breach of the LSTK Contract will require, and benefit greatly, from the development of a complete record through court-supervised discovery under the applicable federal rules.

65.     Plaintiff is mindful that the Supreme Court has held that "a stay of [arbitration] proceedings . . . is [not] necessary to protect the federal interest in the federal-court proceeding" because "it is far from certain that arbitration proceedings will have any preclusive effect on the litigation of nonarbitrable federal claims."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 222 (1985).  However, as one court has stated, "it makes no sense to stay proceedings pending the end of arbitration when any outcome of the arbitration with which the [parties] disagree will have to be relitigated in the federal courts anyway."  *Am. Shipping Line v. Massan Shipping Indus.*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995).

### B.  The Movants Have Not Even Attempted to Satisfy Their Burden of Demonstrating the Need for a Stay

66.     "The party seeking a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."  *E.W. Bank v. Bingham*, 992 F. Supp. 2d 1130, 1136 (W.D. Wash. 2014) (internal quotation and citation omitted).  The Movants have not even attempted to demonstrate they can carry that burden.  Indeed, they cannot.  Additional delay of months, if not years, for an arbitration to conclude can only jeopardize Plaintiff's potential recoveries and risk evidence spoliation, especially given that many key witnesses live outside of the United States and may not voluntarily appear at the arbitration.  Movants' request for a stay should be denied.

## **CONCLUSION**

67.    The Motion to Compel is a transparent attempt by the Movants to put the cart before the horse so that they may gain a strategic advantage.  For the forgoing reasons, the Court should deny the Motion to Compel.  Alternatively, if the Court concludes that the claims for breach of the LSTK Contract are arbitrable, it should stay arbitration pending adjudication of the 31 non-arbitrable claims that predominate this action.

Dated: October 12, 2018          **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (No. 2436)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail: ljones@pszjlaw.com

-and-

**WHITE & CASE LLP**
Thomas E Lauria (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131-2352
Telephone: (305) 371-2700
Facsimile: (305) 385-5744
Email: tlauria@whitecase.com

Glenn M. Kurtz (admitted *pro hac vice*)
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: gkurtz@whitecase.com

Craig H. Averch (admitted *pro hac vice*)
Ronald K. Gorsich (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071-2433
Telephone: (213) 620-7700
Facsimile:     (213) 452-2329
Email: caverch@whitecase.com
Email: rgorsich@whitecase.com

*Counsel to Bradley E. Scher, SC Mesabi Litigation Trustee*