## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,[1] | Case No. 16-11626 (BLS) |
| Debtors. | (Jointly Administered) |
| KEVIN NYSTROM, solely in his capacity as Litigation Trustee for the UC LITIGATION TRUST, | |
| Plaintiff, | |
| v. | |
| MADHU VUPPULURI; SANJAY BHARTIA; PRASHANT RUIA; ANSHUMAN RUIA; and DOES 1-500 | Adv. Proc. No. 17-50001 (BLS) |
| Defendants. | |

## PLAINTIFF'S OMNIBUS BRIEF IN OPPOSITION TO VUPPULURI'S AND BHARTIA'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

---

[1]      Essar Steel Minnesota LLC ("ESML") is doing business as Mesabi Metallics Company LLC.  The last four digits of its federal taxpayer identification number are 8770.  The last four digits of ESML Holdings Inc.'s federal taxpayer identification number are 8071.

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS .................................................................................................. 2

    A.    Background ........................................................................................................ 2

    B.    The Defendants' Relationships With Essar Global and ESML ........................... 3

    C.    The Fiduciary Defendants Transferred Funds To Essar Affiliates In Exchange For No Benefit To ESML .................................................................... 4

    D.    The Fiduciary Defendants Facilitated Improper Transfers To Essar Affiliates ........................................................................................................... 5

ARGUMENT ....................................................................................................................... 6

I.       STANDARD OF REVIEW ..................................................................................... 6

II.     PLAINTIFF'S DUTY OF LOYALTY CLAIM SHOULD NOT BE DISMISSED ........ 7

    A.    The Fiduciary Defendants Were Interested In The Disputed Transfers ............... 7

III.    PLAINTIFF STATES A CLAIM FOR BREACH OF THE DUTY OF CARE ............. 13

    A.    Plaintiff Adequately Pleaded a Breach of the Duty of Care ............................... 13

    B.    The Exculpatory Clause Does Not Shield the Fiduciary Defendants .................. 15

IV.    PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO OVERCOME THE BUSINESS JUDGMENT RULE .............................................................................. 17

V.     PLAINTIFF ALLEGED SUFFICIENT FACTS TO ESTABLISH CLAIMS FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY .................................. 20

    A.    Essar Global Owed Fiduciary Duties to ESML .................................................. 20

    B.    Plaintiff Properly Alleges that the Fiduciary Defendants Knowingly and Substantially Assisted in Essar Global's Breach ............................................... 22

VI.    PLAINTIFF'S FIDUCIARY DUTY CLAIMS ARE NOT TIME-BARRED ............... 23

    A.    The Minnesota Statute of Limitations Applies ................................................... 23

    B.    Delaware's Doctrine of Equitable Tolling Further Precludes the Fiduciary Defendants' Claim that the Fiduciary Duty Claims are Time-Barred ................. 25

VII.   PLAINTIFF ADEQUATELY PLEADED AIDING AND ABETTING FRAUDULENT CONVEYANCE ..................................................................... 27

VIII.  PLAINTIFF'S CLAIMS FOR DISALLOWANCE MUST STAND .............................. 28

CONCLUSION .................................................................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*DQ Wind-up, Inc. Tr. ex rel. ACI Telecentrics, Inc. v. Kohler*,
No. A11-1933, 2012 WL 1658929 (Minn. Ct. App. May 14, 2012) ...................................... 14

*Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford*,
554 F. Supp. 2d 538 (D. Del. 2008) ................................................................. 15, 17

*Advanced Comm'n Design, Inc. v. Follett*,
615 N.W.2d 285 (Minn. 2000) ......................................................................... 20

*In re Am. Bus. Fin. Servs., Inc.*,
362 B.R. 135 (Bankr. D. Del. 2007) ................................................................. 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................... 6

*Bartholomew v. Avalon Capital Grp., Inc.*,
828 F. Supp. 2d 1019 (D. Minn. 2009) ........................................................ *passim*

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................... 6

*Blum v. Thompson*,
901 N.W.2d 203 (Minn. Ct. App. 2017) ............................................................ 20

*In re BWT-NEW Acquisitions, LLC*,
582 B.R. 846 (Bankr. D. Del. 2018) ................................................................. 21

*C.J. Duffey Paper Co. v. Reger*,
588 N.W.2d 519 (Minn. Ct. App. 1999) .............................................................. 7

*Dalton v. Meister*,
239 N.W.2d 9 (1976) ................................................................................... 27

*Diedrick v. Helm*,
14 N.W.2d 913 (Minn. 1944) ............................................................................ 7

*In re Direct Response Media, Inc.*,
466 B.R. 626 (Bankr. D. Del. 2012) ................................................................. 16

*In re DSI Renal Holdings, LLC*,
574 B.R. 446 (Bankr. D. Del. 2017) ........................................................... *passim*

ii

*Dulhanty v. Conner*,
No. 27-CV-15-14487, 2016 WL 8578265
(Minn. Dist. Ct. 2016) ...........................................................................13, 18, 19

*Dunning v. Bush*,
536 F.3d 879 (8th Cir. 2008) .................................................................................7

*EBS Litig. LLC v. Barclays Glob. Invs., N.A.*,
304 F.3d 302 (3d Cir. 2002).................................................................................26

*F.D.I.C. v. Milbauer*,
119 F. Supp. 3d 939 (D. Minn. 2015)......................................................10, 17, 29

*In re Fedders N. Am. Inc.*,
405 B.R. 527 (Bankr. D. Del. 2009) ................................................................16, 27

*In re Fruehauf Trailer Corp.*,
250 B.R. 168 (D. Del. 2000) ...........................................................................24, 25

*Furnari v. Wallpang, Inc.*,
No. 13C-04-287, 2014 WL 1678419 (Del. Super. Ct. Apr. 16, 2014) ...................24

*Harju v. Olson*,
709 F. Supp. 2d. 699 (D. Minn. 2010) ..................................................................22

*Harris v. Carter*,
582 A.2d 222 (Del. Ch. 1990)...............................................................................20

*In re IT Grp. Inc.*,
No. 02-10118, 2005 WL 3050611 (D. Del. Nov. 15, 2005)............................16, 26

*Janssen v. Best & Flanagan*,
662 N.W.2d 876 (Minn. 2003)........................................................................13, 18

*Juran v. Bron*,
No. CIV. A. 16464, 2000 WL 1521478 (Del. Ch. Oct. 6, 2000)...........................24

*Lind v. O.N. Johnson Co.*,
282 N.W. 661 (1938) ............................................................................................28

*Lusk v. Akradi*,
No. CV 15-1911, 2017 WL 3382301 (D. Minn. Aug. 6, 2017) ...............................7

*In re MAXXAM, Inc./Federated Dev. Shareholders Litig.*,
No. CIV. A. 12111, 1995 WL 376942 (Del. Ch. June 21, 1995) .....................24, 25

*McTernan v. City of York, PA*,
564 F.3d 636 (3d Cir. 2009)...............................................................................6, 7

*In re Medtronic, Inc. Derivative Litig.*,
  68 F. Supp. 3d 1054 (D. Minn. 2014) ................................................................7

*In re Mervyn Holdings LLC*,
  426 B.R. 488 (Bankr. D. Del. 2010) .................................................................24

*In re Nat'l. Serv. Indus.*,
  No. AP 14-50377, 2015 WL 3827003 (Bankr. D. Del. June 19, 2015)........................9, 25, 26

*In re NewStarcom Holdings, Inc.*,
  547 B.R. 106 (Bankr. D. Del. 2016) .................................................................10

*O'Reilly v. Transworld Healthcare, Inc.*,
  745 A.2d 902 (Del. Ch. 1999)........................................................................16

*In re Opus E., L.L.C.*,
  480 B.R. 561 (Bankr. D. Del. 2012) .................................................................15

*Orman v. Cullman*,
  794 A.2d 5 (Del. Ch. 2002)............................................................................8

*In re Penson Worldwide*,
  587 B.R. 6 (Bankr. D. Del. 2018) ....................................................................28

*In re Petters Co., Inc.*,
  495 B.R. 887 (Bankr. D. Minn. 2013) ...............................................................12

*In re Pitt Penn Holding Co., Inc.*,
  No. 09-11475, 2011 WL 4352373 (Bankr. D. Del. Sept. 16, 2011).............................12

*In re Primedia Inc. Derivative Litig.*,
  910 A.2d 248 (Del. Ch. 2006).........................................................................9

*Quadrant Structured Prod. Co. v. Vertin*,
  102 A.3d 155 (Del. Ch. 2014).........................................................................14

*Rales v. Blasband*,
  634 A.2d 927 (Del. 1993) .............................................................................10

*In re Rest. Dev. Group, Inc.*,
  397 B.R. 891 (Bankr. N.D. Ill. 2008) ................................................................27

*Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co., Inc.*,
  866 A.2d 1 (Del. 2005) ................................................................................23

*Sciabacucchi v. Liberty Broadband Corp.*,
  No. CV 11418, 2018 WL 3599997 (Del. Ch. July 26, 2018)................................9, 18

*In re Scott Acquisition Corp.*,
 344 B.R. 283 (Bankr. D. Del. 2006) ..................................................11, 13, 19

*Shandler v. DLJ Merchant Banking, Inc.*,
 No. CIV.A. 4797, 2010 WL 2929654 (Del. Ch. July 26, 2010)................................9

*Sifferle v. Micom Corp.*,
 384 N.W.2d 503 (Minn. Ct. App. 1986) ..............................................................18

*Snyder Elec. Co. v. Fleming*,
 305 N.W.2d 863 (Minn. 1981)............................................................................11

*In re SRC Liquidation LLC*,
 No. 15-10541, 2016 WL 3440555 (Bankr. D. Del. Mar. 7, 2016) ..........................8

*Stiff v. Associated Sewing Supply Co.*,
 436 N.W.2d 777 (Minn. 1989)............................................................................29

*Stone v. Ritter*,
 911 A.2d 362 (Del. 2006) ....................................................................................8

*In re The Student Loan Corp. Derivative Litig.*,
 No. C.A. 17799, 2002 WL 75479 (Del. Ch. Jan. 8, 2002) ....................................9

*Swanson v. Tomlinson Lumber Mills, Inc.*,
 239 N.W.2d 216 (Minn. 1976)...............................................................7, 11, 18

*Taylor v. Fanning*,
 91 N.W. 269 (1902) ...........................................................................................11

*Toombs v. Daniels*,
 361 N.W.2d 801 (Minn. 1985)............................................................................21

*In re Tower Air, Inc.*,
 416 F.3d 229 (3d Cir. 2005)..................................................................... *passim*

*In re Trados Inc. S'holder Litig.*,
 73 A.3d 17 (Del. Ch. 2013)................................................................................17

*In re Trados Inc. Shareholder Litig.*,
 No. CIV. A. 1512, 2009 WL 2225958 (Del. Ch. July 24, 2009)............................9

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
 906 A.2d 168 (Del. Ch. 2006)............................................................................10

*In re Troll Commc'ns, LLC*,
 385 B.R. 110 (Bankr. D. Del. 2008) ..............................................................11, 17

*In re Tropicana Entertainment, LLC*,
520 B.R. 455 (Bankr. D. Del. 2014) ...................................................................11

*Trude v. Glenwood State Bank*,
No. 47-CV-12-176, 2015 WL 12862537 (Minn. Dist. Ct. Aug. 28, 2015) ............................28

*In re Walt Disney Co. Derivative Litig.*,
825 A.2d 275 (Del. Ch. 2003)......................................................................14, 19

*Westgor v. Grimm*,
318 N.W.2d 56 (Minn. 1982).............................................................................17

*Xemas, Inc. v. United States*,
689 F. Supp. 917 (D. Minn. 1988), *aff'd*, 889 F.2d 1091 (8th Cir. 1989) ..............................28

**Statutes**

11 U.S.C.A. § 108..........................................................................................24

11 U.S.C.A. § 502..........................................................................................28

Del. Code Ann. tit. 8, §102 ...............................................................................16

Del. Code Ann. tit. 10, §812 ..............................................................................23

Minn. Stat. Ann. §§ 322C.0406, 322C.0409, 322C.0110.......................................13, 16

Minn. Stat. Ann. § 513.47..................................................................................27

Minn. Stat. Ann. § 541.05..................................................................................22

**Rules**

Federal Rule of Bankruptcy Procedure Rule 7008(a)......................................................6

Federal Rule of Civil Procedure Rules 8, 12(b)(6) ....................................................6, 15

Kevin Nystrom, in his capacity as Litigation Trustee for the UC Litigation Trust (the "Plaintiff"), submits this memorandum in opposition to Defendant Madhu Vuppuluri's ("Vuppuluri") and Defendant Sanjay Bhartia's ("Bhartia", jointly with Vuppuluri, the "Fiduciary Defendants") Motions to Dismiss the Second Amended Complaint (the "Motions").   For the reasons more fully set forth herein, the Motions should be denied.

## **INTRODUCTION**

The Motions rise – and ultimately fall – on the Fiduciary Defendants' specious argument that the Second Amended Complaint ("SAC")[2] insufficiently pleads that they breached their fiduciary duties of loyalty, good faith and due care to ESML.

The Fiduciary Defendants claim that the SAC contains only conclusory allegations. But Plaintiff has alleged details involving multiple instances of the Fiduciary Defendants' misconduct: that the Fiduciary Defendants, acting in concert with members of India's prominent Ruia family, siphoned off hundreds of millions of dollars from ESML's construction project funds in blatant acts of self-dealing.   As a result, the Fiduciary Defendants cannot rely on either the business judgment rule or the exculpatory clause contained within ESML's Articles of Organization even if these arguments were not otherwise premature.

The Fiduciary Defendants cite pages of irrelevant law to distract this Court from their misconduct.   For example, the Motions repeatedly assert that the Fiduciary Defendants could not possibly breach their duties to ESML because they were acting in the best interests of ESML's parent, Essar Global Fund Limited ("Essar Global").   But that argument only *proves the point.* Because Plaintiff has alleged that ESML was deeply insolvent and that the Fiduciary Defendants were beholden to Essar Global, the Fiduciary Defendants were precluded by their fiduciary duties

---

[2]       Plaintiff respectfully refers the Court to the Second Amended Complaint filed by Plaintiff on August 13, 2018 in the above-captioned jointly administered chapter 11 case for a full recitation of the facts.

from allowing money to be siphoned to Essar Global to strip value from ESML's already-depleted state.

The Fiduciary Defendants' arguments shamelessly ignore the well-pleaded allegations of the SAC. The SAC plainly states valid claims for relief. Accordingly, the Motions should be denied.

## STATEMENT OF FACTS

### A.    Background

Plaintiff is Kevin Nystrom as the Litigation Trustee of the UC Litigation Trust established pursuant to the *Third Amended Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* (Bankr. Dkt. 990) (the "Plan") confirmed in the above-captioned jointly administered chapter 11 case. The UC Litigation Trust is vested with the causes of action set forth herein by the Plan, and the UC Litigation Trustee is authorized to act for the UC Litigation Trust, including, as stated in the Plan, to "prosecute, compromise, transfer, release, abandon, and/or settle the Transferred Causes of Action" on behalf of the UC Litigation Trust and to "investigate, object, prosecute and/or settle . . . the Claims, liens, or security interests, including, without limitation . . . based on or related to the information gathered and the subjects investigated in the investigation conducted by ESML in preparing the complaint styled, *Essar Steel Minnesota LLC v. Essar Global Fund Limited*, Adv. No. 17-50001 (BLS), filed in the Bankruptcy Court on January 11, 2017 . . . (whether or not enumerated or alleged in the Complaint)." (Compl. ¶18. ) All of the claims in the SAC are Transferred Causes of Action that are assets of the UC Litigation Trust. (*Id.*) Ultimately, however, after borrowing billions of dollars of debt, the Project was never completed, and ESML never produced any revenues or cash flow. (*Id.* at ¶¶ 31-40.) Instead, it was forced to file chapter 11 in this Court.

### B.    The Defendants' Relationships With Essar Global and ESML

Before its collapse into chapter 11, ESML was a wholly-owned subsidiary of Essar Global, a large, multinational enterprise founded and controlled by billionaire brothers Shashi and Ravikant Ruia.  (Compl. ¶ 2.)  Essar Global acquired ESML to build and own what was supposed to be a large-capacity, state-of-the-art iron ore mine and pellet plant to be constructed in Nashwauk, Minnesota (the "Project").  (*Id.* at ¶ 3).

#### a.    Madhu Vuppuluri

Vuppuluri was President and Chief Executive Officer of ESML at all relevant times.  (Compl. ¶ 19).  At the same time, he served as a governor and director for several other Essar Affiliates under the control of the Ruia family, including:

- Governor of ESML from October 2007 through November 2016:

- President and Chief Executive Officer of Essar Americas;

- Director of ESML Holdings, Inc. ("Holdings"), Trinity Coal Corporations ("Trinity"), Essar Algoma Steel Inc. ("Essar Algoma"), and  Aegis Limited.

(*Id.* at ¶¶ 19, 81.)

#### b.    Sanjay Bhartia

Bhartia was the Chief Financial Officer of ESML beginning in 2013.  (Compl. ¶ 20).  He also served as a governor of ESML from 2014-2015.  (*Id.*)  As a condition of his employment with ESML, Bhartia was prohibited from engaging in any conduct that would constitute an actual or perceived conflict of interest.  (*Id.*)  Bhartia's temporary worker visa, which permitted him and his family to relocate to the United States, was sponsored by ESML and required him to be employed by ESML.  (*Id.*)

3

**C.   The Fiduciary Defendants Transferred Funds To Essar Affiliates In Exchange For No Benefit To ESML**

At all relevant times during the Fiduciary Defendants' employment with ESML, Essar Global exercised dominion and control over ESML as its sole shareholder.  (Compl. ¶¶ 75, 116.) With the assistance from the Fiduciary Defendants, Essar Global controlled and dictated Fiduciary Defendants' decisions with respect to siphoning ESML's assets to Essar Global and its various affiliates ("Essar Affiliates").  (*See, e.g.*, Compl. ¶¶ 75, 77, 79.)

Between 2008 and 2016, the Fiduciary Defendants approved the payment of nearly $1.1 billion to Essar Global and Essar Affiliates purportedly to complete the Project.  (Compl. ¶ 4.) Nearly half of those funds, however, were not used on the Project.  (*Id.*)  Instead, the Fiduciary Defendants improperly and unlawfully approved and/or facilitated the transfer of hundreds of millions of dollars from ESML to Essar Global and Essar Affiliates over ESML's financial interests.  (*See id.* at ¶¶ 48-74.)  These transfers include, without limitation, the following:

- March 2012: $5 million transfer to Trinity;

- June 2012: $79 million "loan" to Essar Global;

- January 2013: $325,000 "loan" to Essar Global;

- January 2013: $21 million "loan" to Essar Global;

- Late 2013: Release of $5 million claim in the Trinity bankruptcy case for no consideration;

- November 2014: $3.3 million "payment" to an Essar affiliate;

- March 2015: $68 million payment to Essar Projects, which was recirculated as Essar Global's equity contribution to ESML under the Equity Contribution Agreement;

- 2015: Participating in an over-invoicing scheme with Essar Projects-US;

- 2015: $17 million payment to Essar Projects-India to facilitate Essar Global's $16 million equity contribution to ESML;

- Mid-2015: millions of dollars in transfers for Paradeep project letter of credit;

- 2014 and 2015: millions of dollars paid in connection with Essar Projects' attempts to open LCs – both for the Project and in connection with other business Essar Projects was involved with.

(*Id.*)  The Fiduciary Defendants authorized or facilitated these transfers with blatant disregard for the consequences on the insolvent ESML.  (*Id.* at ¶¶ 74, 91.)

### D.    The Fiduciary Defendants Facilitated Improper Transfers to Essar Affiliates

In making and/or approving these improper transfers, the Fiduciary Defendants abdicated their fiduciary duties to the will of the Ruia family by following the Ruias' and Essar Global's instructions without regard to the consequences to ESML. (Compl. ¶¶ 48-74.)   Instead of exercising due care, the Fiduciary Defendants approved the challenged transactions even though they knew that ESML was not required to make the payments, (*Id.* at ¶¶ 51-54, 57-58), that the funds would not be used for Project purposes, (*Id.* at ¶¶ 59-68), and that ESML would be harmed thereby because it was insolvent.  (*Id.* at ¶¶ 57, 59, 73-74, 90.)  As a result, the Fiduciary Defendants elevated their own personal interests over ESML's interests in making these transfers because they would reap substantial personal and financial benefits by following Essar Global's directives.  (*Id.* at ¶¶ 81-82, 97.)

For example, Vuppuluri was paid millions of dollars directly by Essar Global or its designees, including at or around a time when ESML had loaned funds to Essar Global.  (Compl. ¶ 98.)  Bhartia was dominated and controlled by Mr. Vuppuluri and defendant Prashant Ruia, and was aware that his continued employment at ESML – a condition of his temporary worker visa and his family's residency in the United States – was dependent upon his submission to the Ruias' and Essar Global's requests.  (*Id.* at ¶¶ 20, 82.)  Moreover, not only did the Fiduciary Defendants ultimately derive all, or substantially all, of their income from the Ruia family or their affiliates,

but Mr. Vuppuluri served as a director and/or officer of other entities controlled by or affiliated with Essar Global or the Ruia family. (*Id.* at ¶¶ 19, 81-82.)

ESML was significantly damaged as a result of the Fiduciary Defendants' misconduct. To remedy these harms on behalf of ESML, Plaintiff filed the SAC against the Fiduciary Defendants for, *inter alia*, breach of their fiduciary duties on August 13, 2018. The Fiduciary Defendants each filed motions to dismiss the SAC on September 9, and September 12, 2018.

## ARGUMENT

### I.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8, applicable here through Federal Rule of Bankruptcy Procedure 7008(a), "requires only a short and plain statement of the claim showing that the pleader is entitled to relief so as to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even if it appears a plaintiff will be unlikely to prove the facts it has alleged, the allegations need only "be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (citations omitted).

"The Supreme Court's *Twombly* formulation of the pleading standard does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *McTernan v. City of York, PA*, 564 F.3d 636, 646 (3d Cir. 2009). Finally, *Twombly* expressly affirmed the existing liberal pleading standard of Rule 8, noting that "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to

6

relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In deciding a motion to dismiss under Rule 12(b)(6), the court "must accept all factual allegations as true, construe the [c]omplaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading . . . the plaintiff may be entitled to relief." *McTernan* 564 F.3d at 646 (3d Cir. 2009) (citation and quotations omitted). Viewed under these standards, the SAC plainly states viable claims for relief, and the Motions should be denied.

## II.   PLAINTIFF'S DUTY OF LOYALTY CLAIM SHOULD NOT BE DISMISSED.[3]

### A.   The Fiduciary Defendants Were Interested In The Disputed Transfers.

The duty of loyalty prohibits directors and officers from assuming positions in conflict with interests of the corporation and engaging in self-dealing. *See Diedrick v. Helm*, 14 N.W.2d 913, 919 (Minn. 1944). Thus, under Minnesota law, the duty of loyalty prohibited the Fiduciary Defendants from serving their own personal interests at the expense of ESML and its stakeholders. *See Bartholomew v. Avalon Capital Grp., Inc.*, 828 F. Supp. 2d 1019, 1029 (D. Minn. 2009) (citing *Diedrick v. Helm*, 14 N.W.2d 913, 919 (1944)); *Lusk v. Akradi*, No. CV 15-1911, 2017 WL 3382301, at *4 (D. Minn. Aug. 6, 2017) (same); *see also C.J. Duffey Paper Co. v. Reger*, 588 N.W.2d 519, 526 (Minn. Ct. App. 1999) (affirming trial court's interpretation that under the duty of loyalty fiduciaries must not "serve their own personal interests at the expense of the corporation"). Accordingly, "transactions involving corporations under the common control of the same officers or directors are to be regarded with skepticism by the courts and closely scrutinized." *Swanson v. Tomlinson Lumber Mills, Inc.*, 239 N.W.2d 216, 221 n.3 (Minn. 1976).

---

[3]   Fiduciary duties of directors and shareholders are governed by the state of incorporation under the "internal affairs" doctrine. *Dunning v. Bush*, 536 F.3d 879, 886 (8th Cir. 2008) (applying Minnesota law where corporation was incorporated in Minnesota). Here, ESML is a Minnesota corporation. Courts interpreting Minnesota corporate governance disputes "often look to Delaware law for assistance in developing rules of corporate law" where Minnesota law is lacking. *See In re Medtronic, Inc. Derivative Litig.*, 68 F. Supp. 3d 1054, 1062 (D. Minn. 2014).

*Bartholomew* is instructive.  In that case, the sole manager and controlling member of a Minnesota LLC caused the company to borrow $67.5 million in secured debt to fund dividends and personal debts to the manager and controlling member.  *Bartholomew*, 828 F. Supp. 2d at 1029.  The plaintiff argued that this transfer rendered the LLC insolvent.  *Id*.  The court, reasoning that this transfer was an "insider transaction," presumed that it represented a conflict of interest and shifted the burden on the manager to prove that it did not breach its fiduciary duties of loyalty and good faith to the LLC.  *Id.*  Ultimately, the court concluded that the plaintiff's complaint adequately pleaded facts supporting a breach of fiduciary duty claim.  *Id*.

Here, as in *Bartholomew,* the SAC contains detailed allegations explaining the Fiduciary Defendants' lack of independence.  Plaintiff alleges that the Fiduciary Defendants violated their fiduciary duties by approving or facilitating the transfer of hundreds of millions of dollars from ESML to Essar Global and its affiliates for little or no benefit and for non-Project purposes. (Compl. ¶¶ 48-74.)  The Fiduciary Defendants subordinated the fiduciary duties they owed to ESML to the will of the Ruia family because they knew they would reap substantial personal and financial rewards.[4]  Specifically, the SAC alleges that the Fiduciary Defendants were controlled by Essar Global and the Ruia family because they derived substantially all of their income from Essar Global and the Ruias.[5]  (*See*, e.g., ¶¶ 20, 82, 84) (alleging Bhartia placed his personal financial

---

[4]    Plaintiff does not allege a separate cause of action against the Fiduciary Defendants for a breach of the duty of good faith.  The failure to act in good faith is encompassed by the duty of loyalty.  *Stone v. Ritter*, 911 A.2d 362, 369–70 (Del. 2006).  Here, the SAC contains detailed allegations of the Fiduciary Defendants' lack of good faith.  In addition to acting in their own self-interest, the SAC alleges that the Fiduciary Defendants abdicated and disregarded their responsibilities by failing to examine or question the directives from Essar Global, even though they knew the transfers harmed ESML and were not taken for its own benefit.  (*See*, e.g., Compl. ¶¶ 48-51, 55, 57-59, 63, 74.)

[5]    To deflect from their associations with Essar Global, the Fiduciary Defendants wrongly suggest that the financial benefits they received from their continued employment with ESML cannot establish that they were self-interested.  In *In re SRC Liquidation LLC*, No. 15-10541, 2016 WL 3440555 (Bankr. D. Del. Mar. 7, 2016) (applying Ohio law), this Court rejected plaintiff's duty of loyalty claim where the complaint solely alleged that the directors approved an acquisition to preserve their positions within the company.  The complaint failed to allege, however, why the directors' approval of an alternative option would cost them their jobs.  Here, the SAC contains detailed allegations of the Ruia's family control over ESML and, as a result, Fiduciary Defendants' livelihood.  (*See*, e.g., Compl. ¶¶ 51-

interests and interest in maintaining a temporary work visa over the interests of ESML); ¶ 110 (alleging the Fiduciary Defendants acted contrary to the interests of ESML knowing they would receive substantial personal financial benefits); ¶ 111 (alleging Vuppuluri was paid millions of dollars by Essar Global or its designees at or around the time ESML loaned funds to Essar Global).) Moreover, Plaintiff alleges that Vuppuluri simultaneously held board or office positions at Holdings, Trinity, Essar Algoma, Essar Resources, Inc., Essar Americas, and other subsidiaries of Essar Global, (Compl. ¶¶ 19, 81, 84), and authorized the transfer of millions dollars of funds from ESML to at least one of these entities for no consideration.  (Compl. ¶¶ 79, 91.)  These factual allegations detail how the Fiduciary Defendants were beholden to Essar Global in violation of their fiduciary duties to ESML.

Courts have declined to dismiss duty of loyalty claims with similar facts.  *See In re Primedia Inc. Derivative Litig.,* 910 A.2d 248, 255 (Del. Ch. 2006) (denying motion to dismiss fiduciary duty claim where each director "was beholden to [plaintiff's controlling shareholder] in some fashion and was unable to exercise independent and disinterested judgment with respect to the challenged transactions."); *In re The Student Loan Corp. Derivative Litig.*, No. C.A. 17799, 2002 WL 75479, at *1 (Del. Ch. Jan. 8, 2002) (denying motion to dismiss fiduciary duty claim because directors were beholden to plaintiff's parent by virtue of their dual board positions on plaintiff's board and on the corporate parent's board); *Sciabacucchi v. Liberty Broadband Corp.*, No. CV 11418, 2018 WL 3599997, at *13 (Del. Ch. July 26, 2018) (same); *Shandler v. DLJ Merchant Banking, Inc.*, No. CIV.A. 4797, 2010 WL 2929654, at *12 (Del. Ch. July 26, 2010)

---

52, 55, 82.)  As the Fiduciary Defendants' own authority makes clear, such allegations are sufficient to allege that the Fiduciary Defendants were self-interested.  *See Orman v. Cullman*, 794 A.2d 5, 30 (Del. Ch. 2002) ("At this stage of the litigation, the facts supporting [plaintiff's allegation that Bernbach lacked independence] are sufficient to raise a reasonable inference that [] Bernbach was controlled by the Cullman Group because he was beholden to the controlling shareholders for future renewals of his consulting contract.").

(denying motion to dismiss where plaintiff's board members that approved challenged transaction also derived their primary source of income from controlling stockholder and its affiliates); *In re Trados Inc. Shareholder Litig.*, No. CIV. A. 1512, 2009 WL 2225958, at *8 (Del. Ch. July 24, 2009) (allegations that directors' employment income hinged on the success of the merger were sufficient to raise an inference that board was not disinterested); *In re Nat'l. Serv. Indus.*, No. AP 14-50377, 2015 WL 3827003, at *6 (Bankr. D. Del. June 19, 2015) ("The Trustee alleges that during this time, Spriggs and Kelly engaged in self-interested transactions, namely directing the Debtor to transfer funds to them and their related entities for no legitimate business reason and with no expectation that they would be repaid.  Taking these allegations as true, the Court finds that the Trustee has alleged enough facts to state claims for breach of fiduciary duty."); *see also Rales v. Blasband*, 634 A.2d 927, 937 (Del. 1993) (finding directors lacked independence where the plaintiff alleged that the controlling shareholders' positions allowed them to exert influence over the directors).  While the Fiduciary Defendants may dispute the inferences from the facts pled,[6] that dispute is factual and cannot be properly resolved on a motion to dismiss.  *See F.D.I.C. v. Milbauer*, 119 F. Supp. 3d 939, 942 (D. Minn. 2015) (declining to dismiss duty of loyalty claims on a motion to dismiss where inferences raised by plaintiff's allegations were plausible).

The Fiduciary Defendants also erroneously contend that they did not violate the duty of loyalty because they acted in the interests of ESML's parent, Essar Global (Vuppuluri Mot. at 20-22; Bhartia Mot. at 24-25.)  This position fails as a matter of law, and the Fiduciary Defendants'

---

[6]    The Fiduciary Defendants' contentions that they would have subjected ESML to claims for breach of contract if they failed to make the challenged transactions is meritless.  (Vuppuluri Mot. at 20; Bhartia Mot. at 23.)  The SAC specifically alleges the Fiduciary Defendants made payments to Essar Global and Essar Affiliates that they believed they were not responsible to make or that were unrelated to the Project.  (Compl. ¶¶ 48-74.)  Certainly, ESML's contracts with respect to the Project did not require it to make payments to Essar Global and Essar Affiliates for non-Project related costs.

authorities are inapposite.[7]    While it may be true, as the Fiduciary Defendants suggest, that directors of a *solvent* wholly owned subsidiary generally are required to manage it in the best interest of its parent, (*id*.), that authority does not – and, indeed cannot – permit the parent to strip assets from an insolvent subsidiary as was the case here.    *See Snyder Elec. Co. v. Fleming*, 305 N.W.2d 863, 869 (Minn. 1981) ("When a corporation is insolvent, or on the verge of insolvency, its directors and officers become fiduciaries of the corporate assets for the benefit of creditors."); *Swanson*, 239 N.W.2d at 221 (corporate directors and officers may not secure an advantage, even if indirect, over other creditors because of their relationship to the corporation); *Taylor v. Fanning*, 91 N.W. 269, 270 (1902) (corporate directors may not take advantage of their fiduciary relationships to a company by dealing directly with themselves to the disadvantage of other creditors); *In re Scott Acquisition Corp*., 344 B.R. 283, 290 (Bankr. D. Del. 2006) ("[U]pon insolvency directors of a wholly-owned subsidiary owe fiduciary duties to the subsidiary and its creditors.").

Here, the SAC properly alleges that the Fiduciary Defendants transferred hundreds of millions dollars from ESML for no consideration when the Company "lacked the solvency and liquidity to complete the Project."  (Compl. ¶ 74; *see also* ¶¶ 57, 90.)  The SAC does not, as the Fiduciary Defendants argue, simply recite the word "insolvency."[8]  (Vuppuluri Mot. at 20-22;

---

[7]      In *In re NewStarcom Holdings, Inc.*, 547 B.R. 106, 138 (Bankr. D. Del. 2016), the court granted summary judgment on the grounds that the plaintiff lacked standing to bring claims belonging to a third party and that the managers of the acquirer did not their breach fiduciary duties owed to the seller.  Here, Plaintiff clearly has standing vested by the plan.  (Compl. ¶ 18.)  Similarly, in *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 203 (Del. Ch. 2006), the court rejected breach of fiduciary claims against directors where the plaintiff failed to allege that the company was insolvent at the time the transactions occurred.  Here, the SAC contains ample well-pleaded allegations that the Fiduciary Defendants engaged in a multitude of disloyal actions while ESML was insolvent. (Compl. ¶¶48-74.)

[8]      Contrary to the Fiduciary Defendants' contentions, Plaintiff's allegations are distinguishable from the allegations raised by the plaintiff *In re Tropicana Entertainment, LLC*, 520 B.R. 455, 471 (Bankr. D. Del. 2014).  There, the plaintiff stated only that the defendants' actions "inevitably led it into financial collapse" or "led to the bankruptcy filing."

Bhartia Mot. at 25.)  But, in any event, courts have consistently held that insolvency need not be pleaded with particularity.  *In re Scott Acquisition Corp*., 344 B.R. at 290 ("The complaint repeatedly alleges that the corporation was insolvent . . .  Again, at this stage of the proceeding, the inquiry is not whether the plaintiff will ultimately prevail but only whether the plaintiff is entitled to offer evidence of its claims."); *In re Troll Commc'ns, LLC*, 385 B.R. 110, 124 (Bankr. D. Del. 2008) ("Although the Quad Defendants take issue with these allegations, the Trustee has adequately pled facts supporting allegations of insolvency and will be permitted to proceed with discovery.  To survive a motion to dismiss, a plaintiff only has to allege sufficient facts, not prove them.") (citations omitted); *In re Petters Co., Inc*., 495 B.R. 887, 923 (Bankr. D. Minn. 2013) (holding that plaintiff's pleading of the term "insolvent" put the defendant on notice of its claims as the term is defined under the Minnesota's fraudulent transfer act and the bankruptcy code);  *In re Pitt Penn Holding Co., Inc*., No. 09-11475, 2011 WL 4352373, at *10 (Bankr. D. Del. Sept. 16, 2011) (plaintiff's pleading that it was "insolvent" was sufficient to survive a motion to dismiss).

The moving briefs purposely ignore the obvious to make their strawman argument.  ESML was a completely new steel pellet manufacturing project funded by billions of dollars of debt to ensure that construction of the project could be completed, and then, the project would begin to operate.  (Compl. ¶ 31-40.)  The asset-stripping occurred during construction, and the plant was never operational.  (*Id.*)  Thus, the SAC alleges that while "ESML was extremely short on funds and ultimately had to decelerate construction efforts to the detriment of ESML," (Compl. ¶ 74), the Fiduciary Defendants approved the transfer of hundreds of millions of dollar to Essar Global and Essar Affiliates for no value, for non-Project purposes, and without regard to whether ESML would be repaid.  The SAC alleges, *inter alia*, that the Fiduciary Defendants:

- Executed transfers they believed ESML was not responsible to make, and for which ESML did not received reasonably equivalent value (Compl. ¶ 51);

- Authorized ESML's payment of millions of dollars to settle lines of credit opened by Essar Projects for the Paradeep project in India – which had no connection to the Project (Compl. ¶ 55);

- Directed Essar Projects to maximize its ability to open lines of credits related to the Project despite [Vuppuluri's] knowledge that the funds received from ESML were not sufficient to support the already-opened lines of credit (Compl. ¶ 57);

- Participated in an invoicing scheme in which ESML, at their direction, knowingly paid inforce for work that was never performed and for which ESML received no value (Compl. ¶ 58); and

- Approved the transfer of over $300 million of funds to Essar Global unrelated to the Project under the guise of payments to Project Contract affiliates (Compl. ¶ 63)

All of these transfers, and the other transfers identified in the SAC, (*see generally* Compl. ¶¶ 48-74), were made when the Fiduciary Defendants knew that ESML was insolvent.  (Compl. ¶¶ 8, 31-40, 74, 90.)  These allegations are sufficient to survive a motion to dismiss.  *See In re Scott Acquisition Corp.*, 344 B.R. at 290 (denying a motion to dismiss fiduciary duty claim where the complaint repeatedly alleged that the corporation was insolvent).

Accordingly, Plaintiff's breach of the duty of loyalty claims should not be dismissed.

## III.   PLAINTIFF STATES A CLAIM FOR BREACH OF THE DUTY OF CARE.

### A.   Plaintiff Adequately Pleaded a Breach of the Duty of Care.

To satisfy its duty of care, a corporate fiduciary must act with the care that an ordinarily prudent person in a like position would exercise under similar circumstances.  *See* Minn. Stat. Ann. § 322C.0409 (West); *Dulhanty v. Conner*, No. 27-CV-15-14487, 2016 WL 8578265, at *7 (Minn. Dist. Ct., Hennepin Cnty. 2016) (same); *see also Janssen v. Best & Flanagan*, 662 N.W.2d 876, 889 (Minn. 2003) (describing the business judgment rule and the duty of care inquiry under Minnesota law).  Thus, as set forth below, even if the Fiduciary Defendants were not interested in the transfers at issue, the SAC properly alleges that the Fiduciary Defendants failed to exercise

any good faith attempt to fulfill their duty of care to ESML.  Instead, they completely abdicated their duties to Essar Global and the Ruia family.

The SAC identifies no less than eleven transfers and loans that were approved by the Fiduciary Defendants for no consideration or in disregard for whether ESML could repay the loans. (Compl. ¶¶ 48-74, 105.)  The Fiduciary Defendants erroneously contend that the SAC is devoid of facts regarding the "process behind any of the challenged transaction."  (Vuppuluri Mot. at 15; Bhartia Mot. at 17-18.)  Simply put, there was no process other than following the orders of the Ruia family to transfer assets away from ESML to Essar Global and affiliates for work that was never performed and for work unrelated to the Project. (*See, e.g.* Compl. ¶¶ 48-59.)  These facts are sufficient to state a claim.  *See In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 278 (Del. Ch. 2003) ("Allegations that Disney's directors abdicated all responsibility to consider appropriately an action of material importance to the corporation puts directly in question whether the board's decision-making processes were employed in a good faith effort to advance corporate interests."); *In re Tower Air, Inc.*, 416 F.3d 229, 240 (3d Cir. 2005) (allegations that directors adopted a "we don't care about the risks attitude" were sufficient to state a claim for a violation of the duty of care); *Quadrant Structured Prod. Co. v. Vertin*, 102 A.3d 155, 183 (Del. Ch. 2014) (finding that the complaint stated a claim for breach of the duty of care where it alleged the company's board failed to limit or deploy any protections against the controlling shareholder's influence or challenge the decisions of the controlling shareholder); *see also DQ Wind-up, Inc. Tr. ex rel. ACI Telecentrics, Inc. v. Kohler,* No. A11-1933, 2012 WL 1658929, at *3 (Minn. Ct. App. May 14, 2012) ("Although the complaint could have contained more specific information [regarding the breach of directors' duty of care and loyalty], [plaintiff's] complaint is adequate to withstand [] challenge to the claim of breach of fiduciary duty.").

14

**B.      The Exculpatory Clause Does Not Shield the Fiduciary Defendants.**

The Fiduciary Defendants argue that Plaintiff's duty of care claims should be dismissed because the exculpatory clause contained with ESML's Articles of Organization purportedly exempts the Fiduciary Defendants from liability.  (Vuppuluri Mot. at 9; Bhartia Mot. at 10.)  In so doing, the Fiduciary Defendants intentionally misinterpret ESML's exculpatory clause and misstate the applicable law.

First, reliance on an exculpation clause is an affirmative defense that is not ripe for consideration on a motion to dismiss.  *See In re Tower Air, Inc.*, 416 F.3d at 242 (stating that an exculpatory provision is an affirmative defense not suitable for consideration in a motion to dismiss).  Courts regularly decline to dismiss duty of care claims on the basis of an exculpatory clause at the motion to dismiss stage.  *See id.*; *see also In re Opus E., L.L.C.*, 480 B.R. 561, 572 (Bankr. D. Del. 2012) (declining to consider an exculpatory clause on a motion to dismiss because "affirmative defenses generally will not form the basis for dismissal under Rule 12(b)(6)"); *Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F. Supp. 2d 538, 561 (D. Del. 2008) ("Because an [exculpatory] provision is in the nature of an affirmative defense and following the statement of the Third Circuit that such defenses will generally not form the basis of a Rule 12(b)(6) dismissal, defendants' motion to dismiss the duty of care claims is denied.").

Second, ESML's exculpatory clause does not exculpate the Fiduciary Defendants for, as alleged here, "acts or omissions not in good faith or that involve intentional misconduct." *See* Vuppuluri Mot. Ex. A (ESML Articles of Organization, Art. 7).  Plaintiff has alleged sufficient facts showing that the Fiduciary Defendants acted in bad faith.  Specifically, Plaintiff alleges that the Fiduciary Defendants were self-interested and subordinated the fiduciary duties they owed to ESML to the will of the Ruia family when they knew that ESML desperately needed the money to complete the project and repay creditors.  (*See, e.g.*, Compl. ¶¶ 19, 81, 84 (alleging Vuppuluri

15

stood on both sides of certain disputed transactions); ¶¶ 20, 82, 84 (alleging Bhartia placed his personal financial interests and interest in maintaining a temporary work visa over the interests of ESML); ¶ 110 (alleging the Fiduciary Defendants acted contrary to the interests of ESML knowing they would receive substantial personal financial benefits); ¶ 111 (alleging Vuppuluri was paid millions of dollars at or around the time ESML loaned funds to Essar Global). These allegations are sufficient to state a claim for breach of fiduciary duty predicated on Defendants' violation of the duty of care. *See In re Direct Response Media, Inc.*, 466 B.R. 626, 651 (Bankr. D. Del. 2012) (holding that an exculpatory clause did not trigger the dismissal of a duty of care claim where the plaintiff alleged directors acted bad faith); *O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 915 (Del. Ch. 1999) (same).

Finally, ESML's exculpatory clause precluded the Fiduciary Defendants from approving distributions that rendered ESML insolvent. The cases the Fiduciary Defendants cite in support of this proposition rely on Section 102(b)(7) of Delaware's General Corporation Law, which is narrower than its Minnesota counterpart.[9] Under the Delaware statute, corporations may not exculpate directors and officers from liability:

> "(i) for any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 [liability for unlawful payments of dividend/purchases of stock share] of this title; or (iv) for any transaction from which the director derived an improper personal benefit."

Del. Code Ann. tit.8, §102 (West). The Minnesota statute, however, is broader. Unlike Delaware law, the Minnesota Revised Uniform Limited Liability Company Act expressly prohibits limited liability companies from exculpating "a breach of duty under Section 322.C0406," which

---

[9]     *See In re Fedders N. Am. Inc.*, 405 B.R. 527, 543 (Bankr. D. Del. 2009) (dismissing duty of care claim on the basis Section 102(b)(7) of the Delaware General Corporate Law); *In re IT Grp. Inc.*, No. 02-10118, 2005 WL 3050611 (D. Del. Nov. 15, 2005) (same).

prohibits governors and managers from consenting to a distribution that renders the company insolvent. *See* Minn. Stat. Ann. §322C.0110 (West); *see also* Minn. Stat. Ann. § 322C.0406 (governor personally liable if he "consents to a distribution made in violation of section 322C.0405 [fraudulent conveyance] and in consenting to the distribution fails to comply with section 322C.0409" [codifying duties of loyalty and duty of care]). That is precisely the case here. Plaintiff has alleged that the Fiduciary Defendants breached their duties of care to ESML by, *inter alia*, siphoning assets to Essar Global and Essar Affiliates when ESML was insolvent. (*See* Compl. ¶¶ 31-40, 74, 104.) Thus, the Fiduciary Defendants' conduct fits squarely within the exceptions to exculpation codified at Section 322.C0406. Thus, ESML's exculpatory clause cannot bar Plaintiff's duty of care claims.

Accordingly, the Fiduciary Defendants' motions to dismiss the duty of care claims should be denied.

## IV.   PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO OVERCOME THE BUSINESS JUDGMENT RULE.

The Fiduciary Defendants claim that their actions are exempt from judicial review under the business judgment rule. That fails as a matter of procedure and as a matter of law.

First, application of the business judgment rule is premature. "[T]he application of the business judgment rule is a question of fact that cannot be determined on a motion to dismiss."[10] *F.D.I.C. v. Milbauer*, 119 F. Supp. 3d at 943; *Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc.*, 554 F. Supp. 2d at 557 (D. Del. 2008) (finding that, in a case arising under

---

[10]   Tellingly, many of Defendants' cases support the *denial* of a motion to dismiss in the face of a business judgment rule defense. *See Westgor v. Grimm*, 318 N.W.2d 56 (Minn. 1982); *In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 44 (Del. Ch. 2013); *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005); *In re Troll Commc'ns, LLC*, 385 B.R. 110 (Bankr. D. Del. 2008); *In re DSI Renal Holdings, LLC*, 574 B.R. 446, 471 (Bankr. D. Del. 2017)

Delaware substantive law, but governed by federal procedural law, plaintiff is not required to plead around the business judgment rule at the motion to dismiss stage).

Second, even if the business judgment rule applied on a motion to dismiss – and it does not – Plaintiff has sufficiently rebutted it in the SAC. "A plaintiff can rebut the presumptive protection afforded by the business judgment rule by showing that the board of directors, in reaching its challenged decision, violated any one of its triad of fiduciary duties: due care, loyalty, or good faith." *In re DSI Renal Holdings*, 574 B.R. at 472; *see also In re Tower Air, Inc.*, 416 F.3d at 240 (plaintiff satisfied the business judgment rule by alleging directors rubber-stamped significant capital expenditures without discussion).

Moreover, the business judgment rule does not protect transactions where, as here, the Fiduciary Defendants were interested in the transaction or engaged in bad faith. *See Janssen v. Best & Flanagan,* 662 N.W.2d 876, 889 (Minn. 2003) (finding lower court erred in granting a motion to dismiss a fiduciary duty claim on the basis of the business judgment rule where directors were interested and did not act in good faith; *Dulhanty*, 2016 WL 8578265, at *9 ("[T]he business judgment rule does not protect self-dealing or decisions made in bad faith."); *Swanson*, 239 N.W.2d at 221 ("Transactions involving corporations under the common control of the same officers or directors are regarded with skepticism by the courts and closely scrutinized."); *Sifferle v. Micom Corp.*, 384 N.W.2d 503, 507 (Minn. Ct. App. 1986) ("Normally, a director's dealings with his corporation and transactions between two corporations having a common director are subject to 'rigorous scrutiny,' requiring the director to establish the entire fairness of the transaction."); *see also Sciabacucchi v. Liberty Broadband Corp.*, 2018 WL 3599997, at *16 ("Because the [p]laintiff has alleged with particularity that at least five of [plaintiff's] directors

18

are beholden to [defendant-majority shareholder], entire fairness applies, and the complaint states a claim for breach of fiduciary duty.")

Here, the SAC alleges that the Fiduciary Defendants knowingly made payments to Essar Global and Essar Affiliates to appease the Ruia family and protect their own personal interests. (*See e.g.*, Compl. ¶¶ 19, 81, 84 (alleging Vuppuluri stood on both sides of certain disputed transactions); ¶¶ 20, 82, 84 (alleging Bhartia placed his personal financial interests and interest in maintaining a temporary work visa over the interests of ESML); ¶ 110 (alleging the Fiduciary Defendants acted contrary to the interests of ESML knowing they would receive substantial personal financial benefits); ¶ 111 (alleging Vuppuluri was paid millions of dollars at or around the time ESML loaned funds to Essar Global).)  Because the SAC alleges facts to infer that the Fiduciary Defendants subordinated their fiduciary duties to their own personal interests, their conduct falls outside of the business judgment rule for the purposes a motion to dismiss.  *In re Walt Disney*, 825 A.2d at 289-90 ("Of course, the alleged facts need only give rise to a reason to doubt business judgment protection, not a judicial finding that the directors' actions are not protected by the business judgment rule."); *Dulhanty,* 2016 WL 8578365, at *10 ("Because Plaintiff has alleged wrongdoing by the Managers that resulted in harm to Fintegra Holdings, Plaintiff's claims are legally sufficient.").

Accordingly, the Fiduciary Defendants' motions should be denied.[11]

---

[11]     The Fiduciary Defendants argue that Plaintiff lacks standing to pursue direct claims by ESML's creditors. (Vuppuluri Mot. at 24; Bhartia Mot. at 27.)  That is correct.  In pursuing the claims in this action, Plaintiff stands in the shoes of ESML and, thus, may pursue all "Transferred Causes of Action of any Debtor against any natural person who was or is an officer, director, manager . . . of any Debtor including claims for breach of fiduciary duty[.]"  Plan, Art. 8.1 (b); 1.1 (69).  The SAC alludes to damages to creditors only because they are the parties that were affected – on a derivative basis – from the wrongdoing because ESML was insolvent, but Plaintiff seeks to recovery only for damages to ESML itself.  *In re Scott Acquisition Corp.*, 344 B.R. at 290 ("[U]pon insolvency directors of a wholly-owned subsidiary owe fiduciary duties to the subsidiary and its creditors.").  Accordingly, this argument is irrelevant.

**V.     PLAINTIFF ALLEGED SUFFICIENT FACTS TO ESTABLISH CLAIMS FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY.**

The SAC properly states a claim against the Fiduciary Defendants for aiding and abetting Essar Global's breach of fiduciary duty.  A claim for aiding and abetting a breach of fiduciary duty requires: (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach.  *See In re DSI Renal Holdings*, 574 B.R. at 475.

**A.     Essar Global Owed Fiduciary Duties to ESML.**

The Fiduciary Defendants claim that Plaintiff has failed to allege a wrongful breach on the part of ESML because Essar Global, ESML's parent, owed no fiduciary duties to its wholly owned subsidiary.  (Vuppuluri Mot. at 25; Bhartia Mot. at 27-30.)  They are wrong.

Controlling shareholders owe fiduciary duties to the corporation under Minnesota law. *See Advanced Comm'n Design, Inc. v. Follett*, 615 N.W.2d 285, 293 (Minn. 2000) ("[A] majority or controlling shareholder owes a fiduciary duty to the corporation or its other shareholders."); *see also Bartholomew*, 828 F. Supp. 2d at 1029 ("[A] at all times, [defendant-controlling shareholder's duty of loyalty to [plaintiff-corporation] prohibited defendant from serving its own personal interests at the expense of the corporation and its stockholders."); *Blum v. Thompson*, 901 N.W.2d 203, 219 (Minn. Ct. App. 2017) (finding that minority shareholders established a claim under the Business Corporation Act by alleging that the majority shareholder breached his fiduciary duties when he leased the corporation's sole asset on terms unfavorable to the other shareholders).  The Fiduciary Defendants' sweeping pronouncement that Essar Global owed no fiduciary duties to ESML ignores the level of control and dominion Essar Global exercised over ESML.  *Id.*; *see also Harris v. Carter*, 582 A.2d 222, 234 (Del. Ch. 1990) ("Equally well established is the principle that when a shareholder presumes to exercise control over a

20

corporation, to direct its actions, that shareholder assumes a fiduciary duty of the same kind as that owed by a director to the corporation.").

Here, the SAC adequately alleges that Essar Global exercised domination and influence over ESML as its sole shareholder, (Compl. ¶¶ 24, 116), by appointing controlling members to ESML's board and the board of the Essar Affiliates, (*id.*), and by controlling and directing the Fiduciary Defendants to approve the challenged transactions. (*See, e.g.,* Compl. ¶¶ 48-58, 77.) Moreover, the SAC alleges that the Fiduciary Defendants were beholden to Essar Global by virtue of their competing board positions with ESML and Essar Affiliates and by their reliance on Essar Global for their employment. (*Id.* at ¶¶19-20, 75, 81-82, 116.) By virtue of these connections to Essar Global, the Fiduciary Defendants allowed Essar Global to control ESML by directing the Fiduciary Defendants on important budget considerations and contractual terms. (*Id.* at ¶ 75.) In light of these facts, Plaintiff has adequately alleged that Essar Global owed fiduciary duties to ESML as its controlling shareholder. *See Bartholomew*, 828 F. Supp. 2d at 1029 (holding that defendant-controlling shareholder of plaintiff-LLC owed fiduciary duties to the company); *see also In re BWT-NEW Acquisitions, LLC*, 582 B.R. 846, 863 (Bankr. D. Del. 2018) (finding that the plaintiff adequately pleaded a breach of fiduciary duty by alleging defendant-sole member of plaintiff shared the same managers and directors as plaintiff and exercised and control over it).

As a result, Essar Global was obligated to exercise its control and influence over ESML for the benefit of ESML, and breached this duty, by directing the Fiduciary Defendants to transfer funds from ESML during its period of insolvency and in exchange for no consideration. *See Bartholomew*, 828 F. Supp. 2d. at 1029; *In re BMT-NW Acquisition*, 582 B.R. at 863 (declining to dismiss a breach of fiduciary claim against sole shareholder where the plaintiff plausibly

alleged the sole shareholder's control over the debtor made it an insider).[12]   Accordingly, the SAC

properly alleges a breach of Essar Global's fiduciary duties.

**B.      Plaintiff Properly Alleges that the Fiduciary Defendants Knowingly and Substantially Assisted in Essar Global's Breach.**

The SAC also adequately alleges that the Fiduciary Defendants knew of and substantially

participated in Essar Global's breach.  The Fiduciary Defendants took direction from Essar Global

in  approving  and/or  facilitating  the  challenged  transactions  with  the  knowledge  that  the

transactions were for non-Project purposes and with the knowledge that ESML was not obligated

to  payments  or  open  the  LCs  (Compl.  ¶¶ 48-58).   The  SAC  further  alleges  that  the  Fiduciary

Defendants approved or facilitated these transfers even though they were aware that ESML was

making the payments "at times when the Company lacked the solvency and liquidity required to

complete the Project."  (*Id.* at ¶ 74.)  This is sufficient to survive a motion to dismiss.  *See In re*

*DSI Renal Holdings*, 574 B.R. at 475 ("Although the NML Defendants, Ares, and Apollo are not

mentioned by name, the complaint supports that all of the new investors and creditors transferring

to equity were aware of the scheme and knowingly participated in it.  According all reasonable

inferences to the Trustee at this stage of the proceeding, the complaint states a claim for aiding

and abetting a breach of fiduciary duty as to all the Defendants."); *In re Am. Bus. Fin. Servs., Inc.*,

362 B.R. 135, 145 (Bankr. D. Del. 2007) (declining to dismiss aiding and abetting fiduciary duty

claim because the "court could infer that the [defendant] knowingly participated in the breach[.]").

Accordingly, Plaintiff's aiding and abetting breach of fiduciary duty claims should not be

dismissed.

---

[12]      To the extent that the Fiduciary Defendants dispute that level of control exercised by Essar Global is insufficient to create a fiduciary relationship, such contentions are inappropriate to consider on a motion to dismiss. *See Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985) ("The existence of a fiduciary relationship is a question of fact").

## VI.   PLAINTIFF'S FIDUCIARY DUTY CLAIMS ARE NOT TIME-BARRED.

### A.   The Minnesota Statute of Limitations Applies.

The statute limitations for breach of fiduciary duty claim is six years under Minnesota law.  Minn. Stat. Ann. § 541.05 (West); *Harju v. Olson*, 709 F. Supp. 2d. 699, 719 (D. Minn. 2010). The Fiduciary Defendants erroneously contend that Delaware's three year of statute of limitations bars Plaintiff's breach of fiduciary claims and aiding and abetting breach of fiduciary duty claims based on transactions occurring prior to July 8, 2013.  (Vuppuluri Mot. at 31; Bhartia Mot. at 35.)

Delaware's Borrowing Statute was "designed to prevent shopping for the most favorable forum," i.e. commencing an action in an unrelated forum to benefit from a *longer* statute of limitations.  *See Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co., Inc*., 866 A.2d 1, 16 (Del. 2005) ("Borrowing statutes . . . are typically designed to address a specific kind of forum shopping scenario—cases where a plaintiff brings a claim in a Delaware court that (i) arises under the law of a jurisdiction other than Delaware and (ii) is barred by that jurisdiction's statute of limitations but would not be time-barred in Delaware, which has a longer statute of limitations."); *see also* Del. Code Ann. tit. 10, §812 (West).  That is not the circumstance here.

This case concerns Minnesota events and parties.  The cause of action accrued in, had the most significant ties to, and caused the most damage in Minnesota, where ESML is incorporated and the Project is based.  ESML, the debtor in the underlying bankruptcy action, chose Delaware not to benefit from its statute of limitations, but to comply with the U.S. Bankruptcy Code's jurisdiction requirements.  Under these circumstances, an application of the Borrowing Statute would "subvert the statute's fundamental purpose" by enabling [the Fiduciary Defendants] to prevail on a limitations defense that would never have been available to [them] had the overcharge claims been brought in the jurisdiction where the cause of action arose."  *See Saudi Basic Indus.*,

866 A.2d at 18 (declining to apply Delaware's Borrowing Statute where counterclaim-defendant chose forum of Delaware over forum which would not have barred the counterclaims).  Courts have declined to invoke the Borrowing Statute under similar circumstances because "there is no danger of forum shopping" where "plaintiffs have come to a jurisdiction with a shorter, rather than a longer, limitations period." *Juran v. Bron*, No. CIV. A. 16464, 2000 WL 1521478, at *11-12 (Del. Ch. Oct. 6, 2000) (declining to invoke Borrowing Statute to bar plaintiff's claims because there was no evidence that plaintiff was forum shopping."); *In re Mervyn Holdings LLC*, 426 B.R. 488, 503 ("Debtor, the plaintiff in this adversary proceeding, came to Delaware with a shorter (instead of longer) statute of limitations period and chose Delaware for the Chapter 11 case and not for the adversary proceeding which the Committee brought. There is absolutely no threat of forum shopping and the Delaware borrowing statute is inapplicable."); *see also Furnari v. Wallpang, Inc.*, No. 13C-04-287, 2014 WL 1678419, at *5 (Del. Super. Ct. Apr. 16, 2014) (holding longer Florida statute of limitations to plaintiff's claims where evidence suggested plaintiff was not forum-shopping and only filed in Delaware to invoke jurisdiction over the parties).

Accordingly, Plaintiff timely commenced its fiduciary duty claims.[13]

---

[13]    Plaintiff filed the SAC on August 13, 2018.  Although two of the transactions alleged in the SAC occurred six years prior to this filing (the March 2012 and June 2012 transactions), (*see, e.g.*, Compl. ¶ 91), ESML filed for bankruptcy on July 8, 2016.  As this filing occurred during the statute of limitations period for the March 2012 and June 2012 transactions, the statute of limitations for these two transactions is tolled for two years after the order of relief pursuant to 11 U.S.C.A. §108(a). *See* 11 U.S.C.A. §108(a) (West) ("If applicable nonbankruptcy law . . . agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.").

**B.      Delaware's Doctrine of Equitable Tolling Further Precludes the Fiduciary Defendants' Claim that the Fiduciary Duty Claims are Time-Barred.**

Even if Delaware's year statute of limitations applies, and it does not, Delaware's doctrine of equitable tolling tolls the statute of limitations because the SAC alleges an abuse of the fiduciary relationship through actionable self-dealing.  *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 193 (D. Del. 2000) (invoking doctrine of equitable tolling where plaintiff alleged defendants engaged in self-dealing); *see also In re MAXXAM, Inc./Federated Dev. Shareholders Litig.*, No. CIV. A. 12111, 1995 WL 376942, at *9 (Del. Ch. June 21, 1995) (tolling statute of limitations where SAC alleged self-dealing); *Natl. Serv. Indus., Inc.,* 2015 WL 3827003, at *9 (Bankr. D. Del. June 19, 2015) (tolling statute of limitation where trustee alleged directors engaged in self-dealing in violation of their fiduciary duties).   To invoke the doctrine, a plaintiff must allege sufficient facts to establish: (1) a fiduciary relationship; (2) actionable or fraudulent self-dealing; and (3) lack of inquiry notice. *See Fruehauf Trailer Corp.*, 250 B.R. at 193.   Here, Plaintiff satisfies this burden.

As set forth above in Section II.A, Plaintiff alleges that the Fiduciary Defendants, as fiduciaries to ESML, engaged in actionable self-dealing by*, inter alia*, causing ESML to transfer hundreds of millions of dollars to Essar Global and Essar Affiliates for little or no consideration. The Fiduciary Defendants acted in their own self-interest in approving these transfers to protect their own personal financial interest and positions within ESML. (*See, e.g.*, Compl. ¶¶ 19, 81, 84 (alleging Vuppuluri stood on both sides of certain disputed transactions); ¶¶ 20, 82, 84 (alleging Bhartia placed his personal financial interests and interest in maintaining a temporary work visa over the interests of ESML); ¶ 110 (alleging the Fiduciary Defendants acted contrary to the interests of ESML knowing they would receive substantial personal financial benefits); ¶ 111 (alleging Vuppuluri was paid millions of dollars at or around the time ESML loaned funds to

25

Essar Global). These allegations sufficiently allege actionable self-dealing for the purposes of equitable tolling. *See Fruehauf Trailer Corp.*, 250 B.R. at 193 (tolling statute of limitations where plaintiff alleged fiduciaries "caused [company] to pay [] large sums of money for largely unperformed management and legal services."); *MAXXAM, Inc./Federated Dev. Shareholders Lit.*, 1995 WL 376942 at *6 (tolling statute of limitations where defendant stood on both sides of the transaction and profited on loans in dispute.).

Plaintiff and EMSL's creditors were not aware of, and would have no reason to suspect, that the Fiduciary Defendants breached their fiduciary duties to ESML before the bankruptcy petition filing. Because ESML is a private company, its financial records were not available to the public for inspection. (Compl. ¶¶ 2, 21-24) (alleging ESML is a private, wholly owned subsidiary of Essar Global and controlled by the Ruia family).) It was not until ESML conducted an investigation in preparation for the filing of its January 11, 2017 Complaint that Plaintiff discovered facts indicating the Fiduciary Defendants breached their fiduciary duties to ESML. (Compl. ¶ 18.) The Court is permitted to toll the statute of limitations under such circumstances. *See EBS Litig. LLC v. Barclays Glob. Invs., N.A.*, 304 F.3d 302, 306 (3d Cir. 2002) (holding that the statute of limitations was tolled until Reorganization Plan, which provided for the litigation by plaintiffs, was confirmed where plaintiff-shareholders could not have reasonably known about claims at any earlier date).

In light of these facts, if the Delaware statute of limitations applies, and it does not, then it was tolled until the filing of the bankruptcy petition.[14] Accordingly, Plaintiff's fiduciary duty causes of action are not time-barred.

---

[14]    To the extent that the Fiduciary Defendants claim that Plaintiff had inquiry notice of the claim on an earlier date, Fiduciary Defendants' own authority establishes that such a determination is inappropriate to resolve on a motion to dismiss. *See In re IT Group Inc.*, No. 02-10118, 2005 WL 3050611, at *16 (D. Del. Nov. 15, 2005) (stating defendant's contention that payment could have been discovered earlier raises factual issues in appropriate at the

VII.   **PLAINTIFF ADEQUATELY PLEADED AIDING AND ABETTING FRAUDULENT CONVEYANCE.**

Plaintiff has adequately pleaded a cause of action for aiding and abetting fraudulent conveyance.[15]   The SAC contains detailed and specific allegations that ESML transferred hundreds of millions dollars to Essar Global and the Essar Affiliates for less than fair consideration and less than reasonably equivalent value.  (Compl. ¶132.)  The SAC details each of the alleged fraudulent transfers.  (*Id.* at ¶ 133 (referencing the exhibit attached to the SAC).)  Furthermore, the SAC alleges that Director Officer Defendants had knowledge of ESML's insolvency at the time the transfer occurred and substantially assisted in those transfers.  (*Id.* at ¶¶ 59-74; 137.)  These allegations are sufficient to withstand a motion to dismiss.

The Fiduciary Defendants cite no binding law to support their contention that a claim for aiding and abetting fraudulent conveyance does not exist.  The Fiduciary Defendants cite no Minnesota authority in support of this argument.  Although Delaware and other jurisdictions may have determined that a claim for aiding and abetting fraudulent conveyance does not exist, several jurisdictions do recognize the claim.  *See In re Rest. Dev. Group, Inc*., 397 B.R. 891, 898 (Bankr. N.D. Ill. 2008) ("Recent Illinois case law tends to support a cause of action for aider-abettor liability against non-transferees."); *Dalton v. Meister*, 239 N.W.2d 9, 19 (1976) (upholding aiding and abetting fraudulent conveyance claim under Wisconsin law).

The Minnesota Supreme Court has not yet made a determination on this issue.  Case law suggests, however, that Minnesota would uphold this cause of action.   Under the Minnesota

---

pleading stage); *see also In re Natl. Serv. Indus., Inc*., 2015 WL 3827003, at *8 (Bankr. D. Del. June 19, 2015) (declining to dismiss complaint where it alleged "facts that are suggestive of the difficulty of reasonable discovery by a creditor of any fraud committed by the Debtor or the Defendants[.]").

[15]      Plaintiff recognizes that this case involves similar issues to *In re Fedders N. Am. Inc.*, 405 B.R. 527 (Bankr. D. Del. 2009).  Accordingly, Plaintiff understands that the claim may be subject to dismissal, and Plaintiff preserves the claim solely for purposes of appeal.

Fraudulent Transfer Act (the "MFTA"), a court is free to grant "any other relief the circumstances may require." Minn. Stat. Ann. § 513.47(a)(3)(iii). Minnesota courts construe this provision liberally. *Xemas, Inc. v. United States*, 689 F. Supp. 917, 922 (D. Minn. 1988), *aff'd*, 889 F.2d 1091 (8th Cir. 1989) (stating the MFTA is to be liberally construed). In accordance with the liberal construction of the MFTA, Minnesota courts have upheld aiding and abetting claims against non-transferees. *See, e.g.*, *Trude v. Glenwood State Bank*, No. 47-CV-12-176, 2015 WL 12862537, at *19 (Minn. Dist. Ct. Aug. 28, 2015) (finding for the plaintiff in connection with claim against third-party for aiding and abetting fraudulent transfer); *Lind v. O.N. Johnson Co.*, 282 N.W. 661, 665 (1938) ("Every defendant who rendered aid or assistance to Johnson in the accomplishment of this purpose, with resulting injury to plaintiff, is a proper party to this suit, thereby avoiding a multiplicity of suits. Each such party is but a cog in a wheel designed, made, and used for dishonest and improper purposes to plaintiff's detriment and consequent damage."). Although the Minnesota Supreme Court has not yet determined that a cause of action for aiding and abetting a fraudulent conveyance is invalid, these cases suggest that such a claim would be upheld. Accordingly, the Court should deny the Fiduciary Defendants' motion to dismiss Plaintiff's aiding and abetting fraudulent conveyance claims.

## VIII.  PLAINTIFF'S CLAIMS FOR DISALLOWANCE MUST STAND.

Section 502(b)(1) of the Bankruptcy Code provides that once an objection is made, the court allows the claim "except to the extent that such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." *In re Penson Worldwide*, 587 B.R. 6, 18-19 (Bankr. D. Del. 2018). This section permits objections grounded in state law. *Id.* Here, the SAC objects to the allowance of the Fiduciary Defendants' claims for "accrued and unpaid bonus, wages, expenses and indemnification for personal claims made by the IRA for company's unpaid taxes,"

28

(Compl. ¶¶ 86-87), based on the Fiduciary Defendants' breaches of their fiduciary duties to ESML. (Compl. ¶¶148, 159.) The Fiduciary Defendants' claims that such allegations cannot render their claims unenforceable are without merit.

Minnesota law is clear that an employee forfeits his agreed-upon compensation during the period of his faithless service. *Stiff v. Associated Sewing Supply Co.,* 436 N.W.2d 777, 780 (Minn. 1989). Plaintiff does not, as the Fiduciary Defendants suggest, need to specify the specifics of the Fiduciary Defendants' obligations under their employment contracts because "every employment contract encompasses implied duties of honesty and loyalty." *Id.* As set forth above, Plaintiff has sufficiently alleged that the Fiduciary Defendants violated their fiduciary duties to ESML. Because whether the Fiduciary Defendants' conduct violated their fiduciary duties is a question of fact that is not appropriately resolved in a motion to dismiss, the Fiduciary Defendants' motions to dismiss Plaintiff's disallowance claims must be denied. *See F.D.I.C. v. Milbauer*, 119 F. Supp. 3d at 942.

## CONCLUSION

For all of the above reasons, the Court should deny the Fiduciary Defendants' respective Motions to Dismiss and grant such other and further relief in favor of the Plaintiff as the Court deems just and proper.

Dated: October 12, 2018

**HOGAN McDANIEL**

By: */s/ Garvan F. McDaniel*
Garvan F. McDaniel (DE No. 4167)
Daniel K. Hogan (DE No. 2814)
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599
Email: gfmcdaniel@dkhogan.com
         dkhogan@dkhogan.com

-and-

**KASOWITZ BENSON TORRES LLP**
Andrew K. Glenn (admitted *pro hac vice*)
Stephen W. Tountas (admitted *pro hac vice*)
Robert M. Novick (admitted *pro hac vice*)
1633 Broadway
New York, New York 10019
Telephone:     (212) 506-1700
Facsimile:     (212) 506-1800
Email:  aglenn@kasowitz.com
          stountas@kasowitz.com
          rnovick@kasowitz.com

*Counsel to Kevin Nystrom, UC Litigation Trustee*