## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>ESSAR STEEL MINNESOTA LLC and<br>ESML HOLDINGS INC.<br><br>Debtors. | Chapter 11<br>Case No. 16-11626 (BLS)<br>Jointly Administered |
| BRADLEY E. SCHER, solely in his capacity<br>as Litigation Trustee for Mesabi SC<br>Litigation Trust,<br><br>     Plaintiff,<br><br>v.<br><br>ESSAR GLOBAL FUND LIMITED, *et al.*<br><br>     Defendants. | Adv. Proc. No. 17-50001<br><br>Re: AP Docket No. 69 |

Timothy P. Cairns, Esq.
Pachulski Stang Ziehl & Jones LLP
919 N. Market Street, 17th Floor
Wilmington, DE 19801

Craig Averch, Esq.
White and Case LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071-2433

*Attorneys for Bradley E. Scher, SC*
*Mesabi Litigation Trustee*

R. Karl Hill, Esq.
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Avenue, Ste. 1500
Wilmington, DE 19899

Robert J. Cleary, Esq.
Proskauer Rose LLP
11 Times Square
New York, NY 10036

*Attorneys for Essar Global Fund*
*Limited, Essar Project Management*
*Company Limited and Essar*
*Constructions Limited*

## OPINION[1]

Before the Court is a Partial Motion to Dismiss (the "Motion") filed by Defendants Essar Global Fund Limited, Essar Project Management Company Limited, and Essar Constructions Limited (collectively, the "Defendants"). The Plaintiff in this matter is the Litigation Trustee for the Mesabi Secured Creditors Litigation Trust (the "Trustee"). His Complaint asserts thirty-one claims that all arise out of a failed billion-dollar construction project upon which the Debtors had, at one time, staked their future. The Defendants have moved to dismiss (1) Counts One through Four as to Essar Global and (2) Counts Five, Six, and Twenty in their entirety. For reasons that follow, the Court will grant the Motion in part and deny the Motion in part.

### I.    BACKGROUND[2]

Nearly a decade ago, Debtor Essar Steel Minnesota Limited ("ESML") set its sights upon building a state-of-the-art iron ore mine and pellet processing plant in Nashwauk, Minnesota (the "Plant"). At the time, ESML was a subsidiary of defendant Essar Global Fund Limited ("Essar Global"), which controlled a vast network of entities that spanned the globe and a spectrum of industries. The numerous other Defendants in this adversary proceeding are subsidiaries or affiliates of Essar Global.

---

[1] Pursuant to Fed. R. Civ. P. 52 (made applicable through Fed. R. Bankr. P. 7052), the Court does not make findings of fact or conclusions of law for purposes of a decision on a 12(b)(6) motion.

[2] In a related matter, the Trustee for the Unsecured Litigation Trust (a separate trust created under the confirmed Plan in this Chapter 11 proceeding) has brought a Complaint in this adversary proceeding against various other parties relating to the same nexus of facts described here. [AP Docket No. 61].

Starting in 2008, ESML entered into a series of contracts with the other subsidiaries of Essar Global relating to the construction and development of the Plant. Significantly, in 2010 ESML executed a number of contracts that collectively provided ESML with construction supplies, labor, procurement, and project management services in support of the construction of the Plant (the "2010 Contracts").

In 2012, ESML and Essar Global's subsidiaries sought to restructure the 2010 Contracts. To do so, ESML executed a Lump Sum Turn Key Contract ("LSTK Contract") with Essar Projects Limited ("EPL"). In part, the LSTK Contract contained novations that released Essar Constructions Limited and Essar Projects Management Company from the 2010 Contracts and assigned those obligations to EPL.[3] The LSTK Contract also provides that Essar Projects would deliver a fully functional iron ore pellet plant to ESML in exchange for a fixed payment. The total estimated cost for the Plant was about $1.257 billion.

According to the Trustee, the cooperation amongst the parties effectively came to a halt when the ink dried on the LSTK Contract. By 2016, four years after the parties entered into the LSTK Contract, the project had reached a standstill and was far from completed. The Essar Global affiliates who were responsible for the construction of the Plant refused to continue working. They demanded an additional $200 million over and above the $1.1 billion ESML had already paid. To date, the Trustee alleges, the Plant is incomplete and is unusable for its intended purpose. It

---

[3] AP Docket No. 74-4.

lacks both the necessary equipment for processing iron ore and basic functional elements like walls and electrical fixtures. The record reflects that it may cost in excess of $800 million to complete the project.

As noted above, the Complaint alleges numerous claims against the various Essar-affiliated entities that were involved in the construction of the Plant. In essence, the Trustee alleges that the Defendants violated the 2010 Contracts and the LSTK Contract, and that Essar Global is liable as the alter ego to its affiliates and subsidiaries. The Defendants have moved to Dismiss Counts One through Four only as to Essar Global. Those claims are as follows:

| Count I | Breach of the LSTK Contract against Essar Projects and Essar Global as its alter ego |
| Count II | Breach of the LSTK Contract against Essar Projects-US and Essar Global as its alter ego |
| Count III | Breach of the LSTK Contract against Essar Projects-Middle East and Essar Global as its alter ego |
| Count IV | Breach of the 2010 Essar Projects-India Supply and Engineering Contract[4] against Essar Projects-India and Essar Global as its alter ego |

In addition, the Defendants have moved to dismiss Counts V, VI, and XX in their entirety. In the alternative, the Defendants also move to dismiss Counts V and VI as to Essar Global. Those claims are as follows:

---

[4] The 2010 Essar Projects-India Supply and Engineering Contract is agreement between ESML and Essar Projects-India for procurement of offshore goods and the supply of engineering services in exchange for $215 million. [AP Docket No. 60 at 11.]

| Count V | Breach of the 2010 Essar Constructions Construction Contract[5] against Essar Constructions and Essar Global as its alter ego |
| Count VI | Breach of the 2010 Essar Project Management Contract[6] against Essar Project Management and Essar Global as its alter ego |
| Count XX | Breach of fiduciary duty against Essar Global |

AP Docket No. 60.

Separately, the Defendants filed a Motion to Compel Arbitration on Counts One, Two, and Three. The Court granted that motion and those Counts have been stayed pending arbitration with respect to EPL, Essar Projects USA, LLC, and Essar Projects Middle East FZE.[7] They have not been stayed as to Essar Global, which is named as an alter ego in each of those Counts. The parties filed briefs on the Motion and the Court took the matter under advisement.

## II.    THE PARTIES' POSITIONS

The Defendants argue Counts One through Six should be dismissed as to Essar Global because Essar Global is not a party to the relevant contracts. In support, they assert that a parent company cannot be held liable for the actions of its subsidiary unless the parent is the subsidiary's alter ego. Because the Complaint also contains independent alter ego claims against Essar Global,[8] the Defendants argue Counts One through Six are duplicative. Separately, the Defendants also

---

[5] The 2010 Essar Constructions Construction Contract is an agreement between ESML and Essar Constructions to build the Plant in exchange for $291.5 million. [AP Docket No. 60 at 12.]

[6] The Essar Project Management Contract is an agreement between ESML and Essar Project Management to perform all the project management work for $14.23 million. [AP Docket No. 60 at 12.]

[7] AP Docket No. 105.

[8] AP Docket No. 60 at 75.

argue Counts Five and Six should be dismissed in their entirety because the 2010 Contracts were novated. Finally, the Defendants argue Count 20 should be dismissed because Essar Global did not owe a fiduciary duty to ESML.

In response, the Trustee first argues that the Complaint properly names Essar Global in Counts One through Six as an alter ego. In support, he posits an alter ego claim is properly pleaded in the same count as the underlying claim for breach of contract. As to Counts Five and Six, the Trustee argues that the Novations were procured through fraud and are therefore invalid.

Finally as to Count Twenty, the Trustee acknowledges that parent corporations generally do not owe their subsidiaries a fiduciary duty. However, he suggests that where a subsidiary has minority stakeholders who bear economic risk, the parent owes a duty of loyalty to the subsidiary. Though ESML did not have any minority shareholders, it nevertheless had creditors whom the Trustee suggests are analogous to minority shareholders. Therefore, he posits, Essar Global owed ESML a duty of loyalty.

### III.    JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Court has the power to enter an order on a motion to dismiss even if the matter is non-core or the Court lacks authority to enter a final order. *See, e.g., Boyd v. Kind Par, LLC*, No. 1:11-CV-1106, 2011 WL 5509873, at *2 (W.D. Mich. Nov. 10, 2011) ("[U]ncertainty regarding the bankruptcy court's ability to enter a final judgment

. . . does not deprive the bankruptcy court of the power to entertain all pretrial proceedings, including summary judgment motions."). *See also In re Amcad Holdings, LLC*, 579 B.R. 33, 37 (Bankr. D. Del. 2017).[9]

### IV. STANDARD

The Defendants filed their Motion under Fed. R. Civ. P. 12(b)(6) (made applicable through Fed. R. Bankr. P. 7012) for failure to state a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F.Supp. 2d 404, 407 (D.Del 2007). When reviewing a motion to dismiss, the Court will construe the complaint "in the light most favorable to the plaintiff." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

---

[9] In its Answer, the Defendants deny that this matter is core and reserve their rights under 28 U.S.C. §§ 157 and 158. [AP Docket No. 75]. As described above, the Court need not reach a determination on whether this matter is core for purposes of this 12(b)(6) Motion.

do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted).

## V.   ANALYSIS

As noted, the Defendants have moved to dismiss Counts One through Six and Twenty. The Court addresses each of the Defendants' arguments in turn.

### A.   *Counts One through Six: Alter Ego Liability Against Essar Global*

Counts One through Six assert breach of contract claims against various Essar-related entities and assert that Essar Global is liable for those claims as an alter ego. Again, the Defendants have moved to dismiss these claims as duplicative because the Complaint also contains stand-alone alter ego claims against Essar Global. In response, the Trustee argues that Essar Global is properly named as a defendant in those Counts because alter ego liability should be asserted with the underlying cause of action.

Generally, when addressing how to plead an alter ego claim, federal courts look to the underlying state or substantive law to determine whether alter ego liability could form the basis for an independent cause of action. *See Peacock v. Thomas,* 516 U.S. 349, 354 (1996). But the parties have not cited any state law cases that are instructive on this point. In addition, the Court's independent review of Minnesota and Delaware precedent has not shed light on how those states would treat this question.[10] Nevertheless, research reveals that a plurality of states has held that alter ego liability is not an independent cause of action, rather it is a

---

[10] The LSTK Contract is governed by Minnesota law. AP Docket No. 74-2 at 11.

8

theory of liability that is properly asserted with the underlying breach of contract claim.[11]

In the absence of instruction from applicable state law, the Court will follow the weight of authority on this issue and find Essar Global is properly named as a defendant in Counts One through Six. Moreover, even if the Court granted the Defendants' motion, it would make little substantive difference in the prosecution of this litigation. The Defendants admit the Trustee would still have an alter ego cause of action through the independent alter ego claims. In other words, the Defendants request this Court dismiss Essar Global from Counts One through Six in favor of the stand-alone alter ego claims. But the Defendants have cited no cases that would support that course of action. If anything, the cases cited throughout the briefs suggest the opposite—that the independent alter ego claims should be dismissed in favor of the underlying breach of contract claims.[12]

One way or another, the Trustee has sufficiently alleged that Essar Global is the alter ego of its various subsidiaries. The Defendants' Motion is therefore denied as to Counts One through Four.

---

[11] *In re Cabrini Medical Center*, 489 B.R. 7 (S.D. N.Y. 2012) (New York); *ITP, Inc. v. OCI Co., Ltd.*, 865 F. Supp. 2d 672 (E.D. Pa. 2012) (Pennsylvania); *In re Clark*, 525 B.R. 107, 126 (Bankr. D. Idaho 2014) (Idaho); *In re Raymond*, 529 B.R. 455, 483 (Bankr. D. Mass. 2015) (Massachusetts); *Swinerton Builders v. Nassi*, 2012 COA 17, ¶ 20, 272 P.3d 1174, 1178 (Colorado); *Gallagher v. Persha*, 315 Mich. App. 647, 654, 891 N.W.2d 505, 509 (2016) (Michigan); *Gajda v. Steel Sols. Firm, Inc.*, 2015 IL App (1st) 142219, ¶ 21, 39 N.E.3d 263, 271 (Illinois); *Raimbeault v. Accurate Mach. & Tool*, 2014 U.S. Dist. LEXIS 140313, *23 (S.D. Fla. Sep. 20, 2014) (Florida); *Exp. Dev. Can. V. Dickman*, No. 17-07067, 2018 U.S. Dist. LEXIS 31156, at *8 (C.D. Cal. Jan. 22, 2018) (California). *See also* Neil Helfman, Establishing Elements for Disregarding Corporate Entity and Piercing Entity's Veil, 114 Am. Jur. Proof of Facts 3d 403 (2010).

[12] *Tara Prods. V. Hollywood Gadgets, Inc.*, 2010 U.S. Dist. LEXIS 37889; *United States ex rel. Humane Soc'y of the United States v. Westland/Hallmark Meat. Co.*, 2010 U.S. Dist. LEXIS 147772.

## B. *Counts Five and Six: Breach of the 2010 Contracts*

As described above, Counts Five and Six allege that Essar Global-related entities breached the 2010 Contracts. The Defendants have moved to dismiss those Counts and argues that the 2010 Contracts were novated. The Trustee responds that the Novations were procured through fraud and are therefore invalid.

The Trustee has failed to meet the pleading standard under FRCP 12(b)(6) and Counts Five and Six will be dismissed with leave to replead. In his brief, the Trustee appears to admit that the Novations, on their face, relieved Essar Constructions and Essar Projects Management from their obligations under the 2010 Contracts. He correctly notes that under Minnesota law a release procured through fraud is invalid. *Wallner v. Schmitz*, 239 Minn. 93, 97 (1953). However, the Complaint does not allege the Novations were obtained through fraud. In addition, it contains no facts that would suggest any of the parties made fraudulent representations when negotiating the Novations.[13]

As noted, under FRCP 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (2009). The Trustee raises the fraud theory for the first time in his brief, but that is not sufficient to overcome the defects in the Complaint. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a

---

[13] The Complaint contains an allegation that the LSTK Contract was "not the result of arm's length negotiations." [AP Docket No. 60 at 13.] The Court finds this lone allegation falls short of alleging that the Novations were procured through fraud, especially in light of heightened standard for pleading fraud under FRCP 9(b).

motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). The Trustee has failed to meet his burden and Counts Five and Six are therefore dismissed with leave to replead.

### C. *Count Twenty: Breach of Fiduciary Duty against Essar Global*

Count Twenty alleges Essar Global breached a fiduciary duty to ESML. The Complaint alleges Essar Global engaged in self-dealing when it directed ESML to make payments to its affiliates in exchange for inadequate value. In response, the Defendants argue that a parent company does not owe a fiduciary duty to its wholly-owned subsidiary. Even accepting all the factual allegations as true, the Defendants maintain that Essar Global could not have breached a fiduciary duty to ESML because no such duty exists.

The Court agrees with the Defendants and will dismiss Count Twenty. The parties agree that ESML was Essar Global's wholly-owned subsidiary. Courts have consistently held that parent corporations do not owe fiduciary duties to their wholly-owned subsidiaries.[14] The Trustee suggests this case falls into an exception to that rule because ESML was insolvent and therefore Essar Global had a duty to protect the interests of its creditors. In support, he cites to the principle that, upon

---

[14] *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 173 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007) ("Wholly-owned subsidiary corporations are expected to operate for the benefit of their parent corporations; that is why they are created. Parent corporations do not owe such subsidiaries fiduciary duties."); *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 415 (S.D. Tex. 2008) ("[A] parent corporation does not owe a fiduciary duty to its wholly owned subsidiary (if it did, it would essentially owe a fiduciary duty to itself).").

insolvency, creditors become the beneficiaries of the duties that corporate directors owe to the corporation.[15]

While the Trustee is correct that insolvency shifts the focus of corporate duties, that principle has no application to the facts here. In general, directors of a wholly-owned subsidiary owe fiduciary duties only to the parent corporation. *Direct Response Media, Inc.*, 466 B.R. 626, 649 (Bankr. D. Del. 2012). As the company enters the zone of insolvency, however, those directors "also owe fiduciary duties to creditors of the subsidiary." *Id.* This principle serves to protect creditors with claims against the subsidiary who are vulnerable to the control of the parent corporation, which may loot the subsidiary and leave the other stakeholders without a remedy. Citing that principle, the Trustee suggests that Essar Global, as the parent corporation, owed a fiduciary duty directly to ESML and its creditors.

The Court declines to adopt the Trustee's interpretation of the law surrounding fiduciary duties and will dismiss Count Twenty. In reaching this conclusion, the Court is persuaded by several other courts that have addressed similar arguments and declined to recognize a duty owed by a parent corporation to an insolvent wholly-owned subsidiary.[16] The Trustee cites to a number of cases that

---

[15] *In re Direct Response Media, Inc.*, 466 B.R. 626, 649 (Bankr. D. Del. 2012) ("Directors of a wholly-owned subsidiary, who otherwise would owe fiduciary duties only to the parent, also owe fiduciary duties to creditors of the subsidiary when the subsidiary enters the zone of insolvency. The reasoning for this is that when a corporation is operating in the vicinity of insolvency, a board of directors is not merely the agent for the residue of risk bearers, but owes its duty to the corporate enterprise.") (internal citations omitted).

[16] *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 415 (S.D. Tex. 2008); *In re Fundamental Long Term Care, Inc.*, 507 B.R. 359, 376 (Bankr. M.D. Fla. 2014).

impose a fiduciary duty on a parent corporation where the subsidiary has minority

shareholders.[17] These cases are immediately distinguishable, however, because

ESML did not have minority shareholders.

Again, corporate *directors*—not parent corporations—owe fiduciary duties to

the corporation. The beneficiaries of those duties are usually the corporation's

shareholders—in this case Essar Global.[18] Upon insolvency, however, the creditors

become the beneficiaries of those fiduciary duties. That does not mean that a

corporation's directors or a parent company necessarily owe a new fiduciary duty to

creditors once the enterprise is insolvent. Rather, the directors maintain their pre-

insolvency duty to the corporation and the creditors step in as beneficiaries of that

duty. *ASARCO LLC v. Am. Mining Corp.*, 396 B.R. 278, 415 (S.D. Tex. 2008).[19]

Consistent with that reasoning, the Court finds that Essar Global did not owe

a fiduciary duty to ESML. Essar Global owned ESML in full and was therefore

entitled to direct it to make payments that benefitted Essar Global to the detriment

---

[17] *In re Maxus Energy Corp.*, 571 B.R. 650, 658 (Bankr. D. Del. 2017); *Tronox v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 450 B.R. 432, 438 (Bankr. S.D.N.Y. 2011); *Teleglobe Commc'ns Corp. v. BCE, Inc. (In re Teleglobe Commc'ns Corp.)*, 493 F.3d 345, 367 (3d Cir. 2007).

[18] *ASARCO*, 396 B.R. at 415 (S.D. Tex. 2008) ("When the corporation is solvent, the beneficiaries of the duty are the shareholders of the corporation; however, if the corporation becomes insolvent, the creditors become beneficiaries of the same duties. In other words, insolvency does not create a new duty, it merely changes the beneficiaries of that duty to include creditors. In contrast, a parent corporation does note a [*sic*] owe a fiduciary duty to a wholly owned subsidiary . . . To recognize the existence of such a duty to the subsidiary and its creditors only if the subsidiary is insolvent would mean that insolvency would create a duty where one did not previously exist, instead of merely adding beneficiaries to a pre-existing duty.").

[19] This principle is further illustrated in *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, which held that the creditors of an insolvent corporation have standing to bring derivative claims for breach of fiduciary duty against the directors. 930 A.2d 92, 101 (Del. 2007). The creditors of a solvent corporation do not have standing to bring such claims. *Id.*

of ESML. The fact that ESML was insolvent and had creditors may have changed the focus of its directors' duties, but it did not impose a new fiduciary duty on Essar Global.

## VI.  CONCLUSION

For the reasons stated above, the Court will GRANT the Defendants' Motion as to Counts Five, Six, and Twenty. The Court will DENY the Motion as to Counts One through Four. The parties are requested to confer and provide a written form of order consistent with the above to the Court within 14 days of the date hereof.

Dated: May 23, 2019
        Wilmington, Delaware

Brendan Linehan Shannon
United States Bankruptcy Judge

14