## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>ESSAR STEEL MINNESOTA LLC and<br>ESML HOLDINGS INC.,<br><br>Debtors. | Chapter 11<br>Case No. 16-11626 (BLS)<br>Jointly Administered |
| KEVIN NYSTROM, solely in his capacity as<br>Litigation Trustee for Mesabi UC Litigation<br>Trust,<br><br>     Plaintiff,<br><br>v.<br><br>MADHU VUPPULURI, *et al.*<br><br>     Defendants. | Adv. Proc. No. 17-50001<br><br>Re: AP Docket Nos. 70 and 72 |

Garvan F. McDaniel, Esq.
Daniel K. Hogan, Esq.
Hogan McDaniel
1311 Delaware Avenue
Wilmington, DE 19806

Andrew K. Glenn, Esq.
Stephen W. Tountas, Esq.
Robert M. Novick, Esq.
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019

*Attorneys for Kevin Nystrom, Trustee*
*for the UC Litigation Trust*

Edward Kosmowski, Esq.
Scott Schreiber, Esq.
Clark Hill PLC
824 N. Market St., Ste 710
Wilmington, DE 19801

*Attorneys for Sanjay Bhartia*

Mark E. Felger, Esq.
Simon E. Fraser, Esq.
Cozen O'Connor
1201 North Market Street, Ste. 1001
Wilmington DE 19801

Michael L. Bernstein, Esq.
David B. Bergman, Esq.
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave. NW
Washington D.C. 20001

*Attorneys for Madhu Vuppuluri*

## OPINION[1]

The litigation before the Court arises out of a failed billion-dollar construction project in the Minnesota iron processing industry. The Plaintiff claims the project was a scheme to fatten the pocketbook of an international corporation and its billionaire founders, who he alleges looted the Debtors to fund other projects in the UAE and Nigeria. Plaintiff Kevin Nystrom, acting as the Trustee for the UC Litigation Trust (the "Trustee"), has asserted numerous claims against the corporate directors who allegedly orchestrated the scheme. Sanjay Bhartia ("Bhartia") and Madhu Vuppuluri ("Vuppuluri") have each filed Motions to Dismiss (the "Motions"). [AP Docket Nos. 70 and 72]. The Trustee opposes the Motions. [AP Docket No. 84]. For the reasons that follow, the Court finds the Trustee has failed to meet the pleading standard in Fed. R. Civ. P. 12(b)(6). Accordingly, the Court will grant the Motions, with leave to replead.

### I.    BACKGROUND

Nearly a decade ago, Debtor Essar Steel Minnesota Limited ("ESML") set out to build a state-of-the-art iron ore mine and pellet processing plant in Nashwauk, Minnesota (the "Plant"). At the time, ESML was a subsidiary of Essar Global Fund Limited ("Essar Global"), an entity that controlled a vast network of subsidiaries that spanned the globe and a spectrum of industries.[2]

---

[1] Pursuant to Fed. R. Civ. P. 52 (made applicable through Fed. R. Bankr. P. 7052), the Court does not make findings of fact or conclusions of law for purposes of a decision on a 12(b)(6) motion.

[2] Essar Global is a defendant in a separate suit in this same adversary proceeding. The Plaintiff in that action is the Trustee for the Secured Creditor's Litigation Trust (a separate trust created under the confirmed Plan in this Chapter 11 proceeding) and the facts giving rise to that action are substantially the same as those at issue here.

Starting in 2008, ESML entered a series of contracts with various Essar Global-related entities in support of the construction of the Plant. After restructuring the original contracts several times, in 2012 ESML entered a Lump Sum Turnkey Contract ("LSTK Contract") with Essar Projects Limited ("Essar Projects"), another one of Essar Global's wholly-owned subsidiaries. The LSTK Contract provides that Essar Projects would deliver a fully functional iron ore pellet plant to ESML in exchange for a fixed payment. The total estimated cost for the Plant was about $1.257 billion.

According to the Trustee, the cooperation amongst the parties effectively came to a halt when the ink dried on the LSTK Contract. By 2016, four years after the parties entered into the LSTK Contract, the project had reached a standstill and was far from completed. The Essar Global affiliates who were responsible for the construction of the Plant refused to continue working. They demanded an additional $200 million over and above the $1.1 billion ESML had already paid. To date, the Trustee alleges, the Plant is incomplete and is unusable for its intended purpose. It lacks both the necessary equipment for processing iron ore and basic functional elements like walls and electrical fixtures. The record reflects that it may cost in excess of $800 million to complete the project.

*a.  Bhartia and Vuppuluri*

Madhu Vuppuluri is the former CEO and President of ESML. He served in that role beginning in 2007 and oversaw the construction of the Plant from the

beginning. He was also a director of several other entities in the Essar Global corporate family.[3]

In 2013, after construction of the Plant had begun, ESML appointed Sanjay Bhartia as its CFO. ESML sponsored Bhartia's work visa and he relocated his family to the United States for the job. He also served as the governor of ESML from 2014 to 2015.

Vuppuluri and Bhartia (collectively, the "Defendants") have each filed proofs of claim during ESML's bankruptcy. The claims reflect general unsecured claims, each in excess of $5 million. Vuppuluri and Bhartia assert these claims for unpaid bonuses, wages, vacation pay, and indemnification for ESML's unpaid taxes.

  *b. The Transfers*

Starting in 2012, ESML made a series of payments to Essar Global and its affiliates. From ESML's perspective, the payments were intended to go toward construction of the Plant and payment of its obligations under the LSTK Contract. As the CEO and CFO, Vuppuluri and Bhartia directed ESML to make the transfers. However, the Trustee asserts that only a small portion of these payments went toward actual construction costs. Rather than use them for their stated purpose, the Trustee alleges that Essar Global diverted the majority of the funds to itself and its affiliates with no intention of repaying them or using them toward construction costs. The Trustee further alleges that, among these transactions, several million dollars went toward supporting other Essar Global projects by opening letters of

---

[3] The Trustee alleges Vuppuluri was the director of Holdings, Trinity Coal Corporation, Essar Algoma Steel, Inc., and Aegis Limited.

credit with banks in Africa and the Middle East, where Essar Global had allegedly been blacklisted as a defaulter.

Some of the transfers appeared on paper as loans to Essar Global's affiliates. However, the Trustee insists the recipients of those funds never intended to repay them and the "loan" scheme was yet another mechanism for Essar Global to loot ESML's coffers. The Trustee identifies eleven specific transfers (collectively, the "Transfers") that he alleges were made at the direction of the Defendants and to the detriment of ESML:

| Date | Transfer type and amount |
|---|---|
| March 2012 | $5 million transfer to Trinity |
| June 2012 | $79 million loan to Essar Global |
| January 2013 | $325,000 loan to Essar Global |
| January 2013 | $21 million loan to Essar Global |
| Late 2013 | $5 million release in favor of Trinity |
| November 2014 | $3.3 million payment to an Essar Affiliate |
| March 2015 | $68 million payment to Essar Projects, which was recirculated as an equity contribution from Essar Global to ESML |
| Throughout 2015 | Over-invoicing with Essar Projects |
| Throughout 2015 | $17 million to Essar Projects-India |
| Mid-2015 | Millions of dollars for a letter of credit associated with an unrelated project in India |
| Throughout 2014 and 2015 | Millions of dollars for Essar Global to open Letters of Credit for the Plant and for other projects |

All the while, the Trustee alleges, Vuppuluri and Bhartia knew ESML lacked the "solvency and liquidity to finish" the Plant. [AP Docket No. 61 at 24]. When construction stalled, ESML's resources had dwindled so low that it was unable to fund the project by itself.

On July 8, 2016 (the "Petition Date"), ESML and certain affiliates filed voluntary petitions for Chapter 11 relief. Prior to confirmation of its Chapter 11 Plan in June 2017, ESML filed this adversary proceeding alleging claims against a host of Essar Global-related entities. Pursuant to the confirmed Plan, the Trustee inherited ESML's causes of action and stepped into its shoes as the Plaintiff in this adversary proceeding.[4] The Trustee then filed a Second Amended Complaint (the "Complaint"). [AP Docket No. 61]. Bhartia and Vuppuluri collectively moved to dismiss Counts I, II, III, V, VI, and VII. They argue the facts in the Complaint fail to meet the pleading standard in Fed. R. Civ. P. 12(b)(6). In addition, they argue certain claims are barred by the statute of limitations, that other claims are barred by ESML's articles of incorporation, and that the Trustee failed to adequately allege insolvency. For clarity, the Trustee's relevant claims are as follows:

- Count I: Breach of the Duty of Loyalty against Vuppuluri and Bhartia

- Count II: Breach of the Duty of Care against Vuppuluri and Bhartia

- Count III: Aiding and Abetting Essar Global in Breach of Fiduciary Duty against Vuppuluri and Bhartia

- Count V: Aiding and Abetting Essar Global in Fraudulent Conveyances against Vuppuluri and Bhartia

---

[4] The Plan created a separate trust that inherited the Debtors' claims against Essar Global. Again, those claims are being litigated as a separate matter in this adversary proceeding.

- Count VI: Disallowance of Claim against Vuppuluri
- Count VII: Disallowance of Claim against Bhartia

The Defendants filed briefs in support of their Motions [AP Docket Nos. 71 and 73], the Trustee filed an opposing brief [AP Docket No. 84], and Vuppuluri and Bhartia each timely filed rely briefs [AP Docket Nos. 88 and 91]. The Court heard oral argument, and took the matter under advisement. This matter is ripe for disposition.

## II.   THE PARTIES' POSITIONS

Vuppuluri and Bhartia attack the Complaint from several angles. First, they argue the Trustee's claims are barred by the statute of limitations insofar as they relate to Transfers that happened outside of the Delaware's three-year statute of limitations. Second, they argue the business judgment rule and the exculpation clause in ESML's Articles of Incorporation insulate them from liability for any breach of their fiduciary duty of care. Third, they insist the Complaint fails to state a claim for breach of the duty of loyalty because it did not adequately allege the Defendants were self-dealing. Fourth, they argue the Complaint lacks sufficient facts about the Transfers and their alleged personal interest in them. Fifth, they argue that they are not liable for aiding and abetting Essar Global in breaching a fiduciary duty to ESML because no such duty exists. Finally, they argue the Trustee's disallowance of claims is not ripe because there is not yet a state court judgment that invalidates their claims.

Separately, Bhartia argues he is not liable for any breach of fiduciary duty to ESML because most of the Transfers pre-date his employment. As to those Transfers that did happen when he worked for ESML, he argues there were sufficient business justifications to support them, that he was protected by the business judgment rule, and that there is no plausible allegation of fact that would support a claim for breach of the duty of loyalty.

In reply, the Trustee agues the claims are not time-barred because Minnesota's longer statute of limitations applies. Second, he argues the business judgment rule and ESML's exculpation clause do not operate to protect directors who have engaged in bad faith. Third, he argues the facts in the Complaint, taken together and presumed to be true, are sufficient to allege ESML's insolvency at all relevant times. Fourth, he argues that the Defendants breached their duty of loyalty in that he alleges they personally benefitted from the Transfers to the detriment of ESML through substantial cash payments and the continuation of a work visa. Fifth, he argues the Defendants are liable for aiding and abetting because Essar Global dominated ESML and therefore owed it a fiduciary duty. Finally, he argues the lack of a state court judgment is irrelevant under 11 U.S.C. § 502(b)(1).

## III.   JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Court has the power to enter an order on a motion to dismiss even if the matter

is non-core or the Court lacks authority to enter a final order. *See, e.g., Boyd v. Kind Par, LLC*, No. 1:11-CV-1106, 2011 WL 5509873, at *2 (W.D. Mich. Nov. 10, 2011) ("[U]ncertainty regarding the bankruptcy court's ability to enter a final judgment . . . does not deprive the bankruptcy court of the power to entertain all pretrial proceedings, including summary judgment motions."). *See also In re Amcad Holdings, LLC*, 579 B.R. 33, 37 (Bankr. D. Del. 2017).

## IV.   STANDARD

The Defendants filed their Motions under Fed. R. Civ. P. 12(b)(6) (made applicable through Fed. R. Bankr. P. 7012) for failure to state a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F.Supp. 2d 404, 407 (D.Del 2007). When reviewing a motion to dismiss, the Court will construe the complaint "in the light most favorable to the plaintiff." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted).

## V.  ANALYSIS

### A. Timeliness

The Defendants argue that the Trustee's claims are barred by Delaware's three-year statute of limitations insofar as they relate to Transfers that occurred prior to July 8, 2013 (*viz.*, three years before the Petition Date). They argue that this Court must apply the procedural rules of the forum state and therefore Delaware's statute of limitations applies. In reply, the Trustee argues that the claims accrued in and have significant ties to Minnesota and therefore that state's six-year statute of limitations must apply.

To determine which state's statute of limitation applies, the Court applies Delaware's choice of law rules. *See, e.g., In re PHP Healthcare Corp.*, 128 Fed.Appx. 839, 843 (3d Cir.2005) (applying the choice of law rules of the state in which the bankruptcy court sits); *In re Mervyn's Holdings, LLC*, 426 B.R. 488, 502 (Bankr. D. Del. 2010). Delaware's choice of law rules require the application of "the law of the state of incorporation to issues involving corporate internal affairs." *VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1115 (Del.2005). A breach of fiduciary duty relates to the internal affairs of the corporation. *Coleman v. Taub*, 638 F.2d 628, 629 n. 1 (3d Cir.1981). Minnesota is ESML's state of

incorporation.[5] Therefore, pursuant to Delaware law, the six-year Minnesota statute of limitations applies.[6]

The filing of a petition under Chapter 11 tolls a statute of limitation to the later of (1) the expiration of the statute of limitation or (2) two years following the order for relief. 11 U.S.C. § 108(a). The Trustee has alleged breaches of fiduciary duties based on transactions from March 2012 onward. ESML filed for relief on July 8, 2016, before the Minnesota statute of limitations had expired for any of the Transfers. ESML then filed the Complaint on January 11, 2017. Applying Minnesota's six-year statute of limitations and § 108, the statute of limitations for the earliest Transfers would have expired on July 8, 2018—*after* the original Complaint was filed.[7] Therefore, the claims were properly asserted within the statute of limitations and none of the Trustee's claims are time barred.[8]

### B. Count I: Breach of the Duty of Loyalty

The Trustee alleges the Defendants breached their duty of loyalty by authorizing payments that hurt ESML and its creditors in exchange for money and

---

[5] Docket No. 14 at 3. ESML's parent company, ESML Holdings Inc., is incorporated in Delaware. *Id.*

[6] The Trustee also argues the doctrine of equitable tolling preserves his breach of fiduciary duty claims. In light of the determination that the Minnesota statute of limitations applies, the Court does not reach the question of whether the claims were equitably tolled.

[7] The Second Amended Complaint asserts claims against the same parties that arose out of the same conduct as that in the original Complaint. Therefore, the Second Amended Complaint relates back to the original Complaint pursuant to Fed. R. Civ. P. 15(c)(1)(B).

[8] The Trustee suggests that August 13, 2018, the date the Second Amended Complaint was filed, is the day the breach of fiduciary claims were asserted. [AP Docket No. 84 at 31 n. 13]. That would put the claims from March and June 2012 *outside* the statute of limitations, which expired for those Transfers two years after the petition date on July 8, 2018. But, as noted, the breach of fiduciary claims based on the 2012 Transfers were asserted in the original Complaint in January of 2017, well within the statute of limitations.

favors from Essar Global executives. Generally, when a corporation is owned by a single entity, the directors' fiduciary duties serve only that parent entity. The directors must therefore "manage the affairs of the subsidiary in the best interests of the parent and its shareholder." *Trenwick America Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 200 (Del. Ch. 2006). The focus of the duty of loyalty changes, however, if the subsidiary encounters financial insecurity. Once the subsidiary enters the zone of insolvency, the directors "become fiduciaries of the corporate assets for the benefit of creditors." *Snyder Elec. Co. v. Fleming*, 305 N.W.2d 863, 869 (Minn. 1981).

The parties do not dispute that when a wholly-owned subsidiary is solvent, the sole beneficiary of the directors' duty of loyalty is the parent corporation. If ESML was solvent, therefore, the Trustee would have no claim for breach of fiduciary duty because the Transfers all benefitted Essar Global, the parent corporation. The Trustee would have a claim only if ESML was insolvent. Thus, as a gateway matter, the Complaint must have alleged ESML was insolvent before, or rendered insolvent by, the Transfers.

### a. Insolvency

The Defendants maintain that the Complaint lacked any assertion that ESML was insolvent. In reply, the Trustee first underlines his allegation that ESML "lacked the solvency and liquidity to complete" the Plant and that "ESML was insolvent . . . at the time of the [directors' conduct]." [AP Docket No. 61 at 24 and 28]. Second, the Trustee argues that the factual allegations, taken together,

sufficiently allege that ESML was insolvent. He notes that ESML was "completely new" and had assumed "billions of dollars in debt" to support construction of a Plant that never became operational. [AP Docket No. 84 at 19]. At oral argument, the Trustee compared ESML to an industrial start-up that had conducted "no business activity" and had "about a billion-and-a-half in secured debt." [AP Docket No. 107]. In other words, the Trustee suggests ESML's insolvency was so obvious from the sum of the facts and context of the Complaint that, for purposes of 12(b)(6), he adequately articulated insolvency.

The Court finds the Trustee has adequately pleaded insolvency. In reaching this conclusion, the Court is persuaded by the Trustee's straightforward allegation that ESML was insolvent, in addition to the balance of his factual allegations. The Complaint repeatedly alleges that "ESML was insolvent or operating in the zone of insolvency at the time of the conduct alleged." [AP Docket No. 61]. Several courts, including this one, have held that similar statements are sufficient to properly allege insolvency at the 12(b)(6) stage.[9]

Moreover, even if the word "insolvency" alone was an insufficient shibboleth, the Complaint still contains facts that adequately allege that ESML was insolvent. The Complaint asserts ESML had assumed a staggering amount of debt and lacked a meaningful revenue stream. Meanwhile, the Trustee alleges, its parent

---

[9] *In re Pitt Penn Holding Co., Inc.*, No. 09-11475, 2011 WL 4352373, at *10 (Bankr. D. Del. Sept. 16, 2011); *In re Petters Co., Inc.*, 495 B.R. 887, 923 (Bankr. D. Minn. 2013), *as amended* (Aug. 30, 2013) ("[T]here was no need to make dollar-specific averments of fact going to the status of the relevant Debtor's balance sheet.").

corporation was diverting ESML's dwindling assets to other projects and conferring nothing upon ESML in return. The need for funds became apparent as early as 2011, when ESML asked Essar Global for equity contributions. When construction slowed in 2015, the Trustee posits that ESML "wanted to ramp up work on the [Plant], but lacked the funds necessary to do so." [AP Docket No. 61]. Without enough cash on hand, ESML was unable to "pay subcontractors retained to perform the work." *Id.* In other words, ESML was unable to "pay debts as they [fell] due." Insolvency Definition, *Black's Law Dictionary* (10th ed. 2014). Based on the alleged poor condition of the Plant, it would also appear it had "debts . . . greater than all of if [its] property, at a fair valuation." 11 U.S.C. § 101(32)(A).

The inquiry under 12(b)(6) is "not whether the plaintiff will ultimately prevail but only whether the plaintiff is entitled to offer evidence of its claims." *In re Scott Acquisition Corp.*, 344 B.R. 283, 290 (Bankr. D. Del. 2006). The Trustee has met that burden.

### b. Duty of Loyalty

The duty of loyalty stands for the principle that "the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder." *In re Fedders N. Am., Inc.*, 405 B.R. 527, 540 (Bankr. D. Del. 2009). To state a claim for breach of loyalty, the Trustee must have alleged that "a self-interested transaction occurred, and that the transaction was unfair to [ESML]." *Id.*

For reasons that follow, the Court finds that the Trustee has failed to sufficiently allege that either Vuppuluri or Bhartia engaged in a self-interested transaction and has therefore failed to state a claim for a breach of the duty of loyalty.

### i.    *Vuppuluri*

The Trustee alleges Vuppuluri breached his duty of loyalty when he authorized the Transfers in exchange for a payment to him of millions of dollars "at or around the time when ESML had loaned funds to Essar Global." [AP Docket No. 61 at 31]. He also asserts Vuppuluri knew he would "reap substantial personal financial benefit" by carrying out the instructions of senior Essar Global executives. *Id.*

The Court finds these allegations fall short of asserting that Vuppuluri had a personal interest in the Transfers. Taking the factual allegations in the Complaint as true, there is no causal link alleged between the payment to Vuppuluri and the Transfers to Essar Global. Per the Complaint, the million-dollar "pay off" just as easily could have been Vuppuluri's salary and compensation. The Trustee suggests the transactions were connected because Vuppuluri received the payment "around the time" of the Transfers. But the timing of the payment does necessarily link it to the Transfers, especially when the Trustee has merely alleged that it happened sometime "around" the three years between 2012 and 2015.

Without more specificity, the Court must accept the "obvious alternative explanation"—that the payment *was* Vuppuluri's salary. *Iqbal*, 556 U.S. at 682

(noting a claim is not plausible where there is a more likely explanation for the behavior at issue). As CEO of ESML and various other Essar entities, Vuppuluri oversaw several arms of the Essar enterprise, including the construction of a billion-dollar processing facility. Given his responsibilities and his high profile in the company, it would not be shocking if he earned compensation equaling "millions of dollars" over a three-year period.

In addition, claims for breach of the duty of loyalty are notably—and intentionally—difficult claims to assert. Classic examples of director self-interest in a business transaction involve "a director appearing on both sides of a transaction or a director receiving a personal benefit from a transaction not received by the shareholders generally." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 362 (Del. 1993). An allegation that a director received a large salary is not enough—if it were then virtually all shareholders could allege claims for breach of fiduciary duty whenever a director made a decision that didn't turn out as well as hoped.[10] At a minimum, there must be some suggestion that the director gained a benefit from the transaction that was over and above the salary he or she would have been entitled to anyway.

The Complaint does not contain any facts that directly link the Transfers and the multi-million-dollar payment. It therefore does not give rise to the presumption

---

[10] That analysis is different when the director's actions hurt the corporation and lead directly to increasing the director's compensation. Courts routinely a find breach of the duty of loyalty where a director has, for example, overstated corporate earnings in order to increase an incentive-based bonus. *See, e.g., Miller v. U.S. Foodservice, Inc.*, 361 F. Supp. 2d 470, 481 (D. Md. 2005). These circumstances are absent from the case at bar.

that Vuppuluri had a personal interest in the transaction and it falls short of the heavy burden imposed on meeting the standard for breach of the duty of loyalty.

*ii.    Bhartia*

The Trustee argues that Bhartia personally benefitted from the Transfers by virtue of his work visa. He suggests that if Bhartia refused to go along with the scheme, then Essar executives could have revoked his right to work in the United States and he and his family would have been deported or otherwise required to leave the United States. This, the Trustee claims, is sufficient to state a claim that Bhartia was personally interested in the Transfers.

For reasons similar to those stated above, the Court will dismiss the Trustee's claim that Bhartia violated his duty of loyalty. Accepting the Trustee's allegations as true, Bhartia did not engage in any self-dealing. He gained the visa through his employment with ESML and it was a necessary condition for him to work in the United States. Again, the Complaint does not state facts that suggest there was a causal link between the Transfers and the visa. The Trustee theorizes the visa was some kind of bribe, but again the "obvious alternative explanation" is that ESML sponsored Bhartia's visa by virtue of his employment. *Id.* Other than the Trustee's conclusory statements, there is nothing in the record that suggests Essar Global continued its sponsorship of the visa because Bhartia facilitated the Transfers.

## C. Count Two: Breach of Duty of Care

The Trustee has alleged Vuppuluri and Bhartia breached their duty of care when they authorized payments and loans to Essar Global and its affiliates. The duty of care requires corporate officers to "act on an informed basis." *In re USDigital, Inc.*, 443 B.R. 22, 41 (Bankr. D. Del. 2011). The focus of the Court's inquiry is not the merits of the officers' ultimate decision. Rather the Court must analyze the process leading up to the decision and whether the officers "inform[ed] themselves of all material information reasonably available to them." *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 192 (Del. Ch. 2005). Corporate directors are not required to have intimate knowledge of every routine business transaction, but may still be held liable for "a sustained and systemic failure . . . to exercise oversight." *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996).

The Defendants argue the Complaint fails to state a claim for breach of care because it lacks any allegations relating the Defendants' decision-making process. In addition, they note that ESML's articles of incorporation contain an exculpation provision that insulates its directors from liability for breach of a fiduciary duty.[11]

---

[11] The Court takes judicial notice of ESML's articles of incorporation. Generally, when considering a 12(b)(6) motion, the Court does not take into account documents other than the pleadings themselves. However, pursuant to Fed. R. Evid. 201(b), the Court may take judicial notice of and consider a fact that can be "determined from sources whose accuracy cannot reasonably be questioned." *See McPadden v. Sidhu*, 964 A.2d 1262, 1274 n.28 (Del. Ch. 2008) ("The court may take judicial notice of [a company's] certificate [of incorporation] in deciding a motion to dismiss."). In their briefs, the Defendants provided copies and requested the Court take judicial notice of the articles of incorporation and the Trustee did not contest the propriety of taking judicial notice thereof.

The Trustee replies that allegations about the process are irrelevant because the breach occurred when the Defendants blindly followed the orders of Essar Global's executives. In addition, he argues the exculpation provision is inapplicable here, where the Defendants have engaged in bad faith.

Minnesota, like Delaware, permits corporations to limit the liability of their managers and governors. Minn. Stat. § 322C.0110, subd. 7; Del Code Ann. Tit. 6, § 18-1101(e). ESML exercised that option, and its articles of incorporation provide that its governors "shall not be personally liable . . . for breach of fiduciary duty." [AP Docket No. 71].[12] Other courts, addressing substantially identical exculpation provisions in similar circumstances, have held that when an exculpation provision is raised against a duty of care claim "that is the end of the case."[13] In light of that precedent, the Court finds the exculpation provision shields the Defendants from liability and the Trustee has failed to state a claim for breach of the duty of care.

Even if ESML's Articles of Incorporation did not have an exculpation provision, Count Two would still be dismissed because the Trustee has failed to meet the pleading standard in 12(b)(6). The Complaint contains no facts relating to the Defendants' decision-making process. The Trustee, citing various cases, argues

---

[12] Pursuant to Minnesota law, the exculpation provision cannot excuse a director from a breach of the duty of loyalty. Minn. Stat. § 322C.0110, subd. 7(1).

[13] *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 567 (Bankr. D. Del. 2008) (quoting *In re IT Grp. Inc.*, No. 02-10118, 2005 WL 3050611, at *1 (D. Del. Nov. 15, 2005)); *In re Fedders N. Am., Inc.*, 405 B.R. 527, 543 (Bankr. D. Del. 2009); *Malpiede v. Townson*, 780 A.2d 1075, 1094 (Del. 2001). *See also In re Xcel Energy, Inc.*, 222 F.R.D. 603, 606 (D. Minn. 2004) ("Shareholder derivative actions are relatively rare in Minnesota. Thus, Minnesota courts often look to the decisions of Delaware courts for guidance in this area.").

the Defendants breached their duty of care when they heedlessly followed the orders of Essar Global executives. The cases cited by the Trustee, however, are inapposite. In each of those instances, the plaintiff had made extensive allegations about specific examples of the corporate directors failing to seek and consider relevant information.[14] Those plaintiffs had made affirmative allegations relating to internal discussions amongst corporate directors that suggested those directors had "adopted a 'we don't care about the risks' attitude."[15]

In contrast, the Trustee has not articulated any specific instances that would suggest the Defendants had adopted such a cavalier attitude to facts. In the absence of any factual allegation the Defendants failed to pursue and consider relevant information related to the Transfers, the Court finds the Trustee has failed to state a claim for breach of the duty of care.

The Trustee further insists the duty of care claims may not be dismissed as a matter of law because, first, the exculpation provision is an affirmative defense and therefore not ripe for consideration on a motion to dismiss. Second, he argues the

---

[14] *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275 (Del. Ch. 2003) (holding plaintiff had stated a claim for breach of care when directors approved an employment contract for the CEO's long-time friend with little discussion, against the recommendations of experts, without seeing the actual contract, and without detailed information relating to salary, stock options, or termination).

[15] *In re Tower Air, Inc.*, 416 F.3d 229, 240 (3d Cir. 2005) (noting the foundation of the breach of care claims were board minutes that "reflect[ed] that the aircraft engine outlays were made with no discussion.").

Minnesota statute expressly prohibits companies from exculpating a breach of duty of care when it relates to distributions that render the company insolvent.[16]

The Trustee's first argument is unavailing in light of his failure to plead sufficient facts. The Trustee is right to note that affirmative defenses, such as an exculpation clause, are generally not considered at the 12(b)(6) stage.[17] But that is not the end of the inquiry. The Trustee must still plead facts that tend to show the Defendants acted in bad faith and that he could at least potentially overcome the exculpation provision at trial. *In re Direct Response Media, Inc.,* 466 B.R. 626, 651 (Bankr. D. Del. 2012).[18] The roots of this principle can be found in *Emerald Partners v. Berlin,* where the Delaware Supreme Court held that "where the factual basis for a claim solely implicates a violation of the duty of care, . . . the provisions of [an exculpation provision] may properly be invoked and applied."[19] The Supreme Court of Delaware interpreted that language to mean that an exculpation clause may be grounds for dismissal of a duty of care claim where the complaint fails to properly invoke bad faith or a breach of the duty of loyalty. *Malpiede v. Townson,* 780 A.2d 1075, 1093 (Del. 2001).

---

[16] The Trustee also argues the exculpation provision cannot protect the Defendants because they were engaged in self-dealing. For reasons described above, the Trustee failed to state that the Defendants were self-interested in the Transfers and the Court will disregard this argument.

[17] *In re Tower Air,* 416 F.3d at 238 (reasoning that granting dismissal where the defendant has asserted an affirmative defense would "effectively transform Rule 12(b)(6) motions into multi-purpose summary judgment vehicles.").

[18] "The exculpation clause is an affirmative defense and the determination of the viability of that defense is not proper at [the dismissal] stage . . . However, where a complaint does not adequately contain facts supporting a claim that directors acted in bad faith or conscious disregard of their responsibilities, Rule 12(b)(6) dismissal is appropriate." (internal citations omitted).

[19] 726 A.2d 1215, 1224 (Del. 1999).

As noted, the Complaint does not contain facts that suggest the Defendants acted in bad faith or that they breached their duties of loyalty and care. The exculpation clause is therefore appropriate grounds for 12(b)(6) dismissal.

The Minnesota statute likewise does not save the Trustee's claims. Minnesota law prohibits a company from exculpating "a breach of duty under section 332C.0406," which states in relevant part:

> [I]f a member of a member-managed limited liability company, manager of a manager-managed limited liability company, or governor of a board-managed limited liability company consents to a distribution made in violation of section 322C.0405 (a distribution that renders the company insolvent) and in consenting to the distribution fails to comply with section 322C.0409 (standards of conduct, including duty of care), the member, manager, or governor is personally liable to the company for the amount of the distribution that exceeds the amount that could have been distributed without the violation of section 322C.0405.

Minn. Stat. § 332C.0110, subd. 7, citing Minn. Stat. § 332C.0406. Put simply, a corporation cannot exculpate a breach of the duty of care for a distribution made while the company is insolvent.[20] But the Minnesota statute and ESML's insolvency are irrelevant here. Again, the Trustee failed to state facts alleging that the Defendants failed to inform themselves of relevant information when they approved the Transfers. For those reasons, Count Two of the Complaint will be dismissed.

### D. Count Three: Aiding and Abetting Breach of Fiduciary Duty

The Trustee asserts the Defendants aided and abetted Essar Global in violating a fiduciary duty to ESML. For this claim to survive, the Trustee must

---

[20] *See* Brett Olson, *Contributions and Distributions*, 20 Minn. Prac., Business Law Deskbook § 3:37 (2018).

have alleged (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by the Defendants, and (4) damages. *See In re DSI Renal Holdings, LLC*, 574 B.R. 446 (Bankr. D. Del. 2017). The Defendants argue the Trustee has failed to satisfy the first prong because Essar Global did not owe ESML a fiduciary duty.

In general, a parent corporation does not owe a fiduciary duty to its wholly-owned subsidiary. *Trenwick*, 906 A.2d at 173. If it did, it would "essentially owe a fiduciary duty to itself." *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 415 (S.D. Tex. 2008). Flowing from that principle, the directors of a wholly-owned subsidiary generally owe fiduciary duties only to the parent corporation. *Direct Response Media*, 466 B.R. at 649. As the company enters the zone of insolvency, however, those directors "also owe fiduciary duties to creditors of the subsidiary." *Id.* While the focus of the directors' duties may change, the duties owed by the parent corporation (or lack thereof) remain the same.[21]

The Trustee admits ESML was Essar Global's wholly-owned subsidiary, yet he insists that Essar Global owed it a fiduciary duty. The Trustee suggests this case is exceptional because Essar Global exercised domination and influence over ESML. He cites to various cases that stand for the principle that a controlling shareholder

---

[21] *ASARCO*, 396 B.R. at 415 ("When the corporation is solvent, the beneficiaries of the duty are the shareholders of the corporation; however, if the corporation becomes insolvent, the creditors become beneficiaries of the same duties. In other words, insolvency does not create a new duty, it merely changes the beneficiaries of that duty to include creditors. In contrast, a parent corporation does note a [*sic*] owe a fiduciary duty to a wholly owned subsidiary . . . To recognize the existence of such a duty to the subsidiary and its creditors only if the subsidiary is insolvent would mean that insolvency would create a duty where one did not previously exist, instead of merely adding beneficiaries to a pre-existing duty.").

owes a fiduciary duty to the corporation and its other shareholders.[22] Those cases are immediately distinguishable, however, because they address non-wholly-owned subsidiaries. In those scenarios, courts have imposed fiduciary duties on controlling shareholders to protect minority shareholders, who may be vulnerable to potential self-dealing by the entity in control. That principle has no application here, where Essar Global is the sole shareholder.

The Court agrees with the Defendants and will grant their Motions on Count Three. Essar Global never owed a fiduciary duty to ESML. As the sole shareholder, Essar Global likely did exercise domination and control over ESML. That is consistent with the parent-subsidiary relationship because "[w]holly-owned subsidiary corporations are expected to operate for the benefit of their parent corporations; that is why they are created." *Trenwick*, 906 A.2d at 173. Having fallen short of stating the existence of a fiduciary duty, the Complaint has failed to allege that the Defendants aided and abetted in breaching a fiduciary duty.

### E. Count Five: Aiding and Abetting Fraudulent Conveyances

The Complaint asserts the Defendants aided and abetted Essar Global in making fraudulent conveyances. The Defendants argue the Trustee cannot bring that kind of claim as a matter of federal law. The Trustee concedes this point to the Defendants and acknowledges that this case "involves similar issues to *In re Fedders N. Am. Inc.*, 405 B.R. 527 (Bankr. D. Del. 2009). Accordingly, [he]

---

[22] *Advanced Comm'n Design, Inc. v. Follett*, 615 N.W. 2d 285, 293 (Minn 2000); *Blum v. Thompson*, 901 N.W.2d 203 (Minn. Ct. App. 2017); *Harris v. Carter*, 582 A.2d 222 (Del. Ch 1990).

understands that the claim may be subject to dismissal, and [he] preserves the claim solely for purposes of appeal." [AP Docket No. 84].

The Trustee also admits that the "Minnesota Supreme Court has not yet made a determination" on whether a claim for aiding and abetting fraudulent conveyance exists. *Id.* In light of the Trustee's admissions, the Court will dismiss the Trustee's claim for aiding and abetting fraudulent conveyance contained in Count Five.

F. *Counts Six and Seven: Disallowance of Claims*

The Defendants have filed proofs of claim against ESML for unpaid bonuses, wages, vacation pay, and indemnification. The Trustee seeks to disallow those claims under 11 U.S.C. § 502(b)(1), which provides that the Court may disallow a claim to the extent it "is unenforceable against the debtor . . . under any agreement or applicable law." *Id.* The Trustee alleges the Defendants' claims are unenforceable because, pursuant to Minnesota law, they forfeited their compensation when they violated their fiduciary duties.

Consistent with reasons stated above, the Court will dismiss Counts Six and Seven because the Trustee has failed to state a claim for breach of a fiduciary duty. Minnesota law provides than an employee forfeits his agreed-upon compensation during the period of faithless service. *Stiff v. Associated Sewing Supply Co.*, 436 N.W.2d 777 (Minn. 1989). That principle, known as the Faithless Servant Doctrine, provides that an employee is not entitled to compensation for conduct that is

disobedient or that is a breach of his or her duty of loyalty.[23] The Trustee relies on his argument that the Defendants breached their duty of loyalty to support his Faithless Servant Doctrine theory.[24] As described above, however, the Trustee has failed to state a claim for breach of a fiduciary duty. Therefore, he has also failed to state a basis to disallow the Defendants' claims under the Faithless Servant Doctrine.

## VI.    CONCLUSION

For the reasons stated above, the Court will grant the Defendants' Motions to Dismiss with leave to replead. The parties are requested to confer and submit a proposed form of order consistent with this ruling within 14 days of the date hereof.

Dated: May 23, 2019
      Wilmington, Delaware

Brendan Linehan Shannon
United States Bankruptcy Judge

---

[23] *See* Barbara J. Van Arsdale, *Application of the "Faithless Servant Doctrine"*, 24 A.L.R. 6th 399 (2007).

[24] The Complaint also alleges the Defendants' claims are unsupported by any documents. The Trustee did not raise the issue in his brief or at oral argument. Because the Trustee failed to raise it, this argument will be deemed waived. *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 202 (3d Cir. 2004).