# **EXHIBIT 1**

DOCS_DE:224435.1 56774/001

AMERICAS 99994278

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,[1] | Case No. 16-11626 (BLS) |
| | (Jointly Administered) |
| Debtors. | |
| BRADLEY E. SCHER, solely in his capacity as Litigation Trustee for ~~Mesabi~~ SC Mesabi Litigation Trust, | |
| Plaintiff | |
| v. | |
| ESSAR GLOBAL FUND LIMITED; ESSAR PROJECTS LIMITED; ESSAR PROJECTS USA, LLC; ESSAR PROJECTS (INDIA) LIMITED; ESSAR PROJECT MANAGEMENT COMPANY LIMITED; ESSAR CONSTRUCTIONS LIMITED; ESSAR PROJECTS MIDDLE EAST FZE; ESSAR ENGINEERING SERVICES LIMITED; GLOBAL SUPPLIES FZE; ESSAR LOGISTICS LIMITED; DOES 1-500 | Adv. Proc. No. 17-50001 (BLS) |
| Defendants. | |

## ~~SECOND~~THIRD AMENDED COMPLAINT AND SUBSTANTIVE AND NON-SUBSTANTIVE OBJECTIONS TO CLAIM NOS. 179-186

---

[1] Essar Steel Minnesota LLC ~~is doing business as~~has changed its name to Mesabi Metallics Company LLC.  The last four digits of its federal taxpayer identification number are 8770.  The last four digits of ESML Holdings Inc.'s federal taxpayer identification number are 8071.

AMERICAS ~~95090466 v~~100122436

Bradley E. Scher, in his capacity as the Litigation Trustee[2] for the SC Mesabi Litigation Trust (the "**SC Litigation Trustee**" or "**Plaintiff**") established pursuant to the *Third Amended Chapter 11 Plan of Reorganization of Mesabi Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc.* [D.I. 990] (the "**Plan**") confirmed in the above-captioned jointly administered chapter 11 case, hereby brings this ~~Second~~Third Amended Complaint ("**Complaint**"), ~~including~~ for breach of contract, fraudulent transfer, ~~breach of fiduciary duties and~~ aiding and abetting breach of fiduciary duties, tortious interference with contract, promissory estoppel, claims disallowance, equitable subordination, declaratory relief regarding alter ego, and alter ego against certain affiliates of Essar Steel Minnesota LLC ~~d~~n/~~b~~k/a Mesabi Metallics Company LLC ("**ESML**").

### NATURE OF THE CASE

1.    At all times relevant to the Complaint, ESML ~~is~~was a wholly owned subsidiary of Essar Global Fund Limited ("**Essar Global**"), a large, multinational enterprise that controls many businesses in an array of industries.  Essar Global acquired ESML to build and own a large-capacity, state-of-the-art iron ore mine and pellet plant to be constructed in Nashwauk, Minnesota (the "**Project**").  Essar Global and its affiliates, including in particular Essar Projects Limited (Dubai) ("**Essar Projects**"), orchestrated and directed every material aspect of ESML's business.  They approved and controlled all financing efforts.  They prepared all technical feasibility reports and engineering and design plans necessary to make decisions to construct the Project.  They dictated all contractual terms, including as to the scope of the Project and its price. They directed the Essar Affiliates to whom ESML would pay money, how much would be paid,

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

and when.  And under the governing Project Contracts, as set forth herein, certain Essar Affiliates were obligated to complete the Project, and Essar Global was obligated to financially guarantee its completion.

2.      From 2008 to 2016, ESML paid Essar Global and its various affiliates over $1.1 billion to complete the Project – everything it was obligated to spend under the governing Project Contracts.  But ESML is left with a half-completed iron ore pellet plant that will cost hundreds of millions of dollars more to finish; and ESML is burdened with over a billion dollars in claims asserted against it that are directly attributable to the Essar Affiliates' failures to fulfill their obligations with respect to the Project.  These circumstances resulted from a course of conduct in which ESML was treated as if it existed solely for the benefit of the Essar Global enterprise, without regard for ESML's interests or its creditors.

3.      Essar Global and multiple Essar Affiliates, often acting in concert, funneled money paid to them for Project uses to wherever it was deemed to be needed by those in control of Essar Global and Essar Affiliates, without regard for corporate structures, operative contracts, or the law – or any repayment ability.

4.      Indeed, of the over $1.1 billion ESML paid to Essar Affiliates, almost half (approximately $500 million) was not even used on the Project even though it was needed to complete engineering, procurement and construction ("**EPC**") work – for example:

- Essar Projects collected approximately $377 million from ESML earmarked for domestic construction and procurement for the Project, but Essar Projects utilized over $185 million of such funds for non-Project purposes, including a mobilization advance of $111.5 million paid to jumpstart the Project;

- Essar Affiliates charged ESML approximately $438 million for overseas

procurement of goods that cost only approximately $155 million to acquire – generating a $280+ million profit.

5.    The siphoning of hundreds of millions of dollars from ESML was part of a larger effort to shore up the finances Essar Global that treated ESML as part of a single enterprise for the benefit of Essar Global without regard to ESML's financial condition.  As part of that effort Essar Projects itself transferred approximately $800 million to Essar Global, including hundreds of millions paid by ESML to EPL under the contract to build the never-completed Project. Although the full extent of the Essar Affiliates' transmutations of the funds paid by ESML await discovery, such misuses were rampant and often occurred at a time when the Project was starved for cash and without regard for the receiving Essar Affiliates' ability to repay the funds.  For example:

- Funds originating from ESML were used for improper purposes including the payment of debt of Essar Affiliates unrelated to the Project;

- Approximately $316 million of ESML's funds paid to Essar Affiliates to be used for EPC work on the Project were instead sent to Essar Global, which was not performing any EPC work or providing any EPC service associated with the Project;

- Essar Global took funds borrowed by ESML and paid to Essar Projects for EPC work to be done on the Project and used those same funds to make equity contributions to ESML required to unlock further debt, though then much of the unlocked debt was not utilized to complete the Project.

6.    The Essar Affiliates also harmed ESML through a myriad of damaging actions, all taken with the knowledge of ESML's former CEO, but incentivized by the needs of Essar

AMERICAS 95090466 v1 100122436

Global and preferred Essar Affiliates rather than the needs of ESML, that exacerbated ESML's cash starved financial position, devastating ESML's ability to continuously fund the Project through completion.  For example:

- ESML transferred millions of dollars to affiliates not working on the Project in return for absolutely no value;

- ESML was forced to mobilize and demobilize Project work inefficiently at a cost of millions of dollars for the purpose of benefitting Essar Affiliates by unlocking ESML debt that would then not even be utilized on the Project itself;

- ESML "loaned" to Essar Global approximately $100 million of ESML's loan proceeds from banks that lenders had required to be used on the Project, depriving ESML of funds needed for Project work for years.

7.      Essar Global failed utterly in its obligations to contribute sufficient equity to ESML.  Incrementally, the failures to timely contribute equity damaged ESML during the course of the Project.  For example:

- ESML undertook a $450 million bond offering based on Essar Global's promise to provide hundreds of millions of dollars in equity contributions; ESML incurred costs of over $40 million in connection therewith, yet received no funds because Essar Global failed to provide agreed upon equity contributions and directed ESML to pursue alternate financing;

- Essar Global similarly failed to make tens of millions of dollars in required equity contributions to ESML that would have provided ESML with operating capital and unlocked additional debt from lenders.

8.      Moreover, Essar Global ultimately abnegated its obligations to contribute all

AMERICAS 95090166 v1100122436

equity necessary for the completion of the Project – i.e. to cover any and all costs over the $1.8 billion that ESML has already expended necessary to complete the Project, in accordance with Essar Global's obligations under an Equity Contribution Agreement.

9.       This action seeks in excess of $1 billion as recompense for the damages inflicted upon ESML by the Defendants' wrongful conduct, including: (1) the Project was not completed for the contracted price or on time; (2) ESML did not receive reasonably equivalent value for the over $1.1 billion it paid the Essar Affiliates; (3) the Defendants' misconduct rendered the Project more expensive for ESML; (4) the Defendants caused ESML to suffer hundreds of millions of dollars in additional damages and lost profits resulting from the failure to complete the Project on time; and (5) the Defendants wrongfully caused ESML to make payments and incur expenses that are not even attributable to the Project and rather simply reflect the siphoning of money out of ESML to other Essar Affiliates that had a need for it at the time – most notably, Essar Global itself.

10.      In addition, Essar Global and certain persons in control of the Essar Global enterprise (collectively, "**Controlling Persons**") exercised pervasive domination and control over ESML, its board and over each of the Essar Affiliates.  As a result, Essar Global is liable on ESML's claims against each of the Essar Affiliates and legally responsible for all of ESML's debts and liabilities.

## JURISDICTION AND VENUE

11.      This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

12.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (F), (H),

AMERICAS 95090466 v1100122436

and (O).

13.     This Court has personal jurisdiction over Defendants pursuant to Bankruptcy Rule 7004.

14.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

15.     All Defendants are properly joined in this action pursuant to Rule 20 of the Federal Rules of Civil Procedure, made applicable by Rule 7020 of the Federal Rules of Bankruptcy Procedure, because the right to relief asserted against all Defendants arises out of the same transaction, occurrence, or series of transactions and occurrences, and questions of law and fact common to all defendants and/or certain categories of defendants will arise in this action.

**PARTIES**

A. **Plaintiff**

16.     Plaintiff is Bradley E. Scher ~~as the Litigation Trustee of,~~ the SC Litigation ~~Trust duly created in the confirmed Plan and on behalf of the SC Litigation Trust.  The SC~~Trustee.  The SC Mesabi Litigation Trust is vested with the causes of action set forth herein by the Plan and the SC Litigation Trustee is authorized to act for the SC Mesabi Litigation Trust, including, as stated in the Plan, to "prosecute, compromise, transfer, release, abandon, and/or settle the Transferred Causes of Action and the objections to Trust Claims" on behalf of the SC Mesabi Litigation Trust and to "investigate, object, prosecute and/or settle . . . the Claims, liens, or security interests, including, without limitation . . . based on or related to the information gathered and the subjects investigated in the investigation conducted by [ESML] in preparing the complaint styled, *Essar Steel Minnesota LLC v. Essar Global Fund Limited*, Adv. No. 17-50001 (BLS), filed in the Bankruptcy Court on January 11, 2017 . . . (whether or not enumerated or alleged in the Complaint)."  All of the claims described herein are Transferred Causes of Action

that are assets of the SC Mesabi Litigation Trust.

**B. Essar Affiliate Defendants**

17. Essar Global: on information and belief, Essar Global is a company organized under the laws of the Cayman Islands, and formerly known as Essar Global Limited. Essar Global describes itself as "an investment fund managed by its investment manager, Essar Capital Limited." Essar Global is the ultimate parent of a massive web of hundreds of entities conducting business or holding investment assets in an array of industries (collectively, in whole or in part, the "**Essar Affiliates**"). At all times relevant to the Complaint, ESML iswas an indirect wholly owned subsidiary of Essar Global.

18. Essar Projects: on information and belief, Essar Projects is a company organized under the laws of the United Arab Emirates, and is a wholly owned subsidiary of Essar Global.

19. Essar Projects USA, LLC ("**Essar Projects-US**"): on information and belief, Essar Projects-US is a Delaware limited liability company, and is a wholly owned subsidiary of Essar Projects.

20. Essar Projects (India) Limited ("**Essar Projects-India**"): on information and belief, Essar Projects-India is a company organized under the laws of India, and is a wholly owned subsidiary of Essar Projects.

21. Essar Project Management Company Limited ("**Essar Project Management**"): on information and belief, Essar Project Management is a company organized under the laws of the United Arab Emirates, and is a wholly owned subsidiary of Essar Projects.

22. Essar Constructions Limited ("**Essar Constructions**"): on information and belief, Essar Constructions is a company organized under the laws of the United Arab Emirates, and is a wholly owned subsidiary of Essar Project Management.

8

23.     Essar Projects Middle East FZE ("**Essar Projects-Middle East**"): on information and belief, Essar Projects-Middle East is a company organized under the laws of the United Arab Emirates, and is a wholly owned subsidiary of Essar Projects.

24.     Essar Engineering Services Limited ("**Essar Engineering**"): on information and belief, Essar Engineering was a company organized under the laws of India and is currently operating as a division of Essar Projects-India.

25.     Global Supplies FZE ("**Global Supplies**"): on information and belief, Global Supplies is a company organized under the laws of the United Arab Emirates, and was a wholly owned subsidiary of Essar Projects at least until 2012.

26.     Essar Logistics Limited ("**Essar Logistics**"): on information and belief, Essar Logistics is a company organized under the laws of India, and is an indirect wholly owned subsidiary of Essar Global.

## FACTS

27.      From its inception, ESML was completely reliant upon its affiliates, all of which are wholly owned subsidiaries of Essar Global, for virtually all of the key aspects of its business plan and operations.  ESML's interactions with its affiliates for construction of the Project were never handled on an arm's-length basis.  Instead, the contracts governing its engineering, procurement, and construction (collectively, the "**Project Contracts**") were structured and re-structured by senior management across multiple Essar Global entities for the benefit of the Essar Global enterprise as a whole and were designed to manipulate responsibilities and provide the most profit to entities not subject to U.S. taxation.  Moreover, the Essar Affiliates often ignored the structure and responsibilities set forth in the Project Contracts altogether.

9

A. **Governing Project Contracts**

    a. **2008 Project Contracts**

28.    ESML entered into the first set of Project Contracts with its affiliates in late 2008 (collectively, the "**2008 Project Contracts**").  On information and belief, the 2008 Project Contracts were not the result of arm's-length negotiations.  They were not prepared by ESML, and ESML, which had very few employees at the time it entered into the 2008 Project Contracts, executed the 2008 Project Contracts presented to it without substantive comment.

29.    The 2008 Project Contracts are ESML's agreements with:

- Essar Engineering, dated August 12, 2008, to perform all engineering functions for the Project, for $23 million ("**2008 Essar Engineering/ESML Engineering Contract**");

- Global Supplies, dated September 9, 2008, to perform almost all procurement work, for $365 million ("**2008 Global Supplies/ESML Supply Contract**");

- Essar Constructions, dated September 2, 2008, to perform all construction work for $294 million ("**2008 Essar Constructions/ESML Construction Contract**"); and

- Essar Project Management, dated August 18, 2008, to perform all project supervision work for $14 million ("**2008 Essar Project Management/ESML Contract**").

30.    ESML retained direct procurement obligations of $53 million.  The total estimated EPC cost for a 4.1 million ton per annum ("**MTPA**") facility under the 2008 Project Contracts was approximately $750 million.

31.    The Project design under the 2008 Project Contracts was for an iron ore pellet

plant with a 4.1 MTPA capacity, but with the ability to ramp up to a maximum capacity of 6.0 MTPA.

32.     ESML lacked personnel with the technical expertise to prepare the scope of work for the Project or to prepare estimates of what it would cost to complete the work for the Project, and thus relied on affiliates to prepare such essential elements of the Project Contracts.   On information and belief, Essar Engineering, as of 2008, served the Essar Projects group by preparing engineering specifications, procurement schedules, and other materials needed to construct large-scale projects.  Essar Engineering had previously prepared such materials for a 6.0 MTPA iron ore pellet plant that was being built by another Essar company in Paradeep, India.   Essar Engineering prepared the Techno Economic Feasibility Report on which the scope of work for the Project was based, and the Project Execution Plan, scope of work, engineering specifications and prices set out in the 2008 Project Contracts.

**b.  2010 Project Contracts**

33.     In early 2010, on information and belief, senior management at various entities in the Essar enterprise decided that ESML should enter into replacement agreements (collectively, the "**2010 Project Contracts**") with many of the same Essar affiliates as the 2008 Project Contracts.  The decision was not made by ESML.  Rather, the Senior Vice President and Group Head of Direct Taxation for Essar Investments Limited, the CFO of the Project Business Group of Essar Projects-India, but who also served and serves as the CFO for the entire Essar projectsProjects group, and Essar Project Management's CFO made the decision to enter into a new set of contracts.

34.     As with the 2008 Project Contracts, the 2010 Project Contracts were not negotiated at arm's length;, were largely drafted by Essar Affiliates, (not ESML;), and Essar

AMERICAS 95090166 v1100122436

Affiliates handled all of the technical specifications, budgets, and construction plan issues.

35.    The 2008 Essar Engineering/ESML Engineering Contract was officially novated to a different entity, Essar Projects-India, while the 2008 Global Supplies/ESML Supply Contract, 2008 Essar Constructions/ESML Construction Contract, and 2008 Essar Project Management/ESML Contract were simply replaced by 2010 contracts among the same entities integrating such parties' agreements regarding the Project.

36.    ESML executed its 2010 Project Contracts with the following entities, and as follows:

- Essar Projects-India, dated May 5, 2010, for procurement of offshore goods and the supply of engineering services, for $215 million ("**2010 Essar Projects-India/ESML Supply and Engineering Contract**").  As for the engineering portion of the 2010 Essar Projects-India/ESML Supply and Engineering Contract:

  - o  Essar Engineering novated its agreement with ESML to Essar Projects-India in the "Novation Agreement," dated May 6, 2010 ("**2010 Essar Engineering/Essar Projects-India Novation**"), transferring all rights and obligations under its 2008 agreement with ESML to Essar Projects-India.

  - o  Essar Projects-India then subcontracted its engineering obligations under the 2010 Essar Projects-India/ESML Supply and Engineering Contract to Essar Engineering, with the intention that Essar Engineering would have that work at least partially performed in Mauritius or Singapore.

- Global Supplies, dated May 5, 2010, to perform procurement work, for $176.27 million ("**2010 Global Supplies/ESML Supply Contract**");

AMERICAS 95090166 v1 100122436

- Essar Constructions, dated March 22, 2010, to perform all of the construction work for $291.5 million ("**2010 Essar Constructions/ESML Construction Contract**"); and

- Essar Project Management, dated March 22, 2010, to perform all of the project supervision work for $14.23 million ("**2010 Essar Project Management/ESML Contract**").

37.     ESML again retained direct procurement obligations of $53 million, and the total estimated EPC cost for a 4.1 MTPA facility under the 2010 Project Contracts remained ~~at~~ $750 million.

38.     The decision to restructure the contracts governing the Project, through the 2010 Project Contracts, was made largely to minimize the Essar Affiliates' U.S. tax liability, as well as to take advantage of the additional lending secured through Essar Projects-India.  To do this, the 2010 Project Contracts reallocated from Global Supplies to Essar Projects-India a substantial portion of the procurement obligations.

     **c.    Lump Sum Turn Key Contract**

39.     In 2012, ~~as amended in 2013 to reflect the increase in size of the Project from a 4.1 MTPA iron ore pellet plant to a 7.0 MTPA iron ore pellet plant,~~ the framework of the governing contracts was again restructured through the Lump Sum Turn Key Contract (as amended and with all annexures thereto, "**LSTK**").[3]  The LSTK is a turnkey construction contract, between ESML and Essar Projects, requiring that ESML pay a sum-certain and Essar Projects deliver a fully functional iron ore pellet plant.

---

[3] The LSTK was amended in 2013 to reflect the increase in size of the Project from a 4.1 MTPA iron ore pellet plant to a 7.0 MTPA iron ore pellet plant (the "**2013 LSTK Amendment**").

AMERICAS ~~95090166 v1~~100122436

40.     Again, a significant impetus for the restructuring of responsibilities and compensation ~~that occurred was taxes—to enable foreign-based Essar entities to not pay U.S. taxes~~ in the LSTK was to minimize the Essar Affiliates U.S. tax liability on profits generated from offshore work for the Project and to capture as much value from the Project as possible in Essar Projects. And again, the LSTK was not the result of arm's-length negotiations. As ESML still lacked personnel with the appropriate technical training, the LSTK and annexures were largely prepared by Essar Engineering, Essar Projects-India, and Essar Projects.

41.     Essar Projects agreed under the LSTK to deliver a working iron ore pellet plant with a 7.0 MTPA capacity for a fixed sum. As envisioned by the parties, Essar Projects was the "overall project coordinator," bore "the risk for the entire project" and provided "requisite guarantees to ESML" that the Project would be completed.

42.     Essar Projects agreed in the LSTK that it would "design, execute and complete" the Project, free from defects. Essar Projects agreed in the LSTK that amounts paid under the LSTK "covers all the Contractor's obligations under the Contract and all things necessary for the proper design, execution and completion of the Works and the remedying of any defects in accordance with the Contract Price." Essar Projects further agreed in the LSTK that it had reviewed its obligations under the LSTK and the Contract Price and that it had "satisfied [it]self as to the correctness and sufficiency of the Contract Price." The LSTK further provides that "[t]he Contract price is firm and [Essar Projects] agrees that the Contract Price includes all errors and omissions."

43.     Essar Projects agreed (among other terms) to:

- "execute and complete the Works in accordance with the Contract, and shall remedy any defects in the Works. . . The Works shall include any work which is necessary to

14

satisfy the Company's Requirements, or is implied by the Contract, and all works
which (although not mentioned in the Contract) are necessary for stability or for the
completion, or safe and proper operation, of the Works."

- "satisf[y the Contractor] as to the correctness and sufficiency of the Contract Price,"
and that "[u]nless otherwise stated in the Contract, the Contract Price as specified in
Schedule 4 covers all the Contractor's obligations under the Contract and all things
necessary for the proper design, execution and completion of the Works and the
remedying of any defects in accordance with the Contract."

- "have scrutinized, prior to the Base Date, the obligations and the Scope of Work,"
and "carry out the Work to the extent specified in the Scope of Work."

- to "ensure that all work and procurement is free of liens."

44.     To the extent Essar Projects considered any costs that were being incurred to be
outside of the scope of its responsibilities under the LSTK, the LSTK set forth procedures,
substantially contained in sub-clause 20.1 therein, requiring formal requests to be made in
monthly reports.  No such formal requests were ever included in the mandatory monthly reports.

**d.   Novation Agreements**

45.     Although Essar Projects guaranteed completion of the Project under the LSTK
and had ultimate liability to complete the Project, the 2010 Project Contracts were not replaced
in their entirety: (1) the.  The 2010 Essar Projects-India/ESML Supply and Engineering Contract
(governing offshore procurement) remained effective andwith Essar Projects-India remained
obligated to perform thereunder; and (2).  Additionally, certain obligations under the 2010
Global Supplies/ESML Supply Contract, 2010 Essar Constructions/ESML Construction
Contract, and 2010 Essar Project Management/ESML Contract were partially novated to Essar

15

Projects~~, with~~.  Notwithstanding those novation agreements, the original contract counterparties to those agreements (Global Supplies, Essar Constructions, and Essar Project Management ~~retaining)~~ retained obligations ~~according to contract values not transferred (as explained further herein)~~for work that had purportedly either already been paid for by ESML or already contracted by the relevant contract counterparty.

~~46. Through a novation agreement dated July 2, 2012, Global Supplies transferred to Essar Projects under the LSTK offshore procurement obligations attributable to $14.27 million of the $176.27 million contract, transferred to ESML direct procurement obligations attributable to $92 million of contract value, and Global Supplies retained $70 million of offshore procurement obligations.~~

~~47. Through a novation agreement dated July 2, 2012, Essar Constructions transferred to Essar Projects under the LSTK obligations attributable to $111.5 million of the $291.5 million contract, retaining obligations attributable to $180 million.~~

46.    Specifically, through that certain Novation Agreement, dated July 2, 2012, by and between ESML, Global Supplies, and Essar Projects (the "**Global Supplies Novation Agreement**"), of the $176.27 million contract value under the 2010 Global Supplies/ESML Supply Contract, Global Supplies transferred offshore procurement obligations totaling $14.27 million to Essar Projects.  It also transferred $92 million of direct procurement obligations to ESML.  Global Supplies retained offshore procurement obligations attributable to $70 million of the contract value.  The Global Supplies Novation Agreement purported to release Global Supplies from all liability with respect to those retained obligations.

47.    In the Global Supplies Novation Agreement, Global Supplies expressly represented that the entire $70 million of obligations it retained had already been performed.

Specifically, Section 7 of the Global Supplies Novation Agreement provides that the payment disbursed by ESML to Global Supplies and the value of purchase orders already committed by Global Supplies equaled the $70 million of retained obligations.  That representation was false when made and Global Supplies knew or should have known it to be false at that time.  Indeed, as of July 2, 2012, ESML had paid Global Supplies approximately $67.6 million.  At that time, Global Supplies had not committed purchase orders for $2.4 million of offshore procurement.

48.    That representation was made to induce ESML to release Global Supplies from its obligations under the 2010 Global Supplies/ESML Supply Contract.  ESML relied on the representation that the retained obligations had been paid or committed when it agreed to execute the Global Supplies Novation Agreement.  But for that representation, ESML would not have agreed to release Global Supplies from liability related to its retained obligations.  As such, the release contained in the Global Supplies Novation Agreement is of no force and effect.

49.    Through that certain Novation Agreement, dated July 2, 2012, by and between Essar Constructions, ESML, and Essar Projects (the "**Essar Constructions Novation Agreement**"), Essar Constructions transferred $111.5 million of the $291.5 million of total contract obligations under the 2010 Essar Constructions/ESML Construction Contract to Essar Projects.  Essar Constructions retained obligations attributable to $180 million of the contract value.  The Essar Construction Novation Agreement purported to release Essar Constructions from any liability with respect to those obligations.

50.    In the Essar Constructions Novation Agreement, Essar Constructions expressly represented that the entire $180 million of obligations retained had already been performed.  Specifically, Section 7 of the Essar Constructions Novation Agreement provides that the payment disbursed by ESML to Essar Constructions and the value of purchase orders already

17

committed by Essar Constructions equaled $180 million.  That representation was false when made and Essar Constructions knew or should have known it to be false at that time.  Indeed, as of July 2, 2012, ESML had paid Essar Constructions approximately $81.3 million.  At that time, Essar Constructions had not committed purchase orders for $98.7 million of work.

51.    That representation was made to induce ESML to release Essar Constructions from its obligations under the 2010 Essar Constructions/ESML Constructions Contract.  ESML relied on that representation when it agreed to execute the Essar Constructions Novation Agreement.  But for that representation, ESML would not have agreed to release Essar Constructions from its retained obligations and liability under the 2010 Essar Constructions/ESML Construction Contract.  As such, the release contained in the Essar Constructions Novation Agreement is of no force and effect.

52.    48. Through a novation agreement that certain Novation Agreement, dated July 2, 2012, by and between Essar Project Management, ESML, and Essar Projects (the "**Essar Project Management Novation Agreement**" and together with the Global Supplies Novation Agreemant and the Essar Constructions Novation Agreement, the "**Novation Agreements**"), Essar Project Management transferred to Essar Projects under the LSTK project management obligations attributable to $9.31 million of its the $14.23 million contract, and of total contract obligations under the 2010 Essar Project Management/ESML Contract to Essar Projects.  Essar Project Management retained obligations attributable to $4.92 million of the contract value.  The Essar Project Management Novation Agreement purported to release Essar Project Management from all liability with respect to those retained obligations.

53.    In the Essar Project Management Novation Agreement, Essar Project Management expressly represented that the entire $4.92 million of obligations retained by Essar

18

Project Management had already been performed.  Specifically, Section 7 of the Essar Project Management Novation Agreement provides that the payment disbursed by ESML to Essar Project Management and the value of purchase orders already committed by Essar Project Management equaled $4.92 million.  That representation was false when made and Essar Project Management knew or should have known it to be false at that time.  Indeed, as of July 2, 2012, ESML had paid Essar Project Management approximately $3.6 million.  At that time, Essar Project Management had not committed purchase orders for $1.3 million of work.

54.    That representation was made to induce ESML to release Essar Project Management from its obligations under the 2010 Essar Project Management/ESML Contract. ESML relied on that representation when it agreed to execute the Essar Project Management Novation Agreement.  But for that representation, ESML would not have agreed to release Essar Project Management from its retained obligations and liability under the 2010 Essar Project Management/ESML Contract.  As such, the release contained in the Essar Project Management Novation Agreement is of no force and effect.

**e.    Assignment Agreements**

55.    49. While Essar Projects retained full responsibility and liability as well under the LSTK, Essar Projects delegated that actual work be done by other entities it assigned many of the obligations thereunder to its subsidiaries.

56.    50. To effectuate that delegation, Essar Projects made two assignments to each of executed assignment agreements with Essar Projects-US and Essar Projects-Middle East.  On July 2, 2012, Essar Projects assigned to Essar Projects-US that portion of the Contract Price[4]

---

[4] "Contract Price" is defined in the LSTK Agreement to mean "the agreed amount stated in the Price Schedule [Schedule 4] for the engineering, procurement & supply and construction of the Works, but does not include Plan, Materials or such other things intended to form or forming part of the Permanent Works."

19

under the original LSTK for work to be done inside of the United States – a work value of $158.8 million (the "**Essar Projects-US Contract Price Assignment**").  Six months later, on December 10, 2012, Essar Projects assigned: (1) to Essar Projects-US that portion of the Incremental Contract Price under the LSTK, as amended, for work to be done inside of the of the United States – a work value of $285.8 million (the "**Essar Projects-US Incremental Contract Price Assignment**"); (2) to Essar Projects-Middle East that portion of the Contract Price under the original LSTK for procuring supplies and equipment from vendors located outside of the United States – a work value of $47.8 million (the "**Essar Projects-Middle East Contract Price Assignment**"); and, (3) to Essar Projects-Middle East, by a separate partial assignment, that portion of the Incremental Contract Price under the LSTK, as amended, for procuring supplies and equipment from vendors located outside of the United States – a work value of $193.5 million (the "**Essar Projects-Middle East Incremental Contract Price Assignment**," together with the other partial assignments, the "**Partial Assignments**").  The Partial Assignments are annexed to the LSTK.

57.    51. Under the Partial Assignments, Essar Projects-US and Essar Projects-Middle East accepted assignment of obligations from Essar Projects to perform Essar Projects' construction and domestic procurement obligations (Essar Projects-US) and offshore procurement obligations (Essar Projects-Middle East).  Under the Partial Assignments, Essar Projects "assign[ed], transfer[red] and set[] over and convey[ed] to the Assignee[s]" Essar Projects' duties, rights and responsibilities for construction, procurement and project management that are "part of the LSTK agreement."  Essar Projects-US and Essar Projects-Middle East agreed to "be bound by, observe and perform all of the duties and obligations on the part[] of [Essar Projects] under the Contract . . . as if [Essar Projects-US and Essar Projects-

20

Middle East] had been originally named the Contractor under the Contract."  Essar Projects-US and Essar Projects-Middle East further agreed they would be paid a fixed sum for that work representing their respective portions of the Contract Price and Incremental Contract Price – Essar Projects-US ($444.6 million) and Essar Projects-Middle East ($241.3 million).

58.    52. Under the LSTK and Partial Assignments, Essar Projects served as "collection agent" and "central treasurer" for the Project, obligated to pass on to Essar Projects-US and Essar Projects-Middle East funds received from ESML attributable to work being performed by such entities within 90-days of receipt.

59.    53. Essar Projects, however, remained responsible for all obligations under the LSTK, including delivering to ESML a completed iron ore pellet plant.  The Partial Assignments provide that "ESML, in executing its consent, does not release the Assignor [Essar Projects] from any claims or remedies that ESML may have against Assignor under the Contract."  In the Partial Assignments, Essar Projects agreed to "satisfy all claims, actions, judgments, liabilities, proceedings and costs, including reasonable attorneys' fees and other costs of defense and damages resulting from [Essar Projects-US and Essar Projects-Middle East]'s performance of the Assigned Rights and Obligations."  Under the Partial Agreements, Essar Projects agreed to "indemnify ESML from any and all claims, actions, judgments, liabilities, proceedings and costs, including reasonable attorneys' fees and other costs of defense and damages, resulting from [Essar Projects-US and Essar Projects-Middle East]'s performance after the assignment of the Assigned Rights and Obligations."  The LSTK similarly provides that Essar Projects, as "Contractor," "shall be responsible for the acts or defaults of any Subcontractor, its assignees, agents or employees, as if they were the acts or defaults of the Contractor."

60.    54. On information and belief, Essar Constructions and Essar Project

Management effectively transferred their employees to Essar Projects-US around ~~this~~the time. ~~Thus,~~ that the LSTK and the Novation Agreements were executed.  Thus, to the extent any further work was conducted by Essar Constructions[1] and Essar Project ~~Management's work after such novations~~Management after the Novation Agreements were executed it was done in name only and was actually performed by Essar Projects-US.  Despite that reality, Essar Constructions was paid $102.6 million following the execution of the Essar Constructions Novation Agreement, including approximately $27 million in 2015 for which no services or goods were provided in return.  Similarly, Essar Project Management was paid nearly $1 million after the Essar Project Management Novation Agreement was executed, including at least approximately $420,000 in 2015 for which no goods or services were provided in return.

61.    ~~55.~~In summary, in the aggregate, the estimated EPC cost for the Project under the LSTK, as amended, and supplementary agreements (including as understood by ESML and the Essar Affiliates) remaining effective thereunder totaled approximately $1.257 billion, as follows (all figures approximations):

- LSTK, as amended -- $685.9 million
    - Essar Projects-US (construction, project management, and domestic procurement), $444.6 million
    - Essar Projects-Middle East (international procurement), $241.3 million
- Value of work retained by Essar Constructions, Global Supplies, and Essar Project Management after accounting for novation agreements -- $254.92 million
    - Global Supplies (international procurement), $70 million
    - Essar Constructions (construction), $180 million
    - Essar Project Management (project management), $4.92 million

☐ Essar Projects-India (international procurement and engineering services) -- $215 million

☐ ESML (domestic procurement) -- $101 million

**B.  ESML Performs Its Obligations Under the Project Contracts**

62.    56. ESML paid its contractual counterparties (or their designees) over $1.1 billion towards completion of the Project.

63.    57. Retaining only amounts permitted to be retained under the applicable contracts pending completion of the Project, ESML's payments evidence ESML's performance of its contractual obligations, other than as waived or excused, through the payment of all amounts owed under the LSTK and supplemental contractual agreements.

64.    58. Also, on September 30, 2014, and in connection with ESML closing on the 2014 Project Finance Debt (discussed below), ESML obtained from Essar Projects a "waiver of all defaults under LSTK."  That "waiver," in the form of a letter, stated in its entirety:

> *Pursuant to your request, Essar Projects Ltd., confirms that it has waived all previous default up to 30th Sept 2014 and there exist no default under the LSTK contract as at the end of 30th Sept. 2014.*

65.    59. Thus, as of September 30, 2014, Essar Projects admitted that ESML had not defaulted under the LSTK or any such defaults were waived.

66.    60. In sum, ESML performed.  The same cannot be said for the Essar Affiliates, which is apparent from the state of the Project itself.

**C.  Essar Affiliates Breached the Project Contracts**

67.    61. Work significantly slowed down on the Project in late 2015 and effectively stopped in April 2016, not because ESML wanted it to but because the Essar Affiliates contracting parties refused to work further, demanding from ESML approximately $200 million

AMERICAS 95090166 v1100122436

in additional funds, even though the Essar Affiliates had already been paid substantially the full value of the LSTK and supplementary agreements (as described above).  Yet, the Project was, and remains, incomplete, in virtually every substantive aspect.

**a. Essar Projects Failed to Complete the Project, and Essar Projects-US and Essar Projects-Middle East Failed to Perform Project Obligations**

68. 62. Essar Projects on an overall basis, and Essar Projects-US and Essar Projects-Middle East as the entities who took on responsibility for the construction and procurement aspects of the Project, respectively, did not complete their respective scopes of work.

69. 63. The iron ore pellet facility and procurement are both incomplete.  The Project consists of structures that lack certain exterior walls, permanent electrical fixtures, and conveyer belts to transport iron ore through various stages of processing.  Large portions of equipment to be procured for the Project were ordered, but neither paid for nor delivered.  Thousands of pieces of fabricated structural and non-structural steel are strewn about the Project site, waiting to be used to complete buildings, such as in the below picture:



70. 64. Photos of the Project site taken in late July 2016 show an unfinished building

24

where slurry will ultimately be baked into hardened pellets:





71. ~~65.~~ Once work starts again, the Project is more than a year from being finished and will require hundreds of workers working daily to complete.

72. ~~66.~~ In addition to failing to finish the Project, Essar Projects and Essar Projects-

US violated their obligations to "ensure that all work and procurement is free of liens,"as

currently there are."   As of July 8, 2016, when ESML filed a voluntary petition for relief, there

were approximately $60 million in liens filed against the Project, based on Essar Projects' and

Essar Projects-US's failure to pay subcontractors who worked on the Project.

73.   67. While it is still being evaluated, the current cost to complete the Project,

including engineering, construction, overhead, and related costs, is estimated to exceed $800

million.

**b.  Essar Constructions and Essar Project Management Failed to Perform Project Obligations Attributable to Each of Them**

74.   68. On information and belief, Essar Constructions and Essar Project

Management failed to perform Project obligations attributable to each of them under the 2010

Essar Constructions/ESML Construction Contract and 2010 Essar Project Management/ESML

Contract, respectively, and the applicable Novation agreementAgreements entered into as part of

the LSTK.

75.   69. Under Section 2.2 and Annexure 1 of the 2010 Essar Project

Management/ESML Contract, Essar Project Management was obligated to provide a wide range

of services, including coordinating with all the contractors, ensuring such contractors perform,

and resolving commercial conflicts, if any; providing a team headed by a qualified, full time

project manager; and being responsible for completion of the Project.

76.   70. Essar Project Management breached multiple obligations, including to:

- Monitor and ensure that the supply, supply and engineering, and construction
  contractors comply with their obligations in accordance with their respective
  contracts.  Annexure 1, §§ 1.2.1(c), 1.2.1(i), 1.2.7(a).

- Prepare periodic reports for ESML.  Annexure 1, § 1.2.1(j).

26

- Advise ESML of corrective actions to align the Project back on track in case of deviations from plans. Annexure 1, § 1.2.1(k).

- Maintain complete and up-to-date records of all contractual variations, design deviations/concession requests, *etc*.  Annexure 1, § 1.2.7(g).

77.    Similarly, Essar Constructions did not perform the obligations it retained pursuant to the Essar Constructions Novation Agreement.  Indeed, despite retaining substantial obligations, following the execution of the LSTK, Essar Project Management and Essar Constructions had no employees and were not capable of fulfilling their retained contractual commitments.

78.    71. As described above, the construction of the Project is substantially incomplete, and ~~project management of the Project is of course not finished as well, since the Project is still at least a year away from completion, assuming it were to proceed full steam ahead in the near future.~~ Essar Project Management and Essar Constructions have not performed their retained obligations.

**c.    Essar Projects-India Failed to Perform Its Project Obligations**

79.    72. Under the 2010 Essar Projects-India/ESML Supply and Engineering Contract, Essar Projects-India was responsible for providing engineering and offshore procurement services for the Project.  The agreement has a total contract price of $215 million, with an advance due from ESML to Essar Projects-India of 15% of the entire contract price, *i.e.*, $32.25 million.  Of the $215 million contract price, the 2010 Essar Projects-India/ESML Supply and Engineering Contract allocates $179.67 million to the procurement of offshore equipment and $35.53 million to engineering services.

80.    73. To fulfill its offshore procurement obligations under the 2010 Essar Projects-

India/ESML Supply and Engineering Contract, Essar Projects-India was to open supplier credit facilities with Indian banks to purchase offshore goods in a total amount of approximately $180 million.  Once Essar Projects-India procured equipment for the Project, it was to issue an invoice to ESML, and show proper documentation to the bank issuing the supplier credit that the equipment had been shipped to ESML.  Then, (1) the bank would pay to Essar Projects-India 85% of an invoiced amount, (2) 15% of an invoiced amount price would be credited against the advance from ESML, (3) ESML would become responsible for payment of the 85% paid to Essar Projects-India for the equipment from the credit facilities after the expiration of the agreed moratorium (except that ESML was entitled to retain 10% of each invoice pending completion of the contract), and (4) ESML would become responsible to Essar Projects-India for the interest that would become due and owing on the amounts outstanding under the supplier credit facilities (the "**Essar Projects-India Supplier Credit Facility**").   Essar Projects guaranteed Essar Projects-India's obligations under the Essar Projects-India Supplier Credit Facility.

81.    ~~74.~~ Engineering invoices would be submitted to ESML and paid on a progressive basis.  As with invoices for procurement, ESML was entitled to retain 10% of each invoiced amount for engineering services, to secure full performance of the contract.

82.    ~~75.~~ In practice, however, ESML caused the payment of Essar Projects-India's invoices without withholding the 10% retention amount, instead only reducing each invoice in accordance with the 15% advance.

83.    ~~76.~~ Essar Projects-India materially failed to perform at least three of its main functions under the 2010 Essar Projects-India/ESML Supply and Engineering Contract: (1) Essar Projects-India failed to provide steel fabricated properly to construct the Project, (2) Essar Projects-India failed to provide all of the equipment it was obligated to procure for the Project,

and (3) Essar Projects-India failed to complete all required engineering services.  Indeed, Essar Projects-India failed to deliver, and indeed sometimes even failed to order, a significant amount of goods, including without limitation, pellet removal cranes, valves, expansion joints, slurry pumps, and water pumps.

84.    77. The structural steel was originally fabricated by ESML's affiliate, Essar Heavy Engineering Services in India.  It was not only delayed in being fabricated and shipped to Minnesota, but it was delivered with numerous issues that required reworking or entirely new steel to be procured.  An initial assessment of the first thousand metric tons of steel that arrived at the Project site showed issues with straightness, weld quality, splice plates, and general incorrect fabrication.  The engineering was incomplete and flawed in numerous respects.  For example, Essar Engineering failed to account for snow loads in winter in designing roofs for Project buildings.

**D.    Essar Global Failed to Perform Its Obligations to Fund the Project Through Equity Contributions**

85.    78. To fund the Project, ESML entered into financing agreements and loan commitments totaling $980 million from Indian and U.S. lenders, secured an additional commitment for approximately $180 million of Project financing through its agreement with Essar Projects-India, and entered into agreements requiring Essar Global (or an affiliate) to fund the balance of the $1.8 billion estimated cost to complete the Project.

86.    79. The loan agreements and related debt documents underlying each of these financing avenues contained requirements for Essar Global to provide equity to ESML, including requiring maintenance of a 65/35 debt to equity ratio.  Essar Global breached such obligations during the course of the Project.  Prior to securing funds from U.S. lenders, ESML also completed a bond issuance that ultimately failed because Essar Global did not make

29

mandatory equity contributions.

     **a.**   **Essar Global Breached Its Equity Requirements in Connection with Loan with Indian Lenders**

87. ~~80.~~ The first financing (the "**2010 Project Finance Debt**") ESML secured was issued by Indian banks to fund a 4.1 MTPA facility as set forth in the 2008 and 2010 Project Contracts.

88. ~~81.~~ According to the terms of the loan documents governing the 2010 Project Finance Debt, which provided for ESML to borrow $530 million, funds would be released to ESML in proportion to Essar Global's contribution of equity to the Project at a debt-to-equity ratio of 65/35.

89. ~~82.~~ In connection with the loan documents governing the 2010 Project Finance Debt, Essar Global entered into a "Guarantee Agreement" (as amended, the "**2010 Essar Global Guarantee**"), initially dated December 29, 2010, pursuant to which Essar Global guaranteed ESML's repayment of the 2010 Project Finance Debt, and all "Borrower Obligations" in connection therewith (including contribution of equity to maintain the 65/35 debt-to-equity ratio), and agreed to provide ESML with all funds required to complete the Project if the Project cost exceeded $1.079 billion (and $1.79 billion as amended). Essar Global agreed "to provide to the Borrower [ESML] for the ratable benefit of the Borrower and the Lenders, the full and complete amount of any Deficiency when the Deficiency arises and the Guarantor receives notice of the Deficiency as set forth in Section 2.02(a)."

90. ~~83.~~ Essar Global failed to contribute equity as required or in a timely manner. On information and belief, ESML provided notice to Essar Global of numerous Deficiencies (as defined in the 2010 Essar Global Guarantee**)**, but Essar Global has failed to provide the funds to ESML necessary to pay for the Deficiencies, in breach of the 2010 Essar Global Guarantee.

91.   84. Essar Global's failures to provide funding and to provide funding in a timely manner damaged ESML in multiple ways, including by increasing the cost of the Project.

92.   85. For example, on many occasions, ESML wanted to ramp up work on the Project, but lacked the funds necessary to do so, often because equity had not been provided to ESML in order to unlock debt.  ESML notified Essar Global, including Prashant Ruia (a director/officer of Essar Global) directly, in 2011, 2012 and 2013 of the need for funds in order to draw down under the Indian lenders' debt facilities.  But, equity contributions would only "trickle in."

93.   86. As a result of not having the full amount of the debt and equity committed to the Project, work would commence on the Project, incurring mobilization costs and other expenses, and then stop when vendors such as Essar Constructions did not have funds sufficient to pay subcontractors retained to perform the work.  The cessation of work would also result in demobilization costs, *i.e.*, costs associated with taking down cranes and other heavy equipment, and subsequent re-mobilization costs when work resumed.  Between the time the 2010 Project Finance Debt closed and July 2012, there were at least two demobilizations because ESML did not have the funds necessary to pay its vendors.  The work stoppages caused tens of millions of dollars in damages.

b.   **ESML Issued $450 Million in Bonds but Was Forced to Redeem the Bonds Because Essar Global Breached Its Obligations to Contribute $411.5 Million in Equity to ESML**

94.   87. To supplement the bank financing that ESML had obtained, ESML planned to secure approximately $450 million in bond debt.  Essar Global promised ESML to cover any equity contribution requirements in connection with such issuance.  In reliance thereon, ESML proceeded to seek the financing.

95.    88. By May 2014, ESML successfully sold bonds to investors, but did so under the condition that Essar Global make an equity contribution of over $400 million to ESML before ESML could access the bond proceeds.  Once the bonds were sold, the sale proceeds were placed into an escrow account and could not be released to ESML until Essar Global made the full equity contribution by June 27, 2014.  Essar Global, which made equity contributions between December 31, 2013 and May 1, 2014 of $7.5 million, was required to make an initial equity contribution of $20.4 million on the closing date of the bonds, on May 14, 2014.  It was then required to fund the balance of its equity contribution, in an amount equaling hundreds of millions of dollars, by June 27, 2014.

96.    89. Essar Global failed to make its equity contributions as required, and caused ESML to approach the bond holders to secure an extension of the escrow period.  Essar Global ultimately failed to make its committed equity contributions required for the bond proceeds to be released to ESML by the expiration of the extension.

97.    90. The failed bond issuance cost ESML over $41 million for all associated expenses.  For example, ESML spent more than $10 million on professionals' fees, $5.56 million on fees and expenses in order to extend escrow while waiting for Essar Global to contribute equity, $15.9 million in interest expense, and $9.5 million for the bond redemption premium.

   c.   **Essar Global Breached Its Obligations to Fund the Project through Equity Under the 2014 Credit and Security Agreement and Related Documents Including the Equity Contribution Agreement**

98.    91. ESML engaged with U.S. lenders in June 2014 to provide a term loan to ESML of $450 million for the 7.0 MTPA iron ore pellet plant.

99.    92. On September 30, 2014, ESML, as borrower, and ESML Holdings, Inc. ("**Holdings**"), as guarantor, entered into that certain Credit and Security Agreement (as amended

32

from time to time, the "**2014 Credit and Security Agreement**") with the lenders signatory thereto, and U.S. Bank N.A., as agent.  As part of the 2014 Credit and Security Agreement, the lenders agreed they would release funds (the "**2014 Project Finance Debt**," collectively, with the 2010 Project Finance Debt, the "**Project Finance Debt**") to ESML according to a pre-determined schedule, dependent upon Essar Global making equity contributions to ESML by certain dates, and the Project hitting certain operational milestones.

100. 93. Specifically, the U.S. lenders would release to ESML on the Closing Date (as defined in the 2014 Credit and Security Agreement) $180 million (net of the Commitment Fee and other expenses to be paid on the Closing Date).  They would release to ESML, (1) $67.5 million 90 days following the Closing Date, (2) $112.5 million 180 days following the Closing Date, and (3) $90 million 270 days following the Closing Date.  Regarding the operational milestones, the 2014 Credit and Security Agreement provided that funds would be released upon the U.S. lenders receiving certification that the milestones were met.  The milestones, in turn, were broken into engineering, construction, and procurement, and set percentages of those aspects to be complete by certain dates.

101. 94. Contemporaneous with the execution of the 2014 Credit and Security Agreement, Essar Global entered into an "**Equity Contribution Agreement**" with ESML and U.S. Bank N.A. and a "**Guaranty**" with U.S. Bank, N.A.   Under the terms of the 2014 Credit and Security Agreement and Equity Contribution Agreement, Essar Global was to contribute $410 million (the "**Required Equity Contribution**") to ESML as equity, $50 million of which was to be deposited into a "**Cost Overrun Account**."  In order to receive funds according to thisthe schedule, set forth in the 2014 Credit and Security Agreement required, Essar Global was required to make its Required Equity Contribution according to the following schedule, (1)

33

$260 million between August 1, 2014 and the Closing Date, (2) $68 million 180 days following the Closing Date, and (3) $82 million 270 days following the Closing Date.

102.    95. Under the Equity Contribution Agreement, Essar Global agreed to fully satisfy debt obligations of ESML with respect to the 2014 Credit and Security Agreement, or obligations otherwise required to be satisfied to complete the construction of the Project, including costs in excess of $1.802 billion and certain government grant reimbursement obligations.

103.    96. Under the Equity Contribution Agreement, Essar Global is obligated to make Required Equity Contributions in the total amount of $410 million according the schedule set forth in the 2014 Credit and Security Agreement.  Under the Equity Contribution Agreement, Essar Global is further required to make equity contributions to ESML in the "full and complete amount" of any "Deficiency" ESML may encounter in building the Project.  Deficiency is defined broadly in the Equity Contribution Agreement to mean, "as determined by [ESML] or the Required Lenders, any actual shortfall, however caused, in funds available to the Borrower required for any cost of the Project in excess of one billion eight hundred two million Dollars (US$1,802,000,000)."  In other words, Essar Global assumed full financial risk to complete the Project.

104.    97. Essar Global failed to satisfy these obligations in numerous respects, including:

- Essar Global failed to make its full final payment of the Required Equity Contribution.  Essar Global was required to provide to ESML a total of $82 million within 270 days from the Closing Date, with $50 million of that to be deposited into the Cost Overrun Account.  Essar Global failed to do so.

34

- Second, Essar Global has not performed its obligation to cover any Deficiency ESML may encounter in completing the Project. Under the Equity Contribution Agreement, Essar Global is obligated to cover cost overruns associated with the Project. Essar Global has not done that, despite that ESML repeatedly informed Essar Global that money was needed to continue work on the Project and otherwise meet ESML's obligations, and that Essar Projects-US informed Essar Projects that it needed money to pay contractors to work on the Project. Indeed, ESML has already paid more than $1.802 billion in connection with the Project. Thus, Essar Global is obligated to pay for any and all additional costs necessary to complete the Project.

105.  98. On information and belief, Essar Global knew, based on the 2014 Credit and Security Agreement, the Equity Contribution Agreement, and the Guaranty, that its Required Equity Contributions were necessary for ESML to obtain full access to the 2014 Project Finance Debt. On information and belief, Essar Global further knew the Project could not become fully operational without ESML having access to the full amount of the 2014 Project Finance Debt and Essar Global's Required Equity Contributions. Nevertheless, Essar Global failed to make its contributions.

106.  99. As a result of Essar Global failing to make its final Required Equity Contribution, the U.S. lenders refused to release the final tranche of debt ($90 million) to ESML.

107.  100. As a result of Essar Global failing to fund any Deficiency, the Project has not been completed. The cost to complete the Project amounts to hundreds of millions of dollars, which it is Essar Global's responsibility to fund. ESML has also been damaged by the failure to complete the Project, in numerous respects, including without limitation through the loss of its offtake agreements.

**E.  ESML Made Transfers, Largely at the Direction of Essar Affiliates, for Which It**

35

**Received Little or No Benefit**

108. 101. On information and belief, Essar Affiliates improperly imposed on ESML charges for which ESML was not responsible, and ESML, at the instruction and direction of executives of Essar Global, Essar Projects, and/or other senior Essar personnel, paid millions of dollars in exchange for little or no benefit and even for issues unrelated to its business or the Project.

109. 102. On information and belief, in or about March 2012, ESML transferred $5 million to Trinity Coal Corporation ("**Trinity**"), an affiliate of ESML, without receiving any value in return.

110. 103. Although ESML filed a proof of claim on June 28, 2013 in Trinity's bankruptcy case, at the direction of its board, ESML released the claim pursuant to a board resolution.  ESML received no value for releasing the claim; rather, ESML's board voted to release the claim in order to confirm Trinity's plan of reorganization, which contemplated a reacquisition of Trinity by Essar Global.  Additionally, the claim was contributed by ESML to "Essar Resources or any other subsidiary of [Essar Global] as . . . it may designate and released by [ESML] on the effective date of the Plan. . . ."  In sum, ESML transferred $5 million to an affiliate, never attempted to procure items for such funds or obtain return of such funds for over a year, and ultimately released the $5 million claim against an affiliate at Essar Global's request, and received no value in exchange.

111. 104. ESML also executed transfers ESML believed it was not responsible to make, and for which ESML did not receive reasonably equivalent value.  For example, in late November 2014, at the request of Anshuman Ruia (a director of Essar Global), ESML made a payment of $3.3 million to an Essar affiliate for engineering services for an indurating machine

for ESML although it was disputed that ESML owed the money.  Ultimately, at Mr. Ruia's

request, ESML paid the $3.3 million under the stated agreement that another Essar affiliate,

Aegis Limited ("**Aegis**"), return the entire amount to ESML in the "next few months" as a

purported equity contribution.  ESML paid out the funds but received no equity contribution.

112.    ~~105.~~On multiple occasions, including in or about November 2014, Essar Projects

demanded that ESML pay millions of dollars in charges to be incurred in connection with Essar

Projects' attempts to open letters of credit ("**LCs**") for the Project, including with Noor Islamic

Bank, ECO Bank Nigeria, and Commercial Bank International.  Under pressure from Essar

Projects, and although the LC charges were not ESML's responsibility under any of the Project

Contracts, ESML paid such charges, damaging ESML in the amount of millions of dollars.

113.    ~~106.~~On information and belief, by July 2015, ESML had paid $19.8 million to

fund LCs that Essar Projects was opening.  In addition to the fact that ESML should not have

had to pay to fund LCs even if they did relate to the Project, ESML did not even receive the

benefit of all of those LCs.  On information and belief, ESML paid, for example, a processing

fee of $2.3 million to United Bank for Africa (Nigeria) for Essar Projects to open an LC, but

ESML never had any LCs for its Project from United Bank for Africa (Nigeria).  On information

and belief, in July 2015, Essar Projects' CFO sought intervention from Essar Global to instruct

ESML to provide Essar Projects with millions of dollars in funds necessary for Essar Projects to

open LCs with ECO Bank in Nigeria.

114.    ~~107.~~On information and belief, after the urging of Essar Projects to Essar Global

to place pressure on ESML, ESML also paid over millions of dollars to settle LCs opened by

Essar Projects for the Paradeep project in India.  The rationale Essar Projects employed to seek

intervention of Essar Global in directing ESML to settle the LCs related not to ESML's business

but to broader issues of Essar companies being "blacklisted by Central Bank in UAE," and

jeopardizing their "chances of doing any projects in the [Persian Gulf] markets," and being

"considered defaulter in Nigeria."

115.    108. In early 2015, on information and belief, at least certain of ESML's officers

also participated in an invoicing scheme with Essar Projects-US, in which ESML knowingly

paid invoices for which ESML had received no reciprocal value.  On information and belief, the

scheme arose based on Essar Projects' failure to pass on payments made to Essar Projects that it

should have passed on to Essar Projects-US.  However, ESML and its officers did not seek to

compel Essar Projects to comply with the terms of the Partial Assignments, requiring Essar

Projects to provide funds to Essar Projects-US as they were received.

**F.    The Essar Affiliates Also Utilized the Funds ESML Paid Them Under the Project Contracts for Non-Project Purposes, Including by Transferring Such Funds Upstream to Essar Global**

116.    109. A primary reason for the Project's state of incompletion, despite ESML's

payment of over $1.1 billion to the Essar Affiliates in substantial performance of its obligations

under the Project Contracts, is that almost half of that money was not put to use on the Project by

the Essar Affiliates.  ESML transferred hundreds of millions of dollars to Essar Affiliates

without receiving reasonably equivalent value in return.

117.    110. On information and belief, ESML paid Essar Projects, as central treasurer for

its subsidiaries, over half a billion dollars for Essar Projects-US and Essar Projects-Middle

East's engineering, procurement, and construction work on the Project, but much of that money

was not ultimately spent on the Project.

118.    111. On information and belief, ESML transferred to Essar Projects $217 million

for Essar Projects-Middle East's procurement activities.  On information and belief, Essar

Projects-Middle East did not spend approximately $181 million of those funds on the Project.

119. 112. On information and belief, ESML transferred to Essar Projects over $350 million for Essar Projects-US's work, but Essar Projects did not pass through to Essar Projects-US (or pay to vendors on Essar Projects-US's behalf) almost $200 million of those funds.

120. 113. Troublingly, on information and belief, over $300 million of funds ESML paid to Project Contract affiliates by ESML were passed up to Essar Global, in essence sacrificing ESML's Project. Of the funds ESML paid to Essar Projects on account of Essar Projects-Middle East's invoices, approximately $200 million appears to have been transferred to Essar Global and not used on the Project. Of the funds ESML paid to Essar Projects on account of invoices issued by Essar Projects-US, approximately $100 million appears to have been transferred to Essar Global and not used on the Project. Of the funds ESML paid to Essar Constructions or Essar Projects-India, over $20 million appears to have been transferred to Essar Global and not used on the Project.

121. 114. Indeed, across all of its projects, on information and belief, Essar Projects and its subsidiaries had transferred up to Essar Global more than $780 million characterized as "loans," and had transferred an additional $35 million to Essar Capital Holdings Limited and Essar Global Assets Limited.

122. 115. On information and belief, Essar Global's treatment of its subsidiaries as its own piggy bank is reflected by the fact that its "loans" from related entities increased from $303.7 million for year 2011-12 to over $2 billion for year 2014-15.

123. 116. On information and belief, Essar Global, as a standard practice, borrowed from its subsidiaries to then pay into equity in other of its subsidiaries.

124. 117. In June 2012, at the request of Essar Global, ESML drew down $79 million

39

from ICICI Bank Limited, New York Branch ("**ICICI Bank**"), the entirety of which, instead of being used to construct the Project as contemplated under the related credit agreement, was transferred as a loan to Essar Global.  At the time of the transfer, Essar Global assured ESML that the $79 million would be returned by the end of July 2012 to avoid any detrimental effect on the Project's progress.  By the end of August 2012, however, the funds had not been returned.

125.    118. On information and belief, on or about January 4, 2013, under instruction from Essar Global, ESML "loaned" $325,000 to Essar Global, without documentation.  On information and belief, on or about January 28, 2013, under instruction from Essar Global, ESML "loaned" $21 million to Essar Global, without documentation.  These "loans" harmed ESML.

126.    119. In ESML's case, on information and belief, Essar Global in essence even used loan funds originating from ESML in order to fund Essar Global's obligations to contribute equity to ESML itself.

127.    120. For example, from October 1, 2014 to July 16, 2015, Essar Projects received from ESML and transferred to Essar Global $73.9 million.  Of that $73.9 million, Essar Projects transferred or loaned to Essar Global $68 million between February 26 and March 18, 2015.  Between March 3 and March 25, 2015, Essar Global correspondingly made exactly $68 million in equity contributions to ESML, which Essar Global was obligated under the 2014 Credit and Security Agreement to make by March 31, 2015.  Thus, on information and belief, Essar Projects transferred or loaned $68 million to Essar Global (that Essar Projects had received from ESML for work on the Project), so that Essar Global could make its required equity contribution to ESML by March 31, 2015 per the terms of the 2014 Credit and Security Agreement and, thereby, enable ESML to draw down more debt from the U.S. lenders.  ESML drew down $25.9

million from the U.S. lenders on April 1, 2015 after Essar Global met that particular equity

contribution milestone.

128. ~~121.~~ The timing of transfers from ESML to Essar Projects, transfers from Essar

Projects to Essar Global, and equity contributions from Essar Global to ESML for this

$68 million are as follows:

| Date | ESML Payments to Essar Projects | Essar Projects Payments to Essar Projects-US | Essar Projects Payments to Essar Global | Essar Global Equity Contributions to ESML |
|---|---|---|---|---|
| 2/26/2015 | $14,579,434.00 | | $10,000,000.00 | |
| 2/27/2015 | $15,000,000.00 | | $15,000,000.00 | |
| 3/2/2015 | $4,519,176.35 | | $ 4,500,000.00 | |
| 3/2/2015 | $1,579,673.79 | $1,579,673.79 | | |
| 3/2/2015 | $227,500.00 | $227,500.00 | | |
| 3/2/2015 | $5,905,244.99 | | $5,500,000.00 | |
| 3/3/2015 | | | | $25,000,000.00 |
| 3/4/2015 | | | | $10,000,000.00 |
| 3/12/2015 | $5,073,647.98 | | $5,050,000.00 | |
| 3/12/2015 | $4,146,754.24 | $4,146,754.24 | | |
| 3/12/2015 | $5,115,686.99 | | $5,100,000.00 | |
| 3/16/2015 | $14,881,731.60 | | $14,850,000.00 | $10,000,000.00 |
| 3/18/2015 | $8,000,000.00 | | $8,000,000.00 | |
| 3/19/2015 | | | | $12,000,000.00 |
| 3/23/2015 | $2,228,686.20 | $2,228,686.20 | | |
| 3/23/2015 | $227,500.00 | $227,500.00 | | |
| 3/24/2015 | | | | $7,000,000.00 |
| 3/25/2015 | | | | $4,000,000.00 |
| **Totals** | **$81,485,036.14** | **$8,410,114.23** | **$68,000,000.00** | **$68,000,000.00** |

129. ~~122.~~ Similarly, on information and belief, on another occasion, in 2015, Essar

Global caused ESML to pay Essar Projects-India $17 million so that Essar Global could make a $16 million equity contribution to ESML thereafter.

130.    ~~123.~~ During all of these timeframes, ESML was extremely short on funds and ultimately had to decelerate construction efforts to the detriment of ESML.

**G. Essar Global and the Controlling Persons Otherwise Treated ESML, and the Other Essar Affiliates, as Its Instrumentalities and Cogs in the Singular Global Essar Operation**

131.    ~~124.~~ On information and belief, Essar Global and certain Controlling Persons controlled and dominated its subsidiaries and affiliates, including the Essar Affiliates named as Defendants herein, to such an extent that they have no separate existences and act as mere instrumentalities of Essar Global.  At all relevant times, Essar Global and certain Controlling Persons abused the corporate structure of its subsidiaries and affiliates by engaging in fraudulent and deceptive conduct, such that recognizing the corporate separateness of Essar Global's subsidiaries and affiliates would promote injustice, inequity, and fraud, and injure Plaintiff and its creditors.  Further, on information and belief, at all relevant times, Essar Global and certain Controlling Persons exercised control and dominion over Plaintiff, its board, and each of the Essar Affiliates.  On information and belief, at all relevant times, Essar Global was the alter ego of each of its subsidiaries that are Defendants herein.

132.    ~~125.~~ On information and belief, Essar Global was the direct or indirect 100% owner of each of the Essar Affiliates.  On information and belief, Essar Global, Essar Projects, and certain Controlling Persons simply treated the Essar Affiliates as a single unitary enterprise, blurring the corporate lines between each of them in numerous ways.  And the facade of corporate structures was used to harm the creditors of each purportedly separate entity.

133.    ~~126.~~ For example, on information and belief, Essar Global and certain Controlling

42

Persons directed important decisions about budgets, contractual terms, and other key aspects of the Project beyond its purview as a corporate parent.  Accordingly, on information and belief, Essar Global's subsidiaries did not act in their independent best interests, but rather took orders and direction from Essar Global and certain Controlling Persons that often were to the subsidiaries' detriment.

134.    127. On information and belief, Essar Global subsidiaries were created, dissolved, and reorganized as Essar Global and certain Controlling Persons saw fit.  For example, Essar Projects-US was created for the sole purpose of taking over the contractual obligations of Essar Constructions and Essar Projects relating to the LSTK.  And upon its creation, the employees of Essar Constructions and Essar Project Management were simply transferred into the newly created Essar Projects-US.

135.    128. Contracts between Essar Global and its subsidiaries, and between the affiliate subsidiaries, were not negotiated at arm's length.  The contracts (including the LSTK) were not drafted to reflect the actual costs and labor performed by each affiliate; rather, they were drafted to capture as much value as possible from the project in foreign-based Essar entities such as Essar Projects to avoid U.S. taxes on profits.

136.    129. On information and belief, Essar Global and certain Controlling Persons directed the movement of money among Essar Affiliates to wherever it was needed most, without regard for corporate separateness or actual contractual obligations.  Essar Global, its subsidiaries, and its affiliates regularly transferred funds between each other.  Whether characterized as "loans" or "payments," there appears to be little business justification for these transfers beyond the cash needs of the entity receiving them.  It was often the case that the same officers and directors/governors represented the corporate entity transferring *and* receiving the

43

funds.

137. ~~130.~~ On information and belief, Essar Projects transferred funds earmarked for subsidiaries outside of the Project for unrelated costs and expenses.  On information and belief, it was a common business practice for Essar Projects to receive funds from a client, not allocate those funds to the client's specific project, and instead use the money on other projects, because it viewed payments from clients as "fungible."

138. ~~131.~~ On information and belief, "loans" from the Essar Projects group alone to other Essar entities (mostly Essar Global) totaled over $800 million.

139. ~~132.~~ Essar Constructions transferred millions in "loans," "transfers," "advances," and "payments" to Essar Projects-US.

140. ~~133.~~ On information and belief, ESML was used as a pawn to provide liquidity to Essar Global (or affiliates).  For example:

- As discussed above, ESML transferred $5 million to Trinity in the form of an advance for a purchase that was never consummated.

- In June 2012, on information and belief, at the direction of Essar Global, ESML drew down $79 million from ICICI Bank, and transferred such funds as a loan to Essar Global.  Such funds were not entirely repaid until September 2014; and Essar Global did not pay late fees as required under the promissory note.  On information and belief, ESML had no business purpose of its own to loan funds to Essar Global.

- In or about January 2013, on information and belief, at the direction of Essar Global, ESML drew down and transferred to Essar Global over $21 million. Again, on information and belief, ESML had no business purpose of its own to

loan money to Essar Global.

141.   ~~134.~~ On information and belief, as discussed above, Essar Global was also funding ESML with "equity" that actually originated as loan proceeds of ESML's own debt.

142.   ~~135.~~ The treatment of the Essar Affiliates as interchangeable with one another is evidenced in numerous ways:

- On information and belief, significant overlap exists between the officers and directors/governors of Essar Global and its affiliates and subsidiaries. Upon information and belief, at all relevant times, Prashant Ruia has served as the de facto Group Chief Executive Officer and Managing Director of Essar Global, all of the ~~defendants~~Defendants, and indeed, the entire Essar Global enterprise.

- On information and belief, Essar Global and certain Controlling Persons hired senior executives for ESML without consent of the ESML board of governors, and indeed, without even informing the ESML board.

- On information and belief, certain employees remained on ESML's payroll even though they were actually working on other projects of the Essar Affiliates.

143.   ~~136.~~ Numerous other examples exist of the companies in the Essar Global enterprise being run without regard for corporate distinctions.

144.   ~~137.~~ On information and belief, officers and directors/governors serving multiple entities did not act in the individual best interest of each entity, but rather, under the direction, instruction, control, and/or approval of certain Controlling Persons, acted in the interests of Essar Global and preferred Essar Affiliates.

145.   ~~138.~~ On information and belief, Essar Global and the Essar Affiliates, at the direction, instruction, control, and/or approval of certain Controlling Persons, also failed to

AMERICAS ~~95090166 v1~~100122436

comply with corporate formalities.

146. ~~139.~~ On information and belief, certain of Essar Global's subsidiaries and affiliates, including Essar Projects and Essar Projects-US, were insufficiently capitalized and had insufficient liquidity to meet their contractual obligations to complete work on the Project, from its very inception.

147. ~~140.~~ On information and belief, certain Controlling Persons directed essential elements of ESML's marketing efforts, including participating in the negotiation of ESML's offtake agreements.

148. ~~141.~~ On information and belief, Essar Global and certain Controlling Persons approved and/or participated in all budgeting and forecasting for construction of the Project.

149. ~~142.~~ On information and belief, ESML and the Essar Affiliates relied on allocations of cost overruns that were expected to be dictated by Essar Global and certain Controlling Persons.

150. ~~143.~~ On information and belief, Essar Global and certain Controlling Persons spearheaded ESML's relationships with its lenders, participating in all capital raising efforts without the involvement of ESML's board.

151. ~~144.~~ On information and belief, Essar Global and certain Controlling Persons determined the composition of ESML's board, and in certain circumstances, without deference to ESML's board, hired ESML's CEO and CFO.

## H. Debtors File Their Chapter 11 Petitions

152. ~~145.~~ On July 8, 2016 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the "**Chapter 11 Cases**," Case No. 16-11626(BLS).  The Debtors are authorized to continue to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  The Bankruptcy Court for the District of Delaware (the

"**Bankruptcy Court**") has entered an order for the joint administration of the Chapter 11 Cases

[Bankr. Docket No. 32].

153.    ~~146.~~No trustee or examiner has been appointed in the Chapter 11 Cases.  On July

19, 2016, an official committee of unsecured creditors (the "**Committee**") was appointed in the

Chapter 11 Cases.

### a.  Essar Affiliates' Proofs of Claim

154.    ~~147.~~On August 9, 2016, the Bankruptcy Court entered an order establishing

September 30, 2016 (the "**General Bar Date**") as the final date and time for filing proofs of

claim (with certain exceptions) against the Debtors' estates arising prior to the Petition Date, and

approving the form and manner of notice of the General Bar Date [Bankr. Docket No. 202].

155.    ~~148.~~Prior to the General Bar Date, the Bankruptcy Court entered an order

approving a stipulation (the "**Bar Date Stipulation**") between the Debtors and Essar Global

extending the deadline for the EGFL Affiliates (as defined in the Bar Date Stipulation) to file

proofs of claim against the Debtors to October 31, 2016 [Bankr. Docket No. 349].

156.    ~~149.~~On October 27, 2016, Essar Constructions filed proof of claim no. 179 in the

amount of $163,976,891 as a general unsecured claim against ESML ("**Claim No. 179**").  The

alleged basis of Claim No. 179 is "[c]onstructions [sic] services performed under a Contract

between Debtor and Creditor."

157.    ~~150.~~On October 27, 2016, Essar Projects-US filed proof of claim no. 180 in the

total amount of $423,126,877, of which amount $421,808,660 is asserted as a general unsecured

claim and $1,318,157 is asserted as a priority claim against ESML ("**Claim No. 180**").  The

alleged basis of Claim No. 180 is "[c]onstruction service, Equipment & Materials supplied, and PMC services performed under a Contract between Debtor and Creditor."

158. 151. On October 27, 2016, Essar Projects-India filed proof of claim no. 181 in the total amount of $155,421,977, of which amount $129,416,289 is asserted as a general unsecured claim and $26,005,688 is asserted as a priority claim against ESML ("**Claim No. 181**").  The alleged basis of the Claim No. 181 is "[e]quipment & materials supplied and Engineering services performed under a Contract between Debtor and Creditor."

159. 152. On October 27, 2016, Essar Projects-India filed proof of claim no. 182 in the amount of $249,886,561 as a general unsecured claim against ESML ("**Claim No. 182**").  The alleged basis of Claim No. 182 is "1) Supplier's Credit provided under the Supply and Engineering Contract between Debtor and Creditor; 2) Corporate Guarantee Invocation of Holding company (Essar Projects Limited, Dubai)."

160. 153. On October 27, 2016, Essar Projects filed proof of claim no. 183 in the total amount of $670,798,196, of which amount $669,424,011 is asserted as a general unsecured claim and $1,374,185 is asserted as a priority claim against ESML ("**Claim No. 183**").  The alleged basis of Claim No. 183 is "[c]onstruction & PMC service performed and Equipment and material supplied under a contract between Debtor and Creditor ('LSTK Contract')."

161. 154. On October 27, 2016, Essar Project Management filed proof of claim no. 184 in the amount of $5,348,106 as a general unsecured claim against ESML ("**Claim No. 184**"). The alleged basis of Claim No. 184 is "[p]roject Management services performed under a Contract between Debtor and Creditor."

162. 155. On October 27, 2016, Essar Projects-Middle East filed proof of claim no. 185 in the total amount of $78,346,381, of which amount $78,290,353 is asserted as a general

unsecured claim and $56,028 is asserted as a priority claim against ESML ("**Claim No. 185**").
The alleged basis of Claim No. 185 is "[e]quipment & Materials supplied under a Contract
between Debtor and Creditor."

163.    156. On October 27, 2016, Essar Global filed proof of claim no. 186 in the
amount of $1,147,000,000 as a general unsecured claim against ESML ("**Claim No. 186**," and
collectively with Claim No. 179, Claim No. 180, Claim No. 181, Claim No. 182, Claim No. 183,
Claim No. 184, and Claim No. 185, the "**Claim Objection Claims**").  The alleged basis of
Claim No. 186 is "Invocation of Guarantee."

164.    157. On November 19, 2016, the Debtors filed the *Debtors' First (Non-
Substantive) Omnibus Objection to Certain Claims* [Bankr. Docket No. 553] (the "**Claim
Objection**") seeking to disallow the Claim Objection Claims on the grounds that such claims
failed to attach documentation sufficient to support the alleged claims against the Debtors, and
because the Claim Objection Claims do not reconcile with the creditor listing and/or amount
indicated by the Debtors' books and records.  The Claim Objection is incorporated fully herein
by reference.

## FIRST CLAIM FOR RELIEF

**(Breach of Contract – LSTK)**
**(Against Essar Projects; Essar Global)**

165.    158. Plaintiff repeats and re-alleges each and every allegation contained in
paragraphs 1 through 159164 of this Complaint with the same force and effect as though fully set
forth herein.

166.    159. ESML and Essar Projects are parties to valid, binding contractual
agreements in the form of the LSTK (as amended and including all documents annexed thereto).

167. 160. Pursuant to the LSTK, which is a turn key contract, Essar Projects agreed to deliver to ESML a working iron ore pellet plant with a 7.0 MTPA capacity for a fixed sum. Among other obligations, described above, Essar Projects agreed to "design, execute and complete" the Project, free from defects, and to "ensure that all work and procurement is free of liens."

168. 161. Essar Projects breached the LSTK in numerous respects, including as follows: The Project, including but not limited to engineering, procurement, and construction, is substantially incomplete. The Project, once work starts again, is more than a year from being complete and will require hundreds of workers daily, and will cost hundreds of millions of dollars, to complete. The Project also is burdened with approximately $60 million in liens, based on Essar Projects' and/or its subcontractors' failure to pay other subcontractors who worked on the Project. Essar Projects also breached its obligations as "collection agent" and "central treasurer" for the Project, including under the Partial Assignments, to pass on to Essar Projects-US and Essar Projects-Middle East (and/or other entities working on the project) funds received from ESML attributable to work being performed by such entities.

169. 162. ESML has performed any and all conditions precedent to filing this action except insofar as any such conditions have been waived and/or excused.

170. 163. As a direct and proximate result of Essar Projects' breaches, ESML has been damaged in an amount to be determined at trial, and in a multitude of ways, which shall be more fully adduced at trial.

171. 164. As Essar Projects' alter ego, Essar Global is liable for the recovery sought by Plaintiff in this claim.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract – LSTK)
### (Against Essar Projects-US; Essar Global)

172. 165. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 166171 of this Complaint with the same force and effect as though fully set forth herein.

173.    166. ESML and Essar Projects-US are parties to valid, binding contractual agreements in the form of the LSTK (as amended and including all annexed agreements and specifically Essar Projects-US's Partial Assignments).

174.    167. Under Essar Projects-US's Partial Assignments, Essar Projects-US accepted assignment of obligations from Essar Projects to perform Essar Projects' construction, domestic procurement, and project management obligations and agreed to "be bound by, observe and perform all of the duties and obligations on the part[] of [Essar Projects] under the Contract . . . as if [Essar Projects-US] had been originally named the Contractor under the Contract."  Essar Projects-US further agreed to be paid a fixed sum for that work ($444.6 million).

175.    168. Essar Projects-US breached the LSTK (including the Essar Projects-US Partial Assignments) in numerous respects, including as follows: The Project, including but not limited to domestic procurement and construction, is substantially incomplete.  The Project, once work starts again, is more than a year from being complete and will require hundreds of workers daily, and will cost hundreds of millions of dollars, to complete.  The Project also is burdened with liens, based on Essar Projects-US's and/or its subcontractors' failure to pay other subcontractors who worked on the Project.

176.    169. ESML has performed any and all conditions precedent to filing this action except insofar as any such conditions have been waived and/or excused.

51

177.    ~~170.~~ As a direct and proximate result of Essar Projects-US's breaches, ESML has been damaged in an amount to be determined at trial, and in a multitude of ways, which shall be more fully adduced at trial.

178.    ~~171.~~ As Essar Projects-US's alter ego, Essar Global is liable for the recovery sought by Plaintiff in this claim.

### THIRD CLAIM FOR RELIEF

**(Breach of Contract – LSTK)**
**(Against Essar Projects-Middle East; Essar Global)**

179.    ~~172.~~ Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through ~~173~~178 of this Complaint with the same force and effect as though fully set forth herein.

180.    ~~173.~~ ESML and Essar Projects-Middle East are parties to valid, binding contractual agreements in the form of the LSTK (as amended and including all annexed agreements and specifically Essar Projects-Middle East's Partial Assignments).

181.    ~~174.~~ Under Essar Projects-Middle East Partial Assignments, Essar Projects-Middle East accepted assignment of obligations from Essar Projects to perform Essar Projects' offshore procurement obligations and agreed to "be bound by, observe and perform all of the duties and obligations on the part[] of [Essar Projects] under the Contract . . . as if [Essar Projects-US] had been originally named the Contractor under the Contract."  Essar Projects-Middle East further agreed to be paid a fixed sum for that work ($241.3 million).

182.    ~~175.~~ Essar Projects-Middle East breached the LSTK (including Essar Projects-Middle East Partial Assignments) in numerous respects, including as follows: The Project, including but not limited to offshore procurement, is substantially incomplete.  The Project, once work starts again, is more than a year from being complete and will require hundreds of workers

daily, and will cost hundreds of millions of dollars, to complete.

183.    176. ESML has performed any and all conditions precedent to filing this action except insofar as any such conditions have been waived and/or excused.

184.    177. As a direct and proximate result of Essar Projects-Middle East's breaches, ESML has been damaged in an amount to be determined at trial, and in a multitude of ways, which shall be more fully adduced at trial.

185.    178. As Essar Projects-Middle East's alter ego, Essar Global is liable for the recovery sought by Plaintiff in this claim.

## FOURTH CLAIM FOR RELIEF

**(Breach of Contract – 2010 Essar Projects-India/ESML Supply and Engineering Contract)**
**(Against Essar Projects-India; Essar Global)**

186.    179. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 180185 of this Complaint with the same force and effect as though fully set forth herein.

187.    180. ESML and Essar Projects-India are parties to valid, binding contractual agreements in the form of the 2010 Essar Projects-India/ESML Supply and Engineering Contract.

188.    181. The 2010 Essar Projects-India/ESML Supply and Engineering Contract required Essar Projects-India to provide engineering and offshore procurement services for the Project.

189.    182. Essar Projects-India breached the 2010 Essar Projects-India/ESML Supply and Engineering Contract in numerous respects, including by materially failing to perform at least three of its main functions under the 2010 Essar Projects-India/ESML Supply and Engineering Contract: (1) Essar Projects-India failed to provide steel fabricated properly to

53

construct the Project, (2) Essar Projects-India failed to provide all of the equipment it was

obligated to procure for the Project, and (3) Essar Projects-India failed to complete all required

engineering services.

190.    183. ESML has performed any and all conditions precedent to filing this action

except insofar as any such conditions have been waived and/or excused.

191.    184. As a direct and proximate result of Essar Projects-India's breaches, ESML

has been damaged in an amount to be determined at trial, and in a multitude of ways, which shall

be more fully adduced at trial.

192.    185. As Essar Projects-India's alter ego, Essar Global is liable for the recovery

sought by Plaintiff in this claim.

## FIFTH CLAIM FOR RELIEF

**(Breach of Contract – 2010 Essar Constructions/ESML Construction Contract)**
**(Against Essar Constructions; Essar Global)**

193.    186. Plaintiff repeats and re-alleges each and every allegation contained in

paragraphs 1 through 187192 of this Complaint with the same force and effect as though fully set

forth herein.

194.    187. ESML and Essar Constructions are parties to valid, binding contractual

agreements in the form of the 2010 Essar Constructions/ESML Construction Contract (as

amended including by the applicableEssar Constructions Novation agreementAgreement entered

into as part of the LSTK), under which Essar Constructions was obligated to perform

construction services for the Project.

195.    The Essar Constructions Novation Agreement purported to release Essar

Constructions from its obligations (including those retained by Essar Constructions) under the

2010 Essar Constructions/ESML Construction Contract.  ESML agreed to release Essar

Constructions from its retained obligations based on Essar Constructions' explicit representation in the Essar Constructions Novation Agreement that all retained work had been paid by ESML or booked by Essar Constructions. That representation was false when made and Essar Constructions knew it to be false at that time. As such, the release contained in the Essar Constructions Novation Agreement is invalid and of no force and effect as it was procured by misrepresentation or fraud.

196. 188. On information and belief, Essar Constructions breached obligations attributable to Essar Constructions under the 2010 Essar Constructions/ESML Construction Contract. The construction of the Project is substantially incomplete and Essar Constructions did not perform the work related to the obligations it retained pursuant to the Essar Constructions Novation Agreement.

197. 189. ESML has performed any and all conditions precedent to filing this action except insofar as any such conditions have been waived and/or excused.

198. 190. As a direct and proximate result of Essar Constructions' breaches, ESML has been damaged in an amount to be determined at trial, and in a multitude of ways, which shall be more fully adduced at trial.

199. 191. As Essar Constructions' alter ego, Essar Global is liable for the recovery sought by Plaintiff in this claim.

## SIXTH CLAIM FOR RELIEF

### (Breach of Contract – 2010 Essar Project Management-ESML Contract)
### (Against Essar Project Management; Essar Global)

200. 192. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 193199 of this Complaint with the same force and effect as though fully set

55

forth herein.

201.    ~~193.~~ ESML and Essar Constructions are parties to valid, binding contractual agreements in the form of the 2010 Essar Project Management-ESML Contract (as amended including by the ~~applicable~~Essar Project Management Novation ~~agreement~~Agreement entered into as part of the LSTK), under which Essar Project Management was obligated to perform project management services for the Project.

202.    The Essar Project Management Novation Agreement purported to release Essar Project Management from its obligations (including those retained by Essar Project Management) under the 2010 Essar Project Management/ESML Contract.  ESML agreed to release Essar Project Management from its retained obligations based on Essar Project Management's explicit representation in the Essar Project Management Novation Agreement that all retained work had been paid by ESML or booked by Essar Project Management.  That representation was false when made and Essar Project Management knew it to be false at that time.  As such, the release contained in the Essar Project Management Novation Agreement is invalid and of no force and effect as it was procured by misrepresentation or fraud.

203.    ~~194. On information and belief,~~ Essar Project Management breached obligations attributable to Essar Project Management (including, but not limited to, the obligations it retained pursuant to the Essar Project Management Novation Agreement) under the 2010 Essar Project Management-ESML ~~Project~~ Contract.  For example, under section 2.2 and Annexure 1 of the 2010 Essar Project Management/ESML Contract, Essar Project Management was obligated to provide a wide range of ~~responsibilities~~services, including coordinating with all the contractors, ensuring such contractors perform, and resolving commercial conflicts, if any; providing a team headed by a qualified, full time project manager; and being responsible for

56

completion of the Project.

204. ~~195.~~ Essar Projects Management breached multiple obligations, including to:

- Monitor and ensure that the supply, supply and engineering, and construction contractors comply with their obligations in accordance with their respective contracts.  Annexure 1, §§ 1.2.1(c), 1.2.1(i), 1.2.7(a).

- Prepare periodic reports for ESML.  Annexure 1, § 1.2.1(j).

- Advise ESML of corrective actions to align the Project back on track in case of deviations from plans. Annexure 1, § 1.2.1(k).

- Maintain complete and up-to-date records of all contractual variations, design deviations/concession requests, *etc*.  Annexure 1, § 1.2.7(g).

205. ~~196.~~ Based on the incomplete status of the Project, the project management of the Project remains substantially incomplete.

206. ~~197.~~ ESML has performed any and all conditions precedent to filing this action except insofar as any such conditions have been waived and/or excused.

207. ~~198.~~ As a direct and proximate result of Essar Project Management's breaches, ESML has been damaged in an amount to be determined at trial, and in a multitude of ways, which shall be more fully adduced at trial.

208. ~~199.~~ As Essar Project Management's alter ego, Essar Global is liable for the recovery sought by Plaintiff in this claim.

### SEVENTH CLAIM FOR RELIEF

**(Breach of Contract – 2010 Essar Global Guarantee)**
**(Against Essar Global)**

209. ~~200.~~ Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through ~~201~~208 of this Complaint with the same force and effect as though fully set

forth herein.

210. ~~201.~~ ESML and Essar Global are parties to valid, binding contractual agreements in the form of the 2010 Essar Global Guarantee.

211. ~~202.~~ Pursuant to the 2010 Essar Global Guarantee, Essar Global guaranteed ESML's repayment of the 2010 Project Finance Debt, and all "Borrower Obligations" in connection therewith (including contribution of equity to maintain the 65/35 debt-to-equity ratio), and agreed to provide ESML with all funds required to complete the Project if the Project cost exceeded $1.079 billion (and $1.79 billion as amended).   Essar Global agreed "to provide to the Borrower [ESML] for the ratable benefit of the Borrower and the Lenders, the full and complete amount of any Deficiency when the Deficiency arises and the Guarantor receives notice of the Deficiency as set forth in Section 2.02(a)."

212. ~~203.~~ Essar Global failed to contribute equity to ESML as required or in a timely manner, and Essar Global received notice of numerous Deficiencies, but Essar Global failed to provide the funds to ESML necessary to pay for the Deficiencies, in breach of the 2010 Essar Global Guarantee.

213. ~~204.~~ ESML has performed any and all conditions precedent to filing this action except insofar as any such conditions have been waived and/or excused.

214. ~~205.~~ As a direct and proximate result of Essar Global's breaches, ESML has been damaged in an amount to be determined at trial, and in a multitude of ways, which shall be more fully adduced at trial.

## EIGHTH CLAIM FOR RELIEF

**(Promissory Estoppel)**
**(Against Essar Global)**

215. ~~206.~~ Plaintiff repeats and re-alleges each and every allegation contained in

AMERICAS ~~95090166 v1~~100122436

paragraphs 1 through ~~207~~214 of this Complaint with the same force and effect as though fully set forth herein.

216.    ~~207.~~ On information and belief, Essar Global made a clear and definite promise to ESML to fund any and all equity contribution requirements in connection with the 2010 Project Finance Debt, and to provide ESML with all funds required to complete the Project if the Project cost exceeded what the parties envisioned under the terms of the 2010 Project Finance Debt (initially, $1.079 billion, and $1.79 billion as amended).

217.    ~~208.~~ In reasonable reliance on Essar Global's promises, ESML drew funds in connection with the 2010 Project Finance Debt.

218.    ~~209.~~ Essar Global then failed to comply with its promises to ESML by failing to make its required equity contributions.

219.    ~~210.~~ As a direct and proximate result of ESML's reasonable reliance, ESML has been damaged in an amount to be determined at trial, and in a multitude of ways, which shall be more fully adduced at trial.

220.    ~~211.~~ Essar Global's promises must be enforced to avoid injustice.

## NINTH CLAIM FOR RELIEF

**(Breach of Contract – Equity Contribution Agreement and 2014 Credit and Security Agreement)**
**(Against Essar Global)**

221.    ~~212.~~ Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through ~~213~~220 of this Complaint with the same force and effect as though fully set forth herein.

222.    ~~213.~~ ESML and Essar Global are parties to valid, binding contractual agreements in the form of the "Equity Contribution Agreement" and "2014 Credit and Security Agreement."

AMERICAS ~~95090166 v1~~100122436

223.    214. The Equity Contribution Agreement and 2014 Credit and Security

Agreement required Essar Global (*inter alia*) to contribute $410 million (defined above as the

Required Equity Contribution) to ESML as equity, $50 million of which was to be deposited into

a "Cost Overrun Account," according to the following schedule, (1) $260 million between

August 1, 2014 and the Closing Date, (2) $68 million 180 days following the Closing Date, and

(3) $82 million 270 days following the Closing Date.

224.    215. The Equity Contribution Agreement required Essar Global (*inter alia*) to

fully satisfy debt obligations of ESML with respect to the 2014 Credit and Security Agreement,

or obligations otherwise required to be satisfied to complete the construction of the Project,

including costs in excess of $1.802 billion and certain government grant reimbursement

obligations.  The Equity Contribution Agreement required to make equity contributions to

ESML in the "full and complete amount" of any "Deficiency" ESML may encounter in building

the Project, including "any actual shortfall, however caused, in funds available to the Borrower

required for any cost of the Project in excess of one billion eight hundred two million Dollars

(US$1,802,000,000)."

225.    216. Essar Global breached its obligations to ESML under the Equity

Contribution Agreement and 2014 Credit and Security Agreement in numerous respects,

including: Essar Global failed to make its full final payment of the Required Equity

Contribution; and Essar Global has not funded the Deficiencies ESML has encountered in

completing the Project, despite that ESML has incurred costs in excess of $1,802,000,000 in

connection with the Project.

226.    217. Essar Global was provided with notice of its breaches of the Equity

Contribution Agreement and 2014 Credit and Security Agreement, but Essar Global has failed to

provide the funds required by the Equity Contribution Agreement and 2014 Credit and Security Agreement.

227.    218. ESML has performed any and all conditions precedent to filing this action except insofar as any such conditions have been waived and/or excused.

228.    219. As a direct and proximate result of Essar Global's breaches, ESML has been damaged in an amount to be determined at trial, and in a multitude of ways, which shall be more fully adduced at trial.

**TENTH CLAIM FOR RELIEF**

**(Promissory Estoppel)**
**(Against Essar Global)**

229.    220. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 221228 of this Complaint with the same force and effect as though fully set forth herein.

230.    221. On information and belief, through the Equity Contribution Agreement and otherwise, Essar Global made a clear and definite promise to ESML to contribute $410 million (defined above as the Required Equity Contribution) to ESML as equity, $50 million of which was to be deposited into a "Cost Overrun Account," according to the following schedule, (1) $260 million between August 1, 2014 and the Closing Date, (2) $68 million 180 days following the Closing Date, and (3) $82 million 270 days following the Closing Date.

231.    222. On information and belief, through the Equity Contribution Agreement and otherwise, Essar Global made a clear and definite promise to ESML to fully satisfy debt obligations of ESML with respect to the 2014 Credit and Security Agreement, or obligations otherwise required to be satisfied to complete the construction of the Project, including costs in excess of $1.802 billion and certain government grant reimbursement obligations.  Essar Global

61

made a clear and definite promise to ESML to make equity contributions to ESML in the "full and complete amount" of any "Deficiency" ESML may encounter in building the Project, including "any actual shortfall, however caused, in funds available to the Borrower required for any cost of the Project in excess of one billion eight hundred two million Dollars (US$1,802,000,000)."

232. 223. In reasonable reliance on Essar Global's promises, ESML drew funds in connection with the 2014 Credit and Security Agreement, proceeded with the Project, and incurred costs in excess of $1,802,000,000 in connection with the Project.

233. 224. Essar Global then failed to comply with its promises to ESML by failing to make its equity contributions and fund the Project as required.

234. 225. As a direct and proximate result of ESML's reasonable reliance, ESML has been damaged in an amount to be determined at trial, and in a multitude of ways, which shall be more fully adduced at trial.

235. 226. Essar Global's promises must be enforced to avoid injustice.

## ELEVENTH CLAIM FOR RELIEF

### (Breach of Contract – Bond Offering)
### (Against Essar Global)

236. 227. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 228235 of this Complaint with the same force and effect as though fully set forth herein.

237. 228. On information and belief, ESML and Essar Global are parties to valid, binding contractual agreements in the form of ESML's agreement to seek $450 million in bond debt to finance the Project in exchange for Essar Global's agreement to cover any equity contribution requirements in connection with such offering. In reliance thereon, ESML

AMERICAS 95090466 v1100122436

proceeded to seek the financing.

238. 229. Essar Global breached its obligations to ESML by failing to make its equity contributions as required.

239. 230. ESML has performed any and all conditions precedent to filing this action except insofar as any such conditions have been waived and/or excused.

240. 231. As a direct and proximate result of Essar Global's breaches, ESML has been damaged in an amount to be determined at trial, and in a multitude of ways, which shall be more fully adduced at trial.

## TWELFTH CLAIM FOR RELIEF

**(Promissory Estoppel)**
**(Against Essar Global)**

241. 232. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 233240 of this Complaint with the same force and effect as though fully set forth herein.

242. 233. On information and belief, Essar Global made a clear and definite promise to ESML to fund any and all equity contribution requirements in connection with ESML seeking $450 million in financing through a bond offering, as described above.

243. 234. In reasonable reliance on Essar Global's promise, ESML proceeded to seek the bond offering.

244. 235. Essar Global then failed to comply with its promise to ESML by failing to make its equity contributions as required.

245. 236. As a direct and proximate result of ESML's reasonable reliance, ESML has been damaged in an amount to be determined at trial, and in a multitude of ways, which shall be more fully adduced at trial.

63

246. 237. Essar Global's promise must be enforced to avoid injustice.

## THIRTEENTH CLAIM FOR RELIEF

**(Tortious Interference with Existing Contract)**
**(Against Essar Global)**

247. 238. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 239246 of this Complaint with the same force and effect as though fully set forth herein.

248. 239. On information and belief, Essar Global tortiously interfered with the LSTK and related Project Contracts, which are valid and enforceable contracts.

249. 240. Essar Global knew about the existence of the LSTK and related Project Contracts.

250. 241. Essar Global intentionally acted in a way to procure a breach of the LSTK and related Project Contracts by inducing the diversion to Essar Global and Essar Global's own usesuse of hundreds of millions of dollars paid by ESML under the LSTK and related Project Contracts to effect completion of the Project.

251. 242. Essar Global's conduct was not justified.

252. 243. ESML suffered damages due to Essar Global's tortious interference as alleged above and in an amount to be proven at trial.

## FOURTEENTH CLAIM FOR RELIEF

**(Avoidance and Recovery of Fraudulent Transfers – Constructive)**
**(Against Essar Constructions; Essar Global; Essar Project Management; Essar Projects-India; Essar Projects-US; Essar Projects; Essar Logistics; Global Supplies; Essar Projects-Middle East; Does 1-1000500)**
**[11 U.S.C. §§ 544 and 550, and applicable state law, including Minn. Stat. § 513.44]**

253. 244. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 245252 of this Complaint with the same force and effect as though fully set

AMERICAS 95090166 v1100122436

forth herein.

254. 245. Under section 544(b) of the Bankruptcy Code, any debtor may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is avoidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code or that is not allowable only under section 502(e) of the Bankruptcy Code. The phrase "under applicable law" has been interpreted to include the states' fraudulent transfer laws that would govern potentially fraudulent transactions.

255. 246. The Company made the following transfers (collectively, including the Essar Global Transfers (as defined below), the "**Six Year Fraudulent Transfers**") of funds to or for the benefit of the defendants to this claim, from July 8, 2010 through July 8, 2016:

| Entity | Amount Received |
|---|---|
| Essar Constructions Limited | $181,621,090 |
| Essar Project Management Company Ltd. | $3,744,718 |
| Essar Projects (India) Limited | $206,136,046 |
| Essar Projects (USA) LLC | $48,413,715 |
| Essar Projects Limited | $593,898,751 |
| Essar Steel Algoma Inc. | $2,684,458 |
| Essar Logistics | $8,314,245 |
| Global Supplies | $71,445,228 |
| Trinity Coal Corporation[35] | $5,500,050 |
| **Total** | **$1,121,758,301** |

[35] Essar Steel Algoma, Inc. and Trinity Coal Corporation are not defendants in this case, but transfers to them are identified to the extent that transfers were for the benefit of defendants or funds were passed on to later transferees.

AMERICAS 95090166 v1100122436

In addition, ESML transferred to Essar Global $79 million in June 2012, and $21,325,000 in January 2013 as "loans" (together the "**Essar Global Transfers**").  Attached hereto as **Exhibit A** are charts detailing the dates and amounts of all of the transfers to each affiliate referenced above.

256. 247. Each of the Six Year Fraudulent Transfers constituted a transfer of an interest in the property of the Company.

257. 248. Each of the Six Year Fraudulent Transfers was made for less than fair consideration and less than reasonably equivalent value.

258. 249. At the times of, and subsequent to, each of the Six Year Fraudulent Transfers, the Company had at least one creditor with an allowable unsecured claim for liabilities, which remained unsatisfied as of the Petition Date.

259. 250. Each of the Six Year Fraudulent Transfers was made when ESML (1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; and/or (2) intended to incur, or believed or reasonably should have believed that ESML would incur, debts beyond ESML's ability to pay as they became due.

260. 251. By virtue of the foregoing, each of the Six Year Fraudulent Transfers was a fraudulent transfer avoidable under applicable state law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code, and Plaintiff is entitled to avoid and recover each of the Six Year Fraudulent Transfers under sections 544 and 550 of the Bankruptcy Code.

261. 252. Under section 550(a) of the Bankruptcy Code, "[e]xcept as otherwise

provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from -- (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."

262.    253. Each defendant to this claim is the initial transferee of one or more of the Six Year Fraudulent Transfers, the entity for whose benefit one or more of the Six Year Fraudulent Transfers was made, or an immediate or mediate transferee of the subject transfer.

263.    254. The real names of Does 1-1000500 are not known or ascertainable by Plaintiff at this time because Plaintiff has no way of knowing what the named defendants did with the funds they received from the Six Year Fraudulent Transfers, which could include transferring them to Doe defendants.  Does 1-1000500 are the immediate or mediate transferees of the subject transfers and are subject to liability pursuant to section 550 of the Bankruptcy Code.

264.    255. To the extent that one or more of the Six Year Fraudulent Transfers is avoided, Plaintiff may recover the property transferred, or the value of the transferred property, from each defendant to this claim pursuant to section 550(a) of the Bankruptcy Code.

265.    256. Plaintiff seeks to recover damages from each defendant to this claim in an amount equal to the dollar value of the property transferred pursuant to each of the Six Year Fraudulent Transfers as of the date of the transfer, together with interest on that amount from the date of the transfer, attorneys' fees, and costs of suit and collection allowable by law.

### FIFTEENTH CLAIM FOR RELIEF

**(Avoidance and Recovery of Fraudulent Transfers – Intentional)**
**(Essar Constructions; Essar Global; Essar Project Management; Essar Projects-India;**
**Essar Projects-US; Essar Projects; Essar Logistics; Global Supplies; Essar Projects-**

67

**Middle East; Does 1 ~~1000~~500)**
**[11 U.S.C. §§ 544 and 550, and applicable state law, including Minn. Stat. § 513.44]**

266.    ~~257.~~ Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through ~~258~~265 of this Complaint with the same force and effect as though fully set forth herein.

267.    ~~258.~~ Under section 544(b) of the Bankruptcy Code, a debtor may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is avoidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code or that is not allowable only under section 502(e) of the Bankruptcy Code. The phrase "under applicable law" has been interpreted to include the states' fraudulent transfer laws that would govern potentially fraudulent transactions.

268.    ~~259.~~ The Company made the Six Year Fraudulent Transfers of funds to or for the benefit of the defendants to this claim.

269.    ~~260.~~ Each of the Six Year Fraudulent Transfers constituted a transfer of an interest in the property of the Company.

270.    ~~261.~~ Each of the Six Year Fraudulent Transfers was made for less than fair consideration and less than reasonably equivalent value.

271.    ~~262.~~ At the times of, and subsequent to, each of the Six Year Fraudulent Transfers, the Company had at least one creditor with an allowable unsecured claim for liabilities, which remained unsatisfied as of the Petition Date.

272.    ~~263.~~ Each of the Six Year Fraudulent Transfers (1) was made when the Company was insolvent; (2) rendered the Company insolvent; and/or (3) left the Company with unreasonably small capital in relation to the Company's business at the time.

273.    ~~264.~~ At the time of each of the Six Year Fraudulent Transfers, the Company

68

intended or believed that the Company would incur debts beyond its ability to pay as such debts matured.

274. 265. Each of the Six Year Fraudulent Transfers was made with the actual intent to hinder, delay, or defraud present or future creditors.

275. 266. By virtue of the foregoing, each of the Six Year Fraudulent Transfers was a fraudulent transfer avoidable under applicable state law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code, and Plaintiff is entitled to avoid and recover each of the Six Year Fraudulent Transfers under sections 544 and 550 of the Bankruptcy Code.

276. 267. Under section 550(a) of the Bankruptcy Code, "[e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from -- (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."

277. 268. Each defendant to this claim is the initial transferee of one or more of the Six Year Fraudulent Transfers, the entity for whose benefit one or more of the Six Year Fraudulent Transfers was made, or an immediate or mediate transferee of the subject transfer.

278. 269. The real names of Does 1-1000500 are not known or ascertainable by Plaintiff at this time because Plaintiff has no way of knowing what the named defendants did with the funds they received from the Six Year Fraudulent Transfers, which could include transferring them to DOE defendants. Does 1-1000500 are the immediate or mediate transferees of the subject transfers and are subject to liability pursuant to section 550 of the Bankruptcy

AMERICAS 95090466 v1100122436

Code.

279. 270. To the extent that one or more of the Six Year Fraudulent Transfers is avoided, Plaintiff may recover the property transferred, or the value of the transferred property, from each defendant to this claim pursuant to section 550(a) of the Bankruptcy Code.

280. 271. Plaintiff seeks to recover damages from each defendant to this claim in an amount equal to the dollar value of the property transferred pursuant to each of the Six Year Fraudulent Transfers as of the date of the transfer, together with interest on that amount from the date of the transfer, attorneys' fees, and costs of suit and collection allowable by law.

### SIXTEENTH CLAIM FOR RELIEF

**(Avoidance and Recovery of Fraudulent Transfers – Constructive)**
**(Essar Constructions; Essar Global; Essar Project Management; Essar Projects-India;**
**Essar Projects-US; Essar Projects; Essar Logistics; Global Supplies; Essar Projects-**
**Middle East; Does 1-1000500)**
**[11 U.S.C. §§ 544 and 550, and applicable state law, including Minn. Stat. § 513.45]**

281. 272. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 273280 of this Complaint with the same force and effect as though fully set forth herein.

282. 273. Under Section 544(b) of the Bankruptcy Code, any debtor may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is avoidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code or that is not allowable only under section 502(e) of the Bankruptcy Code. The phrase "under applicable law" has been interpreted to include the states' fraudulent transfer laws that would govern potentially fraudulent transactions.

283. 274. The Company made the Six Year Fraudulent Transfers to or for the benefit of the defendants to this claim, from July 8, 2010 through July 8, 2016.

AMERICAS 95090166 v1100122436

284.    275. Each of the Six Year Fraudulent Transfers constituted a transfer of an interest in the property of the Company.

285.    276. At the times of, and subsequent to, each of the Six Year Fraudulent Transfers, the Company had at least one creditor with an allowable unsecured claim for liabilities, which remained unsatisfied as of the Petition Date.

286.    277. Each of the Six Year Fraudulent Transfers (1) was made was made for less than fair consideration and less than reasonably equivalent value; and (2) at a time when ESML was insolvent and/or became insolvent as a result of the Six Year Fraudulent Transfer.

287.    278. Each of the Six Year Fraudulent Transfers was made to an insider for an antecedent debt at a time in which ESML was insolvent, and the insider had reasonable cause to believe that ESML was insolvent.

288.    279. By virtue of the foregoing, each of the Six Year Fraudulent Transfers was a fraudulent transfer avoidable under applicable state law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code, and Plaintiff is entitled to avoid and recover each of the Six Year Fraudulent Transfers under sections 544 and 550 of the Bankruptcy Code.

289.    280. Under section 550(a) of the Bankruptcy Code, "[e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from -- (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."

290.    281. Each defendant to this claim is the initial transferee of one or more of the Six

Year Fraudulent Transfers, the entity for whose benefit one or more of the Six Year Fraudulent Transfers was made, or an immediate or mediate transferee of the subject transfer.

291.    282. The real names of Does 1-1000500 are not known or ascertainable by Plaintiff at this time because Plaintiff has no way of knowing what the named defendants did with the funds they received from the Six Year Fraudulent Transfers, which could include transferring them to Doe defendants.  Does 1-1000500 are the immediate or mediate transferees of the subject transfers and are subject to liability pursuant to section 550 of the Bankruptcy Code.

292.    283. To the extent that one or more of the Six Year Fraudulent Transfers is avoided, Plaintiff may recover the property transferred, or the value of the transferred property, from each defendant to this claim pursuant to section 550(a) of the Bankruptcy Code.

293.    284. Plaintiff seeks to recover damages from each defendant to this claim in an amount equal to the dollar value of the property transferred pursuant to each of the Six Year Fraudulent Transfers as of the date of the transfer, together with interest on that amount from the date of the transfer, attorneys' fees, and costs of suit and collection allowable by law.

## SEVENTEENTH CLAIM FOR RELIEF

**(Avoidance and Recovery of Fraudulent Transfers – Constructive)**
**(Essar Constructions; Essar Global; Essar Project Management; Essar Projects-India; Essar Projects-US; Essar Projects; Essar Projects-Middle East; Does 1-1000500)**
**[11 U.S.C. §§ 548(a)(1)(B) and 550]**

294.    285. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 286293 of this Complaint with the same force and effect as though fully set forth herein.

295.    286. Within two years of the Petition Date, the Company made the following transfers of funds (collectively, the "**Two Year Fraudulent Transfers**") to or for the benefit of

the defendants to this claim:

| Entity | Amount Received |
|---|---|
| Essar Constructions Limited | $29,901,519 |
| Essar Project Management Company Ltd | $443,598 |
| Essar Projects (India) Limited | $40,413,130 |
| Essar Projects (USA) LLC | $47,902,824 |
| Essar Projects Limited | $475,782,755 |
| Essar Steel Algoma Inc | $1,980,385 |
| **Total** | **$596,424,211** |

296. ~~287.~~ Attached hereto as **Exhibit B** are charts detailing the dates and amounts of all of the transfers to each affiliate referenced above.

297. ~~288.~~ Each of the Two Year Fraudulent Transfers constituted a transfer of an interest in the property of the Company.

298. ~~289.~~ Each of the Two Year Fraudulent Transfers was made for less than fair consideration and less than a reasonably equivalent value.

299. ~~290.~~ At the times of, and subsequent to, each of the Two Year Fraudulent Transfers, the Company had at least one creditor with an allowable unsecured claim for liabilities, which remained unsatisfied as of the Petition Date.

300. ~~291.~~ Each of the Two Year Fraudulent Transfers (1) was made when the Company was insolvent; (2) rendered the Company insolvent; (3) left the Company with unreasonably small capital in relation to the Company's business at the time; or (4) was made to

or for the benefit of an insider.

301. 292. At the time of each of the Two Year Fraudulent Transfers, the Company incurred and intended, or believed that the Company would incur, debts that would be beyond its ability to pay as such debts matured.

302. 293. By virtue of the foregoing, each of the Two Year Fraudulent Transfers was a fraudulent transfer avoidable under section 548(a)(1)(B) of the Bankruptcy Code, and Plaintiff is entitled to recover each of the Two Year Fraudulent Transfers under section 550 of the Bankruptcy Code.

303. 294. Under section 550(a) of the Bankruptcy Code, "[e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from -- (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."

304. 295. Each defendant to this claim is the initial transferee of one or more of the Two Year Fraudulent Transfers, the entity for whose benefit one or more of the Two Year Fraudulent Transfers was made, or an immediate or mediate transferee of the subject transfer.

305. 296. The real names of Does 1-1000500 are not known or ascertainable by Plaintiff at this time because Plaintiff has no way of knowing what the named defendants did with the funds they received from the Two Year Fraudulent Transfers, which could include transferring them to DOE defendants. Does 1-1000500 are the immediate or mediate transferees of the subject transfers and are subject to liability pursuant to section 550 of the Bankruptcy Code.

306. 297. To the extent that one or more of the Two Year Fraudulent Transfers is avoided, Plaintiff may recover the property transferred, or the value of the transferred property, from each defendant to this claim pursuant to section 550(a) of the Bankruptcy Code.

307. 298. Plaintiff seeks to recover damages from each defendant to this claim in an amount equal to the dollar value of the property transferred pursuant to each of the Two Year Fraudulent Transfers as of the date of the transfer, together with interest on that amount from the date of the transfer, attorneys' fees, and costs of suit and collection allowable by law.

## EIGHTEENTH CLAIM FOR RELIEF

**(Avoidance and Recovery of Fraudulent Transfers – Intentional)**
**(Essar Constructions; Essar Global; Essar Project Management; Essar Projects-India;**
**Essar Projects-US; Essar Projects; Essar Projects-Middle East; Does 1–1000500)**
**[11 U.S.C. §§ 548(a)(1)(A) and 550]**

308. 299. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 300307 of this Complaint with the same force and effect as though fully set forth herein.

309. 300. Within two years of the Petition Date, the Company made the Two Year Fraudulent Transfers of funds to or for the benefit of the defendants to this claim.

310. 301. Each of the Two Year Fraudulent Transfers constituted a transfer of an interest in the property of the Company.

311. 302. Each of the Two Year Fraudulent Transfers was made for less than fair consideration and less than a reasonably equivalent value.

312. 303. At the times of, and subsequent to, each of the Two Year Fraudulent Transfers, the Company had at least one creditor with an allowable unsecured claim for liabilities, which remained unsatisfied as of the Petition Date.

313. 304. Each of the Two Year Fraudulent Transfers (1) was made when the

75

Company was insolvent; (2) rendered the Company insolvent; (3) left the Company with unreasonably small capital in relation to the Company's business at the time; or (4) was made to or for the benefit of an insider.

314. ~~305.~~ At the time of each of the Two Year Fraudulent Transfers, the Company incurred and intended, or believed that the Company would incur, debts that would be beyond its ability to pay as such debts matured.

315. ~~306.~~ Each of the Two Year Fraudulent Transfers was made with the actual intent to hinder, delay, or defraud an entity to which the Company was or became indebted, on or after the date of the transfer.

316. ~~307.~~ By virtue of the foregoing, each of the Two Year Fraudulent Transfers was a fraudulent transfer avoidable under section 548(a)(1)(B) of the Bankruptcy Code, and Plaintiff is entitled to recover each of the Two Year Fraudulent Transfers under section 550 of the Bankruptcy Code.

317. ~~308.~~ Under section 550(a) of the Bankruptcy Code, "[e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from -- (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."

318. ~~309.~~ Each defendant to this claim is the initial transferee of one or more of the Two Year Fraudulent Transfers, the entity for whose benefit one or more of the Two Year Fraudulent Transfers was made, or an immediate or mediate transferee of the subject transfer.

319. ~~310.~~ The real names of Does 1-~~1000~~500 are not known or ascertainable by

76

Plaintiff at this time because Plaintiff has no way of knowing what the named defendants did with the funds they received from the Two Year Fraudulent Transfers, which could include transferring them to DOE defendants.  Does 1-~~1000~~500 are the immediate or mediate transferees of the subject transfers and are subject to liability pursuant to section 550 of the Bankruptcy Code.

320.    ~~311.~~ To the extent that one or more of the Two Year Fraudulent Transfers is avoided, Plaintiff may recover the property transferred, or the value of the transferred property, from each defendant to this claim pursuant to section 550(a) of the Bankruptcy Code.

321.    ~~312.~~ Plaintiff seeks to recover damages from each defendant to this claim in an amount equal to the dollar value of the property transferred pursuant to each of the Two Year Fraudulent Transfers as of the date of the transfer, together with interest on that amount from the date of the transfer, attorneys' fees, and costs of suit and collection allowable by law.

## NINETEENTH CLAIM FOR RELIEF

**(Avoidance and Recovery of Preferential Transfers)**
**(Against Essar Constructions; Essar Projects-India; Essar Projects-US; Essar Projects;**
**Essar Projects-Middle East; Does 1-~~1000~~500)**
**[11 U.S.C. §§ 547 and 550]**

322.    ~~313.~~ Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through ~~314~~320 of this Complaint with the same force and effect as though fully set forth herein.

323.    ~~314.~~ Under section 547 of the Bankruptcy Code, any Debtor may avoid any transfer of an interest of the Debtor in property, (1) to or for the benefit of a creditor, (2) for or on account of an antecedent debt owed by the Debtor before such transfer was made, (3) made while the Debtor was insolvent, (4) made (A) on or within 90 days before the date of the filing of the petition, or (B) within one year before the date of the filing of the petition, if such creditor at

the time of such transfer was an insider, and (5) that enables such creditor to receive more than

such creditor would receive if (A) the Debtor's case were a case under chapter 7 of the

Bankruptcy Code, (B) the transfer had not been made, and (C) such creditor received payment of

such debt to the extent provided by the provisions of the Bankruptcy Code.

324. 315. Within one year of the Petition Date, the Company made transfers

(collectively, the "**Preferential Transfers**") of funds to the defendants to this claim, including

but not limited to, the following:

| Entity | Amount Received |
|---|---|
| Essar Constructions Limited | $27,061,274 |
| Essar Projects (India) Limited | $3,093,883 |
| Essar Projects (USA) LLC | $10,036,597 |
| Essar Projects Limited | $52,292,649 |
| **Total** | **$92,484,403** |

325. 316. Attached hereto as **Exhibit C** are charts detailing the dates and amounts of

all of the transfers to each affiliate referenced above.

326. 317. Each of the Preferential Transfers constituted a transfer of an interest in the

Company's property.

327. 318. Each of the Preferential Transfers was to or for the benefit of a creditor.

328. 319. Each of the Preferential Transfers was for or on account of an antecedent

debt owed by the Company before it was made.

329. 320. Each of the Preferential Transfers was made while the Company was

78

insolvent.

330. ~~321.~~ Each of the Preferential Transfers was made on or within 90 days before the Petition Date, or was to an insider within the meaning of section 101(31) of the Bankruptcy Code and was made between ninety days and one year before the Petition Date.

331. ~~322.~~ Each of the Preferential Transfers enabled such creditor to receive more than the creditor would receive if (A) the Company's cases were cases under chapter 7 of the Bankruptcy Code, (B) the transfer had not been made, and (C) such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

332. ~~323.~~ Each of the Preferential Transfers constitutes an avoidable preferential transfer, within the meaning of section 547 of the Bankruptcy Code.

333. ~~324.~~ By virtue of the foregoing, Plaintiff is entitled to avoid and recover each of the Preferential Transfers under sections 547(b) and 550 of the Bankruptcy Code.

334. ~~325.~~ Under section 550(a) of the Bankruptcy Code, "[e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from -- (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."

335. ~~326.~~ Each defendant to this claim is the initial transferee of one or more of the Preferential Transfers, the entity for whose benefit one or more of the Preferential Transfers was made, or an immediate or mediate transferee of the subject transfer.

336. ~~327.~~ The real names of Does 1-~~1000~~500 are not known or ascertainable by Plaintiff at this time because Plaintiff has no way of knowing what the named defendants did

79

with the funds they received from the Preferential Transfers, which could include transferring them to Doe defendants.  Does 1 ~~1000~~500 are the immediate or mediate transferees of the subject transfers and are subject to liability pursuant to section 550 of the Bankruptcy Code.

337.  ~~328.~~ To the extent that one or more of the Preferential Transfers is avoided, Plaintiff may recover the property transferred, or the value of the transferred property, from each defendant to this claim pursuant to section 550(a) of the Bankruptcy Code.

338.  ~~329.~~ Plaintiff seeks to recover damages from each defendant to this claim in an amount equal to the dollar value of the property transferred pursuant to each of the Preferential Transfers as of the date of the transfer, together with interest on that amount from the date of the transfer, attorneys' fees, and costs of suit and collection allowable by law.

## TWENTIETH CLAIM FOR RELIEF

### ~~(Breach of Fiduciary Duty)~~
### ~~(Against Essar Global)~~

~~330.  Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 345 of this Complaint with the same force and effect as though fully set forth herein.~~

~~331.  On information and belief, Essar Global has at all relevant times been the indirect owner of 100% of the shares of ESML.  On information and belief, Essar Global and personnel designated by Essar Global had the power to appoint a controlling number of members to ESML's board of directors/governors and to the boards of each of the Essar Affiliates.  On information and belief, Essar Global and personnel designated by Essar Global exercised control over the board and the business affairs of ESML and over the business affairs of other Essar Affiliates, including Essar Projects.  As the ultimate controlling shareholder of ESML, Essar Global had fiduciary duties to ESML to act with the utmost good faith, loyalty, fair dealing, and due care toward ESML and in furtherance of the best interests of ESML.~~

80

332. Essar Global also owed fiduciary duties to ESML's creditors because ESML was insolvent or operating in the zone of insolvency at all relevant times.  Essar Global had fiduciary duties to act with the utmost good faith, loyalty, fair dealing, and due care toward ESML's creditors and in furtherance of the best interests of ESML's creditors.

333. Essar Global's duties included abstaining from self-dealing and pursuing interests not shared by ESML and its creditors.

334. In directing and conducting the actions set forth above, on information and belief, Essar Global breached its duties of good faith, loyalty, fair dealing, and due care, including by:

- Directing the diversion to Essar Global, and converting to Essar Global's own uses or the uses of preferred Essar Affiliates, hundreds of millions of dollars paid by ESML under the LSTK and related Project Contracts to effect completion of the Project;

- Directing ESML to make loans to Essar Global, including $79 million loaned to Essar Global in June 2012, $325,000 loaned to Essar Global in January 2013 and $21 million loaned to Essar Global in January 2013, which loans damaged ESML;

- Directing ESML to undertake the issuance of, extend the escrow period for, and ultimately redeem at a premium, bonds in 2014 at an expense to ESML of over $40 million, which provided no benefit to ESML;

- Directing ESML to pay $3.3 million to an Essar affiliate in exchange for no value;

- Directing the release of the $5 million claim in the Trinity bankruptcy case;

- Breaching Essar Global's promises and commitments to contribute equity to ESML as required or in a timely manner, to allow ESML to timely proceed with the

81

~~Project and ultimately to complete the Project, including but not limited to as evidenced by the 2010 Essar Global Guarantee, the "2014 Credit and Security Agreement" and the "Equity Contribution Agreement."~~

~~335. Essar Global's breaches constituted, at a minimum, gross negligence and/or recklessness.~~

~~336. Essar Global's conduct constituted self-dealing, and harmed and did not benefit ESML and its creditors, and instead enriched Essar Global.~~

~~337. Essar Global knew, recklessly disregarded, or should have known that the above described conduct was not in ESML's best interests.~~

~~338. As a direct and proximate result of Essar Global's breaches of their fiduciary duties, ESML was damaged in an amount to be proven at trial. Essar Global is liable to ESML and its creditors for damages and equitable remedies resulting from their flagrant breaches of fiduciary duties.~~

## ~~TWENTIETH~~ FIRST CLAIM FOR RELIEF

**(Aiding and Abetting Breach of Fiduciary Duty)**
**(Against Essar Global; Essar Projects; Does 1-~~1000~~500)**

339.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through ~~354~~338 of this Complaint with the same force and effect as though fully set forth herein.

340.    As set forth in the Twentieth Claim for Relief, the Officer/Director Defendants owed fiduciary duties to ESML and its creditors to act with the utmost good faith, loyalty, fair dealing, and due care toward ESML and its creditors and in furtherance of the best interests of ESML and its creditors.

341.    As described in the Twentieth Claim for Relief, the Officer/Director Defendants

breached their fiduciary duties in multiple respects.

342.    Essar Global and Essar Projects aided and abetted the Officer/Director Defendants' breaches of fiduciary duties because, among other things, they knew of the Officer/Director Defendants' fiduciary duties, yet knowingly participated in and substantially assisted the Officer/Director Defendants' breaches of those duties, as further alleged herein.

343.    Essar Global and Essar Projects knew that ESML was insolvent or operating in the zone of insolvency.

344.    Essar Global and Essar Projects knew or recklessly disregarded that the transactions identified in the Twentieth Claim for Relief would harm ESML.

345.    Notwithstanding this knowledge, Essar Global and Essar Projects knowingly participated in the Officer/Director Defendants' breaches of fiduciary duties by encouraging and scheming with the Officer/Director Defendants to implement the transactions identified in the Twentieth Claim for Relief.

346.    By aiding and abetting the Officer/Director Defendants' breaches of fiduciary duties, Essar Global and Essar Projects proximately caused hundreds of millions of dollars in damages to ESML.  Essar Global and Essar Projects are liable to ESML and its creditors for damages (and equitable remedies) resulting from their aiding and abetting of the Officer/Director Defendants' breaches of fiduciary duties.

**TWENTIETH-FIRST CLAIM FOR RELIEF** ~~TWENTIETH-SECOND CLAIM FOR RELIEF~~

**(Alter Ego/Single Enterprise Liability)**
**(Against Essar Global for Plaintiff's Claims Against Each of Essar Global's Subsidiaries and Affiliates)**

347.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through ~~362~~346 of this Complaint with the same force and effect as though fully set forth

83

herein.

348.    At all relevant times, Essar Global controlled and dominated its subsidiaries and affiliates, causing its subsidiaries and affiliates, including the Essar Affiliates named as defendants herein, to have no separate existences and to act as mere instrumentalities of Essar Global.  The corporate structure owned, directed, and controlled by Essar Global was merely a facade masking a single enterprise acting in concert for the benefit of Essar Global.

349.    Essar Global exerted pervasive control over its subsidiaries and affiliates, including ESML, and disregarded corporate and fiscal formalities.  As alleged above, on information and belief, certain of Essar Global's direct and indirect subsidiaries, including those identified in this Complaint, were inadequately capitalized.  Essar Global caused its subsidiaries to transfer hundreds of millions of dollars in funds earmarked for the Project between affiliates.  At all relevant times, Essar Global and its subsidiaries dictated the terms of the contracts that ESML entered into with its affiliates and such contracts were not negotiated at arm's length.  Essar Global maintained unified administrative control over its subsidiaries and affiliates by sharing board members, officers, directors, and employees.  At all relevant times, Essar Global abused the corporate structure of its subsidiaries and affiliates to engage in fraudulent and deceptive conduct.

350.    As a direct result of Essar Global's pervasive domination and control over its subsidiaries and affiliates, Essar Global's subsidiaries and affiliates breached agreements, engaged in fraudulent and deceptive conduct, failed to perform contractual obligations, and otherwise engaged in activity giving rise to Plaintiff's claims.  Recognizing any corporate separateness as between Essar Affiliates would promote injustice, inequity, and fraud, and injure Plaintiff and its creditors.

AMERICAS 95090466 v1100122436

351.    In light of Essar Global's control over its subsidiaries and affiliates, any pretense of corporate separateness as between Essar Affiliates should be disregarded, and Essar Global should be held liable for Plaintiff's claims against each of Essar Global's subsidiaries and affiliates.

**TWENTIETH-SECOND CLAIM FOR RELIEF** ~~TWENTIETH-THIRD CLAIM FOR RELIEF~~

**(Declaratory Judgment)**
**(Against Essar Global)**

352.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through ~~367~~351 of this Complaint with the same force and effect as though fully set forth herein.

353.    Essar Global controlled and dominated all aspects of Plaintiff, causing Plaintiff to have no separate existence and to act merely as an instrumentality and alter ego of Essar Global.

354.    From the outset, Essar Global undercapitalized Plaintiff, failed to make agreed upon equity contributions, and exerted pervasive control over Plaintiff's business operations.

355.    As a direct result of Essar Global's domination and control over Plaintiff, Plaintiff incurred massive debt obligations to its creditors, failed to perform contractual obligations, and incurred significant costs and expenses above and beyond the cost to complete the Project.

356.    Given Essar Global's pervasive domination and control over Plaintiff, Plaintiff's corporate separateness should be disregarded.  Inequity and injustice would result if Essar Global were not held responsible for the debts incurred by Plaintiff.

357.    Accordingly, Plaintiff is entitled to a judgment declaring that Essar Global is legally responsible for all of the debts and liabilities of Plaintiff.

AMERICAS ~~95090166 v1~~100122436

## TWENTIETH-THIRD CLAIM FOR RELIEFTWENTIETH-FOURTH CLAIM FOR RELIEF

### (Disallowance of Claim No. 179)
### (Against Essar Constructions)
### [11 U.S.C. § 502(b) and (d)]

358.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs

1 through 373357 of this Complaint with the same force and effect as though fully set forth

herein.

359.    Plaintiff objects to the allowance of Claim No. 179 in its entirety.

360.    Plaintiff adopts and incorporates by reference the objections to allowance of

Claim No. 179 in the Claim Objection.

361.    Essar Constructions is an entity from which property is recoverable under section

550 of the Bankruptcy Code.

362.    Essar Constructions is a transferee of certain Six Year Fraudulent Transfers

avoidable under section 544 of the Bankruptcy Code.

363.    Essar Constructions is a transferee of certain Two Year Fraudulent Transfers

avoidable under section 548 of the Bankruptcy Code.

364.    Essar Constructions is a transferee of certain Preferential Transfers avoidable

under section 547 of the Bankruptcy Code.

365.    Essar Constructions has not repaid the amount of the Six Year Fraudulent

Transfers, Two Year Fraudulent Transfers, or Preferential Transfers, or turned over such

property to the Debtors, for which Essar Constructions is liable under section 550 of the

Bankruptcy Code.

366.    Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Essar

Constructions, including those asserted in Claim No. 179, against the Debtors must be

disallowed until such time that Essar Constructions pays to Plaintiff an amount equal to the aggregate amount of the Six Year Fraudulent Transfers, Two Year Fraudulent Transfers, and Preferential Transfers received by Essar Constructions, plus interest thereon and costs.

367.    Claim No. 179 includes interest or other charges.

368.    Essar Constructions failed to attach a statement itemizing prepetition interest, fees, expenses, or other charges as required by Bankruptcy Rule 3001(c)(2)(A).

369.    Any interest, fees, expenses, or other charges included in Claim No. 179 must be disallowed for failure to provide an itemized statement.

370.    To the extent that any of the aforementioned interest is unmatured interest, such interest must be disallowed pursuant to section 502(b)(2) of the Bankruptcy Code.

371.    Claim No. 179 is unenforceable against the Debtor based on the causes of action pleaded above pursuant to section 502(b)(1) of the Bankruptcy Code.

372.    No money is owed to Essar Constructions on account of its contract with the Debtor or otherwise.  No basis exists in law or equity to allow any claim of Essar Constructions against the Debtor.

**TWENTIETH-FOURTH CLAIM FOR RELIEF** ~~TWENTIETH-FIFTH CLAIM FOR RELIEF~~

**(Disallowance and Reclassification of Claim No. 180)**
**(Against Essar Projects-US)**
**[11 U.S.C. §§ 502(b) and (d) and 507]**

373.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through ~~388~~372 of this Complaint with the same force and effect as though fully set forth herein.

374.    Plaintiff objects to the allowance of Claim No. 180 in its entirety.

375.    Plaintiff adopts and incorporates by reference the objections to allowance of

Claim No. 180 in the Claim Objection.

376.    Essar Projects-US is an entity from which property is recoverable under section 550 of the Bankruptcy Code.

377.    Essar Projects-US is a transferee of certain Six Year Fraudulent Transfers avoidable under section 544 of the Bankruptcy Code.

378.    Essar Projects-US is a transferee of certain Two Year Fraudulent Transfers avoidable under section 548 of the Bankruptcy Code.

379.    Essar Projects-US is a transferee of certain Preferential Transfers avoidable under section 547 of the Bankruptcy Code.

380.    Essar Projects-US has not repaid the amount of the Six Year Fraudulent Transfers, Two Year Fraudulent Transfers, or Preferential Transfers, or turned over such property to the Debtors, for which Essar Projects-US is liable under section 550 of the Bankruptcy Code.

381.    Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Essar Projects-US, including those asserted in Claim No. 180, against the Debtors must be disallowed until such time that Essar Projects-US pays to Plaintiff an amount equal to the aggregate amount of the Six Year Fraudulent Transfers, Two Year Fraudulent Transfers, and Preferential Transfers received by Essar Projects-US, plus interest thereon and costs.

382.    Claim No. 180 includes interest and other charges.

383.    Essar Projects-US failed to attach a statement itemizing prepetition interest, fees, expenses, or other charges as required by Bankruptcy Rule 3001(c)(2)(A).

384.    Any interest, fees, expenses, or other charges included in Claim No. 180 must be disallowed for failure to provide an itemized statement.

AMERICAS 95090466 v1100122436

385.    To the extent that any of the aforementioned interest is unmatured interest, such interest must be disallowed pursuant to section 502(b)(2) of the Bankruptcy Code.

386.    Essar Projects-US filed $1,318,157 of Claim No. 180 as a priority claim under section 507(a)(4), (5), and (8) of the Bankruptcy Code.  To the extent allowed, this portion of Claim No. 180 should be reclassified as a non-priority claim as there are no grounds for any of Claim No. 180 to be classified as a priority claim.

387.    Section 507(a)(4) and (5) of the Bankruptcy Code provides priority status for (1) wages, salaries, or commissions and (2) contributions to an employee benefit plan, respectively, earned within 180 days of the Petition Date.  Priority status is capped at $12,850 for claims under both these subsections.  On information and belief, Essar Projects-US is not an employee of the Debtors and is not the beneficiary of an employee benefit plan provided by the Debtors.  Even if Essar Projects-US were eligible to file a priority claim under section 507(a)(4) and (5) of the Bankruptcy Code, the $1,318,157 priority claim far exceeds the $12,850 cap.

388.    Section 507(a)(8) of the Bankruptcy Code provides priority status for certain taxes levied by governmental units.  Upon information and belief, Essar Projects-US is not a governmental unit and therefore cannot avail itself of the priority classification under section 507(a)(8) of the Bankruptcy Code.

389.    Claim No. 180 is unenforceable against the Debtor based on the causes of action pleaded above pursuant to section 502(b)(1) of the Bankruptcy Code.

390.    No money is owed to Essar Projects-US on account of its contract with the Debtor or otherwise.  No basis exists in law or equity to allow any claim of Essar Projects-US against the Debtor.

## TWENTIETH-FIFTH CLAIM FOR REMEDY ~~TWENTIETH-SIXTH CLAIM FOR RELIEF~~

### (Disallowance and Reclassification of Claim No. 181 and Claim No. 182)
### (Against Essar Projects-India)
### [11 U.S.C. §§ 502(b), (d), and (e), 507, 509]

391.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs

1 through ~~406~~390 of this Complaint with the same force and effect as though fully set forth

herein.

392.    Plaintiff objects to the allowance of Claim No. 181 and Claim No. 182 in their

entirety.

393.    Plaintiff adopts and incorporates by reference the objections to allowance of

Claim No. 181 and Claim No. 182 in the Claim Objection.

394.    Essar Projects-India is an entity from which property is recoverable under section

550 of the Bankruptcy Code.

395.    Essar Projects-India is a transferee of certain Six Year Fraudulent Transfers

avoidable under section 544 of the Bankruptcy Code.

396.    Essar Projects-India is a transferee of certain Two Year Fraudulent Transfers

avoidable under section 548 of the Bankruptcy Code.

397.    Essar Projects-India is a transferee of certain Preferential Transfers avoidable

under section 547 of the Bankruptcy Code.

398.    Essar Projects-India has not repaid the amount of the Six Year Fraudulent

Transfers, Two Year Fraudulent Transfers, or Preferential Transfers, or turned over such

property to the Debtors, for which Essar Projects-India is liable under section 550 of the

Bankruptcy Code.

399.    Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Essar

AMERICAS ~~95090466 v1~~100122436

Projects-India, including those asserted in Claim No. 181 and Claim No. 182, against the

Debtors must be disallowed until such time that Essar Projects-India pays to Plaintiff an amount

equal to the aggregate amount of the Six Year Fraudulent Transfers, Two Year Fraudulent

Transfers, and Preferential Transfers received by Essar Projects-India, plus interest thereon and

costs.

400.    Claim No. 181 and Claim No. 182 include interest and other charges.

401.    Essar Projects-India failed to attach a statement itemizing prepetition interest,

fees, expenses, or other charges as required by Bankruptcy Rule 3001(c)(2)(A) to either Claim

No. 181 and Claim No. 182.

402.    Any interest, fees, expenses, or other charges included in Claim No. 181 and

Claim No. 182 must be disallowed for failure to provide an itemized statement.

403.    To the extent that any of the aforementioned interest is unmatured interest, such

interest must be disallowed pursuant to section 502(b)(2) of the Bankruptcy Code.

404.    Essar Projects-India filed $26,005,688 of Claim No. 181 as a priority claim under

section 507(a)(4), (5), and (8) of the Bankruptcy Code.  To the extent allowed, this portion of

Claim No. 181 should be reclassified as a non-priority claim as there are no grounds for any of

Claim No. 181 to be classified as a priority claim.

405.    Section 507(a)(4) and (5) of the Bankruptcy Code provides priority status for

(1) wages, salaries, or commissions and (2) contributions to an employee benefit plan,

respectively, earned within 180 days of the Petition Date.  Priority status is capped at $12,850 for

claims under both these subsections.  On information and belief, Essar Projects-India is not an

employee of the Debtors and is not the beneficiary of an employee benefit plan provided by the

Debtors.  Even if Essar Projects-India were eligible to file a priority claim under section

AMERICAS 95090166 v1100122436

507(a)(4) and (5) of the Bankruptcy Code, the $26,005,688 priority claim far exceeds the

$12,850 cap.

406.    Section 507(a)(8) of the Bankruptcy Code provides priority status for certain

taxes levied by governmental units.  Upon information and belief, Essar Projects-India is not a

governmental unit and therefore cannot avail itself of the priority classification under section

507(a)(8) of the Bankruptcy Code.

407.    Claim No. 182 must be disallowed under section 502(e)(1) of the Bankruptcy

Code.  Section 502(e)(1)(B) of the Bankruptcy Code states that a claim for reimbursement will

be disallowed if the claim is contingent at the time of allowance or disallowance, specifically:

> the court shall disallow any claim for reimbursement or
> contribution of an entity that is liable with the debtor on or has
> secured the claim of a creditor, to the extent that . . . (B) such
> claim for reimbursement or contribution is contingent as of the
> time of allowance or disallowance of such claim for
> reimbursement or contribution.

11 U.S.C. § 502(e)(1)(B).  The legislative history to section 502(e)(1)(B) explains:

> [Section 502(e)(1)(B)] requires disallowance of the claim for
> reimbursement or contribution of a co-debtor, surety or guarantor
> of an obligation of the debtor, unless the claim of the creditor on
> such obligation has been paid in full.  The provision prevents
> competition between a creditor and his guarantor for the limited
> proceeds in the estate.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 354 (1977), reprinted in 1978 U.S.C.C.A.N. 5963; Sen.

Rep. No. 989, 95th Cong. 2d Sess. 65 (1978), reprinted in 1978 U.S.C.C.A.N. 5851.  In other

words, section 502(e)(1)(B) applies to contingent claims held by a co-debtor, surety, or

guarantor but not to those creditors with a direct contingent claim against the estate.  To the

extent that a co-debtor has paid the underlying claim, the contingent claim becomes fixed and

allowable.

92

408.     A claim will be disallowed where the following three elements are met: (1) the claim is for reimbursement or contribution; (2) the claimant is liable with the debtor on the claim; and (3) the claim is contingent at the time of its allowance or disallowance.  The time of allowance or disallowance of a claim filed pursuant to section 501 of the Bankruptcy Code and objected to pursuant to section 502, is the time of the ruling on the objection.

409.     Moreover, the plain language of section 502(e) dictates that contingent reimbursement, contribution, or indemnity claims should be disallowed precisely because they are contingent, thereby enabling distributions to unsecured creditors without the necessity of maintaining a reserve for these types of contingent claims.

410.     Claim No. 182 is for reimbursement or contribution under a guaranty and is contingent.  Essar Projects-India is co-liable for the underlying claim.  As such, Claim No. 182 should be disallowed pursuant to section 502(e)(1)(B) of the Bankruptcy Code.

411.     Further, the claim underlying Claim No. 182 has not been paid in full and should be disallowed under section 509 of the Bankruptcy Code.

412.     Claim No. 181 and Claim No. 182 are unenforceable against the Debtor based on the causes of action pleaded above pursuant to section 502(b)(1) of the Bankruptcy Code, including because Essar Projects-India materially failed to perform at least three of its main functions under the 2010 Essar Projects-India/ESML Supply and Engineering Contract: (1) Essar Projects-India failed to provide steel fabricated properly to construct the Project, (2) Essar Projects-India failed to provide all of the equipment it was obligated to procure for the Project, and (3) Essar Projects-India failed to complete all required engineering services.

413.     No money is owed to Essar Projects-India on account of its contract with the Debtor or otherwise.  No basis exists in law or equity to allow any claim of Essar Projects-India

AMERICAS 95090466 v1100122436

against the Debtor.

**TWENTIETH-SIXTH CLAIM FOR RELIEF** ~~TWENTIETH-SEVENTH CLAIM FOR RELIEF~~

**(Disallowance and Reclassification of Claim No. 183)**
**(Against Essar Projects)**
**[11 U.S.C. §§ 502(b) and (d) and 507]**

414.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through ~~429~~413 of this Complaint with the same force and effect as though fully set forth herein.

415.    Plaintiff objects to the allowance of Claim No. 183 in its entirety.

416.    Plaintiff adopts and incorporates by reference the objections to allowance of Claim No. 183 in the Claim Objection.

417.    Essar Projects is an entity from which property is recoverable under section 550 of the Bankruptcy Code.

418.    Essar Projects is a transferee of certain Six Year Fraudulent Transfers avoidable under section 544 of the Bankruptcy Code.

419.    Essar Projects is a transferee of certain Two Year Fraudulent Transfers avoidable under section 548 of the Bankruptcy Code.

420.    Essar Projects is a transferee of certain Preferential Transfers avoidable under section 547 of the Bankruptcy Code.

421.    Essar Projects has not repaid the amount of the Six Year Fraudulent Transfers, Two Year Fraudulent Transfers, or Preferential Transfers, or turned over such property to the Debtors, for which Essar Projects is liable under section 550 of the Bankruptcy Code.

422.    Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Essar Projects, including those asserted in Claim No. 183, against the Debtors must be disallowed until

such time that Essar Projects pays to Plaintiff an amount equal to the aggregate amount of the

Six Year Fraudulent Transfers, Two Year Fraudulent Transfers, and Preferential Transfers

received by Essar Projects, plus interest thereon and costs.

423.    Claim No. 183 includes interest and other charges.

424.    Essar Projects failed to attach a statement itemizing prepetition interest, fees,

expenses, or other charges as required by Bankruptcy Rule 3001(c)(2)(A).

425.    Any interest, fees, expenses, or other charges included in Claim No. 183 must be

disallowed for failure to provide an itemized statement.

426.    To the extent that any of the aforementioned interest is unmatured interest, such

interest must be disallowed pursuant to section 502(b)(2) of the Bankruptcy Code.

427.    Essar Projects filed $1,374,185 of Claim No. 183 as a priority claim under section

507(a)(4), (5), and (8) of the Bankruptcy Code.  To the extent allowed, this portion of Claim No.

183 should be reclassified as a non-priority claim as there are no grounds for any of Claim No.

183 to be classified as a priority claim.

428.    Section 507(a)(4) and (5) of the Bankruptcy Code provides priority status for

(1) wages, salaries, or commissions and (2) contributions to an employee benefit plan,

respectively, earned within 180 days of the Petition Date.  Priority status is capped at $12,850 for

claims under both these subsections.  On information and belief, Essar Projects is not an

employee of the Debtors and is not the beneficiary of an employee benefit plan provided by the

Debtors.  Even if Essar Projects were eligible to file a priority claim under section 507(a)(4) and

(5) of the Bankruptcy Code, the $1,374,185 priority claim far exceeds the $12,850 cap.

429.    Section 507(a)(8) of the Bankruptcy Code provides priority status for certain

taxes levied by governmental units.  Upon information and belief, Essar Projects is not a

AMERICAS 95090166 v1 100122436

governmental unit and therefore cannot avail itself of the priority classification under section 507(a)(8) of the Bankruptcy Code.

430.    Claim No. 183 is unenforceable against the Debtor based on the causes of action pleaded above pursuant to section 502(b)(1) of the Bankruptcy Code.

431.    No money is owed to Essar Projects on account of its contract with the Debtor or otherwise.  No basis exists in law or equity to allow any claim of Essar Projects against the Debtor.

**TWENTIETH-SEVENTH CLAIM FOR RELIEF** ~~TWENTIETH-EIGHTH CLAIM FOR RELIEF~~

**(Disallowance of Claim No. 184)**
**(Against Essar Project Management)**
**[11 U.S.C. § 502(b) and (d)]**

432.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through ~~447~~431 of this Complaint with the same force and effect as though fully set forth herein.

433.    Plaintiff objects to the allowance of Claim No. 184 in its entirety.

434.    Plaintiff adopts and incorporates by reference the objections to allowance of Claim No. 184 in the Claim Objection.

435.    Essar Projects Management is an entity from which property is recoverable under section 550 of the Bankruptcy Code.

436.    Essar Projects Management is a transferee of certain Six Year Fraudulent Transfers avoidable under section 544 of the Bankruptcy Code.

437.    Essar Projects Management is a transferee of certain Two Year Fraudulent Transfers avoidable under section 548 of the Bankruptcy Code.

438.    Essar Projects Management has not repaid the amount of the Six Year Fraudulent

AMERICAS ~~95090166 v1~~100122436

Transfers, or Two Year Fraudulent Transfers, or turned over such property to the Debtors, for which Essar Projects Management is liable under section 550 of the Bankruptcy Code.

439.    Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Essar Projects Management, including those asserted in Claim No. 184, against the Debtors must be disallowed until such time that Essar Projects Management pays to Plaintiff an amount equal to the aggregate amount of the Six Year Fraudulent Transfers, and Two Year Fraudulent Transfers received by Essar Projects Management, plus interest thereon and costs.

440.    Claim No. 184 includes interest and other charges.

441.    Essar Projects Management failed to attach a statement itemizing prepetition interest, fees, expenses, or other charges as required by Bankruptcy Rule 3001(c)(2)(A).

442.    Any interest, fees, expenses, or other charges included in Claim No. 184 must be disallowed for failure to provide an itemized statement.

443.    To the extent that any of the aforementioned interest is unmatured interest, such interest must be disallowed pursuant to section 502(b)(2) of the Bankruptcy Code.

444.    Claim No. 184 is unenforceable against the Debtor based on the causes of action pleaded above pursuant to section 502(b)(1) of the Bankruptcy Code.

445.    No money is owed to Essar Project Management on account of its contract with the Debtor or otherwise.  No basis exists in law or equity to allow any claim of Essar Project Management against the Debtor.

**TWENTIETH-EIGHTH CLAIM FOR RELIEF** ~~TWENTIETH-NINTH CLAIM FOR RELIEF~~

**(Disallowance of Claim No. 185)**
**(Against Essar Projects-Middle East)**
**[11 U.S.C. § 502(b) and (d)]**

446.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs

97

1 through 461445 of this Complaint with the same force and effect as though fully set forth herein.

447.    Plaintiff objects to the allowance of Claim No. 185 in its entirety.

448.    Plaintiff adopts and incorporates by reference the objections to allowance of Claim No. 185 in the Claim Objection.

449.    Essar Projects-Middle East is an entity from which property is recoverable under section 550 of the Bankruptcy Code.

450.    Upon information and belief, Essar Projects-Middle East is a transferee of certain Six Year Fraudulent Transfers avoidable under section 544 of the Bankruptcy Code.

451.    Essar Projects-Middle East is a transferee of certain Two Year Fraudulent Transfers avoidable under section 548 of the Bankruptcy Code.

452.    Essar Projects-Middle East has not repaid the amount of the Six Year Fraudulent Transfers, or Two Year Fraudulent Transfers, or turned over such property to the Debtors, for which Essar Projects-Middle East is liable under section 550 of the Bankruptcy Code.

453.    Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Essar Projects-Middle East, including those asserted in Claim No. 185, against the Debtors must be disallowed until such time that Essar Projects-Middle East pays to Plaintiff an amount equal to the aggregate amount of the Six Year Fraudulent Transfers, and Two Year Fraudulent Transfers received by Essar Projects-Middle East, plus interest thereon and costs.

454.    Claim No. 185 includes interest or other charges.

455.    Essar Projects-Middle East failed to attach a statement itemizing prepetition interest, fees, expenses, or other charges as required by Bankruptcy Rule 3001(c)(2)(A).

456.    Any interest, fees, expenses, or other charges included in Claim No. 185 must be

disallowed for failure to provide an itemized statement.

457.   To the extent that any of the aforementioned interest is unmatured interest, such interest must be disallowed pursuant to section 502(b)(2) of the Bankruptcy Code.

458.   Essar Projects-Middle East filed $56,028 of Claim No. 185 as a priority claim under section 507(a)(4) of the Bankruptcy Code.  Section 507(a)(4) of the Bankruptcy Code provides priority status for wages, salaries, or commissions earned within 180 days of the Petition Date.  Priority status is capped at $12,850 for claims under this subsection.  On information and belief, Essar Projects-Middle East is not an employee of the Debtors.  Even if Essar Projects-Middle East were eligible to file a priority claim under section 507(a)(4) of the Bankruptcy Code, the $56,028 priority claim far exceeds the $12,850 cap.  To the extent allowed, this portion of Claim No. 185 should be reclassified as a non-priority claim as there are no grounds for any of Claim No. 185 to be classified as a priority claim.

459.   Claim No. 185 is unenforceable against the Debtor based on the causes of action pleaded above pursuant to section 502(b)(1) of the Bankruptcy Code.

460.   No money is owed to Essar Projects-Middle East on account of its contract with the Debtor or otherwise.  No basis exists in law or equity to allow any claim of Essar Projects-Middle East against the Debtor.

**TWENTIETH-NINTH CLAIM FOR RELIEF** ~~THIRTIETH CLAIM FOR RELIEF~~

**(Disallowance of Claim No. 186)**
**(Against Essar Global)**
**[11 U.S.C. §§ 502(b), (d), and (e) and 509]**

461.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through ~~476~~460 of this Complaint with the same force and effect as though fully set forth herein.

462.    Plaintiff objects to the allowance of Claim No. 186 in its entirety.

463.    Plaintiff adopts and incorporates by reference the objections to allowance of Claim No. 186 in the Claim Objection.

464.    Essar Global is an entity from which property is recoverable under section 550 of the Bankruptcy Code.

465.    Essar Global is a transferee of certain Six Year Fraudulent Transfers avoidable under section 544 of the Bankruptcy Code.

466.    Essar Global is a transferee of certain Two Year Fraudulent Transfers avoidable under section 548 of the Bankruptcy Code.

467.    Essar Global is a transferee of certain Preferential Transfers avoidable under section 547 of the Bankruptcy Code.

468.    Essar Global has not repaid the amount of the Six Year Fraudulent Transfers, Two Year Fraudulent Transfers, or Preferential Transfers, or turned over such property to the Debtors, for which Essar Global is liable under section 550 of the Bankruptcy Code.

469.    Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Essar Global, including those asserted in Claim No. 186, against the Debtors must be disallowed until such time that Essar Global pays to Plaintiff an amount equal to the aggregate amount of the Six Year Fraudulent Transfers, Two Year Fraudulent Transfers, and Preferential Transfers received by Essar Global, plus interest thereon and costs.

470.    Claim No. 186 must be disallowed under section 502(e)(1) of the Bankruptcy Code.  Section 502(e)(1)(B) of the Bankruptcy Code states that a claim for reimbursement will be disallowed if the claim is contingent at the time of allowance or disallowance, specifically:

> the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that . . . (B) such

100

> claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

11 U.S.C. § 502(e)(1)(B).  The legislative history to section 502(e)(1)(B) explains:

> [Section 502(e)(1)(B)] requires disallowance of the claim for reimbursement or contribution of a co-debtor, surety or guarantor of an obligation of the debtor, unless the claim of the creditor on such obligation has been paid in full.  The provision prevents competition between a creditor and his guarantor for the limited proceeds in the estate.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 354 (1977), reprinted in 1978 U.S.C.C.A.N. 5963; Sen. Rep. No. 989, 95th Cong. 2d Sess. 65 (1978), reprinted in 1978 U.S.C.C.A.N. 5851.  In other words, section 502(e)(1)(B) applies to contingent claims held by a co-debtor, surety, or guarantor but not to those creditors with a direct contingent claim against the estate.  To the extent that a co-debtor has paid the underlying claim, the contingent claim becomes fixed and allowable.

471.    A claim will be disallowed where the following three elements are met: (1) the claim is for reimbursement or contribution; (2) the claimant is liable with the debtor on the claim; and (3) the claim is contingent at the time of its allowance or disallowance.  The time of allowance or disallowance of a claim filed pursuant to section 501 of the Bankruptcy Code and objected to pursuant to section 502, is the time of the ruling on the objection.

472.    Moreover, the plain language of section 502(e) dictates that contingent reimbursement, contribution, or indemnity claims should be disallowed precisely because they are contingent, thereby enabling distributions to unsecured creditors without the necessity of maintaining a reserve for these types of contingent claims.

473.    Claim No. 186 is for reimbursement or contribution under a guaranty and is contingent.  Essar Global is co-liable for the underlying claim.  As such, Claim No. 186 should

AMERICAS 95090466 v1100122436

be disallowed pursuant to section 502(e)(1)(B).

474.    Further, the claim underlying Claim No. 186 has not been paid in full and should

be disallowed under section 509 of the Bankruptcy Code.

475.    Claim No. 186 is unenforceable against the Debtor based on the causes of action

pleaded above pursuant to section 502(b)(1) of the Bankruptcy Code.

476.    No money is owed to Essar Global.  No basis exists in law or equity to allow any

claim of Essar Global against the Debtor.

**THIRTIETH CLAIM FOR RELIEF**~~THIRTIETH-FIRST CLAIM FOR RELIEF~~

**(Equitable Subordination)**
**(Against Essar Constructions; Essar Projects-US; Essar Projects-India; Essar Projects;**
**Essar Global; Essar Project Management; Essar Projects-Middle East; Does 1-~~1000~~500)**
**[11 U.S.C. §§ 510(c) and 105(a)]**

477.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs

1 through ~~492~~476 of this Complaint with the same force and effect as though fully set forth

herein.

478.    The Defendants engaged in inequitable conduct, including conduct described in

this Complaint, which has resulted in injury to the creditors or conferring of an unfair advantage

on the Defendants.  This inequitable conduct has resulted in harm to the Plaintiff and to its entire

creditor body, in that creditors have been misled as to the true financial condition of Plaintiff,

have been induced to extend credit and/or provide services without knowledge of the actual facts

regarding Plaintiffs' financial condition, and are less likely to recover the full amounts due to

them because of the Defendants' conduct.

479.    Under principles of equitable subordination, all claims asserted against the

Debtors by, on behalf of, or for the benefit of the Defendants or their affiliated entities, to the

extent that such claims are not disallowed under the Claims for Relief above, they should be

subordinated for purposes of distribution, pursuant to sections 510(c)(1) and 105(a) of the Bankruptcy Code.

480.   The Bankruptcy Court should exercise the full extent of its equitable powers to ensure that claims, payments, or benefits, of whatever kind or nature, which are asserted or sought by the Defendants or their affiliates, directly or indirectly, against the Debtors are subordinated pursuant to sections 510(c)(1) and 105(a) of the Bankruptcy Code.  No funds which would otherwise be paid to general unsecured creditors should be paid to any of the Defendants or their affiliates.  Accordingly, claims by any of the Defendants or their affiliates against the Debtors should be subordinated.

481.   Because of the close relationships, common ownership and control, common decision-making, joint roles in the transactions and conduct at issue, overlapping director, officer, and employee relationships and functions, and fungible nature of the Defendants' finances among affiliated entities, the claims of all entities so affiliated with any Defendant which engaged in inequitable conduct should be subordinated for purposes of distribution pursuant to sections 510(c)(1) and 105(a) of the Bankruptcy Code.

482.   Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff ~~ESML~~ prays for relief and judgment against Defendants as follows:

A.   Enter judgment in favor of the Plaintiff and against the Defendants in this action on each claim;

B.   Award general and compensatory damages in favor of the Plaintiff on all claims

AMERICAS 95090166 v1100122436

against the Defendants to those claims, jointly and severally, for all damages sustained by

ESML, in an amount to be proven at trial, plus prejudgment interest;

C.      Avoid and set aside the fraudulent transfers identified in the Fourteenth through

Eighteenth Claims for Relief;

D.      Avoid and set aside the preferential transfers identified in the Nineteenth Claim

for Relief;

E.      Direct each respective direct, immediate and mediate transferee of the fraudulent

transfers and preferential transfers identified in the Fourteenth through Nineteenth Claims for

Relief to deliver to the Plaintiff the property transferred or pay the value of such property, plus

prejudgment interest;

F.      Award all appropriate equitable remedies, including specific performance and

restitution, as allowed by law, in favor of the Plaintiff on all claims against the Defendants to

each claim, jointly and severally, in an amount to be determined at trial, plus prejudgment

interest;

G.      Award punitive damages and prejudgment interest in favor of the Plaintiff as

allowed by law;

H.      Disallow Claim No. 179, Claim No. 180, Claim No. 181, Claim No. 182, Claim

No. 183, Claim No. 184, Claim No. 185, and Claim No. 186 in their entirety.

I.      Award Plaintiff its attorneys' fees, costs, and other expenses incurred in this

action, as allowed by law; and

J.       Grant Plaintiff such other and further relief as the Bankruptcy Court considers

appropriate.

Dated: July 3, 20182019          **PACHULSKI STANG ZIEHL & JONES LLP**

                                 */s/ DRAFT*

AMERICAS 95090166 v1100122436

Laura Davis Jones (No. 2436)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail: ljones@pszjlaw.com

-and-

**WHITE & CASE LLP**
Thomas E Lauria (admitted *pro hac vice*)
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131-2352
Telephone: (305) 371-2700
Facsimile: (305) 385-5744
Email: tlauria@whitecase.com

Glenn M. Kurtz (admitted *pro hac vice*)
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: gkurtz@whitecase.com

Craig H. Averch (admitted *pro hac vice*)
Ronald K. Gorsich (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, California 90071-2433
Telephone: (213) 620-7700
Facsimile:      (213) 452-2329
Email: caverch@whitecase.com
Email: rgorsich@whitecase.com

*Counsel to Brad Scher, SC Litigation Trustee*

| Summary report: Litéra® Change-Pro TDC 10.1.0.700 Document comparison done on 7/2/2019 5:43:23 PM | |
|---|---|
| **Style name:** 2 W&C Standard Set | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://AMERICAS_DMS/AMERICAS/95090466/1 | |
| **Modified DMS:** iw://AMERICAS_DMS/AMERICAS/100122436/6 | |
| **Changes:** | |
| Add | 445 |
| Delete | 446 |
| Move From | 1 |
| Move To | 1 |
| Table Insert | 3 |
| Table Delete | 3 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 899 |