## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| ESSAR STEEL MINNESOTA LLC and | : | Case No. 16-11626 (BLS) |
| ESML HOLDINGS INC., | : | |
| | : | |
| Debtor. | : | |
| | : | |
| KEVIN NYSTROM, solely in his capacity | : | |
| as Litigation Trustee for the UC | : | |
| LITIGATION TRUST, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Pro. No. 17-50001 (BLS) |
| | : | |
| MADHU VUPPULURI; SANJAY | : | |
| BHARTIA; PRASHANT RUIA; | : | |
| ANSHUMAN RUIA; and DOES 1-500, | : | |
| | : | |
| Defendants. | : | |

## MADHU VUPPULURI'S OPENING BRIEF IN SUPPORT
## OF HIS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

Dated: September 9, 2019

COZEN O'CONNOR
Mark E. Felger (No. 3919)
Simon E. Fraser (No. 5335)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
Email: mfelger@cozen.com
sfraser@cozen.com

Michael L. Bernstein (admitted *pro hac vice*)
David B. Bergman (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, D.C. 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

*Counsel for Defendant Madhu Vuppuluri*

## <u>TABLE OF CONTENTS</u>

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING.................................1

SUMMARY OF THE ARGUMENT ...............................................................................1

STATEMENT OF FACTS ...........................................................................................3

      A.    Procedural History ...........................................................................3

      B.    The Court's Prior Order ....................................................................5

      C.    The Third Amended Complaint ...........................................................6

ARGUMENT ..........................................................................................................8

    I.    PLAINTIFF'S CLAIMS FOR BREACH OF THE DUTY OF CARE SHOULD BE DISMISSED .................................................................................9

      A.    ESML's Articles of Organization Bar Plaintiff's Duty-of-Care Claims ........................................................................................9

      B.    Plaintiff Fails to Plead Facts Establishing A Breach Of The Duty Of Care ....................................................................................12

    II.    PLAINTIFF'S CLAIMS FOR BREACH OF THE DUTY OF LOYALTY SHOULD BE DISMISSED .................................................................16

    III.    DELAWARE'S 3-YEAR STATUTE OF LIMITATIONS BARS PLAINTIFF'S CLAIMS BASED ON TRANSACTIONS OCCURING PRIOR TO JULY 8, 2013...............................................................................................20

      A.    Delaware's Choice of Law Rules Require Application of Delaware Law to Procedural Issues Such as the Statute of Limitations ..................................................................................20

      B.    Delaware's Borrowing Statute Confirms That Delaware's Limitations Period Applies .......................................................23

      C.    Equitable Tolling Does Not Apply .........................................................25

    IV.    PLAINTIFF'S CLAIM FOR CLAIMS DISALLOWANCE SHOULD BE DISMISSED .................................................................................26

CONCLUSION.....................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................5, 9, 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................9, 14

*Benihana of Tokyo, Inc. v. Benihana, Inc.*,
   891 A.2d 150 (Del. Ch. 2005).......................................................................13

*Burrell v. Astrazeneca LP*,
   No. CIV.A. 07C01412(SER), 2010 WL 3706584 (Del. Super. Ct. Sept.
   20, 2010) ................................................................................................23

*Cede & Co. v. Technicolor*,
   634 A.2d 345 (Del. 1993) ...........................................................................13

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)...........................................................................9

*Friedman v. Dolan*,
   No. CV 9425-VCN, 2015 WL 4040806 (Del. Ch. June 30, 2015)...........................17

*Gavin v. Club Holdings, LLC*,
   No. CV 15-175-RGA, 2016 WL 1298964 (D. Del. Mar. 31, 2016)....................20, 21

*Ghaffari v. Wells Fargo Bank NA*,
   621 F. App'x 121 (3d Cir. 2015) ..................................................................27

*Haberle ex rel. Gander Mountain Co. v. Baker*,
   No. CIV. 05-315DWFJSM, 2005 WL 2105543 (D. Minn. Aug. 30,
   2005) .....................................................................................................10

*Huffington v. T.C. Grp., LLC*,
   No. CIV.A. N11C-01-030JR, 2012 WL 1415930 (Del. Super. Ct. Apr.
   18, 2012) ...............................................................................................24

*In re Am. Int'l Grp., Inc.*,
   965 A.2d 763 (Del. Ch. 2009)......................................................................21

*In re Autobacs Strauss, Inc.*,
   473 B.R. 525 (Bankr. D. Del. 2012) .............................................................16

*In re Bridgeport Holdings, Inc.*,
   388 B.R. 548 (Bankr. D. Del. 2008) ..............................................................15, 22, 25

*In re The Brown Sch.*,
   368 B.R. 394 (Bankr. D. Del. 2007) ....................................................................22, 23

*In re Citigroup Inc. S'holder Derivative Litig.*,
   964 A.2d 106 (Del. Ch. 2009)..................................................................................13

*In re DVI, Inc.*,
   No. 03-12656 (MFW), 2008 WL 4239120 (Bankr. D. Del. Sept. 16,
   2008) ...........................................................................................................................9

*In re Fedders N. Am., Inc.*,
   405 B.R. 527 (Bankr. D. Del. 2009) ...........................................................5, 11, 14, 17

*In re Fruehauf Trailer Corp.*,
   250 B.R. 168 (D. Del. 2000)..............................................................................25, 26

*In re Gen. Motors Class E Stock Buyout Sec. Litig.*,
   694 F. Supp. 1119 (D. Del. 1988).............................................................................13

*In re Gen. Motors (Hughes) S'holder Litig.*,
   No. CIV.A. 20269, 2005 WL 1089021 (Del. Ch. May 4, 2005) ..........................17, 18

*In re Goldman Sachs Grp., Inc. S'holder Litig.*,
   No. CIV.A. 5215-VCG, 2011 WL 4826104 (Del. Ch. Oct. 12, 2011) .......................16

*In re IT Grp. Inc.*,
   No. 02-10118, 2005 WL 3050611 (D. Del. Nov. 15, 2005).......................................11

*In re Lear Corp. S'holder Litig.*,
   967 A.2d 640 (Del. Ch. 2008)..................................................................................13

*In re Mervyn's Holdings, LLC*,
   426 B.R. 488 (Bankr. D. Del. 2010) .........................................................................10

*In re USDigital, Inc.*,
   443 B.R. 22 (Bankr. D. Del. 2011) .......................................................................6, 13

*In re Winstar Commc'ns, Inc.*,
   435 B.R. 33 (Bankr. D. Del. 2010) ....................................................................20, 21

*Iron Workers Mid-S. Pension Fund v. Davis*,
   93 F. Supp. 3d 1092 (D. Minn. 2015).......................................................................15

*Kitley ex rel. IsoRay, Inc. v. IsoRay, Inc.*,
  No. CV 16-3297 (JRT/DTS), 2017 WL 4737244 (D. Minn. Oct. 19,
  2017) .............................................................................................................................13

*Lemond v. Manzulli*,
  2009 WL 1269840 (E.D.N.Y. Feb. 9, 2009)..................................................................18

*Malpiede v. Townson*,
  780 A.2d 1075 (Del. 2001) .............................................................................................11

*Markewich ex rel. Medtronic, Inc. v. Collins*,
  622 F. Supp. 2d 802 (D. Minn. 2009) ....................................................................10, 16

*Norman v. Elkin*,
  No. CIV.A. 06-005-JJF, 2007 WL 2822798 (D. Del. Sept. 26, 2007) .................20, 21

*Pomeranz v. Museum Partners, L.P.*,
  No. CIV. A. 20211, 2005 WL 217039 (Del. Ch. Jan. 24, 2005) ...............................25

*Saudi Basic Industries Corp. v. Mobil Yanbu Petrochemical Co., Inc.*,
  866 A.2d 1 (Del. 2005) ..................................................................................23, 24, 25

*Taylor v. Kissner*,
  893 F. Supp. 2d 659 (D. Del. 2012)..............................................................................15

*TL of Fla., Inc. v. Terex Corp.*,
  54 F. Supp. 3d 320 (D. Del. 2014)................................................................................24

*Trenwick Am. Litig. Trust v. Ernst & Young, LLP*,
  906 A.2d 168 (Del. Ch. 2006).................................................................................15, 18

*TrustCo. Bank v. Mathews*,
  No. CV 8374-VCP, 2015 WL 295373 (Del. Ch. Jan. 22, 2015) ...........................24, 25

*U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*,
  769 F.3d 837 (3d Cir. 2014)..........................................................................................27

*VantagePoint Venture Partners 1996 v. Examen, Inc.*,
  871 A.2d 1108 (Del. 2005) ...........................................................................................21

## Statutes

11 U.S.C. § 108...................................................................................................................22

11 U.S.C. § 5.......................................................................................................................26

Del. Code Ann. tit. 6, § 18-1101 ......................................................................................10

Del. Code Ann. tit. 10, § 8106 .........................................................................................21

Del. Code. Ann. tit. 10, § 8121 ..............................................................................23

Minn. Prac., Corporation Law & Practice § 3:37 (3d ed. Oct. 2017) ...............................12

Minn. Stat. 322B.69 ...........................................................................................12

Minn. Stat. 322B.663 .........................................................................................12

Minn. Stat. 322C.0110 ....................................................................................10, 12

## **Other Authorities**

Fed. R. Bankr. P. 7054 .........................................................................................20

Fed. R. Civ. P. 12 .............................................................................................9, 22

Fed. R. Civ. P. 54 ..............................................................................................20

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This adversary proceeding was originally brought by Essar Steel Minnesota LLC

("ESML") against Essar Global Fund Limited ("Essar Global"), various affiliated entities, and

Madhu Vuppuluri, the former President and CEO of ESML.  ESML has since transferred its

claims against Mr. Vuppuluri to an Unsecured Creditors Litigation Trust, pursuant to a

confirmed chapter 11 plan.

On August 13, 2018, the Trustee for that trust ("Plaintiff") filed a Second Amended

Complaint against Mr. Vuppuluri and other defendants.  D.I. 61.  Mr. Vuppuluri moved to

dismiss the Second Amended Complaint for failure to state a claim.  D.I. 72, 73.  On May 23,

2019, the Court granted Mr. Vuppuluri's motion to dismiss with leave to replead.  On July 25,

2019, the UC Litigation Trustee filed a Third Amended Complaint ("Complaint").  D.I. 121.

## SUMMARY OF THE ARGUMENT

In its order granting Mr. Vuppuluri's motion to dismiss the Second Amended Complaint,

the Court noted that Plaintiff has a "heavy burden" to state a claim in this case, and explained

what is necessary to carry that burden.  Plaintiff has now re-pleaded, but the new allegations fail

to remedy the deficiencies that the Court identified.  The Complaint still does not allege that Mr.

Vuppuluri engaged in self-dealing or otherwise obtained personal benefits from any challenged

transaction.  The Complaint still does not allege that Mr Vuppuluri acted without information.

And the Complaint still does not allege any reason that the exculpation clause in the Articles of

Organization should not be given effect.  Instead, the new allegations emphasize that ESML was

in severe financial distress before it filed bankruptcy in 2011—an allegation that the Court

previously acknowledged, Op. 3, 12–14, but that is insufficient to state a claim against Mr.

Vuppuluri.  As this Court held, the fact that ESML was in financial distress does not mean that

Mr. Vuppuluri breached his fiduciary duties to the company.

1

For at least four reasons, the Complaint as against Mr. Vuppuluri should be dismissed, this time with prejudice.

***First***, Plaintiff's claims against Mr. Vuppuluri based on an alleged breach of the duty of care must be dismissed.  As the Court has already recognized, ESML's Articles of Organization contain an exculpation clause that expressly eliminates Mr. Vuppuluri's liability for such claims. Even if the Articles of Organization did not eliminate Mr. Vuppuluri's liability for duty of care claims, the Complaint still does not allege facts concerning the process behind the challenged transactions or that Mr. Vuppuluri failed to act on an informed basis.

***Second***, Plaintiff's claims for breach of the duty of loyalty also fail as a matter of law. As before, the Complaint fails to allege that Mr. Vuppuluri had a "personal interest" in any of the challenged transactions.  Op. 15.  While the Complaint continues to allege that Mr. Vuppuluri was paid a salary and a bonus, it remains the case that "[t]aking the factual allegations in the Complaint as true, there is no causal link alleged between [any] payment to Vuppuluri and the Transfers to Essar Global."  *Id.*  The Complaint therefore "does not give rise to the presumption that Vuppuluri had a personal interest in the transaction and it falls short of the heavy burden imposed on meeting the standard for breach of the duty of loyalty."  *Id.* at 16–17.

***Third***, Plaintiff's claims based on transactions occurring prior to July 8, 2013 must be dismissed for the independent reason that they fall outside the three-year statute of limitations for breach of fiduciary duty claims.  This includes Count One, which is premised solely on a 2012 transfer to Trinity Coal.[1]

---

[1] As explained *infra*, Mr. Vuppuluri respectfully contends that the Court previously erred in applying Minnesota's statute of limitations rather than that of Delaware to the Second Amended Complaint.

*Fourth*, Plaintiff's claim for disallowance of claims fails as a matter of law. As the Court has already recognized, Plaintiff can state a claim for claims disallowance only if it can state a claim for breach of fiduciary duty. Because the Complaint fails to plead facts that would plausibly support such a claim, Plaintiff's claim for claims disallowance must also be dismissed.

## STATEMENT OF FACTS[2]

Madhu Vuppuluri is the former President and CEO of ESML, a limited liability company organized and licensed under the laws of Minnesota. Compl. ¶ 20. ESML was a wholly owned subsidiary of its parent company, Essar Global. *Id.* ¶ 1. Mr. Vuppuluri served as a governor of ESML from 2007 to 2016. *Id.* ¶ 20. During his time at ESML, Mr. Vuppuluri oversaw ESML's construction of a state-of-the art iron ore pellet plant in Nashwauk, Minnesota (the "Project"). *Id.* ¶ 2. The plant, however, remains unfinished. *Id.* ¶ 3. In July 2016, ESML filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code. ESML has since emerged from bankruptcy and is now doing business as Mesabi Metallics Company LLC. *Id.* at 1 n.1.

### A.    Procedural History

Shortly after it filed its bankruptcy petition, in January 2017, ESML filed a 32-count complaint against Essar Global and various Essar affiliates. D.I. 1. ESML filed a First Amended Complaint on August 29, 2017. D.I. 32. The First Amended Complaint alleged that ESML entered into contracts with certain Essar affiliates. *Id.* ¶ 1. Under the contracts, the affiliates agreed to perform engineering, procurement, and construction work in connection with the

---

[2] Mr. Vuppuluri does not concede the factual allegations in the Complaint, including those recited herein, but understands that the Court will generally accept such allegations as being true for purposes of this Motion to Dismiss. Mr. Vuppuluri reserves all rights to contest allegations of the Complaint if and when appropriate.

development of an iron-ore pellet plant in Nashwauk, Minnesota.  *Id.*  In exchange, ESML

allegedly paid the affiliates more than $1.1 billion.  *Id.* ¶ 4.  The First Amended Complaint

alleged that although ESML paid the affiliates pursuant to the contracts, the affiliates did not

hold up their end of the bargain and failed to deliver a completed iron-ore pellet plant on time.

The First Amended Complaint asserted claims against Essar Global and the affiliates for, among

other things, breach of contract, promissory estoppel, tortious interference with contract, and

fraudulent transfer.

In addition to the First Amended Complaint's thirty-one counts against Essar Global and

the Essar affiliates, it also asserted a single count against Mr. Vuppuluri, Sanjay Bhartia, and

"Does 1–500" (the "Officer/Director Defendants") for breach of fiduciary duty.  *Id.* ¶¶ 137, 148.

The First Amended Complaint alleged that the Officer/Director Defendants breached their

fiduciary duties by "acting in the interests of Essar Global and against the interests of ESML" by

"directing, authorizing, and/or allowing ESML to make payments and transfers to affiliates that

were not going to be used to construct the Project."  *Id.*

On June 29, 2018, Mr. Vuppuluri moved to dismiss the First Amended Complaint on the

ground that it failed to state a claim.  D.I. 46.  Rather than respond to the motion, the UC

Litigation Trustee prosecuting ESML's claims against the Officer/Director Defendants sought

leave to file a Second Amended Complaint, which the Court granted.  D.I. 59.  The Second

Amended Complaint added two defendants, Prashant Ruia and Anshuman Ruia, and asserted

three new claims against Mr. Vuppuluri:  aiding and abetting breach of fiduciary duty (Count

Three), aiding and abetting fraudulent conveyances (Count Five), and disallowance of claims

(Count Six).  On September 12, 2018, Mr. Vuppuluri moved to dismissed the Second Amended

Complaint for failure to state a claim.

B.    **The Court's Prior Order**

On May 23, 2019, this Court issued a decision granting Mr. Vuppuluri's motion to dismiss and dismissing the Second Amended Complaint in its entirety.  D.I. 112.  With respect to the duty of loyalty claim, the Court first recognized that such claims are "notably—and intentionally—difficult claims to assert."  Op. 16.  "To state a claim for breach of loyalty," the Court observed, a plaintiff must allege "that 'a self-interested transaction occurred, and that the transaction was unfair to [the company].'"  *Id.* at 14 (quoting *In re Fedders N. Am., Inc.*, 405 B.R. 527, 540 (Bankr. D. Del. 2009)).  Although Plaintiff had alleged that Mr. Vuppuluri knew that he would reap "substantial personal financial benefit" by carrying out the instructions of Essar Global and was paid "millions of dollars" at or around the challenged transactions, the Court held that these allegations alone "fall short of asserting that Vuppuluri had" a "personal interest" in the challenged transfers as was required to state a claim for breach of the duty of loyalty.  *Id.* at 15.  "Taking the factual allegations in the Complaint as true," the Court held, "there is no causal link alleged between the payment to Vuppuluri and the Transfers to Essar Global."  *Id.*  The Court noted that the alleged "millions of dollars" that Mr. Vuppuluri had been paid "just as easily could have been Vuppuluri's salary and compensation."  *Id.*  "Without more specificity," the Court held it was required to accept this "obvious alternative explanation."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)).

With respect to the duty of care claim, the Court held that the Complaint failed to state a claim for two independent reasons.  First, the Court held that ESML's Articles of Organization contains an exculpation clause eliminating Mr. Vuppuluri's liability for duty of care claims.  The Court held that this exculpation provision "shields the Defendants form liability" and that Plaintiff had therefore "failed to state a claim for breach of the duty of care."  *Id.* at 19.  Second, the Court held that Plaintiff had failed to state a claim for breach of the duty of care on the

5

independent ground that the Second Amended Complaint "contain[ed] no facts relating to the Defendants' decision-making process." *Id.* The Court noted that the duty of care requires corporate officers to "act on an informed basis," *id.* at 18 (quoting *In re USDigital, Inc.*, 443 B.R. 22, 41 (Bankr. D. Del. 2011)), but Plaintiff "ha[d] not articulated any specific instances that would suggest that Defendants had adopted . . . a cavalier attitude to facts." *Id.* at 19–20. "In the absence of any factual allegations the Defendants failed to pursue and consider relevant information related to the" challenged Transfers, the Court held that Plaintiff failed to state a claim for breach of the duty of care. *Id.*

The Court also dismissed all of the other remaining claims against Mr. Vuppuluri. *Id.* at 22–26. The Court held that Plaintiff had failed to state a claim for aiding and abetting breach of fiduciary duty because Essar Global, as ESML's parent company, did not owe ESML a fiduciary duty. *Id.* at 23. The Court also held that Plaintiff's claim for aiding and abetting fraudulent conveyance was not a cognizable cause of action. *Id.* at 24. Finally, the Court held that Plaintiff had not stated a claim for claims disallowance because such a claim required Plaintiff to state a claim for breach of fiduciary duty, which Plaintiff had not done. *Id.* at 25–26. Accordingly, the Court dismissed all of Plaintiff's claims against Mr. Vuppuluri. The Court, however, provided Plaintiff with an opportunity to replead.

## C.    The Third Amended Complaint

On July 25, 2019, Plaintiff filed a Third Amended Complaint. As before, the Complaint asserts claims against Mr. Vuppuluri for breach of the duty of loyalty and breach of the duty of care. Also as before, the Complaint focuses on the same eleven transactions (the "Transfers") that Plaintiff alleges were not in the interest of ESML:

- March 2012: $5 million transfer to Trinity;
- June 2012: $79 million loan to Essar Global;

6

- January 2013: $325,000 loan to Essar Global;

- January 2013: $21 million loan to Essar Global;

- Late 2013: Release of $5 million claim in the Trinity bankruptcy case;

- November 2014: $3.3 million payment to an Essar affiliate;

- March 2015: $68 million payment to Essar Projects;

- 2015: Participating in an "over-invoicing scheme" with Essar Projects-US;

- 2015: $17 million payment to Essar Projects-India;

- Mid-2015: "millions of dollars" in transfers to "Paradeep project letter of credit";

- 2014 and 2015: "millions of dollars" paid in connection with Essar Projects' attempts to open letters of credit.

Compl. ¶¶ 64, 121.[3]

Plaintiff's new allegations in the Complaint relate primarily to the financial condition of

ESML before it filed bankruptcy in 2016. For example, the Complaint alleges that as early as

2012, ESML's then-CFO, Dan Ardila, was aware of the company's "perilous financial

condition" and wrote to Mr. Vuppuluri to express his concerns. *Id.* ¶ 4. Likewise, the Complaint

notes that in early 2013, Mr. Vuppuluri himself e-mailed Defendant Prashant Ruia and the CFO

of Essar Global concerning the "extremely critical" financial situation at ESML. *Id.* ¶ 48. The

Complaint also explains that in May 2013, Mr. Ardila resigned as CFO and, in his resignation

letter, expressed concern about the company's inability to secure funding and, in his view,

unrealistic projections for the future costs of the Project. *Id.* ¶ 50.

While the Complaint adds some new details about the facts surrounding the challenged

Transfers, the Complaint does not contain any new allegations concerning any alleged personal

benefit to Mr. Vuppuluri. For example, one of the listed transactions is a "$21 million loan to

Essar Global" in January 2013. *Id.* ¶ 73. The Second Amended Complaint provided no

---

[3] Plaintiff did not replead but instead abandoned its claims for aiding and abetting.

additional details about this transaction, such as who authorized the transaction.  While the Complaint now specifies that it was Mr. Vuppuluri who authorized the transaction, the Complaint still does not allege that Mr. Vuppuluri personally benefited from this transaction in any way.  *Id.*  Nor does the Complaint allege that this loan was not repaid or ultimately caused any harm to ESML.

The Complaint likewise does not allege any new facts relating to Mr. Vuppuluri's "decision-making process" with respect to the challenged Transfers.  Plaintiff does not posit that Mr. Vuppuluri authorized the transactions based on insufficient or incomplete information.  Moreover, the Complaint acknowledges that ESML was contractually required to make most — if not all — of the challenged Transfers to the Essar affiliates.  *See id.* ¶ 3 ("ESML paid Essar Global and its Essar Affiliates over $1.1 billion — everything *it was obligated to spend* under the governing Project Contracts." (emphasis added)).

The Complaint asserts five counts against Mr. Vuppuluri.  Count One — for breach of the duty of loyalty in Mr. Vuppuluri's capacity as a "governor" of ESML — concerns only one of the challenged Transfers, the 2012 transfer of $5 million to Trinity Coal.  *Id.* ¶¶ 108–117.  Count Two asserts that Mr. Vuppuluri breached the duty of care in his capacity as an officer of ESML.  Count Three asserts a breach of the duty of loyalty as a "manager" of ESML, while Count Four asserts a breach of the duty of care as a manager.  Finally, Count Six asserts a claim for claims disallowance.

## **ARGUMENT**

When considering a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim that can survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Fowler v.*

*UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (*Twombly* and *Iqbal* require "a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss").  Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  However, "[a] complaint has to 'show' . . . an entitlement [to relief] with its facts."  *Fowler*, 578 F.3d at 211; *In re DVI, Inc.*, No. 03-12656 (MFW), 2008 WL 4239120, at *4 (Bankr. D. Del. Sept. 16, 2008) ("[t]he plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim").  "As the Supreme Court instructed in *Iqbal*, [w]here the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief."  *Fowler*, 578 F.3d at 211 (alterations and quotations omitted).

## I.    PLAINTIFF'S CLAIMS FOR BREACH OF THE DUTY OF CARE SHOULD BE DISMISSED

Plaintiff's claims for breach of the duty of care should be dismissed for two independent reasons.  First, as this Court has already held, ESML's Articles of Organization bar Plaintiff's duty of care claims.  Second, even if ESML's Articles of Organization did not bar Plaintiff's duty of care claims, Plaintiff has failed to state a claim on which relief can be granted.

### A.    ESML's Articles of Organization Bar Plaintiff's Duty-of-Care Claims

As a matter of law, Counts Two and Four must be dismissed as against Mr. Vuppuluri because, as this Court has already held when it granted Mr. Vuppuluri's motion to dismiss the

Second Amended Complaint, ESML's Articles of Organization contain an exculpation clause

that precludes his liability for breach of the duty of care.  Op. 18–22.

As the Court recognized in its prior order, Minnesota (like Delaware) authorizes LLCs to

limit the liability of their managers and governors.[4]  *See* Minn. Stat. 322C.0110, subd. 7 (LLC

may "eliminate or limit a member's, manager's, or governor's liability to the limited liability

company and members for money damages"); Del. Code Ann. tit. 6, § 18-1101(e).  ESML

limited the liability of governors such as Mr. Vuppuluri in its Articles of Organization.

Specifically, the Articles of Organization provide:

> A governor of this limited liability company shall not be personally liable to this
> limited liability company or its members for monetary damages for breach of
> fiduciary duty as a governor, except for liability (i) based on a breach of the
> governor's duty of loyalty to this limited liability company or its members, (ii) for
> acts or omissions not in good faith or that involve intentional misconduct or a
> knowing violation of law, (iii) under Section 322B.56 or Section 80A.23 of the
> Minnesota Statutes; or (iv) for any transaction from which such governor derived
> an improper personal benefit.

*See* Ex. A, ESML Articles of Organization, Art. 7.  The Articles make clear that they are

intended to preclude personal liability to the fullest extent permitted under Minnesota law.  *Id.*

(noting that if Minnesota law is amended, personal liability "shall be limited to the fullest extent

permitted by [Minnesota law]").

---

[4] The claim for breach of fiduciary duty against Mr. Vuppuluri relates to the internal affairs of
ESML and is therefore governed by the laws of the state of incorporation, in this case Minnesota.
*See In re Mervyn's Holdings, LLC*, 426 B.R. 488, 502 (Bankr. D. Del. 2010).  However, Delaware
law is relevant because "Minnesota courts often look to Delaware for guidance on corporate law
issues."  *Markewich ex rel. Medtronic, Inc. v. Collins*, 622 F. Supp. 2d 802, 808 n.5 (D. Minn.
2009); *see also Haberle ex rel. Gander Mountain Co. v. Baker*, No. CIV. 05-315DWFJSM, 2005
WL 2105543, at *3 (D. Minn. Aug. 30, 2005) (noting that because "[s]hareholder derivative
actions are still somewhat rare in Minnesota . . . Minnesota courts often look to the decisions of
Delaware courts for guidance in this area of the law").

As the Court held in its dismissal order, where, as here, an exculpatory provision is raised against a duty-of-care claim, "that is 'the end of the case.'" Op. 19; *see also In re IT Grp. Inc.*, No. 02-10118, 2005 WL 3050611, at \*11 (D. Del. Nov. 15, 2005); *Malpiede v. Townson*, 780 A.2d 1075, 1095 (Del. 2001) (dismissing duty of care claim in light of exculpatory clause in company's certificate of incorporation); *Fedders*, 405 B.R. at 543 (Bankr. D. Del. 2009) (same). Accordingly, Counts Two and Four should be dismissed.

Plaintiff now contends that although the Articles of Organization eliminate Mr. Vuppuluri's liability for his actions as a governor of ESML, "[t]here is no exculpation available in the Articles of Organization" for actions that Mr. Vuppuluri took in his capacity as an officer. Compl. ¶ 153. Plaintiff is mistaken.

The Articles expressly provide that if Minnesota law is amended "to authorize the further elimination or limitation of the liability of governors, then the liability of a governor of this limited liability company, in addition to the limitation on personal liability provided herein, shall be limited to the fullest extent permitted" by Minnesota law. Ex. A, Art. 7. Companies routinely include such provisions in their Articles of Incorporation to ensure that their directors and officers enjoy the most expansive exculpation the state allows, without the company having to amend its Articles every time the state amends its corporate law.[5] Such a provision enables the company to attract and retain the most qualified directors and officers. *See, e.g.*, 18 Minn. Prac., Corporation Law & Practice § 3:37 (3d ed. Oct. 2017 update) (noting that Minnesota legislature

---

[5] *See, e.g.*, Certificate of Incorporation of Interactive One, Inc., https://www.sec.gov/Archives/edgar/data/1041657/000095012311010821/w81308exv3w19.htm; Certificate of Incorporation of Putnam Hills Corp., https://www.sec.gov/Archives/edgar/data/1527728/000139843211000663/ex_3-1.htm; Certificate of Incorporation of National Association of Insurance Commissioners, https://www.naic.org/documents/about_certificate_of_incorporation.pdf.

deemed authorizing exculpatory provisions "necessary to enable Minnesota corporations to compete with Delaware corporations to attract and retain qualified directors").

When ESML's Articles went into effect in 2003, no Minnesota law authorized the elimination of liability for managers (*i.e.*, officers). *Compare* Minn. Stat. 322B.663 subd. 4 (repealed) (providing for limitation of liability for governors) *with* Minn. Stat. 322B.69 (repealed) (no limitation of liability for managers). Thus, at that time a governor could be exculpated for actions taken in his governor capacity, but not for actions taken in his manager capacity. In 2014, however, Minnesota enacted the Revised Uniform Limited Liability Company Act, which provides for more expansive exculpation, including for actions taken in an individual's capacity as manager as well as actions taken in such individual's governor capacity. Minn. Stat. 322C.0110, subd. 7. (LLC may "eliminate or limit a member's, manager's, or governor's liability to the limited liability company and members for money damages"). In light of the fact that (i) the Articles provide that the limitation of liability will extend "to the fullest extent" permitted by Minnesota law and (ii) Minnesota law now allows for the exculpation of governors in both their governor and their manager/officer capacities, the Articles should be construed as limiting Mr. Vuppuluri's liability for breach of the duty of care in both his capacity as a governor and as an officer. Accordingly, both Count Four, which alleges a breach of the duty of care in Mr. Vuppuluri's capacity as an officer, and Count Two, which alleges a breach of the duty of care in his capacity as a governor, should be dismissed.

### B.    Plaintiff Fails to Plead Facts Establishing A Breach Of The Duty Of Care

Even if ESML's Articles of Organization did not preclude Mr. Vuppuluri's liability for an alleged breach of the duty of care — and they plainly do — Plaintiff's duty-of-care claims would still fail because the Complaint fails as a matter of law to state a claim.

As the Court recognized, the duty of care is the duty of corporate directors or officers to "act on an informed basis."  Op. 18; *In re USDigital, Inc.*, 443 B.R. 22, 41 (Bankr. D. Del. 2011); *Cede & Co. v. Technicolor*, 634 A.2d 345, 361 (Del. 1993).  The Court's inquiry does not focus on the merits or outcome of the decision, but rather on the process leading up to the decision and whether the decision makers "inform[ed] themselves of all material information reasonable available to them."  *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 192 (Del. Ch. 2005); *see In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 124 (Del. Ch. 2009).  "Corporate directors are not required to have intimate knowledge of every routine business transaction."  Op. at 18.  Deficiencies in process are actionable only if the directors' or officers' conduct constituted gross negligence.  *In re USDigital, Inc.*, 443 B.R. at 41; *Kitley ex rel. IsoRay, Inc. v. IsoRay, Inc.*, No. CV 16-3297 (JRT/DTS), 2017 WL 4737244, at *8 (D. Minn. Oct. 19, 2017).  To satisfy this "extremely stringent" standard, *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 652 (Del. Ch. 2008), a plaintiff must set forth "extensive allegations about specific examples of the corporate directors [or officers] failing to seek and consider relevant information."  Op. 20; *see In re Gen. Motors Class E Stock Buyout Sec. Litig.*, 694 F. Supp. 1119, 1133 (D. Del. 1988).

Here, the Complaint alleges no facts that plausibly suggest gross negligence, and it certainly does not meet the "extremely stringent" standard that is required in order to plead a duty of care claim.  Instead, as before, Plaintiff bases his claims on conclusory assertions that Mr. Vuppuluri failed to engage in "any meaningful deliberative process" and that his conduct amounted to "gross negligence."  *Id.* ¶¶ 121, 123, 125, 147, 150.  But these mere "labels and conclusions" fail to state a claim as a matter of law.  *See Twombly*, 550 U.S. at 555; *Fedders*, 405 B.R. at 537.  Likewise, the allegations that Mr. Vuppuluri authorized ESML to make payments

or loans to Essar Global and its affiliates that allegedly were not used to construct the Project, or

that were made for inadequate consideration, *see* Compl. ¶¶ 121, 147, attack the substantive

fairness of the transactions rather than the issue that is relevant for purposes of a duty of care

claim — the process by which the transactions were authorized and the extent to which the

decision-makers were adequately informed.

Plaintiff has failed to cure the defects that the Court identified in the Second Amended

Complaint.  As before, the Complaint does not allege any "facts relating to the Defendants'

decision-making process."  Op. 19.  Indeed, the Complaint does not identify a single example of

information that Mr. Vuppuluri failed to seek or consider, an action that he failed to take to

inform himself, an expert that he failed to engage, or an alternative decision that he failed to

evaluate.  Courts routinely dismiss duty-of-care claims that lack specific examples of

shortcomings in the directors' or officers' deliberative process.  *See, e.g.*, *Taylor v. Kissner*, 893

F. Supp. 2d 659, 667–68 (D. Del. 2012) (dismissing a duty-of-care claim because "[t]he

Complaint does not allege any concrete steps that a reasonable director would have taken yet

were not taken here prior to recommending approval of the merger"); *In re Bridgeport Holdings,

Inc.*, 388 B.R. 548, 575 (Bankr. D. Del. 2008) (finding a complaint  was "too short on facts . . . to

survive the motion to dismiss" when it failed to specify the alleged actions and inactions of the

corporate officer associated with the challenged transaction); *Iron Workers Mid-S. Pension Fund

v. Davis*, 93 F. Supp. 3d 1092, 1105 (D. Minn. 2015) (dismissing care claim that failed to

"articulate what would have been rational or reasonable on the part of the officer defendants").

Indeed, many of the Complaint's allegations demonstrate that Mr. Vuppuluri and Mr.

Bhartia *were* informed about the Transfers.  For example, with respect to the November 2014

$3.3 million to Essar affiliate Aegis, the Complaint alleges that Mr. Vuppuluri and Mr. Bhartia

investigated whether ESML was obligated to make the payment under the relevant contracts and ultimately agreed to the payment only on the condition that Aegis would repay ESML.  Compl. ¶¶ 78–80.  Similarly, with respect to the alleged "invoicing scheme," the complaint alleges that Mr. Vuppuluri and Mr. Bhartia knew that another Essar affiliate, Essar Projects, had failed to pass on some payments from ESML to Essar Projects-US and had discussed the issue with ESML's Joint Controller and Treasurer.  *Id.* ¶¶89–90.  Plaintiff criticizes Mr. Vuppuluri and Mr. Bhartia for not "s[eeking] to compel" Essar Projects to pay Essar Projects-US, but alleges no facts suggesting that they made an uninformed decision.  *See id.*  Plaintiff also takes issue with the ultimate outcome of the alleged decisions, but such hindsight criticism provides no basis for finding that Mr. Vuppuluri breached the duty of care.  *See Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168, 173 (Del. Ch. 2006) ("What Delaware law does not do is to impose retroactive fiduciary obligations on directors simply because their chosen business strategy did not pan out.").

Plaintiff's assertion that Mr. Vuppuluri did not consult with ESML's Board about some of the Transfers also does not sustain his duty-of-care claim.  To begin, the allegation that Mr. Vuppuluri did not consult with the Board as to some of the Transfers does not support an inference that Mr. Vuppuluri failed individually to inform himself about these decisions.  *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 560 (Bankr. D. Del. 2012) ("[A] trial court will not find a board to have breached its duty of care unless the directors individually and the board collectively have failed to inform themselves fully and in a deliberate manner.").  Moreover, the Complaint does not allege any facts suggesting that Mr. Vuppuluri exceeded his authority as a governor and/or officer in approving any transaction.

15

Nor does the Complaint's allegation that there were "no board meeting minutes or resolutions" discussing some of the Transfers, *see* Compl. ¶ 65, give rise to an inference that Mr. Vuppuluri failed to inform himself regarding the relevant Transfers.  Even if it were true that Mr. Vuppuluri approved some of the Transfers in his capacity as CEO of ESML without consulting the Board, that does not plausibly establish that he was uninformed, as required to establish a duty-of-care violation.  *In re Goldman Sachs Grp., Inc. S'holder Litig.*, No. CIV.A. 5215-VCG, 2011 WL 4826104, at *1 (Del. Ch. Oct. 12, 2011) ("The Delaware General Corporation Law . . . provides corporate directors and officers with broad discretion to act as they find appropriate in the conduct of corporate affairs."); *Markewich ex rel. Medtronic, Inc. v. Collins*, 622 F. Supp. 2d 802, 811 (D. Minn. 2009) ("Directors are entitled to rely on the day-to-day judgments of a corporation's management.").

Because the Complaint does not allege facts suggesting that Mr. Vuppuluri failed to act on an informed basis, the duty-of-care claims (Counts Two and Four) must be dismissed, even aside from the fact that such claims are exculpated.

## II.    PLAINTIFF'S CLAIMS FOR BREACH OF THE DUTY OF LOYALTY SHOULD BE DISMISSED

Plaintiff also fails to plead facts showing a breach of the duty of loyalty.  Claims for breach of the duty of loyalty "are notably—and intentionally—difficult claims to assert."  Op. 16.  To state a claim for breach of duty of loyalty, Plaintiff must allege that "a self-interested transaction occurred, and that the transaction was unfair to [ESML]."  *Fedders*, 405 B.R. at 540.  As this Court and other courts have recognized, Plaintiff must plead facts to show that there is a causal link between an alleged benefit to Mr. Vuppuluri and the alleged Transfers to Essar Global and its affiliates.  *See* Op. 15 (dismissing loyalty claim because "there is no causal link alleged between the payment to Vuppuluri and the Transfers to Essar Global."); *id.* at 17

16

(dismissing loyalty claim against Mr. Bhartia because "the Complaint does not state facts that suggest there was a causal link between the Transfers and the visa."); *In re Gen. Motors (Hughes) S'holder Litig.*, No. CIV.A. 20269, 2005 WL 1089021, at *8 (Del. Ch. May 4, 2005), *aff'd*, 897 A.2d 162 (Del. 2006) (dismissing loyalty claim because there are no allegations that benefits were "contingent" on decision to approve challenged transaction).

The Complaint lacks any allegations that establish the required causal link between the alleged benefits to Mr. Vuppuluri and a decision to approve the Transfers.  Plaintiff instead repeats the same generalized allegations that this Court has already rejected: that Mr. Vuppuluri "depended on Essar Global and the Ruia family for his livelihood," Compl. ¶¶ 21, 23, "derived all or substantially all of [his] income from the Ruia family or their affiliates," *id.* ¶ 104, and was a longtime employee of the Ruia family, *id.*.  But "[a]n allegation that a director received a large salary is not enough."  Op. 16.  Critically, there are no allegations that Mr. Vuppuluri's income or his employment status were contingent on his approval of the Transfers, nor that he received any "benefit from [any] transaction that was over and above the salary he . . . would have been entitled to anyway."  *Id.*  When presented with similar allegations, courts have consistently held that they fail to state a claim for breach of the duty of loyalty, as this Court did in dismissing Plaintiff's Second Amended Complaint.  *See, e.g.*, *Friedman v. Dolan*, No. CV 9425-VCN, 2015 WL 4040806 at *12 (Del. Ch. June 30, 2015) ("[I]t is not enough to observe that a director has some relation to a party benefiting from the decision[,] . . . [and] [t]he fact of compensation, even from both a parent and a subsidiary company, is not enough."); *Lemond v. Manzulli*, 2009 WL 1269840, at *5 (E.D.N.Y. Feb. 9, 2009) ("[T]he mere existence of generous executive compensation is not sufficient to make out a claim of self-dealing."); *Gen. Motors.*, 2005 WL 1089021, at *8 (dismissing loyalty claim lacking "allegations that the compensation of any of

these non-employee directors was in anyway contingent on the decision to approve the []

transaction"); *Trenwick*, 906 A.2d at 201 (rejecting as insufficient to establish disloyalty or a

conflict the "mundane" fact that all the wholly-owned subsidiary's directors were employees or

directors of the parent).  The rationale for this established principle is sound — otherwise, any

longtime corporate officer with a large salary would necessarily be deemed self-interested in any

corporate decision.  *See* Op. 16.

The only other benefit to Mr. Vuppuluri identified anywhere in the Complaint is the

allegation that he received a bonus of $525,000 at some unspecified point around the time when

ESML made a payment to an Essar Affiliate.  Compl. ¶ 95.  But, as this Court observed, "the

timing of the payment does [not] necessarily link it to the Transfers."  Op. 15.  Plaintiff does not

allege that this bonus payment was made contingent on Mr. Vuppuluri's alleged approval of the

payment to the Essar Affiliate or that he received the bonus as a reward for the payment.  To the

contrary, the Complaint elsewhere acknowledges that as part of his normal compensation

package, Mr. Vuppuluri was "eligible for a bonus of over $400,000."  Compl. ¶ 20.  Thus, far

from creating the reasonable inference that Mr. Vuppuluri was self-interested, Plaintiff's

allegations support the "obvious alternative explanation" that this was an end of year bonus paid

to Mr. Vuppuluri in the normal course, commensurate with his role as CEO of ESML, that was

not causally related to the alleged payment to an Essar Affiliate.  *See Iqbal*, 556 U.S. at 682.

Finally, with only one exception,[6] Plaintiff has not alleged that Mr. Vuppuluri served on

"both sides" of any of the alleged Transfers.  Plaintiff attempts to manufacture a "both sides"

---

[6] The one exception is the 2012 transfer to Trinity coal, which, as explained below, is well outside the three-year statute of limitations.  See infra Section III.  And even in that instance, the Complaint does not allege that Mr. Vuppuluri was personally on the other side of the transaction or that he received any personal benefit from the transaction, but instead only that he was a director of Trinity while also affiliated with ESML.

scenario by labeling Mr. Vuppuluri the "de facto" CEO of Essar Projects-US.  This is a made-up

characterization; there is no such position as "de facto" CEO, and Plaintiff concedes that Mr.

Vuppuluri in fact "had no formal title at Essar Projects US."  Compl. ¶ 92.  Indeed, the

Complaint does not even allege that Mr. Vuppuluri was an employee of Essar Projects US, had

an office there, or engaged in any day-to-day management of the company.  *See id.*  Instead, the

sole basis upon which Plaintiff contends that Mr. Vuppuluri was the "de facto" CEO of Essar

Projects US was that he once signed a performance review for an Essar Projects employee.  *Id.*

Not surprisingly, Plaintiff cites no authority for the proposition that a person who is not an

officer of a company should be treated as its "de facto" CEO for purposes of determining

whether the officer is self-interested simply because he signed a performance evaluation.

Outside of this implausible assertion, Plaintiff provides no other facts to allege that Mr.

Vuppuluri should be treated as the CEO of Essar Projects-US.

　　　In sum, the Complaint cannot put Mr. Vuppuluri on both sides of any transaction, and the

only benefits that the Complaint alleges Mr. Vuppuluri to have received are normal employment

compensation that this Court (and other courts) has previously held insufficient to state a claim.

There are no new allegations supporting, even inferentially, a breach of the duty of loyalty by

Mr. Vuppuluri.  Plaintiffs' claims for breach of fiduciary duty should accordingly be dismissed.[7]

---

[7] The Complaint also fails to state a claim for breach of the duty of loyalty because there is nothing improper about an officer or director of a solvent wholly owned subsidiary acting in the interests of the parent.  *See* D.I. 73 at 21–23; D.I. 91 at 1–5.  While Mr. Vuppuluri believes that the Complaint still fails adequately to allege insolvency, the Court has ruled otherwise, Op. 12–14, and Mr. Vuppuluri contests the adequacy of the insolvency allegations only to preserve the argument in the event of an appeal.

III.    **DELAWARE'S 3-YEAR STATUTE OF LIMITATIONS BARS PLAINTIFF'S CLAIMS BASED ON TRANSACTIONS OCCURING PRIOR TO JULY 8, 2013**

Plaintiff's claims based on transactions occurring prior to July 8, 2013 should also be dismissed for the independent reason that they fall outside Delaware's three-year statute of limitations for breach of fiduciary duty claims. While the Court held in its prior decision that Minnesota's six-year statute of limitations applies, Mr. Vuppuluri respectfully requests that the Court revisit that decision for the reasons explained below.[8]

A.    **Delaware's Choice of Law Rules Require Application of Delaware Law to Procedural Issues Such as the Statute of Limitations**

In its prior decision, the Court correctly recognized that to determine which state's statute of limitation applies, the Court applies Delaware's choice of law rules. Op. 10; *see also In re Winstar Commc'ns, Inc.*, 435 B.R. 33, 44 (Bankr. D. Del. 2010). Under Delaware's conflict of law rules, however, "a statute of limitations is procedural, not substantive." *Gavin v. Club Holdings, LLC*, No. CV 15-175-RGA, 2016 WL 1298964, at *3 (D. Del. Mar. 31, 2016); *see also Winstar*, 435 B.R. at 44 ("[F]or conflict of law purposes, a statute of limitations is . . . procedural, not substantive."); *Norman v. Elkin*, No. CIV.A. 06-005-JJF, 2007 WL 2822798, at *3 (D. Del. Sept. 26, 2007) ("The issue of statute of limitations is a procedural issue, not a substantive issue for conflict of law purposes."), *aff'd,* 860 F.3d 111 (3d Cir. 2017).

Because the statute of limitations is procedural, a federal court sitting in Delaware will apply the Delaware statute of limitations. *Gavin*, 2016 WL 1298964, at *3 ("Because Delaware is the forum state, Delaware statute of limitations apply to the Trustee's state law claims");

---

[8] Because the Court's prior ruling "adjudicate[d] fewer than all the claims or the rights and liabilities of fewer than all the parties," the Court may revisit it "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also* Fed. R. Bankr. P. 7054(a).

*Winstar*, 435 B.R. at 44 (Bankr. D. Del. 2010) ("[T]he law of the forum generally determines whether an action is barred by the statute of limitations.").

While the Court correctly recognized that it should apply Delaware's choice of law rules to this issue, it then erred in relying on the "internal affairs" doctrine to conclude that Minnesota's statute of limitations applies.  Op. 10.  The internal affairs doctrine determines which state's *substantive* law the court should apply to questions such as the fiduciary duties between a company and its officers and directors.[9]  *Norman*, 2007 WL 2822798 at, *3.  It is irrelevant to the *procedural* issue of whether Plaintiff's claims are time-barred.  *Id.*  The court in *Norman* made this clear, holding that the internal affairs doctrine "is not applicable to determining the relevant statute of limitations" because "[t]he issue of statute of limitations is a procedural issue, not a substantive issue."  *Id.*

Accordingly, the Court should apply Delaware law to the limitations issue.  The parties agree that Delaware has a three-year statute of limitation for breach-of-fiduciary-duty claims.  *See* Del. Code Ann. tit. 10, § 8106(a); *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 812 (Del. Ch. 2009), *aff'd sub nom. Teachers' Ret. Sys. of Louisiana v. PricewaterhouseCoopers LLP*, 11 A.3d 228 (Del. 2011).  And where, as here, a plaintiff brings a claim "based upon multiple allegedly wrongful acts, a court considers each act in turn in applying the statute of limitations."  *Bridgeport Holdings*, 388 B.R. at 562.  If a challenged transaction falls outside the three-year limitations period, Plaintiff's claim must be dismissed insofar as it is based on that transaction.  *Id.* at 562–63 (dismissing complaint to the extent it asserted claims based on challenged actions

---

[9] For example, the case that the Court cited for the proposition that Delaware's choice of law rules require application of the law of the state of incorporation to issues involving corporate internal affairs concerned whether a shareholder had the substantive right to vote on a proposed merger.  *VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1111 (Del. 2005).

occurring outside limitations period); *see also In re The Brown Sch.*, 368 B.R. 394, 407 (Bankr. D. Del. 2007) ("[T]o the extent that the transfer dates are outside the applicable statute of limitations period, they will be subject to dismissal under Rule 12(b)(6).").

ESML filed its bankruptcy petition on July 8, 2016. *See* Ch. 11 Voluntary Pet., Bankr. Pet. No. 16-11626 (July 8, 2016). Accordingly, the Complaint must be dismissed insofar as it asserts claims that are based on transactions occurring prior to July 8, 2013.[10] The Complaint asserts claims against Mr. Vuppuluri based on at least four such transactions: (i) a March 2012 $5 million transfer to Trinity; (ii) a June 2012 $79 million loan to Essar Global, (iii) a January 2013 $325,000 loan to Essar Global, and (iv) a January 2013 $21 million loan to Essar Global. Compl. ¶ 121. The Complaint should be dismissed insofar as it asserts claims or seeks damages related to any of these four transactions.[11] This includes Count One, which is premised solely on the $5 million transfer that ESML made to Trinity in March 2012. *Id.* ¶¶ 108–17.

---

[10] The claim is timely if a bankruptcy petition is filed within three years and the adversary proceeding is brought within two years of the filing of the bankruptcy petition. *See* 11 U.S.C. § 108(a) ("If applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of (1) the end of such period, . . . or (2) two years after the order for relief."); *see also In re The Brown Sch.*, 368 B.R. at 402.

[11] Additionally, the Complaint asserts a claim against Mr. Vuppuluri based on the alleged release of a $5 million claim in the Trinity bankruptcy case in "late 2013." Compl. ¶ 121. This claim also may be subject to dismissal depending on whether the release occurred before or after July 8, 2013. Because the Complaint does not specify a date, claims relating to this transaction should be dismissed on statute of limitations grounds as well. *See In re The Brown Sch.*, 368 B.R. at 407 (dismissing complaint without prejudice for failure to specify date that would allow court to determine whether challenged action was within statute of limitations).

**B.    Delaware's Borrowing Statute Confirms That Delaware's Limitations Period Applies**

Plaintiff has argued that even if Delaware law applies to the limitations question, the

Court should apply Minnesota law pursuant to Delaware's borrowing statute.  D.I. 84 at 23–24.

But the Delaware borrowing statute is clear.  It provides:

> Where a cause of action arises outside of this State, an action cannot be brought in
> a court of this State to enforce such cause of action after the expiration of
> whichever is ***shorter***, the time limited by the law of this State, or the time limited
> by the law of the state . . . where the cause of action arose, for bringing an action
> upon such cause of action.

Del. Code. Ann. tit. 10, § 8121 (emphasis added).

The parties agree that Plaintiff's causes of action arose in Minnesota.  They also agree

that Delaware's three-year statute of limitations is shorter than Minnesota's six-year statute of

limitations for breach of fiduciary duty claims.  It therefore follows under a plain reading of the

statute that the Court must apply Delaware's shorter, three-year statute of limitations.  *See, e.g.*,

*Burrell v. Astrazeneca LP*, No. CIV.A. 07C01412(SER), 2010 WL 3706584, at \*3 (Del. Super.

Ct. Sept. 20, 2010) ("Under the clear and unambiguous terms of the statute, the Court must apply

the shorter of the Delaware statute of limitations or the statute of limitations of the state where

the cause of action arose.") (quotations omitted)).

Plaintiff's contrary argument, based solely on *Saudi Basic Industries Corp. v. Mobil

Yanbu Petrochemical Co., Inc.*, 866 A.2d 1 (Del. 2005), is misplaced.  In *Saudi Basic*, a Saudi

participant in a joint venture sued its venture partners in Delaware Superior Court, seeking a

declaratory judgment that certain royalty payments from the joint venture to the plaintiff did not

violate the parties' agreement.  *Id.* at 6.  The defendants counterclaimed, contending that the

payments did violate the agreement.  *Id.* at 7.  The plaintiff, who purposefully chose to litigate

the issue, then sought to avoid the counterclaims on the ground that they were barred by

23

Delaware's three-year statute of limitations. *Id.* at 16. Under these unusual circumstances, the Court declined to apply Delaware's statute of limitations, noting that it would produce the absurd outcome that a litigant, by forum shopping and filing in Delaware, could brandish as a sword a statute designed to shield parties from having to defend against claims that otherwise would be time barred. *Id.* at 16–18; *see also TrustCo. Bank v. Mathews*, No. CV 8374-VCP, 2015 WL 295373, at *7 (Del. Ch. Jan. 22, 2015).

Courts applying *Saudi Basic* have read the case as delivering a "fairly narrow" holding that the borrowing statute "does not apply when a litigant engages in the very practice the statute sought to prevent—*i.e.*, forum shopping—and would benefit unjustly from the Borrowing Statute's application." *TrustCo. Bank*, 2015 WL 295373, at *8. Importantly, courts have held "*Saudi Basic* did ***not*** create a broad rule banning the use of the borrowing statute in all situations except for the 'typical' scenario," *i.e.*, where a foreign plaintiff sues in Delaware to benefit from a longer statute of limitations. *Huffington v. T.C. Grp., LLC*, No. CIV.A. N11C-01-030JR, 2012 WL 1415930, at *9 (Del. Super. Ct. Apr. 18, 2012) (emphasis added). Instead, courts have limited *Saudi Basic* to its facts: "only on a set of facts similar to *Saudi Basic*, where an absurd outcome or a result that subverts the Borrowing Statute's fundamental purpose otherwise would occur, will a party be able to avoid the Borrowing Statute's unambiguous language." *TrustCo. Bank*, 2015 WL 295373, at *8; *see also TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 327 (D. Del. 2014) (holding that *Saudi Basic* did not apply because "application of the borrowing statute . . . d[id] not unfairly prejudice a party other than the party that chose to file suit . . . in Delaware").

Here, the "narrow" *Saudi Basic* exception does not apply because Mr. Vuppuluri is not a plaintiff who has himself engaged in forum shopping. He is instead an individual defendant who

24

has been hauled into court in Delaware and who has every right to invoke the procedural protections that Delaware's statutes afford to defendants in civil litigation. This includes Delaware's statute of limitations, which is designed to "protect important social interests in certainty, accuracy, and repose." *Pomeranz v. Museum Partners, L.P.*, No. CIV. A. 20211, 2005 WL 217039, at *15 n.69 (Del. Ch. Jan. 24, 2005). Any interpretation of the statute of limitations that would deprive Mr. Vuppuluri of this benefit would amount to a rewriting of the borrowing statute, which "is the province of the Legislature," not the Court. *TrustCo. Bank*, 2015 WL 295373, at *8.

### C.    Equitable Tolling Does Not Apply

Plaintiff has also argued that its claims are timely under the doctrine of equitable tolling. D.I. 84 at 25–26. "Under the theory of equitable tolling, the statute of limitations is tolled for claims of wrongful self-dealing where a plaintiff reasonably relies on the competence and good faith of a fiduciary." *Bridgeport Holdings, Inc.*, 388 B.R. at 563 (alterations omitted). Plaintiff must allege: (1) a fiduciary relationship; (2) actionable or fraudulent self-dealing; and (3) lack of inquiry notice. *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 193 (D. Del. 2000). Plaintiff cannot satisfy the second or third elements of this test.

*First*, Plaintiff has failed to allege actionable or fraudulent self-dealing. *See supra* Section II.

*Second*, Plaintiff, a successor to ESML, has failed to allege facts establishing that ESML lacked "inquiry notice" of its claims before July 8, 2013. "A plaintiff has inquiry notice when, given all of the facts, a person exercising reasonable diligence should have discovered [the] injury." *In re Fruehauf Trailer Corp.*, 250 B.R. at 189 (quotations omitted). The Complaint alleges that the challenged transfers resulted in "no value" to ESML and had "no business purpose." *See, e.g.*, Compl. ¶¶ 50, 79. Although Mr. Vuppuluri disputes the truth of these

25

allegations (and other allegations in the Complaint contradict them), even if they were assumed to be true for purposes of the motion to dismiss, ESML would have discovered its alleged injuries at or near the time of the pre-July 8, 2013 transactions.  The Complaint contains no allegations to the contrary.

## IV.    PLAINTIFF'S CLAIM FOR CLAIMS DISALLOWANCE SHOULD BE DISMISSED

Plaintiff's claim for disallowance (Count Six) in the Third Amended Complaint is identical to Plaintiff's claim for disallowance in the Second Amended Complaint.  As before, Plaintiff seeks to disallow the proof of claim that Mr. Vuppuluri filed against ESML on the ground that the claim "is unenforceable against ESML based on the causes of action pleaded [in the Complaint] pursuant to 11 U.S.C. § 502(b)(1)."  Compl. ¶ 168.  Specifically, Plaintiff alleges that Mr. Vuppuluri's claim is unenforceable because he forfeited his compensation when he allegedly violated his fiduciary duties.  *Id.* ¶ 169.

The Court previously dismissed Plaintiff's claim for claims disallowance because Plaintiff had failed to state a claim for breach of a fiduciary duty.  Op. 25–26.  As explained above, the Third Amended Complaint fails to state a claim for breach of fiduciary duty as well. *See supra* Sections I-II.  Accordingly, Count Six should be dismissed.

## CONCLUSION

The Complaint should be dismissed with prejudice.[12]

---

[12] Plaintiff has now had multiple opportunities spanning three years to state a claim against Mr. Vuppuluri and has failed to do so.  Any further opportunities to amend would be futile.  *See U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (affirming dismissal with prejudice where plaintiff "had many opportunities" to state a claim but failed to do so); *Ghaffari v. Wells Fargo Bank NA*, 621 F. App'x 121, 125 (3d Cir. 2015) (same).

Dated: September 9, 2019

COZEN O'CONNOR

/s/ Simon E. Fraser
Mark E. Felger (No. 3919)
Simon E. Fraser (No. 5335)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
Email: mfelger@cozen.com
sfraser@cozen.com

Michael L. Bernstein (admitted pro hac vice)
David B. Bergman (admitted pro hac vice)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, D.C. 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

*Counsel for Defendant Madhu Vuppuluri*