## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ESSAR STEEL MINNESOTA LLC and ESML HOLDINGS INC.,[1]<br><br>　　　　Debtors. | Chapter 11<br><br>Case No. 16-11626 (CTG)<br><br>(Jointly Administered) |
| KEVIN NYSTROM, solely in his capacity as Litigation Trustee for the UC LITIGATION TRUST,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>MADHU VUPPULURI; SANJAY BHARTIA; PRASHANT RUIA; ANSHUMAN RUIA; and DOES 1-500,<br><br>　　　　Defendants. | Adv. Proc. No. 17-50001 (CTG)<br><br>**Re: Adv. Docket No. 185** |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PRASHANT RUIA'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

---

[1]　　Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Company LLC. The last four digits of its federal taxpayer identification number are 8770. The last four digits of ESML Holdings, Inc.'s federal taxpayer identification number are 8071.

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ................................................................................................3

    A.    Background ................................................................................................3

    B.    Prashant Ruia's Control Over The Officer Defendants And ESML ......................4

    C.    The Officer Defendants Transferred Funds To Essar Affiliates In Exchange For No Benefit To ESML ..................................................................5

    D.    The Officer Defendants Followed Prashant Ruia's Instructions And Breached Their Fiduciary Duties ........................................................................6

RELEVANT PROCEDURAL HISTORY ...........................................................................7

ARGUMENT .................................................................................................................8

I.      STANDARD OF REVIEW .....................................................................................8

II.     PLAINTIFF HAS STANDING TO BRING THE CHALLENGED CLAIM ..................9

    A.    The Operative Trust Documents Authorize Plaintiff To Pursue Claims Against Prashant Ruia As A Former Governor Of ESML ................................9

    B.    Prashant Ruia Also Qualifies As An Insider Of ESML .....................................11

III.    THIS COURT HAS PERSONAL JURISDICTION OVER PRASHANT RUIA ...........14

    A.    This Court Has Specific Personal Jurisdiction Over Prashant Ruia As A Result Of His Contacts With The United States ................................................15

IV.    PLAINTIFF STATES A COGNIZABLE A CLAIM AGAINST THE MOVING DEFENDANT FOR AIDING AND ABETTING BREACH OF FIDUCIARY .............21

    A.    Legal Standard ........................................................................................21

    B.    Defendant Prashant Ruia Both Actually Knew Of And Substantially Assisted The Officer Defendants' Breaches Of Their Fiduciary Duties .............22

V.     THE COURT SHOULD REJECT ANY ARGUMENTS THE MOVING DEFENDANT INCORPORATES BY REFERENCE ................................................28

CONCLUSION .............................................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advance Nanotech, Inc.*,
No. 11-10776 (MFW), 2014 WL 1320145 (Bankr. D. Del. Apr. 2, 2014) ................13, 26, 27

*In re Agriprocessors, Inc.*,
No. ADV 10-09123, 2011 WL 4621741 (Bankr. N.D. Iowa Sept. 30, 2011) ...................... 13

*Amhil Enterprises Ltd. v. Wawa, Inc.*,
No. CIV. A. HAR 93-1349, 1994 WL 750535 (D. Md. Dec. 16, 1994) .............................. 12

*In re AMR Corporation, et al.*,
562 B.R. 20 (Bankr. S.D.N.Y. 2016)................................................................................... 10

*Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*,
820 F. Supp. 2d 510 (S.D.N.Y. 2011) ................................................................................ 12

*Anderson v. U.S. Bank Nat. Ass'n*,
No. A13-0677, 2014 WL 502955 (Minn. Ct. App. Feb. 10, 2014) ...........................22, 24, 25

*In re APF Co.*,
264 B.R. 344 (Bankr. D. Del. 2001)................................................................................ 9, 11

*Argueta v. U.S. Immigr. & Customs Enf't*,
643 F.3d 60 (3d Cir. 2011)................................................................................................. 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................8, 12, 13

*Ass'n of Mill & Elevator Mut. Ins. Co. v. Barzen Int'l, Inc.*,
553 N.W.2d 446 (Minn. Ct. App. 1996) .............................................................................. 12

*In re AstroPower Liquidating Tr.*,
335 B.R. 309 (Bankr. D. Del. 2005).............................................................................20, 21

*Attanasio v. Cmty. Health Sys., Inc.*,
863 F. Supp. 2d 417 (M.D. Pa. 2012)................................................................................. 12

*Bank of Montreal v. Avalon Cap. Grp., Inc.*,
743 F. Supp. 2d 1021 (D. Minn. 2010)............................................................................... 12

*BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*,
229 F.3d 254 (3d Cir. 2000)............................................................................................... 19

*In re Broadstripe, LLC*,
    444 B.R. 51 (Bankr. D. Del. 2010) ....................................................................... 27

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................................... 15

*In re Caremerica, Inc.*,
    415 B.R. 200 (Bankr. E.D.N.C. 2009) .................................................................. 13

*City of Long Beach v. Total Gas & Power N. Am., Inc.*,
    465 F. Supp. 3d 416 (S.D.N.Y. 2020) .................................................................. 12

*Connelly v. Lane Const. Corp.*,
    809 F.3d 780 (3d Cir. 2016) .................................................................................... 8

*In Re Consol. Bedding, Inc.*,
    432 B.R. 115 (Bankr. D. Del. 2010) .................................................................... 12

*In re CVEO Corp.*,
    No. 01-0223 (MFW), 2004 WL 3656821 (Bankr. D. Del. Dec. 15, 2004) ........... 11

*Dent v. Cunningham*,
    786 F.2d 173 175 (3d Cir. 1986) .......................................................................... 19

*In re DPH Holdings Corp.*,
    553 B.R. 20 (Bankr. S.D.N.Y. 2016) ................................................................... 10

*In re DSI Renal Holdings, LLC*,
    No. 11-11722 (KBO), 2020 WL 550987 (Bankr. D. Del. Feb. 4, 2020) .............. 22

*Dunning v. Bush*,
    536 F.3d 879 (8th Cir. 2008) ................................................................................ 22

*Garnett v. Welenken CPAs*,
    No. CV 18-2590, 2019 WL 1206729 (D. Minn. Mar. 13, 2019) ......................... 18

*Gmurzynska v. Hutton*,
    257 F. Supp. 2d 621 (S.D.N.Y. 2003) ................................................................. 20

*Gochin v. Thomas Jefferson Univ.*,
    752 F. App'x 135 (3d Cir. 2019) .......................................................................... 28

*Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*,
    988 F.2d 476 (3d Cir. 1993) ................................................................................. 18

*In re Gruppo Antico, Inc.*,
    No. 02-13283(PJW), 2004 WL 5627185 (Bankr. D. Del. Dec. 1, 2004) ............. 19

*In re HMR Foods Holding, LP*,
  602 B.R. 855 (Bankr. D. Del. 2019) ................................................................ 12

*Hop Hing Produces Inc. v. X & L Supermarket, Inc.*,
  No. CV 2012-1401 ARR MDG, 2013 WL 1232948 (E.D.N.Y. Mar. 26, 2013) ................... 12

*In re Jevic Holding Corp.*,
  No. 08-11006 BLS, 2011 WL 4345204 (Bankr. D. Del. Sept. 15, 2011)........................... 24

*Johns Hopkins Univ. v. 454 Life Scis. Corp.*,
  183 F. Supp. 3d 563 (D. Del. 2016) ................................................................ 28

*In re Linens Holding Co.*,
  No. 08-10832 CSS, 2011 WL 6834990 (Bankr. D. Del. Dec. 29, 2011) ........................... 20

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*,
  845 A.2d 1040 (Del. 2004) ................................................................ 12

*In re Medtronic, Inc. Derivative Litig.*,
  68 F. Supp. 3d 1054 (D. Minn. 2014)................................................................ 22

*Miller Yacht Sales, Inc. v. Smith*,
  384 F.3d 93 (3d Cir. 2004)................................................................14, 15

*In re MCG Ltd. P'ship*
  545 B.R. 74, 84 (Bankr. D. Del. 2016) ................................................................ 28

*Parker v. Learn Skills Corp.*,
  530 F. Supp. 2d 661 (D. Del. 2008) ................................................................ 20

*In re Petters Co., Inc.*,
  499 B.R. 342 (Bankr. D. Minn. 2013) ................................................ 13, 23, 24, 25

*In re Petters Co., Inc.*,
  565 B.R. 154 (Bankr. D. Minn. 2017) ................................................ 22, 23, 25, 27

*In re PMTS Liquidating Corp.*,
  526 B.R. 536 (D. Del. 2014) ................................................................ 24

*Quigley v. Verizon Wireless*,
  No. C-11-6212 EMC, 2012 WL 1945784 (N.D. Cal. May 30, 2012) ................................... 12

*In re Raytrans Holding, Inc.*,
  573 B.R. 121 (Bankr. D. Del. 2017)................................................................ 13

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010)................................................................ 12

iv

*Scott v. Vantage Corp.*,
No. 1:17-cv-0048-MPT, 2017 WL 3485818 (D. Del. Aug. 15, 2017) ............................... 8, 9

*In re Senior Cottages of Am., LLC*,
482 F.3d 997 (8th Cir. 2007) ...................................................................................... 27

*In re Shenango Grp. Inc.*,
501 F.3d 338 (3d Cir. 2007) ........................................................................................ 9

*In re SS Body Armor I, Inc.*,
No. 10-11255 (CSS), 2020 WL 4045755 (Bankr. D. Del. July 21, 2020) .............................. 9

*In re Stillwater Cap. Partners Inc. Litig.*,
851 F. Supp. 2d 556 (S.D.N.Y. 2012) ......................................................................... 21

*Strategic Energy Concepts, LLC v. Otoka Energy, LLC*,
No. CV 16-463, 2016 WL 7627040 (D. Minn. Nov. 18, 2016) ........................................... 25

*Toys "R" Us, Inc. v. Step Two, S.A.*,
318 F.3d 446 (3d Cir. 2003) ................................................................................... 14, 21

*In re UD Dissolution Corp.*,
No. 14-32546, 2021 WL 1100472 (Bankr. D. Del. Mar. 19, 2021) .............................. *passim*

*In re Uni-Marts, LLC*,
405 B.R. 113 (Bankr. D. Del. 2009) ............................................................................ 21

*In re USA Detergents, Inc.*,
418 B.R. 533 (Bankr. D. Del. 2009) ............................................................................ 24

*In re USDigital, Inc.*,
443 B.R. 22 (Bankr. D. Del. 2011) .............................................................................. 15

*Varga v. U.S. Bank Nat. Ass'n*,
764 F. 3d 833 (8th Cir. 2014) ............................................................................... 23, 24

*Varga v. U.S. Bank Nat. Ass'n*,
952 F. Supp. 2d 850 ................................................................................................ 23

*Wenske v. Blue Bell Creameries, Inc.*,
No. CV 2017-0699-JRS, 2018 WL 5994971 (Del. Ch. Nov. 13, 2018) ............................... 12

*In re Winstar Commc'ns, Inc.*,
554 F.3d 382 (3d Cir. 2009) ...................................................................................... 13

*In re World Health Alternatives, Inc.*,
385 B.R. 576 (Bankr. D. Del. 2008) ............................................................................ 27

*Zayed v. Associated Bank, N.A.*,
 779 F.3d 727 (8th Cir. 2015) ..................................................................................... 23

**Statutes**

11 U.S.C. §101(31) ......................................................................................................11, 12

Minn. Stat. Ann. § 322C.0102 .................................................................................... 4, 10

**Rules**

Fed. Rule Bankr. P. 7008(a) ............................................................................................ 8

Fed. Rule Bankr. P. 7004(f) ........................................................................................... 14

Fed. Rule Civ. P. 8 .......................................................................................................... 8

Kevin Nystrom, in his capacity as Litigation Trustee for the UC Litigation Trust (the "Plaintiff"), submits this memorandum in opposition to Defendant Prashant Ruia's (the "Moving Defendant" or "Prashant Ruia") Motion to Dismiss the Third Amended Complaint (the "Motion," or "Mot."). For the reasons set forth more fully herein, the Motion should be denied.

## PRELIMINARY STATEMENT

This action arises from Prashant Ruia's aiding and abetting of co-defendants Madhu Vuppuluri's ("Vuppuluri") and Sanjay Bhartia's ("Bhartia," and together with Vuppuluri, the "Officer Defendants") breach of their fiduciary duties to debtor Essar Steel Minnesota LLC (n/k/a Mesabi Metallics Company LLC) ("ESML"). As alleged in Plaintiff's Third Amended Complaint ("TAC"), Prashant Ruia, acting in concert with members of his family, caused the Officer Defendants to ignore clear warnings of ESML's financial distress and approve or cause the transfer of over a billion dollars from ESML to Essar Global affiliates for no consideration.

Although Prashant Ruia tries to downplay his role in the Officer Defendants' blatant breaches, the TAC contains detailed allegations regarding his direct involvement in facilitating several of their fraudulent transfers. For example, the TAC points to an email dated January 24, 2013, in which Vuppuluri directly informed Prashant Ruia that ESML was insolvent by stating that ESML was "left with no funds" and described the situation as "extremely critical." (TAC ¶48.) Notwithstanding this knowledge Prashant Ruia continued to demand that the Officer Defendants transfer funds to, or settle letters of credit on behalf of, Essar Global or its affiliates for no consideration. Similarly, in an email dated July 31, 2015, Prashant Ruia explicitly demanded that Vuppuluri "revert on a solution ASAP" in connection with a request from Essar Projects asking Essar Global "to direct ESML to settle the [Letters of Credit]" for a $19.8 million project wholly unrelated to ESML's business. (TAC ¶85.) In response to Prashant Ruia's demand, Vuppuluri disbursed these funds to Essar Projects *the very next business day*. These and other

well-pled allegations directly contradict Prashant Ruia's suggestion that Plaintiff has improperly dragged him into this litigation due to his "status as a Ruia" or for some "perceived tactical advantage."

Prashant Ruia also lacks any basis to challenge Plaintiff's standing to pursue a claim against him. The plain language of both the Plan and the Bankruptcy Code establish that former directors of the debtor are considered "Insiders," and confirm Plaintiff has standing to bring claims against such individuals on behalf of the UC Litigation Trust. Prashant Ruia does not dispute that he served as a former governor of ESML. That fact alone brings him within the scope of the Plan and confers standing upon Plaintiff on behalf of the UC Litigation Trust.

Similarly, Prashant Ruia overreaches by challenging whether this Court has personal jurisdiction, while glossing over the key facts that establish Plaintiff's *prima facie* case in this forum. Indeed, the TAC identifies multiple instances in which the Moving Defendant personally availed himself of the relevant forum by deliberately aiming his conduct toward the United States. For instance, the TAC alleges that Prashant Ruia communicated with Vuppuluri and Bhartia about multiple improper transactions that violated the Officer Defendants' fiduciary duties. The facts alleged in the TAC establish the plausible inference that Prashant Ruia used these communications to influence and direct the Officer Defendants to improperly divert funds from ESML to other Essar Affiliates. Those acts resulted in a clear injury to ESML that was felt in and aimed at the forum. Courts in this District and Circuit have determined that similar allegations were sufficient to withstand a jurisdictional challenge on a motion to dismiss. *See, e.g.*, *In re UD Dissolution Corp.*, No. 14-32546, 2021 WL 1100472, at *6 (Bankr. D. Del. Mar. 19, 2021).

Finally, Plaintiff has stated a cognizable claim against Prashant Ruia for aiding and abetting. This Court has already found that Plaintiff has stated a cognizable claim against the

2

primary tortfeasors Vuppuluri and Bhartia, and the TAC alleges specific facts that demonstrate Prashant Ruia both knew his actions would lead the Officer Defendants to breach their fiduciary duties and provided substantial assistance to them in furtherance of these breaches. Such facts include Prashant Ruia's demands – as demonstrated by numerous emails cited in the TAC – that the Officer Defendants authorized ESML to transfer funds to Essar Global affiliates at a time when he knew ESML was insolvent.

Moreover, Prashant Ruia's contention that Plaintiff failed to plead "actual knowledge" or "substantial assistance" in support of this claim is a gross oversimplification of the applicable pleading standards. Courts have rejected similar attempts to dismiss aiding and abetting claims where a plaintiff's allegations (as is this case here) demonstrate that the aider and abettor directed the underlying breach to occur at a time when the aider and abettor knew the activity did not align with the purposes of the company's business. As demonstrated below, the TAC plainly demonstrates that Prashant Ruia is not an innocent actor in the Officer Defendants' misconduct, but a knowing and active participant for which he should be held accountable.

Accordingly, for these reasons, and as set forth in more detail below, the Court should deny Prashant Ruia's motion to dismiss in its entirety.

## STATEMENT OF FACTS[2]

### A.    Background

Plaintiff is Kevin Nystrom in his capacity as the Litigation Trustee of the UC Litigation Trust established pursuant to the Third Amended Chapter 11 Plan of Reorganization of Mesabi

---

[2]    Plaintiff respectfully refers the Court to the TAC filed by Plaintiff on July 25, 2019 in the above-captioned jointly administered chapter 11 case for a full recitation of the facts.

3

Metallics Company LLC (f/k/a Essar Steel Minnesota LLC) and ESML Holdings Inc. (Bankr. Dkt. 990) (the "Plan") confirmed in the above-captioned jointly administered chapter 11 case.

The UC Litigation Trustee is authorized to act for the UC Litigation Trust, including, as stated in the Plan, to "prosecute, compromise, transfer, release, abandon, and/or settle the Transferred Causes of Action" on behalf of the UC Litigation Trust. In connection therewith, the UC Litigation Trustee is empowered to "investigate, object, prosecute and/or settle . . . the Claims, liens, or security interests, including, without limitation . . . based on or related to the information gathered and the subjects investigated in the investigation conducted by ESML in preparing the complaint styled, *Essar Steel Minnesota LLC v. Essar Global Fund Limited*, Adv. No. 17-50001 (BLS), filed in the Bankruptcy Court on January 11, 2017 . . . (whether or not enumerated or alleged in the Complaint)." (TAC ¶19.)

All of the claims in the TAC, including Plaintiff's claim against Prashant Ruia, are Transferred Causes of Action that are assets of the UC Litigation Trust. (*Id.*)

### B.    Prashant Ruia's Control Over The Officer Defendants And ESML

Before its collapse into Chapter 11 proceedings, ESML was a wholly-owned subsidiary of Essar Global, a large multinational enterprise. (TAC ¶1.) Essar Global acquired ESML to build and own what was supposed to be a large-capacity, state-of-the-art iron ore mine and pellet plant to be constructed in Nashwauk, Minnesota (the "Project"). (TAC ¶2.) Prashant Ruia was a governor[3] of ESML from October 2007 to July 2010 and from June 2016 to December 2016. (TAC ¶26.) He is also Chairman of the Board of Essar Capital Ltd. and a board member of several Essar Affiliates. (TAC ¶26.) The Moving Defendant has also served as the *de facto* Group Chief

---

[3]    The terms "governor" and "director" are used interchangeably herein. Under Minnesota law, the term "governor" is defined to include a member of a limited liability company's board. *See* Minn. Stat. Ann. § 322C.0102.

4

Executive Officer and Managing Director of Essar Global and the entire Essar Global enterprise. (TAC ¶27.)[4]

Defendant Madhu Vuppuluri was the President and CEO of ESML at all relevant times, and was a governor of ESML from October 2007 through November 2016. (TAC ¶20.) Vuppuluri is a key member of Essar Global's senior management team and has held various director and executive officer roles within Essar Global's enterprise for the past twenty-seven years. (TAC ¶21.) Vuppuluri remains employed by one or more Essar Affiliates, and based on his long-term service to Essar Global and the Essar Affiliates, he owes his livelihood to Essar Global, the Essar Affiliates, and ultimately Prashant Ruia. (TAC ¶23.) Sanjay Bhartia was CFO of ESML beginning in 2013, and was a governor of ESML from April 2014 to April 2015. (TAC ¶24.) Bhartia and his family relocated to the United States pursuant to his temporary worker visa, which was sponsored by ESML and required him to be employed by ESML. (TAC ¶25.)[5]

## C. The Officer Defendants Transferred Funds To Essar Affiliates In Exchange For No Benefit To ESML

Between 2008 and 2016, Vuppuluri and Bhartia, in concert with Prashant Ruia, approved the payment of nearly $1.1 billion to Essar Global and Essar Affiliates purportedly to complete the Project.[6] (TAC ¶7.) Nearly half of those funds, however, were not used on the Project. (*Id.*)

---

[4]    Prashant Ruia contends the TAC conflates himself, as an individual, with the "Ruia family." (Mot. at 24.) For the avoidance of doubt, Prashant Ruia exerted control over Essar Global and its enterprise by virtue of his role in his family and as Group Chief Executive of Essar Global.

[5]    This Court already credited these allegations in determining that the Officer Defendants lacked the independence from Prashant Ruia and Essar Global to objectively consider the impact of the transactions at issue on ESML. (*See* Adv. D.I. 175 at 13-14.)

[6]    Bhartia's employment with ESML did not begin until 2013 and his service as a governor did not begin until April 2014. (TAC ¶24.) Although the TAC describes transfers that occurred prior to Bhartia's employment, Plaintiff does not contend that Bhartia is liable for any transfers that pre-date the commencement of his employment at ESML.

Instead, the Officer Defendants, in accordance with the directions and demands from Prashant Ruia, improperly and unlawfully approved and/or facilitated the transfer of hundreds of millions of dollars from ESML to Essar Global and Essar Affiliates over ESML's financial interests. (*See id*. ¶¶ 61-104.)  These transfers include, without limitation, the following:

- March 2012: $5 million transfer to Trinity;

- June 2012: $79 million "loan" to Essar Global;

- January 2013: $325,000 "loan" to Essar Global;

- January 2013: $21 million "loan" to Essar Global;

- Late 2013: Release of $5 million claim in the Trinity bankruptcy case for no consideration;

- November 2014: $3.3 million "payment" to an Essar affiliate;

- March 2015: $68 million payment to Essar Projects, which was recirculated as Essar Global's equity contribution to ESML under the Equity Contribution Agreement;

- 2015: Participating in an over-invoicing scheme with Essar Projects-US;

- 2015: $17 million payment to Essar Projects-India to facilitate Essar Global's $16 million equity contribution to ESML;

- Mid-2015: millions of dollars in transfers for Paradeep project letter of credit; 2014 and 2015: millions of dollars paid in connection with Essar Projects' attempts to open LCs – both for the Project and in connection with other business Essar Projects was involved with.

(*Id*.)  The Officer Defendants authorized or facilitated these transfers with blatant disregard for the consequences on the insolvent ESML.  (*Id*. ¶¶ 9, 63, 72, 110.)

D.    **The Officer Defendants Followed Prashant Ruia's Instructions And Breached Their Fiduciary Duties**

In making and/or approving these improper transfers, the Officer Defendants abdicated their fiduciary duties to the will of Prashant Ruia and Essar Global – which Prashant Ruia controlled – by following Prashant Ruia's instructions without regard for the consequences to

6

ESML.  (TAC ¶¶ 61-104.)  Instead of exercising due care, the Officer Defendants, at the Moving Defendant's demand and instruction, approved the challenged transactions even though they knew that: (i) ESML was not required to make the payments; (ii) the funds would not be used for Project purposes; and (iii) ESML would be harmed thereby because it was insolvent.  (*Id.*)  As a direct consequence of these improper transactions, the Project remains uncompleted and will require hundreds of millions of dollars more to finish.  (TAC ¶3.)  Further, ESML is burdened with over a billion dollars in claims asserted against it that are attributable, in part, to the Officer Defendants' breaches of their fiduciary obligations and Prashant Ruia's aiding and abetting thereof.  (*Id.*)

Prashant Ruia aided and abetted these breaches by acting in concert with the Officer Defendants to funnel money paid to Essar Affiliates for Project purposes to other Ruia-controlled entities in the Essar Global conglomerate.  (TAC ¶7.)  As a result of this longstanding pattern of financial misconduct, ESML filed Chapter 11 proceedings, and its unsecured creditors received nothing from ESML other than the proceeds recovered by the Litigation Trust.  (TAC ¶12.)

## RELEVANT PROCEDURAL HISTORY

Plaintiff filed the TAC on July 25, 2019, (Adv. D.I. 121), following this Court's dismissal, with leave to re-plead, of Plaintiff's Second Amended Complaint.[7]  (*See* Decision Granting Defendants' Motions to Dismiss the SAC (Bankr. D. Del. May 23, 2019) (Adv. D.I. 112).)  The TAC brought six claims against defendants Vuppuluri and Bhartia relating to various breaches of fiduciary duty and one claim against Prashant Ruia for aiding and abetting those breaches of fiduciary duty.  (TAC ¶¶ 108-85.)  On July 14, 2020, counsel for Plaintiff and the Moving

---

[7]  Any suggestion that Plaintiff belatedly amended its complaint to add Prashant Ruia to this litigation is without merit.  Plaintiff, as the Litigation Trustee for the UC Litigation Trust, asserted its claims against Prashant Ruia in the Second Amended Complaint, its first filing in this action. The original pleading, as well as the First Amended Complaint, were filed by Debtors' counsel before the Plan's effective date and prior to Plaintiff's appointment as the UC Litigation Trustee.

7

Defendant stipulated that the Moving Defendant would accept service of the TAC and respond within 21 days of the Court entering an order on Vuppuluri and Bhartia's then-pending motions to dismiss. That stipulation was approved on August 19, 2020. (Adv. D.I. 172, 173.)

On May 11, 2021, the Court entered an opinion and order denying Vuppuluri and Bhartia's motions to dismiss in their entirety, thereby triggering the Movant Defendant's time to answer or move to dismiss. (*See* Decision Denying Defendants' Motions to Dismiss the TAC (Bankr. D. Del. May 5, 2021), Adv. D.I. 175 ("Decision"); Adv. D.I. 179.) On June 1, 2021, Prashant Ruia filed his Motion to Dismiss the Third Amended Complaint. (Adv. D.I. 185.)

## ARGUMENT

### I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8, applicable here through Federal Rule of Bankruptcy Procedure 7008(a), "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citations omitted).

The purpose of a motion to dismiss is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scott v. Vantage Corp.*, No. 1:17-cv-0048-MPT, 2017 WL 3485818, at *3 (D. Del. Aug. 15, 2017). Indeed, "a motion to dismiss may be granted only if, after, accepting all well-pleaded allegations in the complaint as

8

true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief." *Id*. (citation omitted).

Viewed under these standards, the TAC plainly states viable claims for relief, and the Motion should be denied.

## II.    PLAINTIFF HAS STANDING TO BRING THE CHALLENGED CLAIM

### A.    The Operative Trust Documents Authorize Plaintiff To Pursue Claims Against Prashant Ruia As A Former Governor Of ESML

Plaintiff's standing to bring claims against Prashant Ruia on behalf of the UC Litigation Trust is plainly governed by the language of the Plan. *See In re APF Co.*, 264 B.R. 344, 353 (Bankr. D. Del. 2001) ("Section 1123(b)(3) allows a chapter 11 plan to provide for . . . the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest [belonging to debtor or to the estate]").  In his Motion, the Moving Defendant argues that Plaintiff does not have standing to bring this suit against him because he is not a "person in control of ESML" and does not otherwise fall into one of the enumerated categories of individuals against whom the Plan authorizes Plaintiff to bring claims on behalf of the Litigation Trust. (Mot. at 14.)  This assertion is wholly refuted by the text of the Plan, which unambiguously authorizes Plaintiff to bring claims against former directors of ESML.

Pursuant to Section 14.11 of the Plan, any dispute over the construction of the Plan is governed by New York law, a fact that Prashant Ruia conveniently ignores. (*See* D.I. 990.)  *See also In re Shenango Grp. Inc.*, 501 F.3d 338, 344 (3d Cir. 2007) (interpreting confirmed reorganization plan in accordance with the contract principles of the state law stated in the Plan's choice of law provision); *In re SS Body Armor I, Inc.*, No. 10-11255 (CSS), 2020 WL 4045755, at *3 (Bankr. D. Del. July 21, 2020) (same).  His reason for overlooking this fact is transparent: New York's principles of contract interpretation clearly support that Plaintiff has standing to assert this

9

action against him.  Under New York law, a court's "primary objective is to give effect to the intent of the parties as revealed by the [plain meaning of the] language of their agreement." *In re DPH Holdings Corp.*, 553 B.R. 20, 26 (Bankr. S.D.N.Y. 2016) (interpreting confirmed reorganization plan under New York law); *In re AMR Corporation, et al.*, 562 B.R. 20, 28-29 (Bankr. S.D.N.Y. 2016) ("Under New York law, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.").

Under its plain terms, the Plan grants to Plaintiff, "all of [Debtors'] right, title, and interest in and to the UC Litigation Trust Assets, including ***the Individual Claims*** and the proceeds derived from any Insurance Coverage Actions related to the Individual Claims, and any proceeds thereof." (Plan §8.2 (emphasis added).)  The term Individual Claims "means all Transferred Causes of Action ***of [ESML] against any natural person who was or is an officer, director, manager, Insider or controlling equity Holder of [ESML]*** including claims for breach of fiduciary duties or other tort committed by any such person, and the right to receive all proceeds in respect thereof, including any proceeds of D&O Insurance Policies."  (Plan §1.1(69) (emphasis added).)  As Plaintiff specifically alleges that Prashant Ruia was a former director (*i.e.* governor) of ESML (TAC ¶26), the Plan plainly confers standing on Plaintiff to assert claims against him.[8]

The Moving Defendant distorts the readily apparent plain meaning of the Plan by asserting that "Prashant Ruia was not an officer, director, manager or controlling equity holder of any debtor at the relevant times of any transfers."  (Mot. at 15.)  But whether or not Prashant Ruia was a director at the "relevant times of any transfers" is immaterial to the standing analysis.  Prashant Ruia is a former director (*i.e.* governor) of ESML (TAC ¶26.), and the Plan's definition of

---

[8]    Under Minnesota law, a "governor" is the term used to define a member of an LLC's board of directors.  *See* Minn. Stat. Ann. § 322C.0102 (defining "Governor" as "a member of the board, however designated, of a board-managed limited liability company.")

"Individual Claims" in no way limits Plaintiff's standing rights to any "relevant time period." Indeed, the Plan does not make *any* reference to a "relevant time period" for the purposes of conferring standing upon Plaintiff. Nor does Prashant Ruia provide any support for how such a time limitation may be inferred from the plain language of the Plan. (Mot. at 15.) Accordingly, this Court should not permit Prashant Ruia to rely upon a mischaracterization of the Plan's plain language to negate the Plaintiff's right to assert claims against him.

Accordingly, the TAC's allegations that Prashant Ruia is a former director of ESML is alone sufficient to give Plaintiff standing in light of the unambiguous language of the Plan. *See In re APF Co.*, 264 B.R. 344, 353 (Bankr. D. Del. 2001) (denying motion to dismiss and finding trustee had standing to assert the claims pursuant to the terms of the plan); *In re CVEO Corp.*, No. 01-0223 (MFW), 2004 WL 3656821, at *3 (Bankr. D. Del. Dec. 15, 2004) (same).

**B.    Prashant Ruia Also Qualifies As An Insider Of ESML**

Notwithstanding the fact that the Plan authorizes Plaintiff to bring suit against any former director of ESML, Prashant Ruia erroneously contends that Plaintiff may only sue him if he is deemed an "Insider" of ESML as defined by the Bankruptcy Code. (Mot. at 15). Setting aside the fact that, as described above, Insider is not the "only relevant category," this argument is unavailing because Prashant Ruia does, in fact, qualify as an Insider under the Plan and the Bankruptcy Code.

The term Insider is defined by the Plan as "a Person that, with respect to the Debtors, would *at any time prior to the Effective Date* fall within the definition ascribed to such term in section 101(31) of the Bankruptcy Code." (Plan §1.1(70) (emphasis added).) Section 101(31)(B) of the Bankruptcy Code establishes a non-exhaustive list of individuals who qualify as "insiders" of a debtor corporation. 11 U.S.C. §101(31)(B). The very first of those categories is a "director of the Debtor." *Id.* When read together with the Plan, the unavoidable conclusion is that any person who

11

served as a director of ESML at any time prior to the Effective Date is an Insider for the purposes of the Plan. As a former governor of ESML, Prashant Ruia falls squarely under this category.

Moreover, Prashant Ruia is an "Insider" as defined by the Plan because, as demonstrated in the TAC, he is a "person in control of [debtor-ESML]." (Plan §1.1(70)); 11 U.S.C. §101(31)(B). In asking this Court to reject the TAC's well-pled allegations concerning the Moving Defendant's control over ESML and the Officer Defendants, the Motion string cites a litany of cases from various jurisdictions. (Mot. at 10-13.) Each of these cases is wholly inapposite.[9] None of the cases concern a breach of fiduciary duty or aiding and abetting of that breach, and none of the complaints at issue supported their allegations of control with detailed factual allegations as the Plaintiff did in the TAC.[10] (*See* Section III.A.1-3, *infra*.)

---

[9]     Eight of these cases concern whether a plaintiff properly pled facts to establish a corporate alter ego theory or warrant piercing the corporate veil; arguments which Plaintiff does not make here. *See Hop Hing Produces Inc. v. X & L Supermarket, Inc.*, No. CV 2012-1401 ARR MDG, 2013 WL 1232948, at *6 (E.D.N.Y. Mar. 26, 2013); *Amhil Enterprises Ltd. v. Wawa, Inc.*, No. CIV. A. HAR 93-1349, 1994 WL 750535, at *5 (D. Md. Dec. 16, 1994); *Wenske v. Blue Bell Creameries, Inc.*, No. CV 2017-0699-JRS, 2018 WL 5994971, at *6 (Del. Ch. Nov. 13, 2018); *Ass'n of Mill & Elevator Mut. Ins. Co. v. Barzen Int'l, Inc.*, 553 N.W.2d 446, 448 (Minn. Ct. App. 1996); *Bank of Montreal v. Avalon Cap. Grp., Inc.*, 743 F. Supp. 2d 1021, 1032 (D. Minn. 2010); *City of Long Beach v. Total Gas & Power N. Am., Inc.*, 465 F. Supp. 3d 416, 441 (S.D.N.Y. 2020); *Quigley v. Verizon Wireless*, No. C-11-6212 EMC, 2012 WL 1945784, at *3 (N.D. Cal. May 30, 2012); *Amusement Indus., Inc. v. Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 539-40 (S.D.N.Y. 2011). Three of the cases concern whether a plaintiff adequately pled control for the purposes of joint liability under the WARN and FLSA statutes. *See In re HMR Foods Holding, LP*, 602 B.R. 855, 874 (Bankr. D. Del. 2019); *In Re Consol. Bedding, Inc.*, 432 B.R. 115, 123 (Bankr. D. Del. 2010); *Attanasio v. Cmty. Health Sys., Inc.*, 863 F. Supp. 2d 417, 425 (M.D. Pa. 2012). And the remaining cases are inapposite because they concern a derivative claim, a Bivens action, and a Section 1983 claim. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1052 (Del. 2004); *Argueta v. U.S. Immigr. & Customs Enf't*, 643 F.3d 60, 77 (3d Cir. 2011); *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010).

[10]     The Motion's attempt to draw parallels to the defective pleading found in *Iqbal* and the TAC is unavailing. (Mot. at 11.) In *Iqbal*, the Supreme Court held that the plaintiff's pleading failed to state a claim where it relied upon conclusory titles such as "principal architect." 556 U.S. at 680. In contrast to the complaint in *Iqbal*, however, the TAC supports its allegations of Prashant Ruia's control with specific facts concerning his control over the Officer Defendants.

12

Here, by contrast, the TAC contains specific allegations concerning the Moving Defendant's control over ESML and the Officer Defendants.  The TAC alleges that Prashant Ruia was the "*de facto* Group Chief Executive Officer and Managing Director of Essar Global, and indeed the entire Essar Global enterprise."  (TAC ¶27.)  In this role, Prashant Ruia exerted dominion and control over the Officer Defendants' actions (and in turn ESML) because the Officer Defendants were both beholden to Essar Global for their livelihood.  (*See* TAC ¶¶ 21, 23, 25, 114, 137, 138.)  Prashant Ruia used this control to dictate the Officer Defendants' decisions with respect to the siphoning of ESML's assets to Essar Global and Essar Affiliates.  (*See, e.g.*, ¶¶ 27, 61-104.)

Indeed, this Court previously determined that the TAC sufficiently alleged that the Officer Defendants "lacked [the] independence to objectively consider the impact of the [disputed] transfers on ESML" because of the control exerted by Prashant Ruia.  (*See* Decision at 13-14 (citing the TAC's allegations that the Officer Defendants authorized transfers "upon demand of Mr. Ruia").)  Such allegations are sufficient to demonstrate that Prashant Ruia was an Insider for the purposes of the Plan.[11]  *See In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 397 (3d Cir. 2009) (affirming bankruptcy court's findings that defendant was an insider where it was able to control debtor's employees to enter into transaction for its own benefit); *In re Advance Nanotech, Inc.*, No. 11-10776 (MFW), 2014 WL 1320145, at *5 (Bankr. D. Del. Apr. 2, 2014) (finding the

---

[11]   The cases the Moving Defendant cites in support of his position that the TAC fails to allege his status as an insider are also unavailing.  Each of those cases concern complaints which alleged the defendant was a "person in control" or "insider" without any factual support.  *See In re Raytrans Holding, Inc.*, 573 B.R. 121 (Bankr. D. Del. 2017) (dismissing complaint where trustee only recited the word insider); *In re Agriprocessors, Inc.*, No. ADV 10-09123, 2011 WL 4621741 (Bankr. N.D. Iowa Sept. 30, 2011) (dismissing complaint where plaintiff alleged defendant was insider without any factual support); *In re Caremerica, Inc.*, 415 B.R. 200 (Bankr. E.D.N.C. 2009) (same); *In re Petters Co., Inc.*, 499 B.R. 342, 370 (Bankr. D. Minn. 2013) (same).

complaint plausibly alleged aider/abettor-defendant exercised control over debtor by alleging that debtors-officers engaged in transactions for aider/abettor's own benefit).

In light of the foregoing, the Court need not, and should not, credit the Moving Defendant's improper attempts to read nonexistent limitations into the language of the Plan or to limit the scope of the Plan to just a single subdivision of the Bankruptcy Code. The Plan clearly authorizes Plaintiff to bring claims against former directors, and the TAC contains well-pled allegations concerning Prashant Ruia's control over the Officer Defendants and ESML. Therefore, the Court should find that both the Plan and the Bankruptcy Code unambiguously confer standing upon Plaintiff to bring this action against Prashant Ruia.

## III.    THIS COURT HAS PERSONAL JURISDICTION OVER PRASHANT RUIA

The TAC's well-pled allegations are more than sufficient to establish a *prima facie* case that the Court has personal jurisdiction over Prashant Ruia. "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (internal citations omitted).

To establish a *prima facie* case (i) the defendant must have "sufficient 'minimum contacts' with the forum" and (ii) the exercise of personal jurisdiction must "comport[] with 'traditional notions of fair play and substantial justice.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (internal citation omitted). Rule 7004(f) of the Bankruptcy Code further provides that, so long as it is "consistent with the Constitution and laws of the United States, service of process under that Rule [7004(d)] establishes personal jurisdiction if the defendant has minimum contacts with the United States as a whole." *See In re UD Dissolution Corp.*, No. 14-32546, 2021 WL 1100472, at *4 (Bankr. D. Del. Mar. 19, 2021); Bankr. Code R. 7004.

14

A plaintiff seeking to defeat a motion to dismiss does not need to allege every single act that the defendant has taken. Rather, "[a] claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re USDigital, Inc.*, 443 B.R. 22, 35 (Bankr. D. Del. 2011). As set forth below, the TAC's specific allegations regarding Prashant Ruia's contacts with the United States are more than sufficient to plead a *prima facie* case for personal jurisdiction.

### A.  This Court Has Specific Personal Jurisdiction Over Prashant Ruia As A Result Of His Contacts With The United States

The TAC specifically points to Prashant Ruia's contacts with the United States in connection with ESML and the acts complained of in this Action.[12] These contacts demonstrate that Prashant Ruia had a substantial connection to the United States and are both independently and collectively sufficient to defeat his jurisdictional challenge. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 98 (3d Cir. 2004). Indeed, the Supreme Court has held that a single contact with the forum can be sufficient to satisfy the minimum contacts analysis. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 n.18, (1985) ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."). The Moving Defendant's self-serving characterization of the allegations as mere "virtual contacts" (Mot. at 20) with no ties to this action must be rejected outright.[13] As further demonstrated below, the TAC clearly portrays both a general pattern of activity and multiple specific acts in connection with that pattern that

---

[12]    Even though Plaintiff does not contend, either here or in the TAC, that this Court has general personal jurisdiction over Prashant Ruia, the Motion inexplicably expends a full page explaining why general jurisdiction does not exist.

[13]    Any suggestion by the Moving Defendant that such communications were unrelated to this litigation or transactions at issue is wholly without merit. The TAC ties each of Prashant Ruia's communications with the Officer Defendants to the Officer Defendants' prompt transfer of ESML's funds to Essar Global or its affiliates.

15

demonstrate that Prashant Ruia knowingly and deliberately aimed his suit-related conduct at the United States.

### 1.    The Trinity Transfer

Contrary to the Moving Defendant's characterizations, Plaintiff specifically alleges that Prashant Ruia communicated with Vuppuluri – who was then both a director of Trinity Coal and of ESML – about the Trinity Coal transfer. (TAC ¶65.) Emails in the days leading up to and following the Trinity transfer demonstrate that Prashant Ruia was directly involved in the discussions concerning Trinity's financial distress with Vuppuluri, including whether Trinity should file for Chapter 11 bankruptcy in the United States given its dire financial position. (TAC ¶66.) Tellingly, Vuppuluri did not discuss this transaction with ESML's Board, nor are there any ESML board meeting minutes or resolutions discussing this transaction. (TAC ¶65.) Instead, on or about March 15, 2012 – *the same business day that Vuppuluri discussed this transaction with Prashant Ruia* – Vuppuluri "caused ESML to transfer $5 million to Trinity, an affiliate of ESML, without receiving any value in return." (TAC ¶¶64-65.)

Taken together, these factual allegations establish the plausible inference that the purpose of Prashant Ruia's communications was to direct or influence the activities of ESML, an entity organized under the laws of the United States and actively transacting business in the United States, to supplement Trinity's financial position and help it avoid bankruptcy.

### 2.    Letters Of Credit

Prashant Ruia also inaccurately claims that "the TAC does not allege that [he] actually ordered, requested, or otherwise aided-and-abetted that transfer [to settle certain Letters of Credit]". (Mot. at 21.) The TAC's well-pled allegations clearly allege otherwise.

Specifically, in the paragraph directly preceding Prashant Ruia's citation to the TAC, Plaintiff explicitly alleges that "ESML also paid millions of dollars (with authorization from

16

Defendant Vuppuluri and Defendant Bhartia *at the urging of Defendant Prashant Ruia*) to settle [Letters of Credit] opened by Essar Projects for the Paradeep Project in India" (TAC ¶84 (emphasis added).)  Moreover, the TAC's next paragraph provides additional details and alleges that, on July 31, 2015, *Prashant Ruia communicated via email with Vuppuluri, among others, regarding a request from Essar Projects asking Essar Global "to direct ESML to settle the [Letters of Credit] related to Essar Project's Paradeep Project in India."*  (TAC ¶85 (emphasis added).)  Notably, in that email, Prashant Ruia explicitly acknowledges that he discussed this issue with Vuppuluri and then provided further direction to resolve the issue "ASAP," stating:  "*Spoken to Rajesh and Madhu [Vuppuluri]…Madhu, Pls revert on the solution ASAP*."  (TAC ¶85.)  The TAC then completes this allegation by alleging that, *the very next business day*, the Officer Defendants coordinated these improper transfers pursuant to the demands of Prashant Ruia.  (TAC ¶87.)

These facts more than adequately allege the minimum contacts required to assert specific jurisdiction under federal law.  In a recent case, the Court held that a plaintiff sufficiently alleged minimum contacts for the purposes of jurisdiction where the defendants directed emails and calls to the U.S. relating to the transactions in dispute.  *In re UD Dissolution Corp.*, No. 14-32546, 2021 WL 1100472, at *6 (Bankr. D. Del. Mar. 19, 2021).  Notably, in *UD Dissolution*, the Court rejected any suggestion that the emails and telephone calls were insufficient to establish jurisdiction where defendant (as Prashant Ruia did here) directed his communication to the U.S. with knowledge that any injury would likely occur in the U.S.  *Id* at *6; *see also Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (finding mail and telephone communications sent by the defendant into the forum relating to underling conduct in dispute supported the court's exercise of jurisdiction); *Garnett v. Welenken CPAs*, No. CV 18-2590 (JRT/ECW), 2019 WL 1206729, at *4 (D. Minn. Mar. 13, 2019) (denying motion to dismiss aiding and abetting claims for lack of

17

personal jurisdiction where defendants had many virtual contacts to the forum through calls and emails and visited the forum once in relation to the allegations in the complaint).[14]

When these factual allegations are taken as true and all favorable inferences are drawn in Plaintiff's favor, as they must be, they create the plausible inference that Prashant Ruia's communications directed an already insolvent ESML to divert funds from the Project in order to pay for unrelated expenses incurred by other Essar Affiliates. These acts are sufficient to show the Moving Defendant's purposeful availment of the privilege of doing business in the forum.

### 3.    The ICICI Loan

The TAC contains detailed allegations that Vuppuluri, pursuant to the demands of Prashant Ruia, diverted funds from a bank loan that was intended to fund the Project, and instead improperly transferred those funds to Essar Global.

The Court previously credited (and cited) these allegations in determining that the TAC sufficiently alleged that Vuppuluri lacked the "independence necessary to objectively consider the challenged transactions' effects on ESML." *See* Decision at 13 (citing, *inter alia*, paragraph 71 of the TAC alleging that Vuppuluri continued to "lend" money from ESML to Essar Global despite the negative impact on ESML's finances and inability to complete the Project upon instructions from Prashant Ruia.) Specifically, the TAC alleges, in relevant part, as follows:

- "In June 2012, at the request of Essar Global and on the instruction from Defendant Vuppuluri, ESML drew down $79 million from ICICI Bank Limited, New York Branch ("ICICI Bank"), the entirety of which, instead of being used to construct the Project as required under the related credit agreement, was transferred as a loan to Essar Global." (TAC ¶68.)

---

[14]    The Moving Defendant cites to a plethora of cases from outside this jurisdiction denying the use of virtual contacts to establish jurisdiction. (See Mot. at 22-23.) These cases are unavailing as the Third Circuit has accepted virtual contacts as grounds for personal jurisdiction. *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993).

- "Upon information and belief, however, at the time of the transfer, Defendant Vuppuluri knew that Essar Global was having liquidity issues as he knew that the money was loaned to Essar Global to service a non-performing loan that Essar Global had with ICICI Bank." (TAC ¶69.)

- "Although Essar Global and ESML entered into a promissory note in connection with this transaction on June 19, 2012 which required the loan to be repaid by July 31, 2012, Essar Global failed to begin repaying this loan until July 2, 2013 in breach of its obligations.  Upon information and belief, ESML's Board did not discuss or consider this transaction.  Indeed, none of the 2012 or 2013 Board of Governors Meeting Minutes reviewed by the Plaintiff discuss this "loan" to Essar Global or authorize ESML to permit Essar Global to breach the promissory note's requirements." (TAC ¶71.)

- "Despite this knowledge, Defendant Vuppuluri continued to adhere to Mr. Ruia's demands and continued to 'loan' money to Essar Global at times when ESML was insolvent." (TAC ¶72.)

Accordingly, as this Court has already held, these allegations establish the plausible inference that Vuppuluri was breaching his fiduciary duties, to the detriment of ESML, at the explicit direction of Prashant Ruia.  Accordingly, Prashant Ruia took acts aimed at, and that caused harm in, the United States, and the Motion should be denied.[15]

---

[15]    In addition to inaccurately characterizing the allegations of the Moving Defendant's contacts with the forum, the Moving Defendant also relies upon court decisions that are factually distinguishable from the TAC.  *See BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 261 (3d Cir. 2000) (finding the defendant's contacts with U.S. were unrelated to the injuries complained of in the complaint); *In re Gruppo Antico, Inc.*, No. 02-13283(PJW), 2004 WL 5627185, (Bankr. D. Del. Dec. 1, 2004) (finding no minimum contacts where foreign seller delivered goods to a Mexican customer through an arm's length transaction and had only ancillary contact with the United States); *Dent v. Cunningham*, 786 F.2d 173 175 (3d Cir. 1986) (finding the *only* contact of defendant with the forum state of New Jersey alleged anywhere in the record was in a single statement by the plaintiff in connection with her opposition to the motion to dismiss); *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 673 (D. Del. 2008) (complaint's allegation that defendant was an officer of the corporation was insufficient to support personal jurisdiction in the forum); *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621 (S.D.N.Y. 2003) (finding allegations that defendant's publication of a catalogue in Germany would have "foreseeable effects" in the forum were too conclusory to confer jurisdiction).

#### 4.    The Moving Defendant's Other Contacts With The United States

Prashant Ruia's contention that the TAC fails to state a *prima facie* case of specific personal jurisdiction focuses solely on his "contacts" in connection with the three transactions identified above.  Even assuming the Moving Defendant is correct that such communications do not confer personal jurisdiction (they do), other allegations in the TAC demonstrate that Prashant Ruia purposely availed himself of the privilege of conducting activities within the United States.

For example, the TAC alleges that Prashant Ruia was present for a series of meetings in 2015 and 2016 with the Officer Defendants and U.S. lenders, and represented that Essar Project was qualified to complete the construction of the Project.  (TAC ¶55.)  Here again, the TAC states a detailed factual allegation that the Moving Defendant purposefully aimed his conduct at the forum, in this case by misleading U.S.-based lender banks as to Essar Projects' ability to complete the construction on the Project at a time when he knew (i) ESML was insolvent and (ii) the Officer Defendants were siphoning its assets for the benefit of Essar Global and its affiliates.  This Court has upheld similar allegations at the pleading stage.  *See In re Linens Holding Co*., No. 08-10832 CSS, 2011 WL 6834990, at *1 (Bankr. D. Del. Dec. 29, 2011) ("the minimum contacts hurdle can be achieved by contract negotiations with forum residents") (*citing Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476 (3d Cir. 1993)); *In re AstroPower Liquidating Tr.*, 335 B.R. 309, 321 (Bankr. D. Del. 2005) (allegations of "intentional misrepresentation on the part of [the defendant] . . . states a prima facie case for personal jurisdiction").

The TAC also contains detailed allegations concerning the Officer Defendants' decision to approve the improper transactions in response to the demands made by Prashant Ruia and Essar Global (which the TAC alleges Prashant Ruia controlled).  (*See* Section III.A.1-3. *supra*.)  The Moving Defendant's exertion of his control over the Officer Defendants caused the Officer Defendants to take the action in the United States that is central to this litigation.  (*Id*.)  As a result,

20

this Court may properly exercise its jurisdiction over him. *See In re UD Dissolution Corp.*, 2021 WL 1100472, at \*6; *In re Uni-Marts, LLC*, 405 B.R. 113, 123 (Bankr. D. Del. 2009) (finding sufficient minimum contacts where defendant directed debtor to fraudulently represent financials).

In all, the TAC contains specific allegations concerning at least five separate contacts through which Prashant Ruia purposefully availed himself of the forum of the United States. All of these contacts related to the very transactions at issue in this case. Thus, the Court may properly exercise its jurisdiction over Prashant Ruia and should deny his Motion.[16]

## IV.    PLAINTIFF STATES A COGNIZABLE A CLAIM AGAINST THE MOVING DEFENDANT FOR AIDING AND ABETTING BREACH OF FIDUCIARY

### A.    Legal Standard

In Minnesota, a plaintiff must satisfy three elements to plead a claim for aiding and abetting: "(1) the primary tortfeasor must commit a tort that causes an injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *In re Petters Co., Inc.*, 565 B.R. 154, 167 (Bankr. D. Minn. 2017).[17]

---

[16]    In the alternative, to the extent the Court finds that the TAC does not sufficiently allege that Prashant Ruia had sufficient minimum contacts with the United States, the Court should grant Plaintiff jurisdictional discovery to establish whether sufficient contacts exist. While plaintiffs shoulder the burden of demonstrating sufficient jurisdictional facts, "courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citation omitted); *see also In re Stillwater Cap. Partners Inc. Litig.*, 851 F. Supp. 2d 556, 571 (S.D.N.Y. 2012) (finding that aider and abettor defendant's involvement in transaction at issue and attendance at meetings relevant to the transaction at issue made *prima facie* case warranting jurisdictional discovery).

[17]    Fiduciary duties are governed by the law of the state of formation under the "internal affairs" doctrine. *Dunning v. Bush*, 536 F.3d 879, 886 (8th Cir. 2008). "Claims implicating an entity's internal affairs include breach of fiduciary duty, aiding and abetting, and waste." *In re DSI Renal Holdings, LLC*, No. 11-11722 (KBO), 2020 WL 550987, at \*9, n. 61 (Bankr. D. Del. Feb. 4, 2020). Here, ESML is a Minnesota corporation. Courts interpreting Minnesota corporate governance disputes "often look to Delaware law for assistance in developing rules of corporate

As to the first element, this Court has already found that Plaintiff stated a cognizable claim against the Officer Defendants for the primary tort of breach of fiduciary duty. (Adv. D.I. 175 (denying Vuppuluri's and Bhartia's motions to dismiss the TAC).)  This finding is not subject to review on this Motion.  Accordingly, the Court's inquiry should focus on the second and third elements, both of which the TAC's well-pled allegations amply satisfy here.

## B.      Defendant Prashant Ruia Both Actually Knew Of And Substantially Assisted The Officer Defendants' Breaches Of Their Fiduciary Duties

In arguing that Plaintiff failed to state a claim for aiding and abetting, Prashant Ruia misconstrues the applicable standard for assessing whether the TAC adequately pleads actual knowledge and substantial assistance.

Contrary to the Moving Defendant's suggestion, the elements of knowledge and substantial assistance or encouragement are evaluated "in tandem," and should not be considered in isolation. *Anderson v. U.S. Bank Nat. Ass'n*, No. A13-0677, 2014 WL 502955, at *7 (Minn. Ct. App. Feb. 10, 2014) *citing Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 188 (Minn. 1999). Whether the requisite degree of knowledge or assistance exists depends in part on the facts and circumstances of each case, all of which must be examined in context, rather than requiring a plaintiff to point to a smoking gun at the pleading stage. *Id*. Courts consider factors such as "the relationship between the defendant and the primary tortfeasor, the nature of the primary tortfeasor's activity, the nature of the assistance provided by the defendant, and the defendant's state of mind." *Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 733 (8th Cir. 2015).

---

law" where Minnesota law is lacking. *See In re Medtronic, Inc. Derivative Litig.*, 68 F. Supp. 3d 1054, 1062 (D. Minn. 2014).

### 1.    Actual Knowledge

To satisfy the knowledge requirement, a complaint must plead facts plausibly alleging that the aider and abettor was actually aware of the wrongfulness of the challenged conduct. *See In re Petters Co., Inc.*, 565 B.R. 154, 167 (Bankr. D. Minn. 2017) (*citing Varga v. U.S. Bank Nat. Ass'n*, 764 F. 3d 833 (8th Cir. 2014).  Prashant Ruia overstates this requirement, however, claiming that "actual knowledge" must be pled.  (Mot. at 25.)  Knowledge may be shown by circumstantial evidence where, as here, "the circumstantial evidence [] demonstrate[s] that the aider-and-abettor actually knew of the underlying wrongs committed.'" *Varga v. U.S. Bank Nat. Ass'n*, 952 F. Supp. 2d 850, 857.[18]

The Motion contends that Plaintiff was required to plead that Prashant Ruia had knowledge of the Officer Defendants' legal duties under Minnesota law.  Courts have not applied the actual knowledge requirement as strictly as the Moving Defendant represents.  Indeed, courts have found that a defendant is liable as an aider and abettor where a complaint generally alleges that the defendant knew that the primary tortfeasors participated in atypical business transactions or actions which lack business justification.

*In re Petters Co., Inc.*, 565 B.R. 154, 168 (Bankr. D. Minn. 2017) is instructive.  Similar to Prashant Ruia, the defendant in *Petters* attempted to argue that the plaintiff failed to plead actual knowledge as required by *Varga*.  The *Petters* court rejected this argument and determined that the plaintiff sufficiently stated an aiding and abetting claim where plaintiff alleged defendant knew

---

[18]    The Moving Defendant cites to *Varga* in support of his that claim constructive knowledge is insufficient to state an aiding and abetting claim under Minnesota law. (Mot. at 26.) He ignores, however, that *Varga* explicitly acknowledges that actual knowledge may be shown by circumstantial evidence. *Varga*, 952 F. Supp. 2d at 857 ("Factors that are relevant to whether knowledge and the requisite degree of assistance exist include "the relationship between the defendant and the primary tortfeasor, the nature of the primary tortfeasor's activity, the nature of the assistance provided by the defendant, and the defendant's state of mind.").

of co-defendants' misrepresentations and knew such misrepresentations were inconsistent with the company's normal business activities. *See Petters Co.,* 565 B.R. at 167–68.

The court's analysis in *Petters* is consistent with the analyses conducted by other courts considering this issue in the context of similar allegations. *See, e.g.*, *Anderson v. U.S. Bank Nat. Ass'n*, No. A13-0677, 2014 WL 502955, at *6 (Minn. Ct. App. Feb. 10, 2014) (denying motion to dismiss aiding and abetting claim where plaintiff alleged facts demonstrating defendant knew tortfeasors engaged in actions inconsistent with any legitimate business activity); *In re PMTS Liquidating Corp.*, 526 B.R. 536, 546 (D. Del. 2014) (denying motion to dismiss aiding and abetting claim where the plaintiff alleged that the aider and abettor directed the director defendant to secure a transaction, even though the aider and abettor knew that this created a conflict of interest); [19] *In re USA Detergents, Inc.*, 418 B.R. 533, 546 (Bankr. D. Del. 2009) (denying motion to dismiss where complaint alleged aider and abettor pressured officer-tortfeasors to engage in conduct to benefit third-party as opposed to debtor).[20]

As in *Petters*, here, the TAC pled facts clearly establishing the Moving Defendant's knowledge of, and encouragement of, the multiple breaches of duty on behalf of the Officer

---

[19]    The Moving Defendant asserts that *In re PMTS* stands for the proposition that domination and control cannot be alleged in a conclusory fashion. (Mot. at 11.)   However, the Moving Defendant mistakenly cites the court's analysis of the breach of fiduciary duty claims rather than the aiding and abetting claims in which the court found the same allegations sufficient to state a claim for aiding and abetting. 526 B.R. 536, 546 (D. Del. 2014).

[20]    In his Motion, the Moving Defendant also relies on *In re Jevic Holding Corp.*, No. 08-11006 BLS, 2011 WL 4345204, at *13 (Bankr. D. Del. Sept. 15, 2011), to support his argument that the allegations in the TAC are insufficient to state a plausible claim that the Moving Defendant had actual knowledge of the Officer Defendants' breaches of fiduciary duties. (Mot. at 29).  In *Jevic*, the Court found that the complaint failed because it merely stated its allegations in "general terms." *In re Jevic Holding Corp.*, at *13.  Here, the factual allegations in the TAC are readily distinguishable because, unlike the complaint in *Jevic*, Plaintiff has sufficiently "demonstrate[d] the defendant's knowing participation with specific facts." *Id.* at *13 (internal quotation omitted).

Defendants. The TAC specifically alleges that the Moving Defendant knew ESML was insolvent at the time he instructed Vuppuluri and Bhartia to approve transfers from ESML to other Essar Affiliates for no consideration. (TAC ¶¶48; 61; 104; 160.) Indeed, Vuppuluri directly informed Prashant Ruia, via email in January 2013, that ESML was insolvent, stating the situation of ESML was "extremely critical" and ESML was "left with no funds." (TAC ¶48.) Notwithstanding this warning, Prashant Ruia continued to demand that ESML "loan" money to Essar Global or its affiliates for no consideration. (TAC ¶61-104.) Such transactions would qualify as atypical when undertaken by any business, let alone one known to be on the brink of insolvency. Moreover, as a former governor of ESML (TAC ¶26), Prashant Ruia certainly knew that such transfers were for no legitimate purpose and would constitute tortious conduct on part of the Officer Defendants.

In light of these facts and construing all reasonable inferences in Plaintiff's favor, the TAC creates a plausible inference that Prashant Ruia had sufficient knowledge of the wrongfulness of the transactions to support a claim for aiding and abetting. *See Strategic Energy Concepts, LLC v. Otoka Energy, LLC*, No. CV 16-463 (MJD/BRT), 2016 WL 7627040, at *16 (D. Minn. Nov. 18, 2016) (denying motion to dismiss aiding and abetting claim where plaintiff generally alleged defendant had knowledge of underlying breach); *In re Petters Co., Inc.*, 565 B.R. at 168; *Anderson*, 2014 WL 502955, at *6.

### 2.    Substantial Assistance & Encouragement

With respect to the element of substantial assistance or encouragement of an aiding and abetting claim, Prashant Ruia contends that the TAC fails to plead substantial assistance because it supposedly fails to allege an "affirmative step" that was a substantial factor in the Officer Defendants' breaches. (Mot. at 26-28.) This argument must be rejected wholesale.

An aider and abettor's control over a primary tortfeasor's conduct is sufficient to demonstrate knowing participation or substantial assistance. For example, in *In re Advance*

25

*Nanotech, Inc.*, 2014 WL 1320145 (Bankr. D. Del. Apr. 2, 2014), the Court denied a motion to dismiss where plaintiff sufficiently pled that the aider and abettor exercised control over the primary tortfeasors. Similar to the TAC, the plaintiff in *Advance Nanotech* relied upon the tortfeasors' ties to the aider and abettor and decision to act for the aider and abettor's (rather than their employer's) benefit in approving certain fundraising activities to establish the aider and abettor's control. *Id.* at *5, 7. Viewing the allegations in the plaintiff's favor, the Court determined that plaintiff alleged enough facts to infer that the aider and abettor exercised control over the primary tortfeasors' decision-making, which, in turn, established the defendant's knowing participating in the underlying breaches. *Id.*

Here, too, the TAC specifically alleges that the Moving Defendant facilitated and encouraged the Officer Defendants to siphon funds out of ESML for the benefit of Essar Global and its affiliates. (*See e.g.,* TAC, ¶¶10, 72 ("Despite this knowledge, Defendant Vuppuluri continued to adhere to Mr. Ruia's demands and continued to 'loan' money to Essar Global at times when ESML was insolvent."); ¶¶ 85-87 (alleging that the Moving Defendant demanded that the Officer Defendants direct ESML to settle letters of credit unrelated to ESML's business on behalf of an Essar Affiliate). Notably, this Court has already credited these allegations in rejecting Vuppuluri's and Bhartia's motions to dismiss, finding that the TAC alleged the Officer Defendants (i) made disputed transfers in response to Prashant Ruia's demands and (ii) lacked the independence to objectively consider the impact of the these transfers on ESML because of the control Prashant Ruia and Essar Global held over them. *See* Decision at 13-14. The Moving Defendant identifies no reason why this Court should depart from its prior factual determinations.[21]

---

[21] As in *Advance Nanotech*, these allegations are sufficient to establish Prashant Ruia's control over the Officer Defendants, and, in turn, his substantial assistance in the underlying breaches of their fiduciary duties to ESML. *See also In re Broadstripe, LLC*, 444 B.R. 51, 108

26

Moreover, the TAC also specifically alleges that Prashant Ruia actively participated in the Officer Defendants' breaches of their fiduciary duties. For example, the TAC describes a series of meetings between the Officer Defendants, Prashant Ruia, and U.S. lenders in 2015 and 2016 during which the Officer Defendants falsely represented to U.S. lenders that the project was near completion. (TAC ¶55.) Prashant Ruia was not only present at these meetings, but he also falsely represented to U.S. lenders that Essar Projects was qualified to complete construction of the Project. (*Id.*) Such statements were made at a time when the Moving Defendant knew ESML was insolvent and that the Officer Defendants were authorizing transfers (at his direction) to Essar Global affiliates for no value. (TAC ¶¶48; 61; 104; 160.) These misrepresentations alone are sufficient to sustain an aiding and abetting claim on a motion to dismiss. *See In re Petters Co., Inc.*, 565 B.R. at 169 (finding defendant substantially assisted tortfeasors by placating wary investors); *In re World Health Alternatives, Inc.*, 385 B.R. 576, 594 (Bankr. D. Del. 2008) (finding defendant substantially assisted tortfeasors by confirming tortfeasors' misrepresentations to investors and failing to report tortfeasors statements were false); *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1007 (8th Cir. 2007) (finding defendant provided substantial assistance where it encouraged third-party to engage in transaction with tortfeasors knowing that the tortfeasors stripped the company of its assets).

In light of these facts, and drawing all plausible inferences in favor of Plaintiff, as they must be on a motion to dismiss, Plaintiff has sufficiently stated a claim against Prashant Ruia for aiding and abetting the Officer Defendants' breaches of their fiduciary duties.

---

(Bankr. D. Del. 2010) (denying summary judgment of aiding and abetting claims because aider/abettor-defendant's alleged control over the insider defendants was a triable issue of fact).

**V.   THE COURT SHOULD REJECT ANY ARGUMENTS THE MOVING DEFENDANT INCORPORATES BY REFERENCE**

In a footnote on the last page of his Motion, the Moving Defendant purports to incorporate and assert the (i) arguments raised in the Officer Defendants' motions to dismiss, which this Court denied (Adv. D.I. 132-135); and the arguments raised by Vuppuluri on his motion for interlocutory appeal (Adv. D.I. 181-182).   (Mot. at 30.)   Such a reservation is improper as Plaintiff cannot feasibly respond to each and every argument set forth in lengthy briefing by Vuppuluri and Bhartia – all of which was denied – in response to this Motion.   If the Moving Defendant believed such arguments applied to him, he should have expressly raised the arguments in this Motion.   *See Gochin v. Thomas Jefferson Univ.*, 752 F. App'x 135, 136 (3d Cir. 2019) (denying the consideration of arguments only "incorporated by reference" in brief); *Johns Hopkins Univ. v. 454 Life Scis. Corp.*, 183 F. Supp. 3d 563, 572 (D. Del. 2016) ("Nor can a litigant rely on 'incorporation by reference' in order to evade the Court's page limits."").   In any event, Plaintiff, in turn, asserts and expressly preserves all of its arguments in opposition to the Officer Defendants' motions to dismiss, and in opposition to the Officer Defendants' pending motions seeking leave to file an interlocutory appeal with respect to the applicable statute of limitations.

**CONCLUSION**

For all of the above reasons the Court should deny Defendant Prashant Ruia's Motion to Dismiss in its entirety, and grant such other and further relief as the Court deems just and proper.[22]

---

[22]   Although Plaintiff acknowledges that this case has been pending with this Court for some time, this is the first opportunity Plaintiff had to brief the merits of its claims against Prashant Ruia. Accordingly, to the extent the Court grants the Motion in whole or in part, Plaintiff respectfully requests that such dismissal be without prejudice and that leave to amend be granted with respect to Prashant Ruia. *In re MCG Ltd. P'ship*, 545 B.R. 74, 84 (Bankr. D. Del. 2016) (granting leave to re-plead and noting "leave to amend should be granted freely").

Dated: June 22, 2021

<div style="margin-left: 50%;">

**HOGAN McDANIEL**

By: */s/Garvan F. McDaniel*
Garvan F. McDaniel (DE No. 4167)
Daniel K. Hogan (DE No. 2814)
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone:  (302) 656-7540
Facsimile:   (302) 656-7599
Email:  gfmcdaniel@dkhogan.com
         dkhogan@dkhogan.com

-and-

**KASOWITZ BENSON TORRES LLP**
Stephen W. Tountas (admitted *pro hac vice*)
Robert M. Novick (admitted *pro hac vice*)
Melissa Barahona (*pro hac vice* motion forthcoming)
1633 Broadway
New York, New York 10019
Telephone:    (212) 506-1700
Facsimile:     (212) 506-1800
Email: stountas@kasowitz.com
        rnovick@kasowitz.com
        mbarahona@kasowitz.com

*Counsel to Kevin Nystrom, UC Litigation Trustee*

</div>